No. 25-cv-00097 (LJL)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

VINCENT MAIORINO,

Plaintiff,

- against -

NEW YORK CITY DEPARTMENT OF SANITATION and CITY OF NEW YORK,

Defendant.

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS THE COMPLAINT**

**MURIEL GOODE-TRUFANT**
Corporation Counsel of the
City of New York
*Attorney for Defendants*
*100 Church Street, Room 2-190*
*New York, New York 10007*

*Of Counsel: Kathleen M. Linnane*
*Tel: (212) 356-2467*
*Matter No. 2025-004638*

**DATE OF SERVICE: March 28, 2025**

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ..... iii

PRELIMINARY STATEMENT ..... 1

STATEMENT OF FACTS ..... 2

A. Background ..... 2

B. The City's Reasonable Accommodation Process ..... 3

C. Plaintiff's Allegations in the Complaint ..... 4

D. Plaintiff's Reasonable Accommodation Request ..... 5

ARGUMENT ..... 8

POINT I ..... 8

PLAINTIFF'S CLAIMS AGAINST DSNY MUST BE DISMISSED BECAUSE THE DSNY IS NOT A SUABLE ENTITY ..... 8

POINT II ..... 8

THE VACCINE MANDATE DOES NOT INFRINGE ON PLAINTIFF'S RIGHT TO FREELY EXERCISE HIS RELIGIOUS BELIEFS ..... 8

A. Legal Standard. ..... 8

C. Rational Basis Exists for Enforcement of the Vaccine Mandate ..... 12

POINT III ..... 13

PLAINTIFF FAILS TO STATE A CLAIM FOR FAILURE TO ACCOMMODATE UNDER THE SHRL ..... 13

**Page**

A. Plaintiff Has Not Demonstrated That He Has Sincere Religious Beliefs That Conflicted With The Vaccine Mandate ... 14

B. Plaintiff Was Not Subjected To Disciplinary Procedures ... 16

C. It Would Be An Undue Burden On The City To Allow Plaintiff To Continue Working While Unvaccinated ... 17

POINT IV ... 19

PLAINTIFF FAILS TO STATE A CLAIM FOR FAILURE TO ACCOMMODATE UNDER THE CHRL ... 19

POINT V ... 20

PLAINTIFF FAILS TO STATE A CLAIM FOR FAILURE TO ENGAGE IN A COOPERATIVE DIALOGUE UNDER THE CHRL ... 20

CONCLUSION ... 22

**CERTIFICATE OF COMPLIANCE ... 23**

# TABLE OF AUTHORITIES

**Cases** **Page(s)**

Algarin v. City of N.Y.,
2012 U.S. Dist. LEXIS 146190
(S.D.N.Y. Oct. 10, 2012) ....13

Algarin v. N.Y.C. Health & Hosps. Corp.,
678 F. Supp. 3d 497 (S.D.N.Y. 2023)....17

Anthony v. GE Capital Retail Bank,
2015 U.S. Dist. LEXIS 178075
(S.D.N.Y. Sept. 30, 2015).... 8-9

Ashcroft v. Iqbal,
556 U.S. 662 (2009)....8

Baker v. Home Depot,
445 F.3d 541 (2d Cir. 2006)....20

Bath v. Fire Dep't of the City of N.Y.,
2023 N.Y. Misc. LEXIS 2744
(Sup. Ct. New York Cnty. 2023) ....15, 20

Bell Atl. Corp. v. Twombly,
550 U.S. 544 (2007)....8

Broecker v. N.Y.C. Dep't of Educ.,
585 F. Supp. 3d 299, 2022 U.S. Dist. LEXIS 25104
(E.D.N.Y. Feb. 11, 2022)....3, 15

Cagle v. Weill Cornell Medicine,
680 F. Supp. 3d 428 (S.D.N.Y. 2023)....13

Chinchilla v. N.Y.C. Police Dep't,
2024 U.S. Dist. LEXIS 123248
(S.D.N.Y. July 12, 2024) ....2, 19

Matter of Clarke v. Bd. of Educ. of the City School Dist. of the City of N.Y.,
213 A.D.3d 548 (1st Dep't 2023) ....16

Congregation Rabbinical Coll. of Tartikov, Inc. v. Village of Pomona, N.Y.,
280 F. Supp. 3d 426 (S.D.N.Y. 2017)....10

Corona Realty Holding, LLC v. Town of N. Hempstead,
382 F. App'x 70 (2d Cir. 2010) ....9

**Cases** **Pages**

Dennison v. Bon Secours Charity Health Sys. Med. Group, P.C., 2023 US Dist LEXIS 84888 (S.D.N.Y. May 15, 2023)....13

Dicapua v. City of New York, 2023 NYLJ LEXIS 2465 (Sup. Ct. Richmond Cnty. Sept. 6, 2023)....19

Employment Div. v. Smith, 494 U.S. 872 (1990)....10

Ferrelli v. State Unified Ct. Sys., 2022 U.S. Dist. LEXIS 39929 (N.D.N.Y. Mar. 7, 2022)....11

Fifth Ave. Presbyterian Church v. City of N.Y., 293 F.3d 570 (2d Cir. 2002)....10

Gardner-Alfred v. Fed. Resrv. Bank of N.Y., 2023 U.S. Dist. LEXIS 171012 (S.D.N.Y. Sept. 25, 2023)....15

Garland v. N.Y.C. Fire Dep't, 574 F. Supp. 3d 120 (E.D.N.Y. 2021)....3, 15, 16

Hogan v. Fischer, 738 F.3d 509 (2d Cir. 2013)....8

Hunold v. City of N.Y., 2023 N.Y. Misc. LEXIS 7771 (Sup. Ct. New York Cnty. 2023)....15

Indig v. Pomona, 2019 U.S. Dist. LEXIS 200934 (S.D.N.Y. Nov. 19, 2019)....10

Iqbal v. Hasty, 490 F.3d 143 (2d Cir. 2007)....8

Islam Chowdhury v. Dep't of Hous. Preserv., 2025 U.S. Dist. LEXIS 40873 (S.D.N.Y. Mar. 6, 2025)....13

