Docket No. 25-cv-00097

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

VINCENT MAIORINO,

Plaintiff,

v.

NEW YORK CITY DEPARTMENT OF SANITATION
AND CITY OF NEW YORK,

Defendants.

# PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE COMPLAINT

MARTINEZ & LOIACONO, PLLC.
*Attorney for Plaintiff*
245 Bricktown Way, Suite J
Staten Island NY 10309
T: (347) 215-4543
E-mail: Jmpoyerd@yahoo.com

## TABLE OF CONTENTS


**Page(s)**

TABLE OF AUTHORITIES …………………………………………………….i,ii, iii, iv

PRELIMINARY STATEMENT ……………………………………………..……. 1

STATEMENT OF FACTS ……………………………………………..……….….. 1

STANDARD OF LAW ………………………………………………………………….. 6

ARGUMENT …………………………………………………………………………. 6

POINT I…………………………………………………………………………....6
Plaintiff's Amended Complaint renders Defendant's Motion to Dismiss Moot…..6

POINT II ………………………………………………………………….…….….. 7
Plaintiff's claims for failure to accommodate pursuant to NYCHRL and NYSHRL state viable claims for relief.

A. Defendants' undue hardship arguments are premature, and Defendants cannot meet its burden of proof of undue hardship in any event. ………..….. 7
i.The Defendants Cannot Demonstrate Undue Hardship ……….,,,,,,,,,,,,,,,,,.8

POINT III……………………………………………………………………….... 14
Plaintiff's First Amendment causes of action for Free Exercise and Establishment Clause violations state viable claims for relief.
A. Plaintiff had sincere religious beliefs that conflicted with the vaccine work requirement. …………………………………………………………………...15
B. Defendants' Policies in evaluating religious accommodation requests were not neutral or generally applicable……………………………………15
i. Defendants' policies are not neutral…………………………………...16
ii. Defendants' policies were not generally applicable……………………20
C. Defendant's Actions Fail the Strict Scrutiny Test……………………………..21

POINT IV……………………………………………………………………….. ..23
Plaintiff's NYCHRL failure to engage in a cooperative dialogue claim states a viable claim for relief.

CONCLUSION ……………………………………………………………………….. 25

## TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Ansbro v. Nigro*, No. 150230/2022, 2022 WL 3028607 (N.Y. Sup. Ct., July 25, 2022) ……… 24

*Bell Atlantic Corp. v. Twombly,* 550 U.S. 544 (2007) ……………………...……………..… 6, 18

*Chinchilla v. New York City Police Dep't,*

No. 23 CIV. 8986 (DEH), 2024 WL 3400526 (S.D.N.Y. July 12, 2024) ……….... …..….…9, 24

*Church of the Lukumi Babalu Aye, Inc.v. Hialeah*, 508 U.S. 520 (1993) ……...…..15, 16, 21, 23

*Doe v Bloomberg L.P.*, 36 NY3d 450 (2021) ………………………………...……...……... 7

*Eatman v. United Parcel Service*, 194 F. Sup.2d 256 (2002)……………………………....15

*Fulton v. City of Philadelphia*, 141 S. Ct. 1868 (2021) ……………………..……16, 21, 22, 23

*Goldman v Sol Goldman Invs. LLC*, 2022 US Dist LEXIS 175353 (SDNY Sep. 27, 2022) ….. 25

*Groff v. DeJoy*, 600 U.S. 447 (2023) ……………………………………………...…...... 12

*Heiden v NY City Health & Hosps. Corp.*,
2023 US Dist LEXIS 5583 (SDNY Jan. 11, 2023) …………………………………..…... 25

*Hosking v Mem. Sloan-Kettering Cancer Ctr.*, 186 AD3d 58 (1st Dept 2020) ……………..…. 13

*Jackson v. Mann*, 196 F.3d 316 (2d Cir. 1999)…………………………………………….....15

*Jacobsen v. New York City Health & Hospitals Corp.*, 22 N.Y.3d 824 (2014) ……….......... 13

*Kane v. De Blasio*, 19 F.4th 152 (2d Cir. 2021) …………..……………...…. 15, 16, 17, 21,22 23

*Mandala v. NTT Data, Inc.*, 975 F.3d 202, 208–09 (2d Cir. 2020) …………..………………... 6

*Matter of Mental Hygiene Legal Serv. v Daniels*, 33 NY3d 44 (NY 2019) ……………...…... 25

*McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184 (2d Cir.2007) …………………..……….. 6

*N.Y.C. Tr. Auth. v Exec. Dept., Div. of Human Rights*, 89 NY2d 79 (N.Y. 1996)…………. ….14

*New Yorkers for Religious Liberty, Inc. v. New York,*
No. 22-1801, 2024 WL 5319182 (2d Cir. Nov. 13, 2024) …………………………...……. 18, 19

*Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67 (2d Cir.1998) ……………………..... …….9

*Patrick v. LeFevre*, 745 F.2d 153, 157 (2d Cir. 1984)…………………………………...……15

*Rivicci v. New York City Fire Dep't, et. al.*, Index No. 85131/2022

*Rizzo v. New York City Dep't of Sanitation*,
No. 23-CV-7190 (JMF), 2024 WL 3274455 (S.D.N.Y. July 2, 2024) ……………..… ……..... 24

*Roman Cath. Diocese of Brooklyn v. Cuomo*, 592 U.S. 14 (2020) ……………………….. ……22

*Smith v. New York City Fire Dep't and City of New York*, Index No. 533033/2022……………..…24

*Sughrim v. New York*, 690 F. Supp. 3d 355 (S.D.N.Y. 2023) ………………………………. 20

*United States v. Seeger*, 380 U.S. 163 (1965)…………………………………………………15

*Vasquez v. City of New York*,
No. 22-CV-05068 (HG) (VMS), 2024 WL 1348702 (E.D.N.Y. Mar. 30, 2024) ……… ……….9

*Vasquez v. New York City Fire Dep't, et. al.*, Index no. 533122/2022…………………………..25

*Welsh v. United States*, 398 U.S. 333 (1970)……………………………………………….…15

**Statutes**

Fed.R.Civ.P. 12(b) ……………………………………………………………………......1

Fed.R. Civ.P.15(a)(1) …………………………………………………………………...1, 6

N.Y. Exec. Law § 296 ………………………………………………………... …...…7,9,10,12

N.Y.C. Admin. Code § 8-102………………………………………………………….... 25

N.Y.C. Admin. Code § 8-107 ………………………………………………. ……7,9,12,25

N.Y.C. Admin. Code § 8-130 ………………………………………………………….…... 7

Restoration Act § 1 ……………………………………………………………………….... 7

## PRELIMINARY STATEMENT

Plaintiff, Vincent Maiorino, respectfully submits this memorandum of law in opposition to Defendant's motion to dismiss the Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, which seeks dismissal of Plaintiff's claims under the Free Exercise Clause, the New York State Human Rights Law ("NYSHRL"), and the New York City Human Rights Law ("NYCHRL"). Plaintiff has timely filed an Amended Complaint as of right pursuant to Rule 15(a)(1), curing any alleged deficiencies in the initial pleading, Defendant's motion to dismiss is now moot and should be denied. In the alternative, Defendant's Motion to Dismiss fails because Plaintiff has presented plausible facts supporting viable claims under the Free Exercise Clause of the First Amendment, the New York State Human Rights Law ("NYSHRL"), and New York City Human Rights Law ("NYCHRL").

