UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

VINCENT MAIORINO,

                    Plaintiff,

          v.


NEW YORK CITY DEPARTMENT OF SANITATION
AND CITY OF NEW YORK,

                    Defendants.


# PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE FIRST AMENDED COMPLAINT


MARTINEZ & LOIACONO, PLLC.
*Attorneys for Plaintiff*
245 Bricktown Way, Suite J
Staten Island NY 10309
T: (347) 215-4543
E-mail: Jmpoyerd@yahoo.com

<h1 style="text-align:center">TABLE OF CONTENTS</h1>

**Page(s)**

TABLE OF AUTHORITIES …………………………………………………………ii, iii, iv,v

PRELIMINARY STATEMENT …………………………………………………...…...……1

STATEMENT OF FACTS …………………………………………………..……...……....1

STANDARD OF LAW ……………………………………………………………….………4

ARGUMENT …………………………………………………………………….…........5

POINT I: PLAINTIFF PLEADS VIABLE NYSHRL AND NYCHRL CLAIMS………........5

    A.  Plaintiff Plausibly Pleaded a Sincere Religious Belief That Conflicts
        With the Vaccine Mandate and Provided Adequate Notice to Defendants………........6

    B.  Plaintiff properly pleaded an adverse employment action……………………………..9

    C.  Defendants' Undue Hardship Arguments Are Premature, and Defendants
        Cannot Meet its Burden of Proof of Undue Hardship……………………………......10

POINT II: PLAINTIFF'S FIRST AMENDMENT FREE EXERCISE
CLAIM  IS VIABLE…………………………………………………………………….13

    A.  Defendants' Policies in Evaluating Religious Accommodation Requests
        Were Not Neutral…………………………………………………………………..13

    B.  Defendants' Policies Were Not Generally Applicable……………………...……...19

    C.  Defendant's Actions Fail the Strict Scrutiny Test…………………………….....21

POINT III:  PLAINTIFF'S NYCHRL FAILURE TO ENGAGE IN A COOPERATIVE
DIALOGUE CLAIM IS VIABLE……………………………………………………23

POINT IV: THE FAC IS COMPLIANT WITH FRCP 8…………………………….....24

CONCLUSION …………………………………………………………………..25

# TABLE OF AUTHORITIES

**Cases**                                                                                                      **Page(s)**

*Algarin v. NYC Health & Hosp. Corp*, 678 F. Supp. 3d 497 (S.D.N.Y. 2023)......................10

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).....................................................................5

*Bacon v. Woodward*, 104 F.4th 744, 752 (9th Cir. 2024)...............................................20

*Baker v. Home Depot*, 445 F.3d 541 (2d Cir. 2006) .......................................................6

*Bell Atlantic Corp. v. Twombly,* 550 U.S. 544 (2007) ....................................................5

*Bergin v. N.Y. State Unified Ct. Sys.*, 2024 WL 4444434, at *3 (E.D.N.Y. Oct. 8, 2024)..........8

*Bowles v. New York City Transit Auth.*, 285F. App'x 812 (2d Cir. 2008)..........................10

*Brown v. Polk Cnty., Iowa*, 61 F.3d 650, 654 (8th Cir. 1995)..........................................7

*Burson v. Freeman*, 504 U.S. 191, 200 (1992)............................................................. 21

*Chinchilla v. New York City Police Dep't,*
No. 23 CIV. 8986 (DEH), 2024 WL 3400526 (S.D.N.Y. July 12, 2024) ..............  ........7,11,21

*Church of the Lukumi Babalu Aye, Inc.v. Hialeah*, 508 U.S. 520 (1993) ...........................19

*City of Boerne v. Flores*, 521 US. 507 (1997)..............................................................21

*Doe v Bloomberg L.P.*, 36 NY3d 450 (2021) ............................................................... 5

*Doe v. San Diego Unified Sch. Dist.*, 19 F.4th 1173, (9th Cir. 2021)..................................8

*Doolittle v. Bloomberg L.P.,* 2023 WL 7151718, at *7 (S.D.N.Y. Oct. 31, 2023)...................6

*Dr. A v. Hochul*, 142 S. Ct. 552 (2021)..........................................................,.....17

*Employment Div., Dept. of Human Resources of Oregon v. Smith*, 494 U.S. 872, 884 (1990)....19

*Ferrelli v. State of N.Y. Unified Court Sys.*, 2022 WL 673863 (N.D.N.Y., Mar. 7, 2022).........17

*Fulton v. City of Philadelphia*, 141 S. Ct. 1868 (2021) .................................................19

*Gardner-Alfred v. Fed. Rsrv. Bank of N.Y.*, 143 F.4th 51 (2d Cir. 2025)....................8,9,18

*Giunta v. Dingman*, 893 F.3d 73, 79 (2d Cir. 2018)......................................................5

*Goldman v Sol Goldman Invs. LLC*, 2022 WL 4482296 (S.D.N.Y .Sep. 27, 2022) …………... 24

*Groff v. DeJoy*, 600 U.S. 447  (2023) ………………………………………...…....... 12

*Haczynska v. Mount Sinai Health Sys., Inc.*, 738 F.Supp.3d 300 (E.D.N.Y. 2024)……………..10

*Heiden v NY City Health & Hosps. Corp.*, 2023 WL 171888 (SDNY Jan. 11, 2023) ………... 24

*Hickey v. State Univ. of N.Y. at Stony Brook Hosp.*,
2012 WL 3064170, at \*7 (E.D.N.Y. July 27, 2012)…………………………………………………7

*In re Parmalat Sec. Litig.*, 375 F.Supp.2d 278(S.D.N.Y. 2005)…………..…………………..25

*Jackson v. N.Y. State Off. of Mental Health*, 2024 WL 1908533 (E.D.N.Y. May 1, 2024)...… .10

*Jacobsen v. New York City Health & Hospitals Corp.*, 22 N.Y.3d 824  (2014) ………......12,13,23

*Kane v. De Blasio*, 19 F.4th 152 (2d Cir. 2021) …………..……………….. ….16,17,19,20,21,22

*Keene v. City & Cnty. of San Francisco*, 2023 WL 3451687  (9th Cir. May 15, 2023)…………17

*Lang v. Clinton,* 761 F.Supp.3d 595 (W.D.N.Y. Dec. 30, 2024 ) ...……………………..……25

*Loeffler v. Staten Island Univ. Hosp.*, 582 F.3d 268, 278 (2d Cir. 2009)…………………………6

*Mandala v. United Parcel Serv.*,
No. 11-cv-6983 (KPF), 2014 WL 1407706 at \*18 (S.D.N.Y. 2014)…. …………………………..13

*Masterpiece Cakeshop, Ltd. v. Colorado Civil Rights Commission*, 138 S. Ct. 1719 (2018)..14,15

*Matter of Mental Hygiene Legal Serv v Daniels*, 33 NY3d 44 (NY 2019) …………….…..…... 24

*McCarthy v. Dun & Bradstreet Corp.,* 482 F.3d 184 (2d Cir.2007) …………………..……….4,5

*Mihalik v. Credit Agricole Cheuvreux N. Am, Inc.*, 715 F.3d 102 (2d Cir. 2013)…...………….. 6

*N.Y.C. Tr. Auth. v Exec. Dept., Div. of Human Rights*, 89 NY2d 79 (N.Y. 1996)…………. ….13

*New Yorkers for Religious Liberty, Inc. v. New York*,
No. 22-1801, 2024 WL 5319182 (2d Cir. Nov. 13, 2024) ………………………..… …...17,19

*Ong v. Park Manor*, 51 F.Supp.3d 319 (S.D.N.Y. 2014)……….………………………. ...24,25

*Pani v. Empire Blue Cross Blue Shield,* 152 F.3d 67 (2d Cir.1998) ………………….... ..10,11

