UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 10/15/2025
```

-------------------------------------------------------------------X
                                    :

VINCENT MAIORINO                           :
                                      :
                Plaintiff,        :
                                      :              25-cv-0097 (LJL)
        -v-                              :
                                      :            OPINION AND ORDER
NEW YORK CITY DEPARTMENT      :
OF SANITATION, et al.,          :
                                      :
               Defendants.     :
                                      X
-------------------------------------------------------------------

LEWIS J. LIMAN, United States District Judge:

      Defendants New York City Department of Sanitation ("DSNY") and City of New York

("the City," and together with DSNY, the "Defendants") move, pursuant to Federal Rule of Civil

Procedure 12(b)(6), to dismiss Plaintiff Vincent Maiorino's ("Plaintiff") Amended Complaint.

For the following reasons, Defendants' motion to dismiss is granted.

## BACKGROUND

      The Court accepts Plaintiff's well-pleaded allegations as true for purposes of this

motion.[1]

      Plaintiff is a resident and domiciliary of Orange County, New York.  He worked as a full-

time sanitation worker for DSNY from on or around May 30, 2005 to February 11, 2022.  Dkt.

---

[1] Defendants argue that Plaintiff's allegations are demonstrably and knowingly false and violate
the Federal Rules of Civil Procedure.  Dkt. No. 39 at 11; *see* Dkt. No. 40-6 (containing sworn
testimony controverting Plaintiff's allegations).  The remedy for such conduct, as Defendants
seem to recognize, is a motion under Federal Rule of Civil Procedure 11(b)(3) after the required
procedural steps are taken.  At the motion to dismiss stage, the Court must accept the factual
allegations as long as they are not "wholly conclusory."  *Krys v. Pigott*, 749 F.3d 117, 128 (2d
Cir. 2014).

No. 20 ("Am. Compl.") ¶¶ 12–13, 25, 63.  He identifies as a practicing Roman Catholic.  *Id.* ¶ 29.

Defendant DSNY is a municipal corporation and the City is a municipality organized under the laws of the New York.  *Id.* ¶¶ 16–18.

In 2020, after the initial outbreak of the COVID-19 pandemic, the Governor of New York State issued an executive order that closed all "nonessential businesses."  *Id.* ¶ 38.  Plaintiff continued his work because he was considered an "essential worker."  *Id.* ¶¶ 37–39.  On October 20, 2021, the New York City Commissioner of Health and Mental Hygiene issued an Order (the "Vaccine Mandate") requiring employees of New York City, in order to maintain their employment, to receive a COVID-19 vaccine by October 29, 2021.  *Id.* ¶ 43.  Pursuant to the Vaccine Mandate, employees who sought reasonable accommodations, religious or medical, were required to submit requests for such accommodation to their agency's Equal Employment Opportunity (EEO) Officer no later than October 27, 2021, to avoid being placed on leave without pay ("LWOP") status.  The Mandate further provided that an employee had a right to appeal if an initial request for accommodation was denied.  *Id.* ¶¶ 45–46.

The Department of Citywide Administrative Services ("DCAS") issued further guidelines on the implementation of the Vaccine Mandate (the "Guidelines").  *Id.* ¶ 50; *see* https://www.nyc.gov/assets/dcas/downloads/pdf/guidelines/vaccine-reasonable-accommodation-process.pdf (last visited Oct. 14, 2025).[2]  The Guidelines stated that "[a] sincerely held religious,

---

[2] The Guidelines are incorporated by reference.  *See Fishman v. City of New Rochelle*, 2023 WL 1438731, at *4 (S.D.N.Y. Feb. 1, 2023) ("A document is incorporated by reference into the complaint where the complaint 'refers to' the document.") (quoting *EQT Infrastructure Ltd. V. Smith,* 861 F. Supp. 2d 220, 224 n.2 (S.D.N.Y. 2012)).  Even if it were not, the Court can also consider documents that are "integral" to the complaint as long as the plaintiff has "actual notice" of the document and "relied upon the documents in framing the complaint."  *Id.* (quoting *McLennon v. City of New York*, 171 F. Supp. 3d 69, 89 (E.D.N.Y. 2016)).

moral, or ethical belief may be the basis for a religious accommodation" but that requests based solely on personal, political, or philosophical beliefs could not be.  Am. Compl. ¶¶ 51–52.  If an accommodation was granted, the employee was required to submit a weekly negative test result. *Id.* ¶ 53. Employees were allowed to continue working and submitting negative test results while their accommodation request and appeal were pending.  *Id.* ¶ 57.

Plaintiff refuses all vaccinations based on his Catholic beliefs.  *Id.* ¶ 31.  Plaintiff's objections to the COVID-19 vaccine in particular arise from the dictates of his own conscience, which his Catholic beliefs require him to abide by.  *Id.* ¶¶ 34–35.  He believes that the COVID-19 vaccine was developed using aborted fetal cell lines and in his view the use of such vaccines is a direct violation of God's commandments and the sanctity of life.  *Id.* ¶¶ 114–19, 121.  On or about November 4, 2021, after the deadline for the submission of reasonable accommodation requests to avoid being placed on LWOP status, Plaintiff submitted a formal request to DSNY for a religious accommodation from the Vaccine Mandate, stating that his religious beliefs conflicted with the immunization requirements.  *Id.* ¶¶ 71–73.[3]  Plaintiff submitted his request for a reasonable accommodation in the form of an Affidavit of Vaccine Exemption on Religious Grounds For City Employees (the "Affidavit"), which he downloaded from the internet.  *Id.* ¶68; Dkt. No. 40-1.  The form he filled out was not provided by the City or any government entity, and was found by Plaintiff "through independent efforts."  *Id.*

The Affidavit read, in pertinent part:

---

[3] Plaintiff alleges he was never advised of his right to apply for a religious accommodation.  *Id.* ¶ 65.