Kane v. De Blasio, 19 F.4th 152 (2d Cir. 2021)....1, 9, 10, 11, 12, 13

**Cases** **Pages**

Knight v. Conn. Dep't of Pub. Health,
275 F.3d 156 (2d Cir. 2001)....13

L-7 Designs Inc. v. Old Navy, LLC,
647 F.3d 419 (2d Cir. 2011)....5

Littlejohn v. City of N.Y.,
795 F.3d 297 (2d Cir. 2015)....4

Lynch v. Bd. of Educ. of the City Sch. Dist. of the City of N.Y.,
198 N.Y.S. 3d 78 (1st Dep't 2021)....2

Lynch v. Bd. of Educ. of. N.Y.,
2023 NYLJ LEXIS 1815
(Sup. Ct. New York Cnty. 2023)....19

Maniscalco v. N.Y.C. Dep't of Educ.,
563 F. Supp. 3d 33 (E.D.N.Y. 2021)....17

Marciano v. De Blasio,
589 F. Supp. 3d 423 (S.D.N.Y. 2022)....12, 16

Matter of Marsteller v. City of N.Y.,
217 A.D.3d 543 (1st Dep't 2023),
*Iv rearg & lv appeal denied*,
2023 N.Y. Slip Op. 72547(U)
(1st Dep't 2023)....2, 19

Matson v. Bd. of Educ. of City Sch. Dist. of N.Y.,
631 F.3d 57 (2d Cir. 2011)....8

Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.,
715 F.3d 102 (2d Cir. 2013)....18

Mitchell v. Kugler,
07 CV 1801 (JG)(LB), 2009 U.S. Dist. LEXIS 4655
(E.D.N.Y. Jan. 23, 2009)....8

N.Y.S. Inspection, Sec. & Law Enf't Emps. v. Cuomo,
64 N.Y.2d 233 (1984)....17

New Yorkers for Religious Liberty, Inc. v. City of N.Y.,
No. 22-cv-1801, 2024 U.S. App. LEXIS 28727
(2d. Cir. Nov. 13, 2024)....10, 11

**Cases** **Pages**

O'Reilly v. Bd. of Educ.,
2022 N.Y. Misc. LEXIS 246
(Sup. Ct. New York Cnty. 2022) ....................16

Phillip v. Dep't of Sanitation,
No. 16-CV-2412 (MKB), 2019 U.S. Dist. LEXIS 32590
(E.D.N.Y. Feb. 28, 2019)....................7

Pierre v. Fire Dep't of the City of N.Y.,
2023 N.Y. Misc. LEXIS 1272
(Sup. Ct. New York Cnty. 2023) ....................15

Sherr v. Northport-East Northport Union Free Sch. Dist.,
672 F. Supp. 81 (E.D.N.Y. 1987) ....................14

Matter of Shmuel G.,
4 Misc. 3d 1002(A)
(Fam. Ct. Kings Cnty. 2004)....................14

Strong v. Zucker,
No. 21-CV-6532L, 2022 U.S. Dist. LEXIS 55438
(W.D.N.Y. Mar. 28, 2022)....................12

United States v. Seeger,
380 U.S. 163 (1965)....................13

We the Patriots United States v. Connecticut Off. of Early Childhood Dev.,
76 F.4th 130 (2d Cir. 2023) ....................11

Ximines v. George Wingate High Sch.,
516 F.3d 156 (2d Cir. 2008)....................7

**Statutes**

Fed. R. Civ. P. 12(b)(6)....................2, 8

N.Y.C. Admin. Code § 8-107(28)(a)(1) ....................19

N.Y.C. Admin. Code § 8-107(28)(e) ....................19

N.Y.C. Admin. Code § 8-107(31)(c)(3)(b)(i) ....................18

N.Y.C. Charter § 396 ....................7

**Statutes** **Pages**

N.Y. Exec. Law § 296(1)(a) ........ 13

N.Y. Labor Law § 27-a ........ 17

## PRELIMINARY STATEMENT

Plaintiff, Vincent Maiorino ("Plaintiff"), a sanitation worker formerly employed by the New York City Department of Sanitation ("DSNY") brings this action against DSNY and the City New York ("City") (collectively, "Defendants"), alleging that in denying his request for a reasonable accommodation request ("RA Request") for an exemption to the COVID-19 vaccine mandate applicable to City employees ("Vaccine Mandate," or, "Mandate"), Defendants violated the New York State Human Rights Law and the New York City Human Rights Law ("SHRL," and, "CHRL," respectively). Furthermore, buried at the end of the Complaint, in a clear attempt at forum shopping, and despite the Second Circuit's definitive position that the Vaccine Mandate "in all its iterations, is neutral and generally applicable[1]," Plaintiff also alleges that Defendants denied him his rights to freely exercise his religious beliefs in violation of the Free Exercise Clause of the First Amendment to the United States Constitution.

The Complaint must be dismissed in its entirety because Plaintiff fails to state a claim for any of the causes of action asserted in his Complaint. Specifically, Plaintiff's failure to accommodation claims fail because Plaintiff, amongst a litany of fanciful contentions and irrelevant propositions, fails to plausibly allege actual facts that demonstrate that he notified his employer of a sincerely-held religious belief that conflicted with the Vaccine Mandate, or any facts that demonstrate his religion was a motivating factor for any of the conduct he alleges therein. Second, Plaintiff's claim that Defendants failed to engage in the cooperative dialogue similarly fails, and has been noted by other courts in this circuit when dismissing the identical claims in pleadings also brought by the same counsel representing Plaintiff here, "New York's appellate

---

[1] See Kane v. De Blasio, 19 F.4th 152, 166 (2d Cir. 2021).

courts, in Marsteller[2] and Lynch[3], held that the systems operated by the NYPD and other City agencies satisfy the cooperative dialogue requirements of the []CHRL." See Chinchilla v. N.Y.C. Police Dep't, 2024 U.S. Dist. LEXIS 123248, at *35 (S.D.N.Y. July 12, 2024). Finally, Plaintiff's Free Exercise claim fails because Plaintiff fails to demonstrate that the Vaccine Mandate infringes on his right to freely exercise his purported religious beliefs.