## STATEMENT OF FACTS

Plaintiff, Mr. Vincent Maiorino ("Plaintiff" or "Mr. Maiorino"), was employed as a Sanitation Worker by the New York City Department of Sanitation ("DSNY") from 2005 to 2021. Am. Compl.¶25-28. Plaintiff is a practicing Roman Catholic. Am. Compl.¶¶29–30. Plaintiff refuses all vaccinations, including the COVID-19 vaccine, based on his sincerely held Catholic beliefs, which compel him to follow his conscience as the voice of God. Am. Compl. ¶¶31–32. His objection to the COVID-19 vaccine is rooted in Catholic doctrine, particularly the primacy of conscience, which teaches that one must obey God as He speaks through the conscience. Am. Compl. ¶¶33–34.

In March 2020, the Governor of New York ordered the closure of "nonessential" businesses. Am. Compl.¶38. As an "essential worker," Mr. Maiorino worked in person throughout the COVID-19 pandemic for approximately two years. Am. Compl.¶39. On September 13, 2021,

the City implemented a policy requiring DSNY employees to either submit weekly negative COVID-19 PCR test results or provide proof of vaccination. Am. Compl.¶42. On October 20, 2021, the City's Health Commissioner issued an Order ("Vaccine Mandate") requiring all City workers to receive at least one dose of a COVID-19 vaccine by October 29, 2021. Am. Compl.¶43. The Order stated that it did not prohibit "any reasonable accommodation otherwise required by law" and explicitly allowed for medical or religious accommodations. Am. Compl.¶¶44, 47–48.

The Vaccine Mandate required employees seeking accommodations to submit requests to their agency's Equal Employment Opportunity Officer by October 27, 2021, and permitted appeals to the Citywide Reasonable Accommodation Appeals Panel if denied. Am. Compl.¶¶45–46. The City issued a written policy—"FAQ on New York City Employees Vaccine Mandate"—clarifying that accommodations could be based on sincerely held religious, moral, or ethical beliefs, but not on personal, political, or philosophical preferences. Am. Compl.¶¶50–52. The policy also allowed for weekly testing as an alternative to vaccination where accommodations were granted. Am. Compl.¶53. Medical accommodations were also available Am. Compl.¶¶54–56. The policy allowed employees with pending accommodation requests or appeals to continue working and testing weekly. Am. Compl.¶57. Due to staffing and administrative constraints, many DSNY employees were permitted to work unvaccinated for months; some were never placed on leave nor terminated. Am. Compl.¶¶58–59. DSNY separately issued its own administrative policy on the Vaccine Mandate ("DSNY COVID-19 Policy"), which required employees granted accommodations to submit weekly negative COVID-19 PCR test results. Am. Compl.¶60. Testing could be completed on-site or externally, and DSNY employees were entitled to up to three hours of excused leave weekly if on-site testing was unavailable. Am. Compl.¶¶61–62.

During the relevant period, Plaintiff was employed full-time and actively working for the City. Am. Compl.¶63. Plaintiff independently located the required form—titled "Affidavit of Vaccine Exemption on Religious Grounds For City Employees"—and completed it to the best of his ability. Am. Compl.¶¶68–69. In the affidavit, Plaintiff attested that the DSNY vaccination requirements violated his religious tenets and his constitutional rights under the First Amendment. Am. Compl.¶70. see Dfts Ex. A.

On or about November 4, 2021, Plaintiff submitted his formal request to DSNY for a religious accommodation, citing his sincerely held religious beliefs. Am. Compl.¶72. His application provided sufficient notice that his beliefs conflicted with the mandate and that he was requesting a reasonable accommodation. Am. Compl.¶73. On or about November 20, 2021, DSNY issued a pro forma denial letter, stating that Plaintiff's submission "has not sufficiently demonstrated" grounds for an exemption and that, he would be placed on Leave Without Pay ("LWOP") unless he submitted proof of vaccination. Am. Compl.¶74. The denial letter informed Plaintiff that he had three business days to appeal the decision, with a deadline of November 23, 2021. Am. Compl.¶75. It further advised that he must provide all documentation and choose one of two options for appeal submission. Am. Compl.¶76.

Rather than conducting an individualized assessment of the sincerity of each applicant's religious beliefs, Defendants relied on the generalized position of the Catholic Church's leadership to summarily reject requests from Catholic employees, including Plaintiff. Am. Compl.¶83-84. This approach resulted in the blanket denial of numerous legitimate religious claims, including Plaintiff's, solely because of their denominational affiliation, to wit, Catholic. ¶85 Defendants, including DSNY, also required employees, including Plaintiff, to submit a clergy letter in support of their religious accommodation requests. Am. Compl.¶86.

As stated in the denial, DSNY concluded that the information Plaintiff provided was insufficient to establish a basis for granting a religious exemption. Am. Compl.¶89. This determination was made without a meaningful individualized assessment. Am. Compl.¶90 DSNY denied Plaintiff's request on the grounds that, under the City's written policies and practices, religious objections to the COVID-19 vaccine by Catholics were dismissed as "personal preferences." Am. Compl.¶91. Defendants took the position that Catholics could not hold sincere religious beliefs contrary to the Pope's endorsement of the vaccine. Am. Compl.¶92.