*Ringhofer v. Mayo Clinic, Ambulance*, 102 F.4th 894 (8th Cir. 2024)…………………………17

*Rivoli Operating Corp. v. Loew's Inc.*, 7 F.R.D. 219 (1947)……………………...……….25

*Rizzo v. New York City Dep't of Sanitation*,
No. 23-CV-7190 (JMF), 2024 WL 3274455 (S.D.N.Y. July 2, 2024) ……………..10,11,18,24

*Roberto's Fruit Market v. Schaffer,* 13 F.Supp.2d 390 (1998)…………………………………..25

*Roman Cath. Diocese of Brooklyn v. Cuomo*, 592 U.S. 14 (2020) ………………………... ...13,21

*Salahuddin v. Cuomo*, 861 F.2d 40 (2d Cir.1988)…………..…………………………………...25

*Sughrim v. New York*, 690 F. Supp. 3d 355 (S.D.N.Y. 2023) ………………………………… 16

*Tandom v. Newsom,* 593 U.S. 61, 64 (2021)…………………………………………………..21

*Thomas v. Review Bd.*, 450 U.S. 707 (1981)…………………………………………………...8

*Together Emps. v. Mass Gen. Brigham Inc.*, 19 F.4th 1 (1st Cir. 2021…………………………17

*United States v. Seeger*, 380 U.S. 163 (1965)…………………………………………………8

*U.S. Navy Seals 1-26 v. Biden*, 27 F.4th 336 (5th Cir. 2022)…………...…………………17,20

*Vasquez v. City of New York*,
No. 22-CV-05068 (HG) (VMS), 2024 WL 1348702 (E.D.N.Y. Mar. 30, 2024) ……… ……….11

*Vasquez v. City of New York*,
No. 22-CV-05068 (HG), 2025 WL 1560105 (E.D.N.Y. June 2, 2025)………………………..8,10

*Warner Bros. Ent. Inc. v. Ideal World Direct* 516 F.Supp.2d 261 (SDNY 2007)…….…………25

*We the Patriots USA, Inc. v. Hochul*, 17 F.4th 266 (2d Cir. 2021)………………….…..…..17

*Whiteside v. Hover-Davis, Inc.*, 995 F.3d 315, 323 (2d Cir. 2021)………………………………5

*Wynder v. McMahon*, 360 F.3d 73 (2d Cir. 2004)…………………………...………………25

*Zelnick v. Fashion Inst. Tech.*, 464 F.3d 217  (2d Cir. 2006)…………………………………..9

**Statutes**

**Federal Rules**

Fed. R. Civ. P. 12(b)(6)…………………………………………………………....1,4,18

**New York Executive Law**

N.Y. Executive Law § 296(10)(a)…………………..……………………………...…5,10,11

**New York City Administrative Code**

NYC Admin. Code § 8-107(3)(b)……………………………………………..…….. 10,11

N.Y.C. Admin. Code § 8-107 (28)………………..………………………………......23

N.Y.C. Admin. Code § 8-107 (28)(e)…………………..………………………………...24

Restoration Act § 1 …………………………………………………………………....... 6

## PRELIMINARY STATEMENT

Plaintiff, Vincent Maiorino ("Plaintiff"), respectfully submits this memorandum of law in opposition to Defendants' motion to dismiss the First Amended Complaint ("FAC") pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Defendants seek dismissal of Plaintiff's claims under the Free Exercise Clause of the First Amendment, the New York State Human Rights Law ("NYSHRL"), and the New York City Human Rights Law ("NYCHRL"). Defendants' motion fails because Plaintiff has alleged plausible, well-supported facts—not mere conclusory statements—establishing viable claims under the Free Exercise Clause, NYSHRL, and NYCHRL, and the FAC satisfies the pleading requirements of Rule 8.

## STATEMENT OF FACTS

Maiorino was employed as a Sanitation Worker by the New York City Department of Sanitation ("DSNY") from 2005 to 2021. FAC ¶¶25–28. He is a practicing Roman Catholic who received all of the Catholic sacraments, including Baptism, Penance, Communion, Confirmation, and Holy Matrimony. FAC ¶¶29-30. He refuses all vaccinations based on his sincerely held Catholic religious beliefs, and specifically objects to the COVID-19 vaccines as a violation of his conscience. FAC ¶¶ 31–32. Plaintiff's objection is rooted in Catholic doctrine, which recognizes conscience as the voice of God speaking to the individual soul and commands the faithful to follow it. FAC ¶¶ 33–34. The Catechism of the Catholic Church expressly teaches that conscience is a divine law inscribed on the human heart, obligating each person to avoid evil. FAC ¶ 35. Plaintiff believes that conscience is not a matter of personal preference but a binding tenet of Catholic doctrine. FAC ¶ 36. Maiorino also believes that the use of abortion-derived fetal cell lines in the development of COVID-19 vaccines violates God's commandments and the sanctity of life, and that benefitting from these vaccines would violate his conscience. FAC ¶ 119.

In March 2020, New York's Governor ordered closure of "nonessential" businesses; as an essential worker, Maiorino continued in-person work throughout the pandemic for approximately two years. FAC ¶¶38–39. On October 20, 2021, the Health Commissioner issued a mandate requiring all City employees to receive at least one dose of a COVID-19 vaccine by October 29, 2021 (hereafter "Vaccine Mandate"). FAC ¶43. The Vaccine Mandate allowed medical and religious accommodations, which employees could request through their agency's Equal Employment Opportunity ("EEO") Officer. FAC ¶¶44–45. The City's written policies limited accommodations to sincerely held religious, moral, or ethical beliefs—not personal, political, or philosophical objections. FAC ¶¶50–52. The policy permitted weekly testing as an alternative to vaccination for employees granted religious or medical accommodations that would not cause an undue hardship. FAC ¶¶53–56. Employees with pending accommodation requests or appeals were allowed to continue working while submitting weekly COVID tests. FAC ¶57. Many City Workers (including DSNY employees) worked unvaccinated for months, with some never placed on leave or terminated due to staffing and administrative concerns. FAC ¶¶58–59. DSNY issued its own COVID-19 Policy requiring accommodated employees to submit weekly negative PCR tests, either on-site or externally, with up to three hours of excused leave weekly if on-site testing was unavailable. FAC ¶¶60–62.

While actively working, on November 4, 2021, Maiorino applied for a religious accommodation and despite receiving no guidance or instructions from his employer, he independently located and completed an "Affidavit of Vaccine Exemption on Religious Grounds for City Employees," attesting that the vaccination requirements violated his religious beliefs, and notifying the DSNY of the same. FAC ¶¶63–70, 72-73. On or about November 20, 2021, DSNY denied the request, stating the submission "has not sufficiently demonstrated" grounds for

exemption and that Maiorino would be placed on Leave Without Pay ("LWOP") unless vaccinated. FAC ¶74. The denial letter informed Maiorino of his right to appeal. FAC ¶¶75–76. DSNY did not communicate with Maiorino regarding his request. FAC ¶ 98. DSNY failed to consider less restrictive alternatives to vaccination, exploring only weekly PCR testing—which it rejected without explanation, despite approving it for hundreds of similarly situated employees. FAC ¶¶107–111, 254-258. Due to the denial, Maiorino was placed on LWOP on or about November 28, 2021. FAC ¶115.