RE: Religious Exemption from Immunization Requirements

I, (Legal Name) _Vincent Maiorino_ the undersigned, do hereby swear and affirm that I am a member of a recognized religious organization, and that the immunizations required by (Governing Authority Name) _DSNY_ are contrary to my religious tenets and practices. On this basis, as the above referenced immunization requirements violate my right to freely exercise my religion as guaranteed by the First Amendment of the Constitution of The United States of America, I am asserting my rights to an exemption from (Governing Authority Name) _NYC - DSNY_ immunization requirements.

Dkt. No. 40-1.  Plaintiff filled in the blanks with his name and the identity of his

employer.  *Id.*  He certified that he qualified for the exemption based on the First

Amendment and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.  Id.*

He signed the form and had it notarized.  *Id.*

On or about November 21, 2021, DSNY denied Plaintiff's initial request for religious

exemptions in a letter entitled "Denial of Religious Exemption Appeal Information."  Am.

Compl. ¶ 74; *see* Dkt. No. 40-2.  The letter stated that the information provided by Plaintiff was

insufficient to establish a basis for a religious exemption and notified Plaintiff that he would be

placed on LWOP Status starting on November 24, 2021, unless he submitted proof of his

vaccination.  *Id.* ¶¶ 74, 89.  It advised that Plaintiff could appeal that decision in two different

ways: (1) an appeal to the City of New York Reasonable Accommodation Appeals Panel

("Citywide Panel"), consisting of DCAS, the Law Department, and the City Commission on

Human Rights; or (2) an appeal to Scheinman Arbitration and Mediation Services ("SAMS").

Am. Compl. ¶¶ 77–78.  Appeals submitted to the Citywide Panel pursuant to Option 1 would be

decided by evaluation of only the "documentation submitted to DSNY."  *Id.* ¶ 77; Dkt. No. 40-2

("Employees may choose to appeal to a central City panel consisting of DCAS, Law and the City

Commission on Human Rights.  Appeals will be decided based on the documentation submitted

to DSNY, and there shall be no live hearing"). Plaintiff appealed DSNY's denial of his request for a reasonable accommodation via Option 1. *Id.* ¶ 112.

Plaintiff alleges that DSNY's written policies and practices for appeals taken via Option 2 categorized objections by Catholics as "personal preferences," not "religious beliefs," because the Pope had publicly endorsed the vaccine. *Id.* ¶¶ 91–92, 136–138. Additionally, Defendants required employees appealing via Option 2 to submit a clergy letter in support of their religious accommodation requests, which Plaintiff did not do. *Id.* ¶¶ 86–88. Plaintiff alleges too that it was the Defendants' policy to deny applicants who opposed the COVID-19 vaccine based on an opposition to abortion. *Id.* ¶¶ 166–172. The City determined that objections based on aborted fetal lines were invalid if the applicant did not also disclose specific objections to other products such as over-the-counter medications that were tested in similar ways. *Id.* ¶¶ 210–13. Plaintiff was unaware of such requirements at the time he made his request for an exemption. *Id.* ¶ 211.

On or about November 20, 2021, Plaintiff exercised his rights under Option 1 and timely appealed to the Citywide Panel against his denial for religious accommodation. *Id.* ¶ 113. The Citywide Panel was made up of three voting members to handle the appeal: one from the Law Department, one from DCAS, and one from the Commissioner of Human Rights. *Id.* ¶¶ 127–28. Alongside his notification that he was appealing DSNY's denial, Plaintiff included a further explanation of the basis for his objection. It stated in pertinent part, that:

> The Roman Catholic Church teaches a person may be required to refuse a medical intervention, including a vaccination, if his or her informed conscience comes to this sure judgment. While the Catholic Church does not prohibit the use of vaccines in principle, her teachings do provide a principled religious basis on which a Catholic may determine that her or she ought to refuse certain vaccines. The Church holds that vaccination is not morally obligatory in principle and so must be voluntary. Moreover, there is a general moral duty to refuse the use of medical products, including certain vaccines, that are produced using human cell lines derived from direct abortions. . . As the Catechism makes clear, a person "must not

be forced to act contrary to his conscience.  Nor must he be prevented from acting according to his conscience, especially in religious matters."

*Id.* ¶ 114; Dkt. No. 40-3.

Pending final decision, Plaintiff was placed on LWOP status on or about November 28, 2021.  Am. Compl. ¶ 115.  About a month later, Plaintiff further supplemented his appeal by sending a letter to the Citywide Panel, via an email from his attorney, describing his Catholic upbringing and scriptural support for his belief.  *Id.* ¶¶ 116–19, 121.  That email attached also a twenty-five-page "Appellate Brief," with accompanying exhibits in further support of Plaintiff's appeal.  Dkt. No. 43-4.  Among the exhibits was a declaration from Plaintiff, which elaborated that "[a]s I researched and investigated vaccines with new perspective, one through the lens of the word of God, I realized they conflict with the tenets of my faith."  Am. Compl. ¶ 121.  The declaration outlined his belief that vaccines are "unholy," that "abortion is a violation of God's Sixth Commandment," and that he has a religious duty to follow his own conscience, especially as to medical decisions.  *Id.*

Plaintiff's appeal was ultimately denied on January 5, 2022.  Am. Compl. ¶ 236; Dkt. No. 40-5.  The Citywide Panel did not communicate with Plaintiff outside the denial or ask for further information regarding his past medication refusal or the sincerity of his religious beliefs.  Am. Compl. ¶¶ 238–43.  Plaintiff was one of the 29 DSNY employees who were denied of religious accommodations under the Vaccine Mandate.  *Id.* ¶ 256.  A total of 314 DSNY employees were granted religious accommodation and were permitted to continue working if they submitted a weekly negative PCR test result.  *Id.* ¶ 257.