For these reasons, and as set forth more fully below, the Complaint must be dismissed in its entirety, with prejudice, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## STATEMENT OF FACTS

### A. Background

On October 20, 2021 the former Commissioner of the New York City Department of Health and Mental Hygiene ("DOHMH"), Dave A. Chokshi, issued a Commissioner's Order ("COH Order") requiring all New York City employees to show proof of at least one dose of vaccination against COVID-19 by 5:00 p.m. by October 29, 2021 ("Vaccine Mandate"). The Vaccine Mandate has been repeatedly upheld as lawful by every Court that has considered it. Thus, the Vaccine Mandate is unassailable and legally sound. On February 9, 2023, the Board of Health ("BOH") amended the Vaccine Mandate, and in recognizing that 96% of City workers and 90% of New York City residents had "completed a primary series of vaccination," BOH repealed the requirement that City employees be excluded from their work premises if they did not demonstrate proof of COVID-19 vaccination.[4]

---

[2] See Matter of Marsteller v. City of NY, 217 A.D.3d 543, 545 (1st Dep't 2023), *lv rearg & lv appeal denied* 2023 NY Slip Op 72547(U) (1st Dep't 2023)).

[3] See Lynch v. Board of Educ. of the City Sch. Dist. of the City of N.Y., 198 N.Y.S. 3d 78 (1st Dep't 2021).

[4] See https://www.nyc.gov/assets/doh/downloads/pdf/notice/2023/boh-order-amend-covid-vaccine-req-city-employees.pdf

Critical to this case is that the Vaccine Mandate created a condition of employment for City employees, including Plaintiff, to be vaccinated. On this point, the law is clear. The Second Circuit has unequivocally held that the Vaccine Mandate is a "condition of employment" for City employees such as Plaintiff. See Garland, 2024 U.S. App. LEXIS 2651, at *7 (2d Cir. 2024); see also Broecker v. N.Y.C. Dep't of Educ., 2022 U.S. Dist. LEXIS 25104, at *22 (E.D.N.Y. Feb. 11, 2022) (holding that the COVID-19 vaccine mandate applicable to New York City Department of Education employees created a "lawful condition of employment.").

The law of this case – as well as holdings in similar cases brought in the Southern District of New York and New York Supreme Court – is likewise clear that because vaccination against COVID-19 is a condition of employment, non-compliant employees could be terminated based on their failure to satisfy this condition.

**B. The City's Reasonable Accommodation Process**

In response to the COH Order, the City established additional procedures specific to requests for vaccination-related accommodations in an effort to address the anticipated increase in accommodation requests. One day after the issuance of the Vaccine Mandate, on October 21, 2021, the Department of Citywide Administrative Services ("DCAS") issued guidance with respect to the vaccination requirement, which included the "FAQ on New York City Employees Vaccine Mandate," (see https://www1.nyc.gov/assets/dcas/downloads/pdf/guidelines/faq-vaccine-mandate.pdf (last accessed on March 27, 2025) and a document entitled "Applying for a Reasonable Accommodation from the Covid-19 Vaccine Mandate." See https://www1.nyc.gov/assets/dcas/downloads/pdf/guidelines/vaccine-reasonable-accommodation-process.pdf (last accessed March 27, 2025). These documents laid out the guidelines for seeking an exemption from the Vaccine Mandate through a reasonable accommodation request. Any City employee who was denied a reasonable accommodation by

their agency had the right to appeal that denial. Id. All appeals were reviewed by the City of New York Reasonable Accommodation Appeals Panel ("Citywide Panel"). The Citywide Panel was created specifically in response to the DOHMH Order to consider appeals filed by employees whose accommodation requests had been denied by their respective agency.

### C. Plaintiff's Allegations in the Complaint[5]

Plaintiff alleges to have been employed as a sanitation worker with DSNY, and that he "was a senior employee in his district." See Complaint ("Compl.") ¶¶13, 27. Plaintiff alleges that his "sincerely held religious beliefs as a Roman Catholic require him to refuse the COVID-19 vaccine because, among other things, they are produced, developed, and/or tested with aborted fetal cell lines."[6] Id. ¶15. Plaintiff alleges that on "November 4, 2021, [Plaintiff] notified DSNY that his sincerely held religious beliefs conflicted with the Vaccine Mandate and requested a reasonable accommodation to the Vaccine Mandate." Id. ¶37. Plaintiff alleges that his RA Request was denied, and that he appealed that denial. Id. ¶¶38, 40. Plaintiff alleges that he was placed on leave without pay on November 28, 2021, and that "while [Plaintiff] was off duty, he was able to and did submit his appeal further clarifying his religious beliefs and how they conflict with the vaccine mandate [sic]." Id. ¶¶41-42. Plaintiff alleges that his appeal was denied on January 4, 2022, and that on February 11, 2022, he "was discharged form work." Id. ¶¶46, 49.

Plaintiff alleges that the "harrowing trajectory of [his] plight has exacted a profound toll, not only of his immediate circumstances but on the very fabric of his being." Id. ¶54. And

---

[5] For the purposes of this motion only, the well-pleaded allegations of fact in the Complaint are deemed to be true. See Littlejohn v. City of New York, 795 F.3d 297 (2d Cir. 2015).

[6] As is demonstrated by the exhibits annexed to the Linnane Decl., Plaintiff did not articulate any such belief to DSNY in his request for a reasonable accommodation to the Vaccine Mandate. See Exh. A. That Plaintiff attempts to set forth that claim now, when he, at no time, informed Defendants of that purported belief, should by disregarded by the Court.

that "[f]rom his initial appeal for exemption, the subsequent denial, and the labyrinthine process that followed, each juncture has weighed heavily upon him, rendering days as moments lost, and moments as treasures beyond reclamation." Id. Plaintiff alleges that "[t]he pursuit of happiness, so vital to the human experience, has been marred by ridicule and disregard, leaving him adrift in a sea of frustration and unfulfilled aspirations." Id. ¶57.

Scattered throughout these and other, similar, nonsensical claims, and absent any factual support, Plaintiff alleges, that he "has sincerely held religious beliefs which prohibit him from receiving the COVID-19 vaccines." Id. ¶¶63, 127. Plaintiff alleges that he "was able to perform the essential duties of his job with a reasonable accommodation," yet does not allege, or even hint at, what any of those duties were. Id. ¶¶72, 138. Plaintiff also claims that he "sufficiently articulated and explained the religious nature of his conflict with the Vaccine Mandate." Id. ¶¶83, 133.