DSNY did not communicate with Maiorino regarding his request for religious accommodation before issuing the denial. Am. Compl.¶98. DSNY did not find Plaintiff's religious beliefs to be insincere. Am. Compl.¶99. DSNY did not ask Plaintiff any questions about the sincerity of his religious beliefs. Am. Compl.¶100. DSNY denied his accommodation request without communicating with him at all. Am. Compl.¶101. DSNY unilaterally deemed further information could not change the outcome of an accommodation request and thus denied requests without any communication. Am. Compl.¶102 The denial Plaintiff received was a boilerplate letter sent to all other DSNY employees who were also denied religious accommodations. Am. Compl.¶103. DSNY had attorneys from their general law unit reviewing accommodation requests to the Vaccine Mandate. Am. Compl.¶104. DSNY failed to consider less restrictive measures that would stem the spread of COVID-19. Am. Compl.¶107. DSNY considered only weekly PCR testing as the sole potential accommodation for Plaintiff. ¶108. DSNY did not try to accommodate Plaintiff in any other way. Am. Compl.¶109. DSNY did not explore any other options. Am. Compl.¶110. DSNY then ruled out weekly PCR testing without reason, despite granting this same accommodation to hundreds of other similarly situated employees. Am. Compl.¶111

Plaintiff timely appealed. Am. Compl.¶112. While he was still working, in order to meet the tight deadline, Plaintiff submitted a letter in support of his appeal by email articulating his religious beliefs and how they conflict with the vaccine requirement. Am. Compl. ¶ 114.

Despite his timely appeal, and without a final decision on his appeal pending before the Citywide Panel, Maiorino was placed on LWOP on or about November 28, 2021. Am. Compl.¶115 Following his placement on LWOP, and while off duty, Maiorino supplemented his pending appeal by submitting a comprehensive written statement further articulating the nature and basis of his sincerely held religious beliefs and how they directly conflicted with compliance with the Vaccine Mandate. Am. Compl.¶116 In his supplemental appeal submission, Maiorino described in detail he is a devout Catholic. Am. Compl.¶117, 121. Maiorino explained that his Catholic faith teaches that the human body is a temple of God, and that as a believer he is called to maintain the purity, sanctity, and holiness of his body, including abstaining from all vaccinations. Am. Compl.¶118, 121. He cited specific Scripture passages supporting his belief that injecting vaccines, which he asserts contain or were developed using unclean substances—including, in his view, fetal cell lines derived from abortions—is a direct violation of God's commandments and the sanctity of life, both of which are core tenets of his faith. Maiorino also expressed a deeply held pro-life religious belief that life begins at conception, and that abortion constitutes murder in violation of the Sixth Commandment. Am. Compl.¶119. He further expressed that participating in or benefiting from any product derived from abortion, including certain COVID-19 vaccines, would violate his conscience and religious convictions. Am. Compl.¶119. Maiorino emphasized that his refusal to receive the COVID-19 vaccine was not based on political or philosophical views, but rather on a sincere and personal religious obligation to obey God's commandments, maintain the sanctity of his body and blood, and abstain from participating in what he views as the sin of abortion. Am.

Compl.¶120, 121; see Dfts Ex. D. On February 11, 2022, the City terminated Maiorino over a temporary mandate which ended on February 9, 2023 Am. Compl. ¶ 14.

## STANDARD OF LAW

In deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the allegations in the Complaint are accepted as true, and all reasonable inferences must be drawn in the Plaintiff's favor. *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir.2007). The Court should not dismiss the Complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544 (2007). A plaintiff is not required "to plead a *prima facie* case", but to "assert [enough] nonconclusory factual matter ... to nudge [her] claim[ ] across the line from conceivable to plausible to proceed." *Mandala v. NTT Data, Inc.*, 975 F.3d 202, 208–09 (2d Cir. 2020).

## ARGUMENT

### POINT I: PLAINTIFF'S TIMELY AMENDMENT AS OF RIGHT UNDER RULE 15(a)(1) RENDERS DEFENDANT'S MOTION TO DISMISS MOOT

Federal Rule of Civil Procedure 15(a)(1) provides that a party may amend its pleading once as a matter of course within: "21 days after serving it, or if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier."

Here, Plaintiff amended the Complaint within 21 days of Defendant's Rule 12(b)(6) motion. As a result, the Amended Complaint supersedes the original Complaint in all respects. See *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994).

Accordingly, because Plaintiff timely amended its Complaint in accordance with Rule 15(a)(1), and because the Amended Complaint now governs this action, Defendant's motion to dismiss the original Complaint should be denied as moot.

**POINT II: PLAINTIFF'S CLAIMS FOR FAILURE TO ACCOMMODATE PURSUANT TO NYCHRL AND NYSHRL STATE VIABLE CLAIMS FOR RELIEF.**

Under the NYSHRL, it is unlawful for an employer to impose conditions of employment requiring an employee to violate their sincerely held religious practices, unless the employer can demonstrate, after "a bona fide effort", that accommodation would cause undue hardship. N.Y. Exec. Law § 296(10)(a). Similarly, the NYCHRL prohibits employers from imposing terms that require employees to violate their religious beliefs and mandates reasonable accommodations for religious practices. N.Y.C. Admin. Code § 8–107(3)(a).

Historically, the standards for recovery under the NYSHRL mirrored Title VII. However, a 2019 amendment to the NYSHRL directs courts to construe it liberally to achieve its remedial purposes, irrespective of how comparable federal laws have been interpreted. N.Y. Exec. Law § 300. This amendment aligns the NYSHRL more closely with the NYCHRL, which contains a similarly broad construction mandate. N.Y.C. Admin. Code § 8-130(a).

The NYCHRL imposes "substantially broader" liability on employers than its state counterpart. *Doe v Bloomberg L.P.*, 36 NY3d 450, 462 (2021). Federal and state laws with similar wording serve as "a floor", not a ceiling, for interpreting the NYCHRL. Local Civil Rights Restoration Act of 2005, §1. The NYCHRL commands that "exceptions and exemptions…shall be construed narrowly in order to maximize deterrence of discriminatory conduct". Admin. Code § 8-130 (b).

**A. Plaintiff has properly pleaded that he has sincerely held religious beliefs that conflict with the vaccine mandate.**

Vincent Maiorino asserts that his sincerely held Roman Catholic beliefs conflict with his employer's COVID-19 vaccine mandate. Am. Compl. ¶117-19, 114. Maiorino believes he is religiously obligated to decline all vaccines including those developed or tested using cell lines

derived from abortions, which he considers sinful. Am. Compl. ¶117-19, 114. He emphasizes that Catholic doctrine holds that individuals must not be compelled to act against their conscience, especially in matters of faith. Am. Compl. ¶114.

Plaintiff holds sincere and deeply rooted Catholic religious beliefs that compel him to treat his body as a temple of the Holy Spirit, to preserve the sanctity of his blood, and to abstain from introducing impure or morally tainted substances (i.e., the COVID vaccine) into his body. Am. Compl. ¶120. Based on scriptural mandates and the teachings of his faith, Plaintiff believes that vaccines—including the COVID-19 vaccines—are unclean, defile the body, and are inextricably linked to abortion through the use of fetal cell lines in their development, testing, or production. Am. Compl. ¶121. As such, receiving a vaccine would violate Plaintiff's conscience, constitute complicity in abortion, and place his soul in jeopardy. His objection is grounded in his pro-life religious convictions and the biblical commandment against murder, as well as the moral duty to follow the dictates of his conscience in obedience to God's law. Am. Compl. ¶121.