Plaintiff timely appealed to the Citywide Panel, made up of a panel of three decision-makers, one each from the Law Department, the Department of Citywide Administrative Services ("DCAS"), and the Commission of Human Rights. FAC ¶112, 123-129. In support of his appeal, Plaintiff submitted a written statement describing how his objection to the COVID-19 vaccine was rooted in his sincerely held Roman Catholic beliefs. FAC ¶ 114. He explained that, according to Catholic doctrine, individuals have a duty to obey the judgment of a well-formed conscience, even if it differs from institutional guidance. FAC ¶ 114. He cited the Church's teaching that Catholics may be required to refuse vaccines developed or tested using cell lines derived from abortion and emphasized that the use of such vaccines is permissible only in limited, case-specific circumstances. FAC ¶ 114. He also explained that he is required to obey his conscience and respectfully requested that his religious beliefs be honored. FAC ¶ 114. While off duty, he supplemented his appeal with a brief from his attorney explaining the law, as well as a personal statement from him further detailing his beliefs. FAC ¶116; *see* ECF Doc 40-4. Maiorino expounded precisely how the COVID-19 vaccines violate various tenets of his Catholic faith. FAC ¶ 121; *see* ECF Doc 40-4, p 41-53. He explained that his faith teaches the body is a temple of God, that he must keep his temple clean and pure, and that he must preserve the sanctity of his blood.

He explained that he believes various vaccines – developed with aborted fetal cells, viruses, animal cells, foreign DNA, etc. – would defile his body and taint his blood. FAC ¶ 121. He further explained his deeply held belief that abortion is murder and that life begins at conception. FAC ¶ 121. Because the COVID-19 vaccines were produced using cell lines derived from aborted fetuses, he explained that receiving the vaccine would violate the sanctity of human life and the Sixth Commandment. FAC ¶ 121. In his view, accepting the vaccine would constitute participation in, and benefit from, abortion—something his faith prohibits. FAC ¶ 121.

Plaintiff further explained that his objection to the COVID-19 vaccine is grounded in Catholic doctrine which teaches that conscience is the voice of God speaking to the individual soul. FAC ¶ 121. He described his conscience as a sacred moral compass, guided by the Holy Spirit, through which God reveals His will. FAC ¶ 121. Plaintiff believes that accepting a vaccine connected to abortion would violate God's commandments and that his conscience compels him to abstain. FAC ¶ 121. He expressed that knowingly acting against this divine directive would be a sin, jeopardizing his relationship with God and subjecting him to divine judgment. FAC ¶ 121. He considers his obedience to conscience not a matter of personal preference, but a binding religious obligation rooted in his faith. FAC ¶ 121.

On January 4, 2022, the Citywide Panel, tasked with reviewing agency denials, denied Maiorino's accommodation request, without any communication with him. FAC ¶¶123, 236-238. The City then terminated him on February 11, 2022. FAC ¶250. On February 9, 2023, the Vaccine Mandate was lifted. FAC ¶252.

## STANDARD OF LAW

In reviewing a Rule 12(b)(6) motion, the court must accept all factual allegations as true and draw all reasonable inferences in the plaintiff's favor. *McCarthy v. Dun & Bradstreet Corp.*,

482 F.3d 184, 191 (2d Cir. 2007); *Giunta v. Dingman*, 893 F.3d 73, 79 (2d Cir. 2018). Dismissal is improper if the complaint states "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible when it includes "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). This "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Id. at 678 (quoting *Twombly*, 550 U.S. at 555). "For a plaintiff to nudge [his] claim across the line from conceivable to plausible, [he] must raise a reasonable expectation that discovery will reveal evidence of the wrongdoing alleged, even if it strikes a savvy judge that actual proof of those facts is improbable." *Whiteside v. Hover-Davis, Inc.*, 995 F.3d 315, 323 (2d Cir. 2021) (internal quotations and citations omitted).

## ARGUMENT

## I.     PLAINTIFF PLEADS VIABLE NYSHRL AND NYCHRL CLAIMS

Under the NYSHRL, it is unlawful for an employer to impose conditions of employment requiring an employee to violate their sincerely held religious practices, unless the employer can demonstrate, after "a bona fide effort", that accommodation would cause undue hardship. N.Y. Exec. Law § 296(10)(a). Similarly, the NYCHRL prohibits employers from imposing terms that require employees to violate their religious beliefs and mandates reasonable accommodations for religious practices. N.Y.C. Admin. Code § 8–107(3)(a). The NYCHRL imposes "substantially broader" liability on employers than its state counterpart. *Doe v Bloomberg L.P.*, 36 NY3d 450, 462 (2021). Historically, the standards for recovery under the NYSHRL mirrored Title VII. However, a 2019 amendment to the NYSHRL directs courts to construe it liberally to achieve its remedial purposes, irrespective of how comparable federal laws have been interpreted. N.Y. Exec.

Law § 300; *Doolittle v. Bloomberg L.P.,* 2023 WL 7151718, at *7 (S.D.N.Y. Oct. 31, 2023). This amendment aligns the NYSHRL more closely with the NYCHRL, which contains a similarly liberal construction mandate. N.Y.C. Admin. Code § 8-130(a).

Federal and state laws with similar wording serve as "a floor", not a ceiling, for interpreting the NYCHRL. Local Civil Rights Restoration Act of 2005, §1; *Loeffler v. Staten Island Univ. Hosp.*, 582 F.3d 268, 278 (2d Cir. 2009) ("claims under the City HRL must be reviewed independently from" and "more liberally" than their federal counterparts). The NYCHRL commands that "exceptions and exemptions…shall be construed narrowly in order to maximize deterrence of discriminatory conduct". Admin. Code § 8-130 (b).

To make out a *prima facie* case for failure to accommodate, an employee must show: (1) a sincerely held belief conflicting with an employment requirement, (2) notice to the employer, and (3) an adverse employment action for failing to meet the conflicting requirement. *Baker v. Home Depot*, 445 F.3d 541 (2d Cir. 2006) (NYSHRL); *Mihalik v. Credit Agricole Cheuvreux N. Am, Inc.*, 715 F.3d 102, 110 (2d Cir. 2013) (NYCHRL). Plaintiff clearly pleads each element.

### A. <u>Plaintiff Plausibly Pleaded a Sincere Religious Belief That Conflicts With the Vaccine Mandate and Provided Adequate Notice to Defendants.</u>

The City does not challenge Plaintiff's sincerity; rather, it argues that Plaintiff gave no indication to the Defendants that his rejection of the COVID-19 vaccines "has anything to do with a religious belief, nor that he did, in fact, refuse other such 'medical products'". Def. Mem. of Law, p.17. But Plaintiff's objection to the vaccine is religious in nature and protected by the Free Exercise Clause, NYSHRL, and NYCHRL. Maiorino asserts sincerely held Roman Catholic beliefs that conflict with the employer's vaccine mandate. FAC. ¶¶114, 117–19. He contends that his faith requires him to decline all vaccines developed or tested using cell lines derived from abortions, which he deems sinful. FAC ¶¶114, 117–19.

Defendants' argument that Maiorino's submissions did not indicate a religious basis for his refusal of the COVID-19 vaccine is patently absurd and directly contraindicated by the allegations in the FAC. FAC ¶¶121, 114, 70. Plaintiff notified Defendants that he holds sincere, deeply rooted Catholic beliefs compelling him to treat his body as a temple of the Holy Spirit, preserve the sanctity of his blood, and abstain from introducing impure or religiously tainted substances— namely, the COVID-19 vaccine. FAC ¶120. Based on scripture and Catholic doctrine, Plaintiff explained to the Defendants in his accommodation request submissions that he believes vaccines violate various tenets of his faith because they defile the body, taint the blood, and, for the COVID-19 vaccines, constitute complicity in abortion because they are connected to abortion through fetal cell lines used in their development, testing, or production. FAC ¶121. Additionally, he explained that receiving the vaccine would violate his conscience, which he believes is the voice of God speaking to him. FAC ¶121. He also explained that he considers obedience to his conscience a religious obligation, as it reflects God's law, and believes that disobeying it would endanger his soul, and therefore that receiving the COVID-19 vaccine would jeopardize his salvation and eternal life. FAC ¶121.