On February 11, 2022, Plaintiff was discharged from work.  *Id.* ¶ 274.  On March 29, 2023, DSNY sent Plaintiff a letter with an offer to return if he becomes fully vaccinated.  *Id.* ¶ 275.  To date, Plaintiff has not taken the vaccine.  *Id.* ¶ 277.

## PROCEDURAL HISTORY

Plaintiff initiated this action by Complaint filed on January 4, 2025.  Dkt. No. 1.  On March 31, 2025, Defendants filed a motion to dismiss the complaint, along with a memorandum of law and a declaration in support of the motion.  Dkt. Nos. 9, 10, 11.

On April 9, 2025, Plaintiff filed an Amended Complaint.  Dkt. No. 20.[4]  Defendants again filed a motion to dismiss the Amended Complaint on June 23, 2025 and a memorandum of law in support of the motion.  Dkt. Nos. 38, 39.  They also submitted a declaration in support of the motion to dismiss that included six exhibits.  Dkt. No. 40.  On August 6, 2025, Plaintiff filed a memorandum of law in opposition to the motion to dismiss the Amended Complaint.  Dkt. No. 41.  Defendants filed a reply memorandum of law on September 8, 2025.  Dkt. No. 46.

## LEGAL STANDARD

To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted, a complaint must include "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A complaint must offer more than "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertion[s]" devoid of "further factual enhancement."  *Twombly*, 550 U.S. at 555.  The ultimate question is whether "[a] claim has facial plausibility, [*i.e.*,] the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.  "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common

---

[4] On April 18, 2025, the Court issued an order denying as moot the original motion to dismiss in light of the filing of the amended complaint.  Dkt. No. 26.

sense." *Id.* at 679.  Put another way, the plausibility requirement "calls for enough fact to raise a reasonable expectation that discovery will reveal evidence [supporting the claim]."  *Twombly*, 550 U.S. at 556; *see also Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 46 (2011).  When ruling on a motion to dismiss pursuant to Rule 12(b)(6), a district court may consider "the facts alleged in the pleadings, documents attached as exhibits or incorporated by references in the pleadings and matters of which judicial notice may be taken."  *Samuels v. Air Transp. Local 504*, 992 F.2d 12, 15 (2d Cir. 1993).

## DISCUSSION

The Amended Complaint alleges four claims.  Plaintiff's first cause of action alleges that Defendants violated Section 8-107(3)(a) of the New York City Human Rights Law ("NYCHRL") by terminating Plaintiff's employment for his refusal to take the vaccine for COVID-19 and by failing to provide him with a reasonable accommodation of his religious belief against vaccines.  Am. Compl. ¶¶ 285–345.  Plaintiff's second cause of action alleges that Defendants violated Section 296(10)(a) of the New York State Human Rights Law ("NYSHRL") for the same reasons.  *Id.* ¶¶ 346–409.  Plaintiff's third cause of action alleges that Defendants violated Section 8-107(28)(e) of the NYCHRL by failing to engage in cooperative dialogue with Plaintiff about his request for religious accommodation.  *Id.* ¶¶ 410–26.  Plaintiff's fourth and final cause of action alleges that Defendants violated his First Amendment right to freely exercise his religion, a claim made actionable against DSNY and the City through 42 U.S.C. §1983.  *Id.* ¶¶ 427–502.

## I.    DSNY is Not a Suable Entity

Defendants argue that DSNY is not a suable entity under the New York City Charter, and that therefore all claims against DSNY must be dismissed.  Because Plaintiff fails to respond to this argument in his opposition to the motion, the Court considers all claims against DSNY to be

abandoned.  *See Rizzo v. New York City Dep't of Sanitation*, 2024 WL 3274455, at *2 (S.D.N.Y.

July 2, 2024) (dismissing all of Plaintiff's claims against DSNY because Plaintiff had failed to

respond to the argument that DSNY is not a suable entity).

Even assuming that Plaintiff had not waived his claims, Defendants' argument still

prevails.  Chapter 17, Section 396 of the New York City Charter states that: "All actions and

proceedings for the recovery of penalties for the violation of any law shall be brought in the

name of the city of New York and not in that of any agency, except where otherwise provided by

law."  N.Y.C. Charter Ch. 17 §396.  The provision has been construed to mean that New York

City departments, like DSNY, lack the capacity to be sued.  *See Udoh v. N.Y.C. Dep't of*

*Probation*, 2025 WL 2199613, at *4 (S.D.N.Y. Aug. 1, 2025) (dismissing claims against the

Department of Probation because it is not a suable entity); *Selby v. United States*, 2025 WL

552609, at *2 (E.D.N.Y. Feb. 19, 2025) (dismissing claims against the New York Police

Department under the New York City Charter Section 396).  The Court therefore addresses only

Plaintiff's claims against the City.