**D. Plaintiff's Reasonable Accommodation Request**[7]

On November 4, 2021, well beyond the deadline by which City employees were required to submit any requests for reasonable accommodations to the Vaccine Mandate, using a fill-in-the-blank form[8] entitled, "Affidavit of Vaccine Exemption on Religious Grounds for City Employees," Plaintiff submitted an RA Request to DSNY. See Plaintiff's Reasonable Accommodation Request dated November 4, 2021, annexed to the Declaration of Kathleen M. Linnane ("Linnane Decl.) as Exh. A. The fill-in-the-blank form states that Plaintiff "do[es] hereby

---

[7] Plaintiff's Reasonable Accommodation Request and Appeal documents may be incorporated by reference. See L-7 Designs Inc. v. Old Navy, LLC, 647 F.3d 419 (2d Cir. 2011) (citations omitted) ("A complaint is deemed to include … materials incorporated in it by reference, and documents that, although not incorporated by reference, are 'integral' to the complaint.").

[8] This form is available for download at https://img1.wsimg.com/blobby/go/0622c036-b3fe-40c8-8ca9-3cd6b61c0fb2/downloads/CITY%20EMPLOYEES%20copy.pdf?ver=1729820846777 (last accessed March 27, 2025).

swear and affirm that [he is] a member of a recognized religious organization, and that the immunizations required by (Governing Authority Name) DSNY are contrary to [his] religious tenets and practices." Id. Notably, nowhere in the document he submitted to DSNY does Plaintiff articulate his religion, his religious beliefs, or explain how, his purported "religious tenets and practices" conflict with the Vaccine Mandate. Id. Instead, the form makes references to various provisions of law and EEOC guidance. Id. On November 18, 2021, DSNY denied Plaintiff's RA Request, and in doing so, advised him that, "[b]ecause [his] request for an accommodation was submitted after November 2, 2021, [he was to be] placed in Leave Without Pay Status effective Wednesday, November 24, 2021, unless you submit proof of receipt of a COVID-19 vaccine before this date. See DSNY Communication to Plaintiff Denying RA Request, annexed to the Linnane Decl. as Exh. B.

On November 19, 2021, Plaintiff appealed DSNY's denial of his RA Request by email. Plaintiff's appeal was comprised of an email and his certificate of baptism from 1965. See Plaintiff's appeal email, dated November 19, 2021, annexed to the Linnane Decl. as Exh. C ("Appeal Email"). As was the case with his RA Request, in his Appeal Email, Plaintiff did not state that he was a Roman Catholic, did not articulate his religious beliefs, nor did Plaintiff explain that, or how, his purported religious beliefs conflicted with the Vaccine Mandate. Instead, Plaintiff's Appeal Email stated:

> I am appealing the denial of my religious exemption due to my sincere, deeply held religious beliefs.
>
> The Roman Catholic Church teaches a person may be required to refuse a medical intervention, including a vaccination, if his or her informed conscience comes to this sure judgment. While the Catholic Church does not prohibit the use of vaccines in principle, her teachings do provide a principled

> religious basis on which a Catholic may determine that he or she ought to refuse certain vaccines.
>
> The Church holds that vaccination is not morally obligatory in principle and so must always be voluntary. Moreover, there is a general moral duty to refuse the use of medical products, including certain vaccines, that are produced using human cells lines derived from direct abortions. It is permissible to use such vaccines only under certain case-specific conditions, based on a judgment of conscience.
>
> An individual's judgment in these matters is to be respected because he/she is morally required to obey the judgment of a sure conscience, even if it is objectively in error.
>
> As the Catechism makes clear, a person "must not be forced to act contrary to his conscience. Nor must he be prevented from acting according to his conscience, especially in religious matters."
>
> I thank you for respectfully adhering to my first amendment rights guaranteed as a citizen of the United States of America by our great Constitution and reinforced on a state level by the Fourteenth Amendment without prejudice.

Id. On December 21, 2021, Plaintiff, presumably having retained an attorney, submitted what appears to be an appeals brief drafted by attorney Jeannette Poyerd-Loiacono. See Email from attorney Poyerd-Loiacono, dated December 21, 2021, with appended Appeals Brief, annexed to the Linnane Decl. as Exh. D. On January 5, 2022, Plaintiff was advised by email that his appeal was denied. See Appeal Denial dated January 5, 2022, annexed to the Linnane Decl. as Exh. E. On February 11, 2022, DSNY terminated Plaintiff's employment due to his failure to comply with the COVID-19 Vaccine Mandate.

# ARGUMENT

## POINT I

## PLAINTIFF'S CLAIMS AGAINST DSNY MUST BE DISMISSED BECAUSE THE DSNY IS NOT A SUABLE ENTITY

Section 396 of the New York City Charter provides that "[a]ll actions and proceedings for the recovery of penalties for the violation of any law shall be brought in the name of the city of New York and not in that of any agency, except where otherwise provided by law." N.Y.C. Charter, § 396. Section 396 "has been construed to mean that New York City departments, as distinct from the City itself, lack the capacity to be sued." See Ximines v. George Wingate High Sch., 516 F.3d 156, 159-60 (2d Cir. 2008). Accordingly, all claims against the DSNY must be dismissed. See Phillip v. Dep't of Sanitation, No. 16-CV-2412 (MKB), 2019 U.S. Dist. LEXIS 32590, *5 (E.D.N.Y. 2019) (dismissing all claims against DSNY as a non-suable entity.).

## POINT II

## THE VACCINE MANDATE DOES NOT INFRINGE ON PLAINTIFF'S RIGHT TO FREELY EXERCISE HIS RELIGIOUS BELIEFS

### A. Legal Standard

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Hogan v. Fischer, 738 F.3d 509, 514 (2d Cir. 2013) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." See Matson v. Bd. of Educ. of City Sch. Dist. of N.Y., 631 F.3d 57, 63 (2d Cir. 2011)

(quoting Iqbal, 556 U.S. at 678) (internal quotation omitted). Thus, the pleading standard "requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (noting that courts "are not bound to accept as true a legal conclusion couched as a factual allegation"); Ortiz v. Pace Univ., 2025 U.S. Dist. LEXIS 3224, *3 (S.D.N.Y. 2025) ("[a] complaint must offer more than "labels and conclusions," or "a formulaic recitation of the elements of a cause of action" or "naked assertion[s]" devoid of "further factual enhancement" in order to survive dismissal (quoting Twombly, 550 U.S. 544, 555, 557).