In accordance with his sincerely held Catholic faith, Plaintiff believes he must refrain from any action that contributes to the destruction of human life or that defiles the body, which he regards as a temple of the Holy Spirit. Am. Compl. ¶121. Citing James 4:17, Plaintiff contends that to knowingly comply with what he views as an immoral abomination—such as receiving a vaccine developed or tested using aborted fetal cell lines—would constitute sin. Am. Compl. ¶121. He believes that compliance would jeopardize his salvation and eternal life with God. Am. Compl. ¶121. Accordingly, Plaintiff exercises his religious duty to follow his conscience, live in accordance with God's commandments, and reject man-made vaccines, for which he is ultimately accountable before his Creator. Am. Compl. ¶121.

**B. <u>Plaintiff has properly pleaded that he suffered an adverse employment action.</u>**

The City Defendants' attempt to argue that Plaintiff has not met his burden because he was terminated for his failure to comply with the vaccine requirement and not because of his religious belief is unavailing. As courts in this Circuit have explained, a plaintiff's complaint that his defendant-employer suspended his without pay (Am. Compl. ¶ 115) and ultimately terminated his employment (Am. Compl. ¶ 14) because he did not take the required COVID-19 vaccine due to conflicting sincerely held religious beliefs is "sufficient to plead the final element of the *prima facie* case of religious discrimination for failure to accommodate." *Jackson v. N.Y. State Off. of Mental Health*, No. 23-cv-04164 (JMA), 2024 WL 1908533, at *6 (E.D.N.Y. May 1, 2024) (quoting *Algarin*, 678 F. Supp. 3d at 509); *see also Haczynska v. Mount Sinai Health Sys., Inc.*, 738 F.Supp.3d 300, 321 (E.D.N.Y. 2024) (same).

**C. <u>Defendants' undue hardship arguments are premature, and Defendants cannot meet its burden of proof of undue hardship in any event.</u>**

Both the NYCHRL and the NYSHRL place the burden of proof to show undue hardship on the employer. N.Y.C. Admin. Code § 8-107(3)(b); N.Y. Executive Law § 296(10)(a). Accordingly, dismissal on that ground is proper only if Defendants show some obvious bar to securing relief on the "face of the complaint". *Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 74 (2d Cir.1998). Courts in the Southern and Eastern Districts of New York have consistently denied the City's motions to dismiss failure-to-accommodate claims related to the Vaccine Mandate. *Chinchilla v. New York City Police Dep't*, No. 23 CIV. 8986 (DEH), 2024 WL 3400526, at *10 (S.D.N.Y. July 12, 2024) (denying dismissal where complaint alleged NYPD allowed other employees to test and mask, showing feasibility of accommodation); *Vasquez v. City of New York*, No. 22-CV-05068 (HG) (VMS), 2024 WL 1348702, at *7 (E.D.N.Y. Mar. 30, 2024) (rejecting undue hardship argument where reasonable accommodations were required, and the City failed to show plaintiff could not perform duties safely with accommodation).

In *Rizzo v. New York City Dep't of Sanitation*, No. 23-CV-7190 (JMF), 2024 WL 3274455, at *3 (S.D.N.Y. July 2, 2024), the court denied the City's motion to dismiss based on undue hardship, holding that such an affirmative defense can only be resolved at the pleading stage if the facts clearly establish it on the face of the complaint. The court found that DSNY's own mandate allowed for reasonable accommodations, and DSNY had granted similar accommodations to other employees, including permitting the plaintiff sanitation worker to work with weekly PCR testing while his exemption request was pending. *Id.* The same is true here.

Defendants cannot meet their burden of proving undue hardship. Undue hardship is defined as "an accommodation requiring significant expense or difficulty (including a significant interference with the safe or efficient operation of the workplace or a violation of a bona fide seniority system)". Admin. Code § 8-107(3)(b); N.Y. Executive Law § 296(10)(d).

i. **<u>The Defendants Cannot Demonstrate Undue Hardship</u>**

This policy explicitly provides that testing does <u>not</u> cause an undue hardship to the Defendants the reasonable accommodation would be submission of a weekly negative test result. Compl ¶ 53. DSNY grant religious accommodations to 314 DSNY employees. Am. Compl. ¶254. Many of these 314 DSNY employees who were granted religious accommodations were Sanitation Workers, with the same job duties as the Plaintiff. Am. Compl. ¶255. The Citywide Panel overturned DSNY denials of religious accommodations for 29 DSNY employees. Am. Compl. ¶ 256. All of the DSNY employees who were granted religious accommodations were granted an accommodation of the submission of a weekly negative PCR test. Am. Compl. ¶ 257. The DSNY employees who were granted religious accommodations were permitted to continue working in person in their same job position, performing the same job duties. Am. Compl. ¶ 258. The City, through DCAS and the Law Department, instructed DSNY that weekly testing could *not* be

considered an undue hardship for DSNY employees. Am. Compl. ¶ 259. Additionally, the City's written policies on the Vaccine Mandate identified weekly testing as the accommodation for the vaccine mandate. Am. Compl. ¶260. These policies also stated that weekly testing could not create an undue hardship. Am. Compl. ¶261. No DSNY employees were denied religious accommodations based on undue hardship. Am. Compl. ¶262. As a matter of fact, according to the DSNY Director of the Office of Equity, Inclusion and Diversity, DSNY advised all reviewers of reasonable accommodation requests to the Vaccine Mandate not even to consider undue hardship when considering requests. Am. Compl. ¶263 As long as an employee could satisfy the City's criteria for a religious accommodation, that employee received an accommodation of weekly testing. Am. Compl. ¶264. Additionally, DSNY permitted hundreds of employees to continue working for months after the Vaccine Mandate went into effect while their accommodation requests and appeals were pending. Am. Compl. ¶265 These employees were permitted to keep working while submitting weekly PCR testing. Am. Compl. ¶266 Plaintiff himself was permitted to continue working in person while his accommodation request was pending. Am. Compl. ¶267. This was a Citywide policy, and thousands of City employees were permitted to keep working after the Vaccine Mandate went into effect while their accommodation requests and appeals were pending. Am. Compl. ¶268. Even 1,176 active-duty firefighters (who slept in the firehouse, fought fires, and responded to medical emergencies) were permitted to continue working while their accommodation requests and appeals were pending. Am. Compl. ¶269. DSNY also promulgated its Policy and Administrative Procedure 2021-03 regarding the Vaccine Mandate ("DSNY COVID-19 Policy"). The DSNY COVID-19 Policy stated that DSNY employees who were granted reasonable accommodations would have to submit proof of a weekly negative COVID-19 PCR test result. Employees could utilize on-site testing at DSNY locations or seek weekly tests

elsewhere. In the event DSNY did not provide or ceased to provide on-site testing at DSNY locations, accommodated employees were eligible for up to three hours per week of excused leave for the purpose of receiving a weekly COVID-19 PCR test. Am. Compl. ¶ 270

Significantly, Defendants do not deny the allegations in the Complaint that other DSNY (or even FDNY) employees were provided religious accommodations. Instead, Defendants claim that Maiorino has not provided specific enough information regarding these other employees, such as their names, civil service titles, units, etc. Def. Mem. of Law, p. 18-9. But Defendants bear the burden of proof with regard to undue hardship, not Maiorino. N.Y.C. Admin. Code § 8-107(3)(b); N.Y. Executive Law § 296(10)(a). And Defendants can produce said information in discovery.