"An employer need have 'only enough information about an employee's religious needs to permit the employer to understand the existence of a conflict between the employee's religious practices and the employer's job requirements.'" *Hickey v. State Univ. of N.Y. at Stony Brook Hosp.*, 2012 WL 3064170, at *7 (E.D.N.Y. July 27, 2012) (quoting *Brown v. Polk Cnty., Iowa*, 61 F.3d 650, 654 (8th Cir. 1995)); see *Chinchilla v. New York City Police Dep't*, No. 23 CIV. 8986 (DEH), 2024 WL 3400526 (S.D.N.Y. July 12, 2024) (finding NYPD officer's allegations sufficient to state a failure-to-accommodate claim at the motion to dismiss stage). Judge Gonzalez recently rejected the same argument the City makes here, finding "Defendants' characterization

[was] blatantly contradicted by the record", and granting summary judgment to the plaintiff on the notice prong. *Vasquez v. City of New York*, No. 22-CV-05068 (HG), 2025 WL 1560105, at *2-3 (E.D.N.Y. June 2, 2025); *see also Bergin v. N.Y. State Unified Ct. Sys.*, 2024 WL 4444434, at *3 (E.D.N.Y. Oct. 8, 2024) (granting summary judgment to plaintiff and holding plaintiff's religious accommodation request with a two-page statement sufficiently established notice of a conflict with the COVID-19 mandate). "It must be remembered that in resolving these exemption problems one deals with the beliefs of different individuals who will articulate them in a multitude of ways. In such an intensely personal area, of course, the claim of the registrant that his belief is an essential part of a religious faith must be given great weight." *United States v. Seeger*, 380 U.S. 163, 184 (1965). The government "should not undertake to dissect religious beliefs…because [they] are not articulated with the clarity and precision that a more sophisticated person might employ." *Thomas v. Review Bd.*, 450 U.S. 707, 715 (1981).

Defendants' argument that he failed to object to other medical products is not only incorrect (FAC ¶¶ 32, 121), but also improperly imposes a requirement not found in the law. There is no obligation to plead a religious objection beyond the work requirement at issue. Nor is any consistency test permissible. The Supreme Court has made clear that a religious belief "need not be acceptable, logical, consistent, or comprehensible to others" to merit protection. *Thomas*, 450 U.S. at 714. Even the sincerest practitioner may stray. *Gardner-Alfred v. Fed. Rsrv. Bank of N.Y.*, 143 F.4th 51, 64 (2d Cir. 2025).

And contrary to Defendants' suggestion, the Second Circuit did not uphold the employer's denial of a religious exemption on the ground that the plaintiff submitted "stock language." Def. Mem. of Law, p. 18. In fact, the court reversed summary judgment as to one of the plaintiffs, Diaz—a practicing Catholic—who submitted a letter downloaded from a Catholic organization's

website after her own pastor declined to sign it. *Gardner-Alfred*, 143 F.4th at 64–65. The Second Circuit held that using a publicly available religious exemption template, even one not endorsed by a specific parish or diocese, is *not* disqualifying. *Id.* at 64–65. The court noted that Diaz's decision to persist in her request, and sign the template letter herself, despite her pastor's refusal to sign may actually *support* the sincerity of her belief. *Id.* at 64–65. The other plaintiff, Gardner-Alfred, by contrast, was not rejected for submitting a template document, but because her inconsistent and uncorroborated deposition testimony—particularly regarding her affiliation with the Temple of the Healing Spirit, which she claimed to be a member of for twenty years—undermined her credibility and sincerity. *Id.* at 69.

Like Diaz, Plaintiff is a practicing Catholic. While Defendants argue he submitted a template letter from the National Catholic Bioethics Center[1] (Def. Mem. of Law p. 18)—a respected authority on Catholic ethics—they ignore his accompanying personal statement detailing his specific religious objections and how each tenet conflicted with the Vaccine Mandate. FAC ¶¶ 114, 121; *see* ECF Doc 40-4. The claim that reliance on religious organization materials renders his request insincere is factually unsupported and was explicitly rejected in *Gardner-Alfred*.

B. **Plaintiff Properly Pleaded an Adverse Employment Action.**

Defendants' argument that Plaintiff was terminated solely for failing to comply with the vaccine mandate—and not because of his religious beliefs—is unavailing. Plaintiff was placed on unpaid leave and then terminated. FAC ¶¶ 114-115. This clearly satisfies the adverse employment action element of a *prima facie* case of religious discrimination for failure to accommodate. *Zelnick v. Fashion Inst. Tech.*, 464 F.3d 217, 225 (2d Cir. 2006) (termination qualifies as adverse

---

[1] https://www.ncbcenter.org/missiontoserve ("The Mission of The National Catholic Bioethics Center is to provide education, guidance, and resources to the Church and society to uphold the dignity of the human person in health care and biomedical research, thereby sharing in the ministry of Jesus Christ and his Church").

employment actions for purposes of Title VII claims); *Bowles v. New York City Transit Auth.*, 285 F. App'x 812, 813 (2d Cir. 2008) (discipline prong of failure to accommodate *prima facie* case satisfied by "adverse employment action" which includes "termination of employment"); *Jackson v. N.Y. State Off. of Mental Health*, No. 23-cv-04164 (JMA), 2024 WL 1908533, at *6 (E.D.N.Y. May 1, 2024) (quoting *Algarin v. NYC Health & Hosp. Corp*, 678 F. Supp. 3d 497 (S.D.N.Y. 2023); *see also Haczynska v. Mount Sinai Health Sys., Inc.*, 738 F.Supp.3d 300, 321 (E.D.N.Y. 2024). The adverse action followed directly from his refusal to violate his faith and was because the Defendants refused to accommodate his religious beliefs. FAC ¶¶ 303-305, 60.

The City's effort to reframe the denial and termination as non-disciplinary is frivolous and the district courts have consistently rejected the City's argument that terminating an employee who failed to comply with the Vaccine Mandate does not constitute discipline. Judge Gonzalez just *granted summary judgment* on the adverse employment action prong for a City Worker who was terminated after his request for a religious accommodation to the Vaccine Mandate was denied by the City. *Vasquez v. the City of New York*, No. 22-cv-05068, 2025 WL 1560105 at *3 (E.D.N.Y. June 2, 2025) Judge Gonzalez emphasized: "As Judge Furman has commented in rejecting this exact argument, the City's position is 'flat wrong'." *Id.* at *3 (citing *Rizzo v. N.Y.C. Dep't of Sanitation*, No. 23-cv-7190, 2024 WL 3274455, at *3 (S.D.N.Y. July 2, 2024).

## C. <u>Defendants' Undue Hardship Arguments Are Premature, and Defendants Cannot Meet its Burden of Proof of Undue Hardship.</u>

Both the NYCHRL and NYSHRL place the burden of proof to show undue hardship on the employer. N.Y.C. Admin. Code § 8-107(3)(b); N.Y. Executive Law § 296(10)(a). Accordingly, dismissal on that ground is proper only if Defendants show some obvious bar to securing relief on the "face of the complaint". *Pani v. Empire Blue Cross Blue Shield,* 152 F.3d 67, 74 (2d Cir.1998). Courts in the Southern and Eastern Districts of New York have consistently

denied the City's motions to dismiss failure-to-accommodate claims related to the Vaccine Mandate. *Chinchilla v. New York City Police Dep't*, No. 23 CIV. 8986 (DEH), 2024 WL 3400526, at *10 (S.D.N.Y. July 12, 2024) (denying dismissal where complaint alleged NYPD allowed other employees to test and mask, showing feasibility of accommodation); *Vasquez v. City of New York*, No. 22-CV-05068 (HG) (VMS), 2024 WL 1348702, at *7 (E.D.N.Y. Mar. 30, 2024) (rejecting undue hardship argument where reasonable accommodations were required, and the City failed to show plaintiff could not perform duties safely with accommodation). In *Rizzo v. New York City Dep't of Sanitation*, No. 23-CV-7190 (JMF), 2024 WL 3274455, at *3 (S.D.N.Y. July 2, 2024), the court denied the City's motion to dismiss based on undue hardship, holding that DSNY's own mandate allowed for reasonable accommodations, and DSNY had granted similar accommodations to other employees. *Id.* The same is true here.