## II.        Free Exercise Clause

Plaintiff challenges the process by which the Vaccine Mandate was applied to him as

violative of the Free Exercise Clause of the First Amendment.  The Free Exercise Clause,

applicable to states through the Fourteenth Amendment and against the City under 42 U.S.C.

§ 1983, "provides that Congress shall make no law respecting an establishment of religion, or

prohibiting the free exercise thereof."  *Kravitz v. Purcell*, 87 F.4th 111, 119 (2d Cir. 2023).  It

protects an individual's private right to religious belief, as well as "the performance of (or

abstention from) physical acts that constitute the free exercise of religion."  *Kane v. De Blasio*,

19 F.4th 152, 163–64 (2d Cir. 2021) (citing *Cent. Rabbinical Cong. of U.S. & Can. v. N.Y.C.*

*Dep't of Health & Mental Hygiene*, 763 F.3d 183, 193 (2d Cir. 2014)); *see Collins v. City*

*University of New York*, 2023 WL 1818547, at *7 (S.D.N.Y. Feb. 8, 2023).  To succeed on Free

Exercise Clause claim, "a plaintiff generally must establish that 'the object of the challenged law

is to infringe upon or restrict practices because of their religious motivation,' or that its 'purpose

. . . is the suppression of religion or religious conduct.'"  *Okwedy v. Molinari*, 69 F. App'x 482,

484 (2d Cir. 2003) (summary order) (quoting *Church of the Lukumi Babalu Aye, Inc. v. City of*

*Hialeah*, 508 U.S. 520, 533 (1993)).

Under the Free Exercise Clause, laws that implicate the freedom of religious expression

but that are both "neutral and generally applicable" are subject only to rational basis review.

*Kane*, 19 F.4th at 164.  Under such review, "legislation is presumed to be valid and will be

sustained if the [burden imposed] by the statute is rationally related to a legitimate state interest."

*Town of Southold v. Town of E. Hampton*, 477 F.3d 38, 54 (2d Cir. 2007) (quoting *City of*

*Cleburne, Tex. v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 440 (1985)).  If, by contrast, the

policy at issue is either not neutral or not generally applicable, courts review the policy under the

"strict scrutiny" framework, "meaning that [the policy] must be 'narrowly tailored' to serve a

'compelling' state interest."  *Kane*, 19 F.4th at 164 (quoting *Roman Cath. Diocese of Brooklyn v.*

*Cuomo*, 592 U.S. 14, 18 (2020)); *see Fulton v. City of Philadelphia*, 593 U.S. 522, 541 (2021)

("A government policy can survive strict scrutiny only if it advances interests of the highest

order and is narrowly tailored to achieve those interests.").

In *Kane*, the Second Circuit addressed a Free Exercise Clause challenge to the vaccine

mandate issued as to the New York City Department of Education and held that it was, "in all its

iterations," "neutral and generally applicable."  *Id*.  The Circuit therefore applied rational basis

review and found that the mandate "plainly satisfies this standard."  *Id.* at 166.  Plaintiff

concedes that the same analysis applies to the Vaccine Mandate at issue here, and that the

mandate is not facially unconstitutional.  Dkt. No. 41 at 13.  Plaintiff alleges instead that it was the policy and procedures for evaluating requests for religious accommodation that were neither neutral nor generally applicable.  Am. Compl. ¶ 436.  Although allowing for an individualized accommodations process to a vaccination mandate "goes beyond what the Constitution requires," *Phillips v. City of New York*, 775 F.3d 538, 543 (2d Cir. 2015), the process by which an exemption is granted may implicate the First Amendment where that process is "hostil[e]" toward an individual's religion, *We the Patriots, USA Inc. v. Conn. Off. of Early Childhood Dev.*, 76 F.4th 130, 145 (2d Cir. 2023).

An "as applied" challenge under the Free Exercise Clause, such as the one Plaintiff brings here, requires "analysis of the facts of a particular case to determine whether the application of a statute, even one constitutional on its face, deprived the individual to whom it was applied of a protected right."  *Field Day, LLC v. County of Suffolk*, 463 F.3d 167, 174 (2d Cir. 2006); *see also Barrett v. Dep't of Educ. of City of New York*, 2025 WL 1786910, at *6 (E.D.N.Y. June 26, 2025).  To succeed past the motion to dismiss stage, Plaintiff must plausibly allege that the Mandate was "not applied neutrally" to him.  *O'Leary v. City of New York*, 2024 WL 4167826, at *5 (S.D.N.Y. Sep. 12, 2024); *see Chinchilla v. N.Y.C. Police Dep't*, 2024 WL 3400526, at *4 (S.D.N.Y. July 12, 2024).  Accordingly, the DSNY's procedures in implementing the policy will be subject to strict scrutiny review only if they are not neutral or generally applicable.

To support his as-applied free exercise clause challenge, Plaintiff alleges that DSNY denied his application for a religious accommodation because he sought said accommodation based on his Roman Catholic beliefs which required him not to accept any vaccine developed using aborted fetal cell lines.  Am. Compl. ¶¶ 455–81; Dkt. No. 41 at 13–15.  However, Plaintiff

does not plead facts to indicate that, at the time DSNY considered Plaintiff's accommodation

request, DSNY was aware that he was a Catholic or that he objected to the vaccine because of its

development using aborted fetal cell lines.  In his accommodation request, Plaintiff attested only

that

> "I, Vincent Maiorino, the undersigned, do hereby swear and affirm that I am a
> member of a recognized organization, and that the immunizations required by
> DSNY are contrary to my religious tenets and practices.  On this basis, the above
> referenced immunization requirements violate my right to freely exercise my
> religious [sic] as guaranteed by the First Amendment of the Constitution of the
> United States of America, I am asserting my right to an exemption from NYC
> DSNY immunization requirements."