Because a pleading must contain sufficient facts to state a claim that is plausible, not merely conceivable, the Twombly plausibility standard "obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible." Mitchell v. Kugler, 07 CV 1801 (JG)(LB), 2009 U.S. Dist. LEXIS 4655, *13-15 (E.D.N.Y. Jan. 23, 2009) (quoting Iqbal v. Hasty, 490 F.3d 143, 157-58 (2d Cir. 2007) (interpreting Twombly)) (italics omitted); Twombly, 550 U.S. at 555.

### B. The Second Circuit Has Conclusively Determined That the Vaccine Mandate Is Facially Neutral and Generally Applicable

Plaintiff's only federal claim is brought under the First Amendment's Free Exercise clause. Compl. ¶¶202-228. The Free Exercise Clause of the First Amendment provides that "Congress shall make no law . . . prohibiting the free exercise" of religion. U.S. Const. Amend. I. The Free Exercise Clause protects "an individual's private right to religious belief, as well as the performance of (or abstention from) physical acts that constitute the free exercise of religion." Kane v De Blasio, 19 F.4th 152, 163-164 (2d Cir 2021) (internal citations omitted).

In the Complaint, Plaintiff, who alleges to be "Roman Catholic," alleges that his "sincerely held religious beliefs […] require him to refuse the COVID-19 vaccine mandate

because, among other religious reasons, they are produced, developed, and/or tested with aborted fetal cell lines. See Compl. ¶15. Notably, however, Plaintiff's RA Request did not include any information about this purported belief. Instead, as set forth above, the RA Request submitted by Plaintiff to the DSNY stated only that Plaintiff is "a member of a recognized religious organization." Plaintiff failed, in his RA Request, to articulate what his purported "organized" religion was, and neither his RA Request nor Appeal Email indicate what his religious beliefs are, or how those purported beliefs conflicted with the Vaccine Mandate at issue here. See Linnane Decl., Exhs. A, C. Consequently, neither his RA Request nor Appeal Email articulate any religious objection related to fetal cells, or the use thereof in the production, development, or testing of vaccines. Id. Even assuming that Plaintiff's professed beliefs, which he did not articulate to his employer, are sincerely held religious beliefs, his Free Exercise Clause claim still fails.

It is "not a violation of the Free Exercise Clause to enforce a generally applicable rule, policy or statute that burdens a religious practice as long as the government can 'demonstrate a rational basis for [the] enforcement' of the rule, policy or statute, and the burden is only an incidental effect, rather than the object, of the law." See Indig v. Pomona, 2019 U.S. Dist. LEXIS 200934, *22 (S.D.N.Y. 2019) (citing Congregation Rabbinical Coll. of Tartikov, Inc. v. Vill. of Pomona, NY, 280 F. Supp. 3d 426, 482 (S.D.N.Y. 2017), Fifth Ave. Presbyterian Church v. City of New York, 293 F.3d 570, 574 (2d Cir. 2002)); see also Employment Div. v. Smith, 494 U.S. 872, 879 (1990) ("the right of free exercise does not relieve an individual of the obligation to comply with a valid and neutral law of general applicability on the ground that the law proscribes (or prescribes) conduct that his religion prescribes (or proscribes)") (internal quotations omitted). Therefore, "[w]here the government seeks to enforce a law that is neutral and of general

applicability . . . it need only demonstrate a rational basis for its enforcement." Fifth Ave. Presbyterian Church, 293 F.3d at 574; see also Smith, 494 U.S. at 879.

Plaintiff wrongly claims that "the Vaccine Mandate is not neutral or not generally applicable because the Defendants have refused to accept sincerely held religious beliefs that conflict with the Mandate," and "because it provides for reasonable accommodations, including religious and medical exemptions." Compl. ¶¶209-210. Plaintiff also errs in his contention that the Mandate "fails strict scrutiny." Id. ¶212.

As an initial matter, the Second Circuit Court of Appeals has already held that the Vaccine Mandate is neutral and generally applicable. Kane, 19 F.4th at 164. (finding the Vaccine Mandate neutral on its face because it applied to "all Department of Education employees, as well as City employees and contractors of DOE and the City who work in DOE school settings"); see also New Yorkers for Religious Liberty, No. 22-cv-1801 (2d. Cir. Nov. 13, 2024). The Second Circuit has also unequivocally made clear that rational basis review applies to the Vaccine Mandate. Kane, 19 F.4th at 166. Furthermore, "[t]o fail the neutrality prong, it is not enough for a law to simply affect religious practice; the law or the process of its enactment must demonstrate hostility to religion." We the Patriots United States v. Connecticut Off. Of Early Childhood Dev., 76 F.4th 130, 145 (2d Cir. 2023). Here, the Vaccine Mandate does not single out anyone who declines vaccination on religious grounds, and Plaintiff pleads no facts showing that suppression of Catholicism or any related practice was the intent of the Vaccine Mandate or the process by which employees could request exemptions.

Plaintiff's claim that the Vaccine Mandate is not generally applicable because the Defendants have refused to accept sincerely held religious beliefs that conflict with the Mandate, and because it provides for reasonable accommodations is without merit. See Compl. at ¶¶208-

210. As the Court held in Ferrelli v. State Unified Ct. Sys., “a mandate is not individualized merely because it includes express exceptions, rather, to demonstrate that a law is not generally applicable ‘there must be some showing that the exemption procedures allow secularly motivated conduct to be favored over religiously motivated conduct’.” See 2022 U.S. Dist. LEXIS 39929, *17-18 (N.D.N.Y. Mar. 7, 2022 (internal citations omitted). Here, there is no evidence of such favoritism, and the only secular exemptions available to City employees are medical exemptions. Id.

Thus, Plaintiff does not present any compelling reasons to deviate from the firm declaration of the Second Circuit that “[t]he Vaccine Mandate, in all its iterations, is neutral and generally applicable.” Kane, 19 F.4th at 164. Consequently, the government needs only to demonstrate a rational basis for its enforcement. See id; see also New Yorkers for Religious Liberty, No. 22-cv-1801.