Defendants cannot demonstrate undue hardship on the face of the complaint, where "courts must apply the [undue hardship] test in a manner that takes into account all relevant factors in the case at hand, including the particular accommodations at issue and their practical impact in light of the nature, size and operating cost of an employer." *Groff v. DeJoy*, 143 S. Ct. 2279, 2295 (2023)[1] (internal quotations omitted). And while "the number of individuals who will need the particular accommodation" is *one factor* to be considered in determining whether the accommodation constitutes an undue *economic* hardship", NYC Admin. Code § 8-107(3)(b)(ii), N.Y. Exec. Law § 296 (10(d)(1)(ii), Defendants never articulate how the number of requests would have any *economic* impact on the agency. Nor do Defendants consider the other required factors, identifying what the cost of the accommodation is and considering the degree to which the geographic separateness of the employer's facilities affects undue hardship. NYC Admin. Code § 8-107(3)(b) (i) and (iii); N.Y. Exec. Law § 296 (10(d)(1)(i) and (iii).

---

[1] *Groff* is a Title VII action, however, "interpretations of New York state or federal statutes with similar wording may be used to aid in interpretation of the [NYCHRL], viewing similarly worded provisions of federal and state civil rights laws as *a floor below which the [NYCHRL] cannot fall*…" Local Law No. 85 [2005] of City of NY § 1.

Defendants, despite bearing the burden, provided no evidence regarding the cumulative impact of accommodations on the DSNY. Their vague reference to statutory factors fails to explain how multiple requests would create undue hardship, whether economically or in terms of safety. Any alleged safety concerns would still require an assessment of Maiorino's specific circumstances, such as how many accommodation requests came from sanitation workers like him or from his specific work location, as required under the geographic separateness factor. If their concern was safety (which is unknown since they cite to the *economic* undue hardship factor without explaining what it means), then they would have had to rely on some type of scientific evidence or public health guidelines that accommodating a certain number of unvaccinated people tipped the balance as to safety[2], which they obviously did not do. They did not provide any explanation, let alone any evidence in the record, as to what the alleged cumulative burden on the employer actually was.

Under both the NYCHRL and NYSHRL, the employer must "demonstrate that it responded to the employee's request *for a particular accommodation*" and address "the feasibility of that accommodation prior to terminating his employment." *Jacobsen v. New York City Health & Hospitals Corp.*, 22 N.Y.3d 824, 827 (2014) (emphasis added). "[E]mployers (and courts) must make a clear, fact-specific inquiry about each individual's circumstance." *Hosking v Mem. Sloan-Kettering Cancer Ctr.*, 186 AD3d 58, 63 (1st Dept 2020). Here, Maiorino was already undergoing the accommodation that DSNY deemed would <u>not</u> be an undue hardship. Compl ¶ 267

Significantly, Defendants fail to address why they could not accommodate Maiorino with

[2] If undue hardship is alleged based on a safety concern, "the employer must make an individualized assessment, based on reasonable judgment that relies on current medical knowledge or on the best available objective information to ascertain: the nature, duration and severity of the risk; the probability that the potential injury will actually occur, and whether reasonable accommodations, such as modification of policies, practices or procedures, will mitigate the risk." 9 CRR-NY 466.11. None of which are addressed by Defendants.

testing, or any other accommodation. "[T]he NYCHRL presumes all accommodations to be reasonable until proven otherwise". *LeBlanc v. United Parcel Serv.*, No. 11-cv-6983 (KPF), 2014 WL 1407706 at *18 (S.D.N.Y. 2014).

In *N.Y.C. Tr. Auth. v Exec. Dept., Div. of Human Rights*, the Court of Appeals held that Transit Authority violated the NYSHRL by failing to accommodate an employee's religious beliefs where there was no showing by Transit that "a genuine search for reasonable alternatives was undertaken." 89 NY2d 79, 90 (N.Y. 1996). Therefore, it didn't meet its burden of proving undue hardship. *Id.* at 90. Here, Defendants cannot and do not address reasonable alternatives, and thus cannot meet its burden either.

**POINT III: PLAINTIFF'S FIRST AMENDMENT CAUSES OF ACTION FOR FREE EXERCISE VIOLATION STATE VIABLE CLAIMS FOR RELIEF.**

Plaintiff specifically pleads a violation of the Free Exercise Clause of the First Amendment not based on the COVID-19 vaccine mandate itself, but on the standards, policies, and procedures ("policies") employed by the Department of Sanitation ("DSNY") and the Citywide Panel (collectively "Defendants") in evaluating religious accommodation requests. Am. Compl. ¶¶ 49, 50, 51, 52, 77, 78, 81-94.

Plaintiff's Amended Complaint alleges that these procedures imposed unconstitutional burdens on his sincerely held religious beliefs by requiring him to meet improper criteria, subjecting his faith to governmental scrutiny, and penalizing him for maintaining religious convictions that were deemed "personal" or not institutionally endorsed. Am. Compl. ¶¶ 51-52, 74, 78, 81-88, 91-94, 96, 133-141, 143-144, 156-157, 165-185, 187-189, 197-200, 202-203, 206, 209, 221-223, 227-232, 438, 454, 459.

Plaintiff's claim challenges the discriminatory policies and processes that Defendants used when evaluating religious accommodation requests. Specifically, Defendants' actions were based

on improper substantive theological criteria whereby the Defendants evaluated the *content* and accuracy of Plaintiff's religious beliefs instead of the correct inquiry – determining whether his beliefs were sincere and religious. *Eatman v. United Parcel Service*, 194 F. Sup.2d 256 (2002) citing *Patrick v. LeFevre*, 745 F.2d 153, 157 (2d Cir. 1984) (quoting *United States v. Seeger,* 380 U.S. 163 (1965); *Welsh v. United States,* 398 U.S. 333 (1970); *Jackson v. Mann*, 196 F.3d 316 (2d Cir. 1999).