The City cannot meet its burden of proving undue hardship because their policy explicitly provides that testing does *not* cause an undue hardship and the reasonable accommodation provided would be submission of a weekly negative test result. FAC ¶ 53. Defendants' claim that Plaintiff does not allege other DSNY employees received religious accommodations is simply false (Def. Mem. of Law, ECF Doc 39 at p. 28 of 32); in fact, Plaintiff pleaded that DSNY granted religious accommodations to 314 employees, many of whom were Sanitation Workers with the same job duties as Plaintiff[2]. FAC ¶¶254–255. The Citywide Panel overturned DSNY denials of religious accommodations for 29 employees. FAC ¶256. All granted accommodations were for the submission of weekly negative PCR tests in lieu of vaccination. FAC ¶257. These employees continued working in-person, performing the same duties. FAC ¶258. DCAS and the Law

---

[2] Significantly, Defendants do not dispute that other DSNY employees received religious accommodations. Instead, they argue Maiorino failed to provide specifics such as names, titles, and units. ECF Doc 39, Def. Mem of Law, at p. 28 of 32. However, *Defendants* bear the burden to prove undue hardship—not Maiorino. N.Y.C. Admin. Code § 8-107(3)(b); N.Y. Executive Law § 296(10)(a). And Defendants can produce this information through discovery.

Department instructed DSNY that weekly testing did *not* impose an undue hardship. FAC ¶259. The City's Vaccine Mandate policies identified weekly testing as the accommodation of choice and stated it could not create undue hardship. FAC ¶¶260–261. No DSNY employees were denied accommodations on undue hardship grounds. FAC ¶262. According to DSNY's Director of Equity, Inclusion, and Diversity, reviewers were advised not to consider undue hardship when evaluating requests. FAC ¶263. Employees meeting City criteria received accommodations of weekly testing. FAC ¶264. Hundreds of employees, including Plaintiff, continued working while accommodation requests and appeals were pending, submitting weekly PCR tests. FAC ¶¶265–267. This Citywide policy applied to thousands of employees, including 1,176 active-duty firefighters who worked while awaiting accommodation decisions. FAC ¶¶268–269. DSNY's COVID-19 Policy (Administrative Procedure 2021-03) required accommodated employees to submit weekly PCR test results, with on-site testing or excused leave of up to three hours weekly to obtain testing if on-site options ceased. FAC ¶270.

Defendants cannot demonstrate undue hardship on the face of the complaint, where "courts must apply the [undue hardship] test in a manner that takes into account all relevant factors in the case at hand, including the particular accommodations at issue and their practical impact in light of the nature, size and operating cost of any employer. *Groff v. DeJoy*, 143 S.Ct. 2279, 2295 (2023)[3](internal quotations omitted). Under both the NYCHRL and NYSHRL, the employer must "demonstrate that it responded to the employee's request *for a particular accommodation"* and address "the feasibility of that accommodation prior to terminating his employment." *Jacobsen v. New York City Health & Hospitals Corp.,* 22 N.Y.3d 824, 827 (2014) (emphasis added).

---

[3] *Groff* is a Title VII action, however, "interpretation fo New York state or federal statutes with similar wording may be used to aid in interpretation of the [NYCHRL], viewing similarly worded provisions of federal and state civil rights laws as a *floor below which the [NYCHRL] cannot fall…"* Local Law No. 85 [2005] of City of NY §1.

Significantly, Defendants fail to address why they could not accommodate Maiorino with testing, which was deemed sufficient for other Sanitation Workers. Or any other accommodation for that matter. "[T]he NYCHRL presumes all accommodations to be reasonable until proven otherwise." *Mandala v. United Parcel Serv.,* No. 11-cv-6983 (KPF), 2014 WL 1407706 at *18 (S.D.N.Y. 2014). In *N.Y.C. Tr. Auth. v. Exec. Dept. Div. of Human Rights,* the New York State Court of Appeals held that Transit Authority violated the NYSHRL by failing to accommodate an employee's religious beliefs where there was no showing by Transit that "a genuine search for reasonable alternatives was undertaken." 89 NY2d 79, 90 (N.Y. 1996). Therefore, it didn't meet its burden of proving undue hardship. *Id.* at 90. Here, Defendants cannot and do not address reasonable alternatives – including testing – although numerous alternatives were available (FAC ¶ 482), and thus cannot meet its burden either.

## II.    <u>PLAINTIFF'S FIRST AMENDMENT FREE EXERCISE CLAIM IS VIABLE</u>

"But even in a pandemic, the Constitution cannot be put away and forgotten."
*Roman Cath. Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63, 68 (2020).

Plaintiff pleads a violation of the Free Exercise Clause not based on the vaccine mandate itself, but on the standards, policies, and procedures ("policies") employed by DSNY and the Citywide Panel (collectively, "Defendants") in evaluating religious accommodation requests. Many of these policies were promulgated by the City through the Department of Citywide Administrative Services ("DCAS") and implemented across agencies. FAC ¶¶131-132.

### A.   <u>Defendants' Policies in Evaluating Religious Accommodation Requests Were Not Neutral.</u>

Plaintiff has more than adequately pleaded that Defendants' policies were not neutral. The FAC does not rely on conclusory assertions or abstract characterizations—it contains detailed factual allegations describing how the City implemented and enforced policies that facially discriminate

between religious beliefs based on their conformity to the official doctrine of organized religions. The City's policies refused to recognize religious beliefs that were personal in nature. FAC ¶¶ 135-148, 150-154. Under those policies, a Catholic who objected to the COVID-19 vaccine on religious grounds was deemed to hold merely a personal preference, because—according to the City—Catholicism did not *require* its adherents to refuse the vaccine. *Id.* In the City's view, any Catholic who declined vaccination was simply making a personal choice, not acting in accordance with a religious mandate. *Id.*

Specifically, Plaintiff alleges that under Defendants' written standards and internal procedures, any religious belief that did not align with the tenets of a recognized religion was automatically deemed "personal," "philosophical," or "political"—even where the belief was sincerely held and religious in character. FAC ¶¶ 135, 138–141. The policies presumed religious beliefs to be invalid unless they were "required" by an established faith, and Catholics who cited conscience-based objections to the COVID-19 vaccine were categorically denied accommodations on the grounds that their beliefs did not reflect the Pope's public position. FAC ¶¶ 142–146, 186–192. Defendants also had a policy to deny religious accommodation requests based on objections to the COVID-19 vaccine's connection to aborted fetal cell lines, deeming such beliefs "inaccurate" or insufficiently religious—particularly when held by Catholics, whose views were dismissed as personal because not all members of their faith shared them. FAC ¶¶ 180, 181, 190. Plaintiff further alleges that the Law Department explicitly instructed Citywide Panel members that objections to vaccines based on their development using aborted fetal cell lines did not qualify as sincerely held religious beliefs. FAC ¶¶184-185. In practice, Defendants approved requests from members of faiths like Christian Scientists and Jehovah's Witnesses, while categorically denying requests from Catholics like Plaintiff on the basis that vaccine refusal was not central to

Catholic doctrine. FAC ¶¶ 193–194. These are not generalized grievances—they are specific, plausible, and detailed allegations that, taken as true, more than satisfy Plaintiff's burden at the pleading stage to show that the City's policies were not neutral but rather discriminated among religious claims based on doctrinal conformity and denominational identity.