*Id.* ¶ 70.  That exemption request was in the form of an Affidavit downloaded from the internet,

completed by the Plaintiff himself, and signed in front of a notary.  *Id.* ¶¶ 68–69, 71; *see* Dkt.

No. 40-1.  The Affidavit is a fill-in-the-blank form; the only portions which Plaintiff filled in

himself are his place of work, his name, and the department at which he works.  *Id.*  The rest is

pro-forma language.[5]  It does not indicate Plaintiff's religion or the basis of his objection to the

vaccine other than that it is contrary to his undefined religious beliefs and tenets.

DSNY rejected Plaintiff's request in late November.  It explained that "the information

you provided in support of your request has not sufficiently demonstrated to DSNY that there is

a basis for granting you an exemption to the above Order."  Am. Compl. ¶ 74; Dkt. No. 40-2

(DSNY's denial).  DSNY's response does not express hostility to Plaintiff's "publicly expressed

religious views" or "pas[s] judgment upon or presuppose[e] the illegitimacy of religious beliefs

and practices."  *Kane*, 19 F.4th at 168.  Per Plaintiff's allegations, DSNY would not have known

of Plaintiff's religion or been in a position to judge the centrality of his expressed views to his

---

[5] The Affidavit itself contains a link at the bottom, explaining that to find "more information on
religious exemptions, visit www.forunitedsolutions.com."  Dkt. 40-1.  At the listed website, a
blank Affidavit form used by plaintiff is available for download.

faith or whether those views were inconsistent with the vaccine. Plaintiff said nothing about his religion or his religious tenets, much less how they conflicted with DSNY's vaccination requirements, other than to assert that they did. As Defendants argue, "[n]otably, nowhere in the document does Plaintiff articulate his religious beliefs or explain that, or even how, his purported 'religious tenets and practices' conflict with the Vaccine Mandate." Dkt. No. 39 at 6. Put simply, DSNY could not have expressed hostility to Plaintiff's religious beliefs if it "was unaware of those beliefs." *Marte v. Montefiore Med. Ctr.*, 2022 WL 7059182, at *4 (S.D.N.Y. Oct. 12, 2022).

The courts in this Circuit consistently have held that, in order for a plaintiff to state a claim based on the Free Exercise Clause for denial of a religious accommodation, the plaintiff must allege their religious belief and why it requires an accommodation. "'[B]ald assertions that a plaintiff has a religious belief and that those religious beliefs conflict with an employment requirement are insufficient to state a claim.'" *Gardner-Alfred v. Fed. Res. Bank of N.Y.*, 651 F. Supp. 3d 695, 721 (S.D.N.Y. 2023) (quoting *Cagle v. Weill Cornell Med.*, 680 F. Supp. 3d 428, 435 (S.D.N.Y. 2023) (citing cases)); *see also Udoh*, 2025 WL 2199613, at *8; *Meadows v. Lesh*, 2010 WL 3730105, at *4 (W.D.N.Y. Sept. 17, 2010).[6] "Even under" the standard of a motion to dismiss, "courts have dismissed claims that are either conclusory or that fail to allege how a conflicting belief is rooted in religious convictions." *Matos v. Discovery Comms., LLC*, 750 F. Supp. 3d 307, 320 (S.D.N.Y. 2024). "Put differently, a plaintiff cannot merely allege that she

---

[6] Cases decided under Title VII in addition to those under 42 U.S.C. § 1983 are relevant here, because to state a claim under either statute a Plaintiff is required to plausible allege that their religious beliefs are "sincere." *See Matos v. Discovery Comms., LLC*, 750 F. Supp. 3d 307, 323 (S.D.N.Y. 2024) (the "relevant prima facie question for Title VII purposes is whether Plaintiff has alleged a sincerely held 'religious' belief."); *Gardner-Alfred v. Fed. Res. Bank of N.Y.*, 143 F.4th 51, 63 (2d Cir. 2025) (a free exercise claim and a Title VII claim both "require [plaintiff] to show that her beliefs are religious and sincerely held.")

has 'religious beliefs' which included 'religious practices of non-vaccination,' without providing some detail about what the beliefs are and why vaccination conflicts with them." *Id.* The standard is not stringent; an individual "need only demonstrate that the beliefs professed are sincerely held and in the individual's own scheme of things, religious." *Ford v. McGinnis*, 352 F.3d 582, 588 (2d Cir. 2003) (quoting *United States v. Seeger*, 380 U.S. 163, 185 (1965)). DSNY is not required to exercise any more leniency than courts of this Circuit in evaluating requests for accommodation. If a plaintiff cannot assert a claim in court for denial of a religious accommodation without identifying a religion or religious tenet and specifying why it requires an accommodation, a plaintiff cannot obtain an accommodation from a government agency without identifying such rudimentary information—and the denial of an accommodation request for failure to provide such information cannot be deemed alone sufficient to state a claim under the Free Exercise Clause.