**C. Rational Basis Exists for Enforcement of the Vaccine Mandate**

Rational basis review requires that Defendants must show only that they have chosen a "means for addressing a legitimate goal that is rationally related to achieving that goal." Id. at 166. Here, as Courts have consistently recognized, it is clear that during the rapid spread of COVID-19 pandemic, it was incumbent on the City to take steps to mitigate the health risks to the public and to its employees by requiring that all City employees be vaccinated against COVID-19. Marciano v. de Blasio, 589 F. Supp. 3d 423, 432 (S.D.N.Y. 2022).

Plaintiff’s suggestions that less restrictive means to reduce the spread of COVID-19 include “masking, PCR testing, antibody testing, temperature checks” are unavailing. Compl. at ¶212. As the Court in Strong v. Zucker eloquently pointed out, “it is not the task of this Court to set public health care policy or to reach its own decision about how best to deal with the COVID-19 pandemic.” No. 21-CV-6532L, 2022 U.S. Dist. LEXIS 55438, at *12 (W.D.N.Y. Mar. 28, 2022).

Therefore, because the Vaccine Mandate survives rational basis review, Plaintiff's Free Exercise Clause claim must be dismissed.

## POINT III

## PLAINTIFF FAILS TO STATE A CLAIM FOR FAILURE TO ACCOMMODATE UNDER THE SHRL

Plaintiff further alleges that Defendants violated the SHRL when they denied his RA request for an exemption to the Vaccine Mandate. Compl. ¶¶121-184. Plaintiff's claim, however, fails, and must be dismissed.

The SHRL provides that "it shall be an unlawful discriminatory practice for any employer […] to impose upon a person as a condition of […] retaining employment […] any terms or conditions that would require such person to violate or forego a sincerely held practice of his or her religion, […] unless, after engaging in a bona fide effort, the employer demonstrates that it is unable to reasonably accommodate the employee's or prospective employee's sincerely held religious observance or practice without undue hardship on the conduct of the employer's business." N.Y. Exec. Law § 296(1)(a).

To establish a *prima facie* case of religious discrimination under a failure to accommodate theory, a plaintiff must demonstrate that "(1) he has a bona fide religious belief conflicting with an employment requirement (2) he informed his employer of this belief, and (3) he was disciplined for failing to comply with the employment requirement." See Islam Chowdhury v. Dep't of Hous. Pres., 2025 U.S. Dist. LEXIS 40873, *18-19 (S.D.N.Y. 2025) (quoting Cagle v. Weill Cornell Medicine, 680 F. Supp. 3d 428, 435 (S.D.N.Y. 2023); Knight v. Conn. Dep't of Pub. Health, 275 F.3d 156, 167 (2d Cir. 2001). If the *prima facie* case is shown, "the burden then shifts to the employer to show that it could not accommodate the employees' religious beliefs without undue hardship." Id. An accommodation is said to cause an undue hardship whenever it results in

more than a *de minimis* cost to the employer." Dennison v Bon Secours Charity Health Sys. Med. Group, P.C., 2023 US Dist LEXIS 84888, at 12 (S.D.N.Y. 2023) (internal citations omitted). While a plaintiff need not establish a *prima facie* case at the pleading stage, a plaintiff must "**set forth factual circumstances** from which discriminatory motivation can be inferred, which may include facts suggesting preferential treatment given to similarly situated individuals, or remarks that convey discriminatory animus." Algarin, 2012 U.S. Dist. LEXIS 146190, *2 (S.D.N.Y. 2012) (emphasis added).

### A. Plaintiff Has Not Demonstrated That He Has Sincere Religious Beliefs That Conflicted With The Vaccine Mandate

Evaluating whether a religious belief is sincere is a threshold question of fact that "must be resolved in every case." United States v. Seeger, 380 U.S. 163, 185 (1965); Kane, 19 F.4th at 442. It is not sufficient for Plaintiff to merely state that the beliefs he asserts are "religious in nature." Rather, a plaintiff must demonstrate that his "espoused beliefs […] do in fact stem from religious convictions and have not merely been framed in terms of religious belief[s] so as to gain the legal remedy desired." Sherr v. Northport-East Northport Union Free Sch. Dist., 672 F Supp 81, 94 (E.D.N.Y. 1987). This is because "medical, health related or purely moral considerations, scientific or secular theories, or philosophical and personal beliefs" are not sincerely held religious beliefs. Matter of Shmuel G., 4 Misc. 3d 1002(A), at 3 (Fam. Ct. Kings Cnty. 2004) (internal citations omitted).

Here, in the Complaint, Plaintiff claims that as a Roman Catholic, he is "require[d] […] to refuse the COVID-19 vaccine because, among other religious reasons, they are produced, developed, and/or tested with aborted fetal cell lines." Compl. ¶¶15. As an initial matter, and as set forth above, Plaintiff did not articulate any such beliefs to DSNY in his RA Request. Though, in his Email Appeal, Plaintiff states, "there is a general moral duty to refuse the use of medical

products, including certain vaccines, that are produced using human cells lines derived from direct abortions," Plaintiff gave no indication in the documents he submitted to his employer that this purported moral duty has anything to do with a religious belief, nor that he did, in fact, refuse other such "medical products," and how his purported belief conflicted with the Vaccine Mandate. See RA Request and Email Appeal, Exhs. A, C.

Furthermore, Plaintiff's purported opinions about the alleged use of "cells lines derived from from direct abortions" reflect only personal preferences, and pursuant to the EEOC's Guidance, "objections to COVID-19 vaccination that are based on social, political, or personal preferences, or on nonreligious concerns about the possible effects of the vaccine, do not qualify as 'religious beliefs.'" See https://www.eeoc.gov/wysk/what-you-should-know-about-covid-19-and-ada-rehabilitation-act-and-other-eeo-laws#L.%20[*11 (last accessed March 27, 2025). Courts have also held that such preferences are not connected to religious beliefs. See Pierre v. Fire Dept. of the City of N.Y., (Art. 78), 2023 N.Y. Misc. LEXIS 1272, *6-7 (Sup. Ct. N.Y. Cnty. 2023) (Art. 78 petition denied where the petitioner objected to a vaccine "that has used stem cells from fetuses […] without any connection to a sincerely held religious belief" because the "request was based on [the petitioner's] personal preferences"); Bath v. Fire Dept. of the City of N.Y., 2023 N.Y. Misc. LEXIS 2744 (Sup. Ct. N.Y. Cnty. 2023). Moreover, Plaintiff's professed objections appear to be stock language from a template that is easily found on the internet. See "Vaccine Exemption Template Letter," located at https://www.ncbcenter.org/ncbc-news/vaccineletter (last accessed March 28, 2025), which is, notably, identical to the language Plaintiff used in his Appeal Email. See Linnane Decl., Exh. C. And courts, including this one, have held that where an individual seeking an exemption to an employer's vaccination requirement fails to provide a cogent explanation why their purported religion conflicted with vaccination, and their contentions

regarding vaccination appear to be largely stock language derived from publicly available resources, the employer did not err in denying that request. See, e.g., Gardner-Alfred v. FRB of N.Y., 2023 U.S. Dist. LEXIS 171012 (S.D.N.Y. 2023); Hunold v. City of NY, 2023 N.Y. Misc. LEXIS 7771 (Sup. Ct. N.Y. Cnty. 2023).