Accordingly, the Defendants' actions as pleaded in Plaintiff's amended complaint clearly demonstrate that there was a constitutional violation because the First Amendment protects the right to religious exercise without requiring individuals to conform their beliefs to the tenets of an established religious organization. *Kane v. De Blasio*, 19 F.4th 152, 169 (2d Cir. 2021).

**A. Plaintiff has sincere religious beliefs that conflicted with the vaccine mandate.**

*See* Part II (A) above.

**B. Defendants' Policies in evaluating religious accommodation requests were not neutral or generally applicable.**

Although the Second Circuit has held that the vaccine mandate is facially neutral and generally applicable (*We the Patriots USA, Inc. v. Hochul*, 17 F.4th 266 (2d Cir. 2021)), Plaintiff does not challenge the mandate in the abstract. Rather, Plaintiff's amended complaint pleads that Defendants *implemented and applied policies* that are not neutral or generally applicable. Defendants' policies evaluated the validity and legitimacy of plaintiff's religious beliefs, which the Constitution does not permit. See *Church of the Lukumi Babalu Aye, Inc. v. Hialeah*, 508 U.S. 520 (1993); *Masterpiece Cakeshop, Ltd. v. Colorado Civil Rights Commission*, 138 S. Ct. 1719 (2018). The government is prohibited from scrutinizing or making determinations about the truth or doctrinal consistency of religious beliefs. The government cannot demand that an individual's beliefs conform to a specific religious institution or doctrine. The Government fails to act neutrally

when it proceeds in a manner intolerant of religious beliefs or restricts practices because of their religious nature. *Fulton v. City of Philadelphia*, 141 S. Ct. 1868, 1887 (2021) (citing *Masterpiece Cakeshop, Ltd. v. Colorado Civil Rights Comm'n*, 138 S.Ct. 1719, 1730–1732 (2018); *Lukumi*, 508 U.S. at 533). In the similar case, *Kane v. De Blasio*, the Second Circuit specifically found the policies that the City of New York used in deciding religious accommodation requests to the vaccine mandate were neither generally applicable nor neutral and did not survive strict scrutiny, violating the First Amendment. *Kane v. De Blasio,* at 169.

**i. <u>Defendants' polices are not neutral.</u>**

The Defendants' policies governing religious accommodation requests imposed a substantial burden on Plaintiff's religious exercise by conditioning continued employment on the Plaintiff's agreement with institutional religious authorities—such as the Pope- and thereby denying religious accommodations based on their status as a Catholic. Am. Compl. ¶¶ 81-85, 92-93, 137, 141, 143-147, 156- 157, 187-189, 197, 202, 206, 209, 221, 230-232, 438, 454, 459. — or by requiring documentation from clergy, regardless of whether Plaintiff's beliefs required affiliation with an organized religious hierarchy. Am. Compl. ¶¶ 78, 86-88, 94, 96, 438, 454. Furthermore, Defendants' policies discredited applicant's beliefs that did not align with the tenets and precepts of a recognized religion as not being religious by pretextually labeling them "personal," "idiosyncratic," or not shared by others in order for Defendants to justify a denial. Am. Compl. ¶¶ 51-52, 74, 91, 133-141, 148, 150-165, 191-192, 203, 222-223, 229, 231-232. Additionally, Defendants rejected as a matter of course religious accommodations based on fetal cell lines because the defendants disagreed with that belief, questioned the accuracy of that belief and deemed that personal and not religious. Am. Compl. ¶¶ 166-185, 190, 198-200, 203, 210-218, 227-28.

Rather than assessing whether Plaintiff's beliefs were sincerely held, the Defendants scrutinized the content, orthodoxy, and external verification of those beliefs, thereby inserting themselves into theological judgment and religious inquiry in a manner prohibited by the First Amendment. Am. Compl. ¶¶ 90, 196. Defendants' policies converted the religious accommodation process into a theological interrogation, whereby Plaintiff was denied an accommodation unless he could demonstrate doctrinal consistency with major religious authorities, a standard foreign to First Amendment jurisprudence and inconsistent with the law's protections.

In the case at hand, Defendants' standards were not neutral or generally applicable. Instead of respecting the sincerity of Plaintiff's belief, Defendants subjected him to doctrinal tests, demanding that his beliefs align with a prescribed religious standard or official religious leadership. By doing so, Defendants engaged in precisely the kind of governmental interference that the First Amendment prohibits—evaluating religious beliefs based on external religious authorities, not accepting the sincerity of personal beliefs as adequate for religious accommodation.

Plaintiff's First Amendment claims challenge the discriminatory policies Defendants used as applied to Plaintiff's religious accommodation request. Maiorano alleges specific discriminatory practices, including Defendants' policies of rejecting beliefs deemed too personal Am. Compl. ¶¶ 51-52, 74, 91, 133-141, 148, 150-165, 191-192, 203, 222-223, 229-232 or not explicitly mandated by an applicant's religious sect. Am. Compl. ¶¶ 81-85, 92-93, 137, 141-147, 156-157, 187-189, 197, 202, 206, 209, 221, 230-232, 438, 454, 459. Maiorino articulated in his religious accommodation request and appeal that his religious beliefs conflict with Covid-19 vaccine requirement and that his rejection of the Covid-19 vaccine stems from his sincerely held religious beliefs rooted in his informed conscience. Am. Compl. ¶114.

Despite these sincere and well-articulated beliefs, Defendants refused to accept the validity of Maiorino's individual interpretation of his religious creed, denied his request because his religion did not explicitly mandate refusal of the vaccine, and refused to acknowledge a "conflict" where Maiorino's religion did not explicitly prohibit vaccination. Am. Compl. ¶¶ 74-129. Maiorino emphasized that his conscience requires him to refuse a medical intervention, including a vaccination, if his informed conscience comes to the sure judgment and believes he has a religious obligation to refuse the vaccination that is produced by using human cell lines derived from direct abortions. Am. Compl. ¶114. Maiorino further believes that an individual's conscience in these matters is to be respected because he is required to obey the judgment of conscience even if it is objectively in error. Compl ¶¶ 114, 121.

As the Second Circuit recognized in *Fifth Avenue Presbyterian Church v. City of New York*, 293 F.3d 570 (2d Cir. 2002), governmental policies that burden religious exercise, even indirectly, must satisfy strict scrutiny where neutrality and general applicability are lacking. The alleged policies challenged here are precisely such policies: they were selectively enforced, lacked uniform standards, and targeted applicants based on the perceived legitimacy of their religious practices in violation of the Free Exercise Clause. Under *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." Maiorino has met this standard. He alleges that Defendants' religious accommodation process substantially burdened his ability to freely exercise his faith by subjecting him to doctrinal tests and penalizing him for not adhering to institutional positions that he, in good conscience, could not accept.