Plaintiff also pleaded specific examples demonstrating that Defendants applied these discriminatory policies in practice. For instance, Plaintiff alleges that the Law Department and DCAS circulated memoranda and gave direct instructions to agencies stating that objections based on fetal cell lines should be rejected, including one email asking for the source of the determination that fetal cells were not used in vaccine development—referencing the Law Department's guidance. FAC ¶¶ 167–176. In a circulated October 27, 2021 memorandum, DCAS concluded that the Pfizer, Moderna, and Johnson & Johnson vaccines were "morally and ethically just from a religious standpoint" based on statements from the Vatican and the U.S. Conferences of Catholic Bishops. FAC ¶¶ 168–171. Another email from DCAS advised agencies that objections based on fetal cell lines were "not based on factual information" and could be denied. FAC ¶ 172. Another e-mail from a Citywide Panel member even sought clarification on how to ever grant a religious exemption given that most applications were based on fetal cell line objections—which the Law Department had preemptively deemed non-religious. FAC ¶185. These policy directives were not theoretical—they were enforced against actual applicants. Plaintiff identifies various examples of Catholic employees whose accommodation requests were denied on the explicit ground that their belief about abortion and vaccines was not "part of the very religion" to which they claimed to belong. FAC ¶ 235 (City denied a Catholic police officer's request by invoking Pope Francis's public support of the vaccine and Vatican guidance to reject the Catholic officer's conscience-based objection as merely personal); FAC ¶164 (City rejected Catholic firefighter's abortion-based

objection as "an isolated moral position" because it was not a "comprehensive religious belief system"). These examples directly support Plaintiff's claim that the City's policies were neither neutral nor generally applicable, but selectively enforced based on religious hierarchy and doctrinal conformity. *See also* FAC ¶¶154-165.

Although the Second Circuit has held that the Vaccine Mandate is *facially* neutral and generally applicable, in the similar case, it specifically found that the *policies* used by the City of New York in deciding religious accommodation requests to the Mandate were neither generally applicable nor neutral and did not survive strict scrutiny, violating the First Amendment. *Kane v. De Blasio*, 19 F.4th 152, 169 (2d Cir. 2021). Here, DSNY's own written denial, received by Maiorino, explicitly applied the same "Stricken Standards" challenged in *Kane* as the standards to be used for DSNY appeals. *Id.* at 168. Specifically, Maiorino's denial letter stated:

> SAMS will only grant appeals based on religious exemptions if it is in writing by a religious official (e.g. clergy). Requests <u>shall be denied</u> where the leader of the religious organization has spoken publicly in favor of the vaccine, where the documentation is readily available (e.g., from an online source), or where the objection is personal, political or philosophical in nature. Exemption requests shall be considered for recognized and established religious organizations (e.g., Christian Scientists).

FAC ¶78(b). The Second Circuit struck down this exact policy because it improperly judged the validity of an applicant's beliefs based on institutional religious views. *Kane*, 19 F.4th at 168; *see also Sughrim v. New York*, 690 F. Supp. 3d 355, 374 (S.D.N.Y. 2023) (government employer's practice of denying accommodation request based on its own assessment as to whether the religious conduct is a "requirement of an applicant's faith" "plainly runs afoul of the First Amendment"). Yet, these standards were used by DSNY to adjudicate employee appeals. FAC ¶78. Significantly, the Law Department (the same entity who decided appeals for the Citywide Panel) would defend the DSNY in these arbitrations, arguing against the employee's right to an accommodation, and arguing in favor of the "Stricken Standards". FAC¶¶83, 87; *see also* ECF

Doc 40-2. These exact standards had already been held to *lack* neutrality *and* generally

applicability by the Second Circuit in *Kane v. DeBlasio* (and then again, later, in *New Yorkers for*

*Religious Liberty, Inc. v. New York*, No. 22-1801, 2024 WL 5319182, at *10–11 (2d Cir. Nov. 13,

2024) ("NYFRL")). Yet, the City nevertheless continued to apply them to its employees, including

Maiorino. FAC ¶96.

And the Law Department did not simply stop applying these unconstitutional standards when

deciding appeals on the Citywide Panel. Defendants' assertion in their motion to dismiss (drafted

by the same Law Department) that Plaintiff's opposition to the COVID-19 vaccine reflects a mere

"personal preference" (Defs.' MOL, p. 17) lays bare the very unconstitutional policies that Plaintiff

challenges in this action. While Defendants deny the existence of any such policy in their motion

to dismiss, they simultaneously apply it in black and white— dismissing Plaintiff's religious

objection to abortion-derived fetal cell lines as a mere "personal preference," despite Plaintiff

clearly and specifically explaining that his objection is rooted in Catholic doctrine regarding the

sanctity of life, the Sixth Commandment, and the defilement of the body and blood. FAC ¶¶ 121,

129. Defendants do not offer any explanation for reclassifying these deeply held religious beliefs

as "personal preferences". Nor could they.[4] As alleged in the FAC, this is precisely how the City

trained and instructed the Citywide Panel and agencies to evaluate religious accommodation

---

[4] Courts nationwide agree: a religious objection to abortion and to COVID-19 vaccines, developed with fetal cell lines, is both legitimate and legally cognizable. *Gardner-Alfred v. Federal Reserve Bank of N.Y.,* No. 23-7544 (2d Cir. July 2, 2025); *see also Keene v. City & Cnty. of San Francisco*, 2023 WL 3451687, at *2 (9th Cir. May 15, 2023) (reversing the district court and holding that its conclusion that plaintiff failed to demonstrate a religious conflict with the vaccine mandate was based on a factual error about fetal cell lines and a misunderstanding of the proper failure-to-accommodate inquiry); *Ringhofer v. Mayo Clinic, Ambulance*, 102 F.4th 894, 901 (8th Cir. 2024); *U.S. Navy Seals 1-26 v. Biden*, 27 F.4th 336, 342 n. 4 (5th Cir. 2022); *Does v. Mills*, 142 S. Ct. 17, 18-19 (2021, Gorsuch, J., dissenting); *Dr. A v. Hochul*, 142 S. Ct. 552, 553 (2021), Gorsuch, J., dissenting); *We the Patriots USA, Inc. v. Hochul*, 17 F.4th 266, 272-273 (2021), *opn clarified* 17 F.4th 368 (2d Cir. 2021); *Together Emps. v. Mass Gen. Brigham Inc.*, 19 F.4th 1, 4-6 (1st Cir. 2021); *Doe v. San Diego Unified Sch. Dist.*, 19 F.4th 1173, 1176 n.3 (9th Cir. 2021) ("We may not ... question the legitimacy of [Appellants'] religious beliefs regarding COVID-19 vaccinations."); *Kane v. de Blasio*, 575 F. Supp. 3d 435, 442 (S.D.N.Y. 2021); *Ferrelli v. State of N.Y. Unified Court Sys.*, 2022 WL 673863, *3 (N.D.N.Y., Mar. 7, 2022).

requests: if a belief was not required by official doctrine or widely shared within a faith tradition, it was automatically deemed personal, philosophical, or political, and therefore ineligible. FAC ¶¶ 135–146, 184–192.

Even the deposition testimony Defendants improperly cite[5] confirms Plaintiff's core allegation: that the City denied accommodations not based on sincerity, but on whether an applicant's objection was rooted in official religious doctrine rather than personal conscience. Citywide Panel member Eichenholtz testified that "there's no doubt that Mr. Rizzo is a practicing Catholic who holds sincerely held beliefs grounded in Catholicism" (ECF Doc 40-6, p. 15, Eichenholtz Dep. 30:17-21), but refused to accommodate Catholic Sanitation Worker Rizzo because Eichenholtz saw his religious objection as grounded in "his personal conscience" and "his personal choices," notwithstanding that it was "clearly… informed… by Catholic doctrine." ECF Doc 40-6, p. 20, Eichenholtz Dep. 51:4–52:10. This demonstrates the very doctrinal gatekeeping Plaintiff challenges here.