Tellingly, in the two other cases in which courts in this circuit have addressed suits by DSNY employees and determined that certain of their religious accommodation claims might move forward, the plaintiffs provided more information about their religious beliefs and practices, thereby making an inference of hostile treatment on that basis plausible. In *Famiglietti v. N.Y.C. Dep't of Sanitation*, 2024 WL 4606817 (E.D.N.Y. Oct. 28, 2024), the plaintiff explained in his request that he opposed the vaccine because it was "produced using human cell lines derived from direct abortions which conflicted with his conscience, guided by the Catechism of the Catholic Church." *Id.* at *4. The court held that the plaintiff "sufficiently alleged sincerely held religious beliefs that conflict with the vaccine mandate." *Id.* And in *Rizzo*, the plaintiff emailed DSNY before it had adjudicated his request and told the agency that the Catholic Church had taught him that a person may refuse medical intervention, that Catholic

teachings morally required him to obey his conscience, and that he had practiced his faith by declining medical interventions in the past. 2024 WL 3274455, at *1. On that basis, the court held that plaintiff had made out a *prima facie* case for religious discrimination. By contrast here, Plaintiff provided DSNY with no information about his religion or how it conflicted with DSNY's requirements other than to make the assertion that he had a religion and that it required an accommodation.

The thrust of Plaintiff's complaint is that he invoked his Catholic beliefs and his opposition to vaccines developed using aborted fetal cell lines in his appeal of DSNY's denial of his accommodation request. In Plaintiff's email indicating his choice to appeal the determination to the Citywide Panel, he included an explanation of his reason for seeking an accommodation. He stated for the first time in that email that he was Roman Catholic and that he objected to the vaccine on the basis that it was "produced using human cell lines derived from direct abortions." Am. Compl. ¶ 114; Dkt. No. 40-3 (Plaintiff's email appeal). "He cited specific Scripture passages supporting his belief that injecting vaccines, which he asserts contain or were developed using unclean substances—including, in his view, fetal cell lines derived from abortions—is a direct violation of God's commandments and the sanctity of life, both of which are core tenets of his faith." Am. Compl. ¶ 119. A month later, an attorney sent an email on Plaintiff's behalf with an appellate-style brief and declaration of Plaintiff to the Citywide Panel. *Id.* ¶¶ 116, 121; Dkt. No. 40-4 (follow-up email). The attached documents explained in further detail Plaintiff's objections to the vaccine and the sincerity of his religious beliefs, citing to specific Bible verses.

The Citywide Panel rejected the appeal on January 5, 2025, noting only that the "City of New York Reasonable Accommodation Appeals Panel has denied your appeal for a religious exemption." Am. Compl. ¶ 122; Dkt. No. 40-5 (Citywide Panel denial).[7]

Plaintiff's allegations that he informed the Citywide Panel of his religious views cannot support his Free Exercise Clause claim with respect to the decision of DSNY for two separate reasons. First, Plaintiff does not allege that DSNY—the body that he alleges discriminated against him based on his religious views—was aware of the views that he expressed to the Citywide Panel. From Plaintiff's allegations and the documents incorporated by reference, the Citywide Panel is a body entirely independent of DSNY. It is comprised of members of DCAS, the Law Department, and the City Commission on Human Rights and it makes decisions independent of those of DSNY. Am. Compl. ¶¶ 123–29. Thus, the claim that the Citywide Panel was aware of Plaintiff's religious views cannot alone establish that DSNY discriminated against Plaintiff on the basis of religion when it made the decision that was the subject of appellate review by the Citywide Panel. It is axiomatic that "[i]n order to support an inference of discrimination, a plaintiff must produce evidence that the relevant actors accused of discrimination knew of the plaintiff's protected characteristic." *Maxius v. Mt. Sinai Health*

---

[7] In his complaint at ¶ 122, Plaintiff states that his request for a religious accommodation was denied by the Citywide Panel on January 5, 2022. That is confirmed by Dkt. No. 40-5. Later in his complaint, Plaintiff alleges that the denial was on January 4, 2022, and that the Citywide Panel provided more extensive reasoning, including that it had "carefully reviewed your Agency's determination, all of the documentation submitted to the agency and the additional information you submitted in connection with the appeal. Based on this review, the Appeals Panel has decided to deny your appeal." Am. Compl. ¶¶ 271–72. Plaintiff does not contest the authenticity of the record provided by Defendants of the appeal denial, and "[i]t is well established that 'where the plaintiff's allegations are contradicted by a document that the complaint incorporates by reference, the document controls.'" *Optionality Consulting Pte. Ltd. v. Nekos*, 2019 WL 4523469, at *6 (S.D.N.Y. Sept. 18, 2019) (quoting *380544 Can., Inc. v. Aspen Tech Inc.*, 544 F. Supp. 2d 199, 215 (S.D.N.Y. 2008)).

*Sys. Inc.*, 2024 WL 4166157, at *7 (S.D.N.Y. Sept. 12, 2024); *see also Szewczyk v. Saakian*, 774 F. App'x 37, 40 (2d Cir. 2019) (summary order) (affirming a grant of summary judgment on plaintiff's religious discrimination claim where "[plaintiff] offered no evidence that [defendant] was aware of her religion"); *Giurca v. Bon Secours Charity Health Sys.*, 2024 WL 763388, at *1 (2d Cir. Feb. 26, 2024) (summary order) (holding that plaintiff failed to state a claim because he did "not allege that the Hospital Defendants were aware of his Romanian Orthodox religion, much less that they took any actions based upon that religion").