To the extent that Plaintiff argues that he "supplement[ed] his appeal further clarifying his religious beliefs and how they conflict with the vaccine mandate," (Compl. ¶42), there is absolutely no indication that the alleged beliefs in the purported "supplement," which was drafted by an attorney, were anything other than beliefs conveniently asserted or adopted for the express purpose of obtaining an exemption to the Vaccine Mandate. See Linnane Decl., Exh. E. Indeed, none of the documents submitted by Plaintiff in support of his RA Request, including his initial request made by a fill-in-the-blank form, his appeal, which used language copied from a "Vaccine Exemption Template Letter" found on the internet, and the "supplement," drafted by an attorney, included any information **from Plaintiff himself** about how his alleged belief was a religious belief that conflicted with the Vaccine Mandate.

**B. Plaintiff Was Not Subjected To Disciplinary Procedures**

Furthermore, Plaintiff was not subjected to the DSNY's disciplinary procedures when he was facing potential termination due to his refusal to comply with the Vaccine Mandate. Courts have consistently held that during the COVID-19 public health emergency, when the various levels of government were seeking to control and mitigate the virus's impact, getting vaccinated was a proper "condition of [Plaintiff's] employment," and since it had nothing to do with Plaintiff's job performance, misconduct, or competency, the Vaccine Mandate did not implicate the disciplinary procedures. See Garland v. New York City Fire Dep't, 574 F. Supp. 3d 120, 128 (E.D.N.Y. 2021); Broecker v. New York City Dep't of Educ., 585 F. Supp. 3d 299, 314 (E.D.N.Y. 2022) (the Vaccine Mandate is a lawful condition of employment); Marciano, 589 F.

Supp. 3d at 426 (S.D.N.Y. 2022) (where, in dismissing NYPD employee's claim that he had been disciplined for failing to be vaccinated, the court held that the Vaccine Mandate created a condition of the plaintiff's employment, and that his termination based on his failure to meet that condition did not implicate applicable statutory or NYPD disciplinary procedures); O'Reilly v. Bd. of Ed., 2022 N.Y. Misc. LEXIS 246 (Sup. Ct. N.Y. Cnty. 2022) (court determined that employment action taken by DOE was "not discipline but instead was merely a response to petitioner's refusal to comply with a condition of employment."); Matter of Clarke v. Bd. Of Educ. of the City School Dist. of the City of N.Y., 213 A.D.3d 548, 550 (1st Dep't 2023) (Court held that "… placement on leave for failure to prove vaccination, a condition of employment, is 'unrelated to job performance, misconduct or competency' and does not constitute 'teacher discipline'.")

Here, Plaintiff failed to satisfy a condition of his employment by refusing to get vaccinated, and faced termination not because he was disciplined, but because he was no longer qualified for his position with DSNY. See Garland v NY City Fire Dept., 574 F. Supp. 3d 128 ("the termination of a public employee based on the employee's failure to satisfy a qualification of employment unrelated to job performance, misconduct, or competency does not implicate the disciplinary procedures.")

**C. It Would Be An Undue Burden On The City To Allow Plaintiff To Continue Working While Unvaccinated**

Plaintiff, absent any reasoning, makes the entirely conclusory claim that "Defendants cannot demonstrate that accommodating [Plaintiff] would cause an undue hardship." See Compl. ¶86. Contrary to Plaintiff's assertions, however, his preferred accommodation would require that Defendants oversee Plaintiff's compliance with testing, and allow him to potentially expose other DSNY employees, and the public to a life-threatening virus, all which would pose an undue burden to Defendants. Algarin, 678 F. Supp. 3d 497 at 511 (internal citations omitted).

The City, as a government employer, has a duty to maintain a safe workplace, and the decision of how to do it best is within its discretion as the municipal employer. See N.Y. Labor Law § 27-a.; see also N.Y. State Inspection, Sec. & L. Enf't Emps. v. Cuomo, 64 N.Y.2d 233, 237-40 (1984). Given the public health emergency posed by COVID-19, the City promulgated the entirely lawful and rational Vaccine Mandate, and Defendants could not permit unvaccinated employees, absent accommodation required by law, to perform work for the City.

Though Plaintiff alleges nothing other than that he was a sanitation worker, he does allege that he was an essential worker. See Compl. ¶3. Plaintiff was required to work in person, during alleged "twelve-hour shifts," surrounded by his colleagues as well as by the public citizens of the City of New York. See Compl. ¶¶8, 145. As such, in light of City's duty to keep its employees and the public safe at the height of COVID-19 pandemic, when the viral transmission rates were high, it would have been an undue burden to allow Plaintiff to continue performing his duties without being vaccinated. See also Maniscalco v. N.Y. City Dept. of Educ., 563 F. Supp. 3d 33, 39-40 (E.D.N.Y. 2021) (the Court found that it was not shocking for the City to conclude that vaccination was the best way to do so, particularly at a time when viral transmission rates were high).

Plaintiff's argument that there was no undue hardship to Defendants in light of "other DSNY employees" being permitted to "submit weekly testing instead of receiving the COVID-19 vaccination" is unavailing. Compl. ¶¶76, 87-88. Plaintiff provides no information about these purported "other" DSNY employees whom he alleges were accommodated. And notably, Plaintiff does not allege these "other" DSNY employees were granted religious exemptions to the Mandate. Indeed, absent from the Complaint is any information about these "other DSNY employees'" including their names, civil service titles, the specific facilities or units

in which they worked, in what manner they were treated differently than Plaintiff, or the exact basis for their accommodation requests, such as their specific religious objections to the COVID-19 vaccine.