In *New Yorkers for Religious Liberty, Inc. v. New York*, No. 22-1801, 2024 WL 5319182, at *10-11 (2d Cir. Nov. 13, 2024), the Second Circuit overturned a district court's dismissal of a

teacher's First Amendment claims under similar circumstances. The plaintiff, Heather Clark, alleged that the Citywide Panel denied her religious accommodation request by characterizing her belief—guidance from the Holy Spirit—as idiosyncratic and thus not sufficiently religious in nature. *Id.* The Second Circuit found that these allegations plausibly stated a claim, reasoning that the denial based on the alleged idiosyncrasy of Clark's beliefs raised a constitutional issue. *Id.* at *11. The court further emphasized that such characterizations, if true, violate the First Amendment because they improperly dismiss religious beliefs as personal or individualized rather than aligned with the tenets of an established organized religion. *Id.* Any contrary district court decisions have been overruled by *New Yorkers for Religious Liberty*.

Similarly, the Second Circuit found in *New Yorkers for Religious Liberty* that another plaintiff, Solon, adequately pleaded a First Amendment violation. Solon alleged that she was denied a religious exemption under standards that rejected accommodations for beliefs deemed "merely personal" rather than tied to an established religious organization. *Id.* at *10. The court concluded that such policies, if applied as alleged, could present a First Amendment problem, as they improperly dismissed individualized religious practices as illegitimate. *Id.* This further reinforces that Defendants' practices as alleged in the Complaint here—rejecting Maiorino's beliefs as too personal—plausibly violate the Free Exercise.

Maiorino has adequately pleaded his First Amendment claim. As with plaintiffs Clark and Solon in *New Yorkers for Religious Liberty*, here, Maiorino has plausibly plead that Defendants applied the same discriminatory policies, including rejecting religious beliefs deemed too personal or insufficiently connected to religious doctrine. Like Clark, Maiorino's accommodation request was rooted in a deeply held religious belief—his conscience—which was dismissed under Defendants' policy as not sufficiently religious. The Second Circuit has explicitly recognized that

such policies and practices plausibly violate the First Amendment, especially at the motion-to-dismiss stage. *See also Sughrim v. New York*, 690 F. Supp. 3d 355, 374 (S.D.N.Y. 2023) (government employer's practice of denying accommodation request based on its own assessment as to whether the religious conduct is a "requirement of an applicant's faith" "plainly runs afoul of the First Amendment").

**ii. <u>Defendants' policies were not generally applicable.</u>**

Defendants' policies for evaluating religious accommodation requests were not generally applicable, as demonstrated by the numerous accommodations granted and the inconsistent enforcement of the policies. Thousands of unvaccinated individuals continued working across various City agencies pursuant to masking and testing accommodations. Am. Compl. ¶¶ 58, 59, 254-257, 268. Additionally, DSNY employees who were granted religious accommodations were permitted to continue working in person in their existing positions, performing the same duties, subject only to weekly testing requirements. (*See* Am. Compl. ¶¶ 258, 264, 265 270.

Moreover, DSNY allowed hundreds of unvaccinated employees to continue working for months after the vaccine mandate went into effect, while their initial accommodation requests and subsequent appeals were still pending. Am. Compl. ¶ 265. Many of these DSNY employees continued to work unvaccinated until the mandate was lifted. Am. Compl. ¶ 59. These employees were permitted to remain in the workplace so long as they submitted to weekly PCR testing. Am. Compl. ¶ 266. Plaintiff himself continued working in person during the pendency of his accommodation request and part of his appeal. Am. Compl. ¶ 267. This was not unique to DSNY; rather, it reflected a Citywide policy under which thousands of municipal employees were permitted to remain on duty after the mandate took effect while their accommodation requests and appeals were pending. Am. Compl. ¶ 268. For example, 1,176 active-duty firefighters—who lived

in firehouses, fought fires, and responded to medical emergencies—were allowed to continue working under the same circumstances. Am. Compl. ¶ 269

These practices were consistent with the City's publicly issued FAQs, which expressly stated that employees could continue working while their accommodation requests and appeals were under review. Am. Compl. ¶ 57. Additionally, Defendants granted religious accommodations to at least 314 DSNY employees with the same job duties as Plaintiff. Am. Compl. ¶¶ 254–255 and provided further exemptions to DSNY employees with medical conditions that precluded vaccination. These broad exceptions render the Defendants' policies not generally applicable under *Lukumi* and *Fulton* further demonstrating that the Defendants' asserted interest in a uniformly vaccinated workforce was neither compelling nor consistently applied.

C. **Defendant's Actions Fail the Strict Scrutiny Test**

Defendants burdened Maiorino's religious exercise through policies lacking neutrality and general applicability, Defendants' denial of Maiorino's religious exemption is subject to strict scrutiny. *Kane v. De Blasio*, supra; *Lukumi* at 543; and *Fulton v. City of Philadelphia*, supra. Neutrality and general applicability are distinct concepts, and therefore challenged conduct could fail the separate test of general application even if it satisfied the neutrality criteria. *Lukumi*, at 542.

The Second Circuit found the policies the City used in deciding religious accommodation requests to the Vaccine Mandate were neither generally applicable nor neutral, and did not "survive strict scrutiny". *Kane v. De Blasio*, supra. In *Kane*, the court held that the Vaccine Mandate itself "on its face" was neutral and generally applicable, but not so as applied to the plaintiffs who were denied religious accommodations under procedures that "violated the First Amendment as applied to these Plaintiffs". *Id.* at 166-68.

Strict scrutiny requires the government proceed in a narrowly tailored manner to serve the government interests. *Kane v. De Blasio, supra. "*Put another way, so long as the government can achieve its interests in a manner that does not burden religion, it must do so.*" Fulton*, 141 S. Ct. at 1881. The government must demonstrate that the policy is narrowly tailored to achieve a compelling interest and is the least restrictive means of doing so. See *Roman Catholic Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63, 67 (2020). Here, Maiorino worked for months during the vaccine mandate while testing and hundreds of other Sanitation Workers were accommodated without undermining public safety Am. Compl. ¶¶ 267, 270.

Furthermore, Defendants have not affirmatively established that their asserted interest—namely, protecting public health and safety—constitutes a compelling governmental interest sufficient to override Plaintiff's First Amendment rights where there are least restrictive means available. Defendants' own conduct undermines its claim. Specifically, after the implementation of the vaccine mandate, Defendants permitted numerous employees to continue working en masse while their religious accommodation requests and appeals were pending. Am. Compl. ¶¶ 265–270. Thousands of employees, including DSNY workers, were granted religious accommodations and allowed to remain in their positions without vaccination, provided they complied with masking and weekly testing protocols. Am. Compl. ¶¶ 254–255, 258, 264. Again, many of these employees worked unvaccinated up until the vaccine mandate was lifted. Am. Compl. ¶ 59.