In *Gardner-Alfred*, the Second Circuit held that courts may not evaluate the objective accuracy of a plaintiff's religious beliefs—such as whether the COVID-19 vaccines were in fact developed using fetal cell lines—because the Free Exercise Clause protects sincerely held beliefs, not scientifically verifiable ones. 143 F.4th at 66–67. The City's policy of denying religious exemptions based on the view that abortion-based objections are "inaccurate" falls squarely into the same constitutional error, as it impermissibly evaluates the truth or correctness of a religious belief rather than its sincerity.

---

[5] Defendants improperly rely on extrinsic evidence in a Rule 12(b)(6) motion, namely, deposition testimony from a different case. It is black-letter law that a court ruling on a motion to dismiss may not consider matters outside the pleadings unless incorporated by reference or subject to judicial notice. *Glob. Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 156 (2d Cir. 2006) (reversible error to dismiss based on material outside complaint). Worse still, Defendants' assertion that Plaintiff "spouts forth demonstrably false claims" (Def. Mem. at 10) is a scandalous and inflammatory attack that should be stricken. *See EEOC v. Green Lantern Inn, Inc.*, 2021 WL 4086148, at *4 (W.D.N.Y. Aug. 19, 2021) (striking accusations that plaintiff through counsel "lied," as prejudicial).

In *NYFRL,* the Second Circuit overturned the dismissal of a Free Exercise claim where the plaintiff –Clark– alleged she refused the COVID-19 vaccine based on guidance from the Holy Spirit, and the Citywide Panel denied her request as "too idiosyncratic to be religious in nature." *Id.* at 335. The court held these allegations plausibly stated a claim. *Id.* at 335. Likewise, Maiorino alleges that the City denied his request based on the perceived idiosyncrasy of his belief.

The Second Circuit also reversed the dismissal of another plaintiff's Free Exercise claim, where Solon alleged she was denied an exemption because her reliance on a "personal relationship with God" was deemed "merely personal" rather than tied to an established religion. *Id.* at 334 (citing *Kane*, 19 F.4th at 168). The court held this plausibly pleaded a Free Exercise violation, as such policies improperly reject individualized religious practices. *Id.* at 334. Here too, Maiorino alleges his God-guided belief was dismissed as insufficiently religious because it was not endorsed by an official religious authority—the same defect the Second Circuit identified in *NYFRL*.

B. **Defendants' Policies Were Not Generally Applicable.**

Neutrality and general applicability are overlapping concepts but they are nevertheless distinct, and therefore a law could fail the separate test of general application even if it satisfied the neutrality criteria. *See Church of the Lukumi Babalu Aye v. Hialeah*, 508 U.S. 520, 542 (1993). "A law is not generally applicable if it 'invite[s] the government to consider the particular reasons for a person's conduct by providing a mechanism for individualized exemptions.'" *Fulton v. City of Philadelphia*, 141 S. Ct. 1868, 1877 (2021) (quoting *Employment Div., Dept. of Human Resources of Oregon v. Smith*, 494 U.S. 872, 884 (1990)).

The City granted individual decision-makers broad subjective discretion, allowing them to inject personal ideological bias when assessing the sincerity of religious objections and the perceived risks of remaining unvaccinated, resulting in arbitrary and inconsistent outcomes. FAC

¶¶178-179. In *Kane*, the Second Circuit found that the same accommodation policies and procedures challenged here failed general applicability because officials reviewing accommodation requests exercised "substantial discretion over whether to grant those requests"—adhering to the standards in some cases while disregarding them in others. *Kane*, 19 F.4th at 169; *see U.S. Navy SEALs 1-26 v. Biden*, 578 F. Supp. 3d 822, 838 (N.D. Tex. 2022), *affirmed*, 27 F.4th 336, 339 (5th Cir. 2022) (Navy's mandate was not neutral and generally applicable; "by accepting individual applications for exemptions, the law invites an individualized assessment of the reasons why a servicemember is not vaccinated" and "the 'comparable secular activity' includes refusing the vaccine for medical reasons or participation in a clinical trial").

Additionally, the City's accommodation policies and procedures were not generally applicable because the City allowed thousands of employees—including members of the DSNY—to continue working unvaccinated for secular reasons, such as staffing needs. FAC ¶¶58-59; *Roman Cath. Diocese*, 592 U.S. at 18 (holding that COVID-19 restrictions violated the Free Exercise Clause because they were not neutral or generally applicable, as they imposed stricter limits on religious institutions than on comparable secular businesses deemed essential). "If the secular category of [City Workers needed for staffing] is exempt … then the Free Exercise Clause mandates that religious objectors be granted equivalent accommodation." *Bacon v. Woodward*, 104 F.4th 744, 752 (9th Cir. 2024).

Defendants' policies for evaluating religious accommodation requests were not generally applicable, as evidenced by numerous secular accommodations granted. For example, the City's policies provided for permanent accommodations "for employees who were unable to mount an immune response to COVID-19". FAC ¶¶54-56. And thousands of unvaccinated employees continued working under masking and testing accommodations. FAC ¶¶58, 59, 254–57, 268.

DSNY employees granted religious accommodations were allowed to continue working in their same positions and performing identical duties, subject only to weekly testing. FAC ¶¶258, 264, 265, 270.

C. **Defendant's Actions Fail the Strict Scrutiny Test**

The policies and procedures challenged here are neither neutral nor generally applicable, thus they must satisfy strict scrutiny[6], meaning they must be narrowly tailored to serve a compelling interest. *Roman Cath. Diocese*, 141 S. Ct. at 67; *Kane*, 19 F.4th at 169. "That standard is not watered down; it really means what it says." *Tandom v. Newsom,* 593 U.S. 61, 64 (2021). This is "the most demanding test known to constitutional law," *City of Boerne v. Flores*, 521 US. 507, 534 (1997), which is rarely passed. *Burson v. Freeman*, 504 U.S. 191, 200 (1992).

This is not that rare case. Strict scrutiny requires the government to demonstrate that the policy is narrowly tailored to achieve a compelling interest and is the least restrictive means of doing so. See *Roman Catholic Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63, 67 (2020). *"*Put another way, so long as the government can achieve its interests in a manner that does not burden religion, it <u>must</u> do so.*"* *Fulton*, 141 S. Ct. at 1881. In *Roman Cath. Diocese*, the Supreme Court held that it was hard to see how the challenged regulations could be regarded as narrowly tailored when "there are many other less restrictive rules that could be adopted to minimize the risk to those attending religious services. 592 U.S. at 18.