Second, there is no well-pled allegation that the Citywide Panel considered Plaintiff's supplementary materials. Plaintiff affirmatively alleges that appeals submitted to the Citywide Panel pursuant to Option 1 were decided by evaluation of only the "documentation submitted to DSNY," *i.e.*, only on the basis of Plaintiff's Affidavit which did not mention his religion. Am. Compl. ¶ 77; Dkt. No. 40-2 ("Employees may choose to appeal to a central City panel consisting of DCAS, Law and the City Commission on Human Rights. Appeals will be decided based on the documentation submitted to DSNY, and there shall be no live hearing."). Courts generally apply a presumption of regularity with respect to government agencies—in the absence of a well-pled allegation to the contrary, agencies are presumed to follow their own rules. If the court has "been given no persuasive reason to believe otherwise, [it will] assume that the Agency will follow its usual procedure." *Connecticut Fund for Environment, Inc. v. E.P.A.*, 696 F.2d 179, 184 (2d Cir. 1982); *see also Alexandre v. N.Y.C. Taxi & Limousine Comm'n*, 2007 WL 2826952 (S.D.N.Y. Sept. 28, 2007) ("[A]ctions undertaken by an administrative entity are cloaked with a presumption of regularity, and are presumed to be valid unless proven otherwise") (quoting *In re Entergy Nuclear Indian Point 2, LLC v. N.Y. State Dep't of Envtl. Conservation*, 805 N.Y.S.2d 429, 432 (3d Dep't 2005)). If the Citywide Panel followed its own

policies here, there would have been no occasion on which it would have reviewed Plaintiff's supplementary materials. The only question before the Citywide Panel was whether DSNY, considering the information before it, properly denied Plaintiff a request for religious accommodation. It was not whether Plaintiff would have been entitled to a religious accommodation from DSNY had he submitted to DSNY the information he submitted to the Citywide Panel. There is and could be no claim that the Citywide Panel discriminated against Plaintiff on the basis of religion when it determined that his appeal was without merit and that DSNY acted within its rights in denying Plaintiff an accommodation based on the Affidavit. Plaintiff thus has not stated a Free Exercise claim based on his treatment by the Citywide Panel.

Plaintiff makes no argument that the policy limiting the record on appeal only to those documents before DSNY was either facially hostile against Catholics, or that it was applied in a hostile manner. Nor has he argued that, as a matter of policy or practice, that the Citywide Panel could consider documents submitted after DSNY issued their decision. Plaintiff has therefore not alleged any demonstration by the government of "hostility, animosity, distrust, [or] a negative normative evaluation" of his Roman Catholic religious beliefs that would subject DSNY's actions to strict scrutiny. *We the Patriots, Inc.*, 76 F.4th at 149.

Plaintiff's Amended Complaint spills much ink on the allegations that DSNY and the City discriminated against Catholics who appealed a denial of accommodation via Option 2, which presented "an alternative to submitting your appeal to the City panel." Am. Compl. ¶ 78; *see id.* at ¶¶ 81–101, 137–48, 438. Unlike Option 1, Option 2 permitted individuals to submit their appeals to SAMS. *Id.* ¶ 78. The written policies of the SAMS arbitration included that it would "only grant appeals based on religious exemptions if it is in writing by a religious official (e.g. clergy)," and that "[r]equests shall be denied where the leader of the religious organization

has spoken publicly in favor of the vaccine, where the documentation is readily available (e.g. from an online source), or where the objection is personal, political, or philosophical in nature." *Id.* The policies also contemplated that the assigned arbitrator may request additional documentation. *Id.* ¶ 78(c). The Second Circuit held in *Kane* that SAMS' accommodation procedures were "neither neutral nor generally applicable." 19 F.4th at 169. The government cannot "[d]en[y] an individual a religious accommodation based on someone else's publicly expressed religious views—even the leader of her faith." *Id.* at 168. In addition, in *Kane* there was evidence that the procedures were not evenly applied: "Sometimes, arbitrators strictly adhered to the Accommodation Standards. Other times, arbitrators apparently ignored them, such as by granting an exemption to an applicant who identified as a Roman Catholic, even though the Pope has expressed support for vaccination." *Id.* at 169. The SAMS' Accommodation Procedures thus were subject to strict scrutiny and, because they could not survive that scrutiny, they were unconstitutional "as implemented and applied to Plaintiffs." *Id.* at 169.

Plaintiff's allegations about SAMS do not suffice to push his claim over the "line between possibility and probability." *Iqbal*, 556 U.S. at 678. A plaintiff may rely on allegations regarding how a particular defendant treated others who were similarly situated to support his own claim that he was subject to discrimination. *See O'Toole v. Cty. of Orange*, 255 F. Supp. 3d 433, 439 (S.D.N.Y. 2017) ("The law permits a plaintiff to raise a plausible inference of discrimination by alleging preferential treatment given to similarly situated individuals, so long as the alleged comparators are similarly situated in all material respects") (internal citations omitted). If, for example, a particular defendant exhibits racial, gender or religious hostility to one member of a protected group, an inference may arise that it has treated other members of that

same group with the same hostility.  *See, e.g., Desrosiers v. Summit Sec. Servs., Inc.*, 2022 WL

13808524, at *3 (S.D.N.Y. Oct. 21, 2022).  Accordingly, if Plaintiff had appealed his denial via

Option 2 rather than Option 1, he may have stated a claim for relief; he informed the appellate

body of his religious views and there is evidence that the appellate body under Option 2 applied

standards that ran afoul of the Free Exercise Clause.  *See Kane*, 19 F.4th at 168 (expressing

"grave doubts" that denying an accommodation request on the basis that a religious leader "has

spoken publicly in favor of the vaccine" is neutral under the free exercise clause).  But Plaintiff

did not choose Option 2.  He chose Option 1.[8]

The question on an "as applied" challenge is whether a particular governmental policy is

unconstitutional as applied to the plaintiffs.  *See Kane*, 19 F.4th at 169; *New Yorkers for

Religious Liberty, Inc. v. City of New York*, 125 F.4th 319, 333–34 (2d Cir. 2025) (examining

individual allegations of each plaintiff and holding that some claims stated a First Amendment

claim while others did not).  "[A] plaintiff generally cannot prevail on an *as applied* challenge

without showing that the law has in fact been (or is sufficiently likely to be) *applied* to him."