**POINT IV**

**PLAINTIFF FAILS TO STATE A CLAIM FOR FAILURE TO ACCOMMODATE UNDER THE CHRL**

Plaintiff's CHRL failure to accommodate claim similarly fails. Claims under the CHRL must be evaluated independently and with its provisions construed broadly in the plaintiff's favor. Mihalik v. Credit Agricole Cheuvreux N. Am., Inc., 715 F.3d 102, 109 (2d Cir. 2013). As noted above, to survive a motion to dismiss, a plaintiff must plead actual fact in support of his claims, and "a formulaic recitation of a cause of action's elements will not do." Twombly, 550 U.S. 544, 555; Ortiz, 2025 U.S. Dist. LEXIS 3224, *3. Other than reciting the elements of a CHRL failure to accommodate claim (Compl. ¶¶63, 72, 83), Plaintiff fails to plead a single fact in support of it. See, generally, Compl,.

Plaintiff also sets forth the misguided argument that Defendants would not meet the "stiffer standard" of "undue hardship" under the CHRL. See Compl. ¶70. However, Plaintiff ignores the portion of the CHRL that states "an accommodation shall be considered to constitute an undue hardship for purposes of [the subdivision of the CHRL dealing with religious observance] if it will result in the inability of an employee who is seeking a religious accommodation to perform the essential functions of the position in which the employee is employed." NYC Admin. Code § 8-107(31)(c)(3)(b)(i). Here, Plaintiff's claim fails for the same reasons Defendants asserted in response to his SHRL failure to accommodate allegation.

**POINT V**

**PLAINTIFF FAILS TO STATE A CLAIM FOR FAILURE TO ENGAGE IN A COOPERATIVE DIALOGUE UNDER THE CHRL**

Plaintiff alleges a failure to engage in cooperative dialogue only under the CHRL. Compl. ¶¶185-201. The CHRL states that "[i]t shall be an unlawful discriminatory practice for an employer […]to refuse or otherwise fail to engage in a cooperative dialogue within a reasonable time with a person who has requested an accommodation" N.Y.C. Admin. Code § 8-107 (28)(a)(1); see also N.Y.C. Admin. Code § 8-107 (28)(e). Here, Plaintiff alleges that Defendants violated his rights under the CHRL when they failed to engage in a "cooperative dialogue" regarding his RA Request. Compl. ¶¶7, 9, 76-77, 101-104, 142-143, 162, 165-168, 188-192, 221, 224, 226. However, courts in this district have held that the City engaged in a proper cooperative dialogue with employees when it provided information regarding its process for reviewing accommodation requests related to the Vaccine Mandate, and instructed employees how to apply to their agency's Equal Employment Opportunity office, and how to appeal denials. See Chinchilla v. N.Y.C. Police Dep't, 2024 U.S. Dist. LEXIS 123248, at *35 (S.D.N.Y. July 12, 2024) (citing Matter of Marsteller v. City of NY, 217 A.D.3d 543, 545 (1st Dep't 2023), *Iv rearg & lv appeal denied* 2023 NY Slip Op 72547(U) (1st Dep't 2023)). The Marsteller Court held that where individuals availed themselves of this City's reasonable accommodation process and received explanations why their applications were denied, and where the parties further engaged during the administrative appeals process, no further individualized dialogue was required. Id.; see also Lynch v. Bd. of Educ. of. N.Y., 2023 NYLJ LEXIS 1815 (Sup. Ct. N.Y. Cnty. 2023) (stating respondents offered information on the process for reviewing accommodation requests and thus complied with the CHRL requirement to engage in cooperative dialogue); Dicapua v. City of New York, 2023 NYLJ LEXIS 2465 (Richmond County Sup. Ct. Sept. 6, 2023) (citing the Appellate Division First

Department's ruling that "in publicly offering information on its process for reviewing accommodation requests and informing employees on how to submit applications and appeal denials, the City respondents were compliant under CHRL").

Here, Plaintiff himself admits that he sought a reasonable accommodation from DSNY, and that DSNY denied his request. Compl. ¶¶4-5, 37-38. In denying his RA Request, DSNY advised Plaintiff how to appeal the denial of his RA Request. See Linnane Decl., Exh. B. Further, Plaintiff alleges that he appealed that denial to the Citywide Panel. See Compl. ¶¶6, 40. Thus, Plaintiff's Complaint demonstrates not only that Defendants notified Plaintiff of the accommodation and appeals processes, but that Plaintiff understood that process and availed himself of it.

Moreover, Defendants are not required to engage in a cooperative dialogue until an individual establishes that they are entitled to an accommodation due to a sincerely held religious belief that conflicts with the Vaccine Mandate. See Bath v. Fire Dept. of the City of N.Y., 2023 N.Y. Misc. LEXIS; see also Baker v. Home Depot, 445 F.3d 541, 546 (2d Cir. 2006) (employer must offer a reasonable accommodation after the employee establishes a *prima facie* case). Here, as demonstrated hereinabove, Plaintiff has not established that his purported bona fide religious beliefs conflict with the Vaccine Mandate.

Thus, Defendants met their obligations under the CHRL to engage in the cooperative dialogue with Plaintiff, and Plaintiff's claims to the contrary must be dismissed.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court grant their motion to dismiss in its entirety, with prejudice, that judgment in favor of Defendants be entered, and that Defendants be granted costs, fees, and disbursements together with such other and further relief as the Court deems just and proper.

Dated: New York, New York
March 28, 2025

**MURIEL GOODE-TRUFANT**
Corporation Counsel of the
City of New York
*Attorney for Defendants*
100 Church Street, Room 2-190
New York, New York 10007
212-356-2467

By: /s/ Kathleen M. Linnane
Kathleen M. Linnane
Assistant Corporation Counsel

**CERTIFICATE OF COMPLIANCE**

Counsel of Record hereby certifies that pursuant to Rule 7.1(c) of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York, the enclosed memorandum of law, excluding the caption, tables of contents and authorities, and signature block, contains approximately 6,452 words, which is less than the total words permitted by the rules of the Court. Counsel relies on the word count function of the computer program used to prepare this brief.

Dated: New York, New York
March 28, 2025

/s/ *Kathleen M. Linnane*

Kathleen M. Linnane
Assistant Corporation Counsel