These policies demonstrate that the City did not treat vaccination as absolutely necessary to serve its stated interest. Defendants cannot show "that public health would be imperiled if less restrictive measures were imposed". *Roman Cath. Diocese,* at 19. The availability and implementation of masking and testing protocols as an alternative to vaccination further confirm that a less restrictive, narrowly tailored means existed to achieve the City's public health

objectives. This dovetails with the factual allegations in the Amended Complaint, where Plaintiff and other similarly situated employees were allowed to work without vaccination under these very alternatives. Furthermore, the defendant failed to explore additional least restrictive means. Compl ¶ 482-483. Defendants' standards, policies, and procedures were not narrowly tailored because less restrictive means, such as regular PCR testing, masking, social distancing, and remote work accommodations were feasible, previously available, and constitutionally required before infringing upon First Amendment rights. Am. Compl. ¶ 450.

Thus, Defendants' imposition on Plaintiff to "vaccinate-or-terminate", despite the availability of effective, less restrictive measures, which was permitted for others, fails the strict scrutiny standard. The City cannot claim its interest was so compelling as to justify burdening religious exercise, while simultaneously permitting thousands of unvaccinated employees to remain on duty through masking and testing. *Lukumi supra*; *Fulton v. City of Philadelphia*, supra.

Particularly, where they are implementing those less restrictive measures for others. Defendants "cannot survive strict scrutiny because denying religious accommodations based on the criteria outlined in the Accommodation Standards, such as whether an applicant can produce a letter from a religious official, is not narrowly tailored to serve the government's interest in preventing the spread of COVID-19." *Kane v. De Blasio*, at 169 (2d Cir. 2021). In short, the masking and testing protocol constituted a feasible, narrowly tailored alternative that would have achieved the City's purported interest in public health while preserving Plaintiff's constitutional rights.

**POINT IV: PLAINTIFF'S NYCHRL FAILURE TO ENGAGE IN A COOPERATIVE DIALOGUE CLAIM STATES A VIABLE CLAIM FOR RELIEF.**

As stated in detail above, Maiorino has demonstrated bona fide sincere religious beliefs that conflict with the vaccine requirement. Nonetheless, Defendants' claim that they engaged in a

cooperative dialogue by "notif[ying] Maiorino of the City's accommodation and appeals process", Def. Mem. of Law, p. 21, contradicts the NYCHRL's clear language. The "record clearly indicates that respondents' administration of the accommodation requests proceeded without any cooperative dialogue." *Ansbro v. Nigro*, No. 150230/2022, 2022 WL 3028607, at *3 (N.Y. Sup. Ct., July 25, 2022) (holding agency failed to engage in cooperative dialogue which was a "necessary statutory requirement relating to reasonable accommodations").

Notably, the only correspondence that Maiorino received was a boilerplate denial from DSNY, Am. Compl. ¶ 74 and an appeal denial, stating "Does Not Meet Criteria". Am. Compl. ¶ 237. In another DSNY case, the Southern District of New York recently denied the City's motion to dismiss a cooperative dialogue claim where, like Maiorino, the Citywide Panel rejected his appeal with a conclusory statement that he "[did] not meet criteria." *Rizzo v. New York City Dep't of Sanitation*, No. 23-CV-7190 (JMF), 2024 WL 3274455, at *4 (S.D.N.Y. July 2, 2024). This is completely distinguishable from *Chinchilla*, where that plaintiff was an NYPD employee who was provided specific individual reasons for her denial, which she was permitted to respond to. *Chinchilla v. New York City Police Dep't*, No. 23 CIV. 8986 (DEH), 2024 WL 3400526, at *12 (S.D.N.Y. July 12, 2024).

"There was no cooperative dialogue and no options given to the [Plaintiff] as to how to maintain [his] position, while not contradicting [his] sincerely held religious beliefs. A cooperative dialogue is not a suggestion. It is required by law." *Rivicci v. New York City Fire Dep't, et. al.*, Index No. 85131/2022, NYSCEF Doc. No 54, p. 7 (Richmond Cnty, N.Y. Sup. Ct, 2022) (FDNY's failure to engage in cooperative dialogue with FDNY firefighter violated the NYCHRL); *Smith v. New York City Fire Dept.*, Index No. 533033/2022, NYSCEF Doc No. 55 (Kings Cnty, NY Sup.

Ct., July 12, 2023) (same); *Vasquez v. New York City Fire Dept.*, No. 533122/2022, 2023 WL 3681674, at *1 (Kings Cnty, N.Y. Sup. Ct., May 10, 2023) (same).

"The statutory text is the clearest indicator of legislative intent and the words should be given their natural and obvious meaning." *Matter of Mental Hygiene Legal Serv. v Daniels*, 33 NY3d 44, 67 (NY 2019). Cooperative dialogue is unambiguously defined in the NYCHRL as a "good faith in a written or oral dialogue concerning the person's accommodation needs; potential accommodations that may address the person's accommodation needs, including alternatives to a requested accommodation; and the difficulties that such potential accommodations may pose for the covered entity." N.Y.C. Admin. Code § 8-102. It is undisputed that none of this information was discussed with Maiorino. And NYCHRL explicitly requires a cooperative dialogue *before* any denial can be made. N.Y.C. Admin. Code § 8-107 (28)(e). Here, all Maiorino received was a denial. Defendants' conduct does not satisfy their obligation under NYCHRL. *Goldman v Sol Goldman Invs. LLC*, 2022 US Dist LEXIS 175353, at *12-13 (SDNY Sep. 27, 2022) (finding no cooperative dialogue where Defendants failed to address Plaintiff's specific accommodation needs, relying instead on general COVID-19 measures, and did not discuss alternative accommodations); *Heiden v NY City Health & Hosps. Corp.*, 2023 US Dist LEXIS 5583, at *111 (SDNY Jan. 11, 2023) (finding no cooperative dialogue where interactions were limited to Plaintiff's request submission, form submissions, and notification of denial, with no discussion of his disability, potential accommodations, or challenges for the employer).

**CONCLUSION**

Defendants' motion to dismiss should be denied.

Dated: Staten Island, New York
April 11, 2025

BY: *Jeannette Poyerd-Loiacono, Esq.*
**MARTINEZ & LOIACONO, PLLC**
245 Bricktown Way, Suite J
Staten Island NY 10309, 347-215-4543
***Attorneys for Plaintiff***