"These procedures cannot survive strict scrutiny because denying religious accommodations based on the criteria outlined in the Accommodation Standards, such as whether

---

[6] The City incorrectly claims that Plaintiff has not alleged facts warranting strict scrutiny, relying on *Chinchilla v. N.Y.C. Police Dep't*, 2024 U.S. Dist. LEXIS 123246, at *10–11 (S.D.N.Y. July 12, 2024).* But unlike in *Chinchilla*, Plaintiff here specifically alleges that Defendants evaluated religious beliefs by comparing them to others within their faith (FAC ¶¶144-148) and that decision-makers had broad discretion and applied standards inconsistently, leading to arbitrary results. FAC ¶¶178-179.

an applicant can produce a letter from a religious official, is not narrowly tailored to serve the government's interest in preventing the spread of COVID-19." *Kane*, 19 F.4th at 169. Less restrictive means of preventing the spread of COVID-19 were available. Defendants' own conduct makes this clear. Following implementation of the Vaccine Mandate, DSNY allowed hundreds of employees to continue working, submitting weekly PCR testing in lieu of vaccination, while their religious accommodation requests and appeals were pending. FAC ¶¶265–270. Maiorino himself was permitted to continue working, submitting weekly PCR tests, while his accommodation request was pending with DSNY. FAC ¶ 115. This practice was Citywide, with thousands of municipal employees allowed to work pending their requests and appeals. FAC ¶268. For instance, 1,176 active-duty firefighters—living in firehouses and responding to emergencies—were similarly accommodated. FAC ¶269. Many continued working unvaccinated until the mandate was lifted. FAC ¶59. And 343 DSNY employees (many of whom were Sanitation Workers like Maiorino) were granted religious accommodations and remained in their positions unvaccinated, submitting weekly testing. FAC ¶¶ 254–258. The City even exempted employees who could not mount an immune response to the vaccine. FAC¶¶55-56.

These policies demonstrate that the City did not consider vaccination absolutely necessary to achieve its stated public health goals. The City's use of testing protocols as a viable alternative to vaccination confirms the availability of less restrictive, narrowly tailored means. Thus, Defendants' imposition of a "vaccinate-or-terminate" ultimatum on Plaintiff, despite the availability and widespread implementation of effective, less restrictive alternatives for similarly situated employees, fails strict scrutiny. The City cannot credibly assert that its interest was so compelling as to justify burdening Plaintiff's religious exercise, while at the same time permitting thousands of unvaccinated employees to continue working under testing protocols. *See Lukumi*,

508 U.S. at 545-546 (underinclusive application is not narrowly tailored and cannot satisfy strict scrutiny).

### III.     PLAINTIFF'S NYCHRL FAILURE TO ENGAGE IN A COOPERATIVE DIALOGUE CLAIM IS VIABLE.

In 2018, the City Council passed Local Law No. 59, amending the NYCHRL to mandate a robust, individualized, and timely cooperative dialogue process before an employer makes a final decision on any accommodation request. N.Y.C. Admin. Code § 8-107(28). The amendment was passed in direct response to prior case law holding that failure to engage in cooperative dialogue was not independently actionable. See *Hosking v. Memorial Sloan-Kettering Cancer Ctr.*, 186 A.D.3d 58, 63–64 (1st Dep't 2020); *Jacobsen v. N.Y.C. Health & Hosps. Corp.*, 22 N.Y.3d 824, 838 (2014). The Council's legislative intent could not have been clearer. The Committee on Civil Rights stated that the law was necessary "to clarify the reasonable accommodation requirement by expressly requiring, as a part of the reasonable accommodation process, that covered entities engage in a cooperative dialogue." *See* Report of the Governmental Affairs Division, Comm. on Civil Rights, at p. 4731.

Cooperative dialogue is unambiguously defined in the NYCHRL as a "good faith" "written or oral dialogue concerning the person's accommodation needs; potential accommodations that may address the person's accommodation needs, including alternatives to a requested accommodation; and the difficulties that such potential accommodations may pose for the covered entity." N.Y.C. Admin. Code § 8-102. Plaintiff clearly alleges that none of these requirements were discussed with him, and that the Defendants never communicated with him *at all* regarding his request. FAC ¶¶ 98-103, 238-243, 420-423.

Defendants do not contest this; instead, they claim that they engaged in a cooperative dialogue by notifying Maiorino of the City's accommodation and appeals process. ECF No 39,

Def. Mem. of Law, p. 30 of 32. But this contradicts the NYCHRL's clear language. "The statutory text is the clearest indicator of legislative intent and the words should be given their natural and obvious meaning." *Matter of Mental Hygiene Legal Serv. v Daniels*, 33 NY3d 44, 67 (N.Y. 2019).

In *Rizzo, the only other action alleging failure to engage in a cooperative dialogue by a DSNY employee,* the Southern District Court *denied* a motion to dismiss a cooperative dialogue claim where, like Maiorino, the Citywide Panel rejected his appeal with a conclusory statement that he "does not meet criteria." *Rizzo* at *4. And NYCHRL explicitly requires a cooperative dialogue *before* any denial can be made. N.Y.C. Admin. Code § 8-107 (28)(e).

Here, all Maiorino received was boilerplate denials. FAC ¶¶ 74, 237. Defendants' conduct does not satisfy their obligation under NYCHRL. *Goldman v Sol Goldman Invs. LLC*, 2022 US Dist LEXIS 175353, at *12-13 (SDNY Sep. 27, 2022) (finding no cooperative dialogue where Defendants failed to address Plaintiff's specific accommodation needs, relying instead on general COVID-19 measures, and did not discuss alternative accommodations); *Heiden v NY City Health & Hosps. Corp.*, 2023 US Dist LEXIS 5583, at *111 (SDNY Jan. 11, 2023) (finding no cooperative dialogue where interactions were limited to Plaintiff's request submission, form submissions, and notification of denial).

## IV. THE FAC IS COMPLIANT WITH FED. R. CIV. P. 8.

Plaintiff's FAC fully complies with Federal Rule of Civil Procedure 8, which aims to lower pleading barriers and ensure defendants receive fair notice. In *Ong v. Park Manor*, the court emphasized that Rule 8's short-and-plain-statement requirement is "extremely permissive" to facilitate access to federal court. 51 F.Supp.3d 319, 348 (S.D.N.Y. 2014) (citing *Wynder v. McMahon*, 360 F.3d 73 (2d Cir. 2004)). Complaints should not be dismissed as long as defendants are given fair notice of the claims. *Id*. at 348. It is evident from Defendants' motion to dismiss that

they understood the claims and could defend themselves. Dismissal under Rule 8 is typically reserved for cases where the complaint is so unclear or unintelligible that its substance is obscured. *Warner Bros. Ent. Inc. v. Ideal World Direct*, 516 F.Supp.2d 261, 265 (S.D.N.Y 2007); *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir.1988). For dismissal, a complaint must be so long and convoluted that it hinders the defendant's understanding or ability to mount a defense. *Id; Wynder v. McMahon*, 360 F.3d 73, 80 (2d Cir. 2004); *In re Parmalat Sec. Litig.*, 375 F.Supp.2d 278, 311 (S.D.N.Y. 2005). In *Lang v. Clinton*, dismissal was warranted only where the complaint was "bloated, rambling, and teeming with irrelevant factual digressions". 761 F.Supp.3d 595 (2024). These cases clarify that verbosity alone does not justify dismissal; the complaint must actively hinder understanding. Courts also consider context and complexity. In *Rivoli Operating Corp. v. Loew's Inc.*, the court acknowledged that antitrust claims require greater detail. 7 F.R.D. 219 (1947). Similarly, in *Ong*, despite some disjointed facts, the complaint still met the fair notice standard. 51 F.Supp.3d 319 (2014). Even when Rule 8 violations are found, courts often grant leave to amend. *Roberto's Fruit Market v. Schaffer*, 13 F.Supp.2d 390 (1998). In *Warner Bros.*, the court held that denying leave to amend on the sole ground of a Rule 8 violation is an abuse of discretion. 516 F.Supp.2d 261 (2007). Dismissal is reserved for complaints that are extremely incoherent, not lengthy. Plaintiff's FAC fully adheres to Rule 8, and Defendants have fair notice to lodge a defense. Therefore, dismissal is improper.

## CONCLUSION

Defendants' motion to dismiss should be denied.

Dated: Staten Island, New York
      August 6, 2025

BY: *Jeannette Poyerd-Loiacono, Esq.*
**MARTINEZ & LOIACONO, PLLC**
245 Bricktown Way, Suite J
Staten Island NY 10309, 347-215-4543
***Attorneys for Plaintiff***