*McCullen v. Coakley*, 573 U.S. 464, 485 (2014); *see also Tsirelman v. Daines*, 19 F. Supp. 3d

438, 447–48 (E.D.N.Y. 2014) ("In an as applied challenge, the question is whether the statute

was unconstitutional as applied to the facts of the case.").  That SAMS may have discriminated

---

[8] Plaintiff points also to several affidavits submitted by Eric Eichenholtz, "the architect of the Citywide Panel," Am. Compl. ¶ 160, in distinct New York state court dockets.  As alleged, in those declarations Eichenholtz stated that accommodation requests made on the basis of certain religious beliefs were not sufficient because "religious beliefs must be more than isolated teachings and must be part of an established system of belief," *id.* ¶ 161.  *See also id.* ¶¶ 162–65. If the Citywide Panel had been properly informed of Plaintiff's religion, and denied his request for a reasonable accommodation on the basis that his belief was not "part of a comprehensive religious belief system," it would likely have resulted in the court applying strict scrutiny to his as-applied challenge.  *See Ford*, 352 F.3d at 588 (a Plaintiff "need only demonstrate that the beliefs professed are sincerely held and in the individual's own scheme of things, religious").  As explained, those are not the facts that Court has been presented with here.

in the application of its policies to some City employees does not mean that DSNY and the

Citywide Panel discriminated against Plaintiff in the application of their policies and procedures

to him.

Plaintiff never informed DSNY of his religious tenets or affiliation or how they

conflicted with DSNY's requirements and he has offered no evidence that the Citywide Panel

considered his supplemental materials or made a decision based on those materials.  He alleges

only that the New York City Law Department, which represented the City in front of the SAMS

arbitrators, was one of the three representatives on the Citywide Panel.  Am. Compl. ¶ 87. But he

offers no evidence to support the plausible inference that the Citywide Panel, which included

also a representative of DCAS and the Commissioner of Human rights and required a 2-1

majority to make any decision, *id.* ¶ 128–29, applied SAMS written policies to the Option 1

process.  As the amended complaint currently is pled, he has not stated a claim for relief.

## III.    State law claims

Having ruled that Plaintiff's sole federal claim fails to state a claim for relief, the Court

turns to whether it should exercise supplemental jurisdiction over his state law claims.

A district court "may decline to exercise supplemental jurisdiction over a claim" where

"the district court has dismissed all claims over which it has original jurisdiction."  28 U.S.C. §

1367(c)(3); *see Klein & Co. Futures, Inc. v. Bd. of Trade*, 464 F.3d 255, 262–63 (2d Cir. 2006)

("[T]he decision to retain jurisdiction is discretionary and is not a litigant's right") (internal

citations omitted).  District courts are instructed "that 'in the usual case in which all federal-law

claims are eliminated before trial, the balance of factors will point toward declining to exercise

jurisdiction over the remaining state-law claims.'"  *Kolari v. New York-Presbyterian Hosp.*, 455

F.3d 118, 122 (2d Cir. 2006) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7

(1988)).  The relevant factors for a court to consider in making a determination as to the exercise

of supplemental jurisdiction are "the traditional 'values of judicial economy, convenience, fairness, and comity." *Id.* (quoting *Cohill*, 484 U.S. at 350). "The Second Circuit takes a particularly strong view that the district courts should decline to exercise supplemental jurisdiction in the absence of a 'clearly articulated federal interest.'" *Cummings v. City of New York*, 2021 WL 1664421, at *2 (S.D.N.Y. Apr. 28, 2021) (quoting *Kolari*, 455 F.3d at 123).

In the instant case, the relevant factors all point in favor of declining supplemental jurisdiction. Primarily, at the pleading stage, there would be nothing gained in terms of judicial economy, convenience, fairness, or comity. "The court is no more familiar with the facts and legal issues of this case than any court would be at the pleading stage. As a result, the Court lacks any interest in continuing to preside of the resolution of state law claims, and resolution of the state law claims in state court will avoid 'needless decisions of state law' by a federal court." *Cummings*, 2021 WL 1664421, at *3 (quoting *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966)); *see Klein*, 464 F.3d at 262 ("It is well settled that where, as here, the federal claims are eliminated in the early stages of litigation, courts should generally decline to exercise pendant jurisdiction over remaining state law claims"); *Brzak v. United Nations*, 597 F.3d 107, 113–14 (2d Cir. 2010) (same).

## CONCLUSION

The motion to dismiss is GRANTED without prejudice to the filing of an amended complaint within 20 days of the date of this Opinion and Order. If no amended complaint is timely filed, the Court will enter an order dismissing the case and dismissing Plaintiff's state-law claims with leave for him to refile them in state court.

The Clerk of Court is respectfully directed to close Dkt. No. 38.

SO ORDERED.

Dated  October 15, 2025
New York, New York

LEWIS J. LIMAN
United States District Judge