

**Martinez & Loiacono PLLC**

Christina M. Martinez, Esq.
Partner
245 Bricktown Way, Suite J
Staten Island, New York 10309
T: (347) 215-4543
F: (718) 556-2007
ChristinaMartinezEsq@gmail.com
www.ExemptionLawyer.com
*Admitted in:*
*New York & New Jersey*

September 2, 2025

*Via ECF*
Hon. Lewis J. Liman
United States District Court
Southern District of New York
500 Pearl Street, Room 1620
New York, NY 10007

*Plaintiff's motion is denied as moot following the Court's order dismissing the amended complaint at Dkt. No. 49.  The Clerk of Court is respectfully requested to close docket number 42.*
*Date: 10/17/2025*

SO ORDERED.
LEWIS J. LIMAN
United States District Judge

RE:    *Maiorino v. City of New York, et al.*, 1:25-cv-00097-LJL

Dear Judge Liman:

Plaintiff respectfully moves under Fed. R. Civ. P. 26 and 37 and Local Civil Rule 37.2 for an order compelling Defendants to produce relevant discovery necessary to the prosecution of this action, and to extend Plaintiff's time to conduct depositions until such discovery is produced.

At Plaintiff's request, the parties met and conferred regarding several outstanding issues: (i) Defendants' deficient interrogatory responses on July 31 and August 1, 2025; (ii) Defendants' deficient and non-existent responses to Plaintiff's document demands on August 13, 2025 — including their failure to respond at all to Plaintiff's second set of demands; and (iii) Defendants' failure to produce any electronically stored information on August 26, 2025. Despite Plaintiff's good-faith efforts to resolve these disputes without Court intervention, it has become clear that judicial intervention is necessary.

Federal district courts have broad discretion in deciding motions to compel. See Grand Cent. P'ship. Inc. v. Cuomo, 166 F.3d 473, 488 (2d Cir.1999). Federal Rule of Civil Procedure 26 states: "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense-including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter. For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action."

**A. <u>Plaintiff's Interrogatories</u>**

1

Plaintiff served 25 interrogatories on June 6, 2025. Defendants responded on July 28, 2025, but refused to provide *any* substantive answer to 18 of them. The responses that were provided were evasive, incomplete, or supported only by boilerplate objections. Defendants have since confirmed they will not supplement. Defendants' obstruction leaves Plaintiff without essential information and reflects a failure to participate in discovery in good faith. The specific deficiencies by interrogatory number are set forth below.

### I. Identities of Decisionmakers Regarding Plaintiff's Religious Accommodation Request (Interrogatory Nos. 1 and 3)

Interrogatory No. 1 sought the identity of all individuals involved in the review, consideration, or decision-making process regarding Plaintiff's religious accommodation request. Defendants identified only Ryan David, Director of the Office of Equity, Diversity & Inclusion at DSNY. This response is incomplete. Plaintiff has reason to believe that an internal reviewer initially evaluated the request and made a recommendation to Mr. David. Defendants' refusal to disclose that individual improperly shields a key fact witness.

Defendants provided no response at all to Interrogatory No. 3, which requested the identities of the Citywide Panel members who reviewed and denied Plaintiff's appeal. This is a critical deficiency: Plaintiff is entitled to depose the three Citywide Panel members who adjudicated his appeal. Indeed, Defendants' later document production included a spreadsheet identifying the three voters, confirming this information is readily available and within Defendants' control. Defendants' boilerplate objections lack merit. The relevant timeframe is clear—the DSNY decision issued on November 20, 2021, and the Citywide Panel decision on January 4, 2022. Plaintiff seeks only the identities of the decisionmakers, which are plainly discoverable.

### II. Documents Reflecting the Number of DSNY Employees Granted Religious Accommodations (Interrogatory No. 5)

Defendants' refusal to answer Interrogatory No. 5 is unjustified and violates both Rule 33 and Local Civil Rule 33.3(a). This interrogatory seeks only the existence, custodian, location, and general description of documents reflecting the number of DSNY employees granted religious accommodations to the Vaccine Mandate—precisely the type of foundational information authorized by Local Civil Rule 33.3(a). It does not seek production of the documents themselves, which Plaintiff separately requested. **Defendants' objection is particularly untenable because they have already produced a DSNY "master spreadsheet" tracking reasonable accommodation requests in another case (<u>Rizzo v. City of New York</u>, 1:23-cv-7190-JAV), demonstrating that such documents exist and are centrally maintained.** The requested information is plainly relevant. Plaintiff alleges that Defendants failed to accommodate his sincerely held religious beliefs, while Defendants contend that granting accommodations would pose an undue hardship. Evidence that DSNY in fact granted religious accommodations to other employees goes directly to the core of both claims and defenses. By refusing to identify the existence and location of these records, Defendants are concealing discoverable information within their exclusive possession that bears directly on whether Plaintiff was subjected to unlawful discrimination.

### III. Individuals Involved in Determining Reasonable Accommodations and the Identity of the Specific Accommodations Granted to DSNY Employees (Interrogatory Nos. 7 and 8)

Defendants' blanket refusal to respond to Interrogatory Nos. 7 and 8—paired with a boilerplate string of objections—constitutes an unacceptable evasion of their discovery obligations. These interrogatories seek:

- The identity of individuals involved in determining what reasonable accommodations were available or offered in response to religious accommodation requests, and
- The identification of specific reasonable accommodations (e.g., weekly PCR testing, masking, reassignment, etc.) that were granted to DSNY employees who requested religious accommodations to the Vaccine Mandate.

Defendants' refusal to answer these entirely proper interrogatories undermines the purpose of discovery and violates both the letter and spirit of Rule 26(b)(1) and Local Civil Rule 33.3(a). It is not permissible to invoke a litany of generalized objections—such as overbreadth, undue burden, and irrelevance—without providing any meaningful response or making a good-faith attempt to meet discovery obligations. This information is highly relevant. Plaintiff was denied an accommodation, and Defendants contend that providing granting one would have posed an undue hardship. Yet Plaintiff is aware that hundreds of other DSNY employees received accommodations of weekly PCR testing. Identifying who decided what accommodations were available, feasible, and actually provided to others is essential to evaluating whether Plaintiff's denial was consistent, justified, or discriminatory. By refusing to provide even basic information, Defendants are concealing material facts within their exclusive control and obstructing discovery.

### IV. Documents and Guidance Regarding Aborted Fetal Cell Line Objections (Interrogatory Nos. 13–15, 22)

Defendants' refusal to answer Interrogatories Nos. 13, 14, 15, and 22—relying only on boilerplate objections—is improper and obstructive. These interrogatories target a central issue in this case: Plaintiff's request for accommodation was denied on the basis that his beliefs regarding aborted fetal cell lines were factually incorrect or not sufficiently central to his faith. Discovery into how the City handled such objections, and on what basis, is therefore essential.

- **Interrogatory No. 13** properly seeks the existence, custodian, and general description of documents reflecting how the City or DSNY handled accommodation requests raising fetal cell line objections. This falls squarely within Local Rule 33.3(a). In related cases, Defendants have produced responsive documents, making their refusal here indefensible.
- **Interrogatory No. 14** seeks identification of documents or communications the City relied upon—whether internal memoranda, health department guidance, or public health materials—asserting that COVID-19 vaccines are not connected to fetal cell lines. This is a targeted and relevant inquiry.

3

- **Interrogatory No. 15** seeks the identities of individuals or entities who advised Defendants on this issue. Rule 33.3 explicitly permits such requests for names of knowledgeable persons.
- **Interrogatory No. 22** seeks identification of individuals with knowledge of the basis for the City's position that COVID-19 vaccines are unconnected with fetal cell lines, a natural extension of the above.

Each interrogatory is narrowly tailored to the precise grounds Defendants relied upon in denying Plaintiff's accommodation. Defendants' blanket refusal to answer violates Rule 26 and Local Rule 33.3 and suggests they are withholding information directly relevant to their decision-making.

### V.  Policies on Cooperative Dialogue and Religious Accommodations (Interrogatory Nos. 17–18)

Defendants' refusal to identify any policies regarding cooperative dialogue or religious accommodations in effect during 2021–2022 is improper. These requests go directly to Plaintiff's NYCHRL claims, which require employers to engage in cooperative dialogue and prohibit denial of accommodations without consideration of less restrictive alternatives. Plaintiff seeks only the identification of Defendants' own written policies, as permitted by Local Civil Rule 33.3. By refusing to identify even a single policy document, Defendants obstruct discovery and reinforce the inference of bad faith.

### VI.  Knowledge of Over-the-Counter Medications and Fetal Cell Line Associations (Interrogatory No. 19)

Defendants' blanket refusal to respond to Interrogatory No. 19 is improper and in bad faith. This interrogatory seeks the identity of individuals within DSNY or the City who possessed or relied upon information regarding alleged associations between over-the-counter medications and aborted fetal cell lines. The request is directly relevant. Plaintiff alleges that the City denied accommodations based on uncommunicated assumptions about over-the-counter medications, despite never instructing applicants to address them. (Am. Compl. ¶¶ 210–212.) Defendants themselves raised this issue in their Motion to Dismiss, arguing that Plaintiff's failure to disclaim such medications undermined the sincerity of his beliefs. (Def. Mem. of Law at 15.) Having put this issue into the case, Defendants cannot refuse to disclose who within the City provided or relied on such information. Their objections of vagueness or irrelevance lack merit and reflect a continued bad-faith effort to evade discovery.

### VII.  Identity of the Decisionmaker for Weekly PCR Testing Accommodation and Potential Accommodations (Interrogatory No. 21, 23)

Defendants improperly refused to respond to Interrogatories Nos. 21 and 23, both of which seek highly relevant and narrowly tailored information directly tied to Plaintiff's failure-to-accommodate claim.

**Interrogatory No. 21** seeks the identity of individuals involved in the decision to designate weekly PCR testing as the accommodation for DSNY employees who were granted a religious exemption to the COVID-19 vaccine mandate. Defendants have acknowledged in Rizzo that weekly PCR testing was the default accommodation granted by the Citywide Panel. The identity of the individuals who implemented or adopted that accommodation at DSNY is central to evaluating whether the same accommodation could and should have been offered to Plaintiff. It is not privileged and is plainly relevant. Defendants' refusal to provide this basic information, based solely on a laundry list of boilerplate objections, is obstructive and improper.

**Interrogatory No. 23** seeks the identity of individuals with knowledge regarding what COVID-19 mitigation strategies were considered, implemented, or proposed as potential accommodations to the vaccine mandate. This information is squarely relevant to whether Defendants engaged in an individualized assessment of accommodation options, as required under both the NYCHRL and the Free Exercise Clause. The New York City Human Rights Law mandates that an employer explore potential accommodations and consider alternatives. The Free Exercise Clause requires the government to use the least restrictive means available when burdening religious exercise. Refusing to identify the individuals who evaluated or proposed accommodations such as masking, testing, or social distancing is a violation of both the letter and spirit of those laws.

If Defendants maintain that no other strategies were considered—or refuse to identify those who were tasked with such consideration—Plaintiff will seek sanctions and an adverse inference that no meaningful consideration of alternatives ever occurred.

### VIII. Identity of Individuals Who Evaluated Undue Hardship (Interrogatory No. 24)

Defendants' refusal to answer Interrogatory No. 24—seeking the *identity* of individuals who evaluated or advised on whether granting Plaintiff or similarly situated DSNY employees a religious accommodation would pose an undue hardship—is both improper and telling. The interrogatory specifically asks for individuals who assessed cost, safety, operational impact, or public health risk, all of which are central to Defendants' affirmative defense of undue hardship. Defendants' blanket refusal to identify any such individuals under a cascade of boilerplate objections is unjustifiable. This is not a request for privileged legal conclusions, as Defendants claim, but for basic factual information about who evaluated hardship. These individuals and their assessments are directly relevant to Plaintiff's claims and to Defendants' own stated defenses.

### IX. Individuals with Knowledge of Plaintiff's Compensation (Interrogatory No. 25)

Defendants' response to Interrogatory No. 25 is inadequate and evasive. The interrogatory seeks the identity of individuals with knowledge of Plaintiff's compensation at DSNY—including salary, pension, benefits, and other forms of compensation—yet Defendants identify only the Plaintiff himself. This is plainly not a good faith response.

5

It is implausible that no City employee involved in payroll, pension administration, or human resources possesses knowledge of Plaintiff's compensation structure. Defendants' boilerplate objections are meritless, and their refusal to identify relevant DSNY or City employees with such knowledge undermines the basic fact-finding function of discovery.

Plaintiff is entitled to this information to support his backpay and front pay calculations. If Defendants continue to withhold the identities of such individuals, Plaintiff will seek appropriate sanctions and to preclude Defendants from disputing damages calculations at trial.

### B. Defendant's Second Demand for Documents, dated June 30, 2025

Defendants failed entirely to respond to Defendant's Second Demand for Documents, dated June 30, 2025. "A failure to respond or object to a discovery request in a timely manner waives any objection which may have been available." Cohalan v. Genie Indus., Inc., 276 F.R.D. 161, 163 (S.D.N.Y. 2011) (collecting cases).

Plaintiff holds sincere and deeply rooted Catholic religious beliefs that compel him to reject COVID-19 vaccines that are inextricably linked to abortion through the use of aborted fetal cell lines as he believes he must treat his body as a temple of the Holy Spirit, and that receiving these vaccines would defile his body, defy scripture, and thus violate his conscience, which he believes is the voice of God. Am. Compl. ¶¶ 31-34, 120-121. The Defendants' accommodation policies unlawfully conditioned accommodation approvals on agreement with institutional religious authorities (i.e., the Pope) and denied religious accommodations based on applicants' Catholic status. Am. Compl. ¶¶ 81-85, 92-93, 137, 141, 143-147, 156- 157, 187-189, 197, 202, 206, 209, 221, 230-232, 438, 454, 459. Defendants also required documentation from clergy. Am. Compl. ¶¶ 78, 86-88, 94, 96, 438, 454. Discovery into how Defendants considered and applied these religious criteria is therefore central to the claims and defenses. These document requests seek documents concerning the criteria and policies Defendants applied in evaluating religious accommodation requests, specifically addressing:

I. **Doc. Request No. 1**: Accommodation Policies Concerning the Pope and the Vatican
II. **Doc. Request No. 2**: Accommodation Polices Concerning the Holy Spirit
III. **Doc. Request No. 3**: Accommodation Policies Concerning Conscience-Based Objections
IV. **Doc. Request No. 4**: Accommodation Policies Concerning Catholic Religious Objections
V. **Doc. Request No. 5**: Accommodation Policies Concerning Letters of Support from Clergy or Religious Officials

The full document demands are attached. Because Defendants failed entirely to respond, objections are waived, and production should be compelled.

C.  **Plaintiff's First Demand for Documents, dated June 6, 2025**

On July 30, 2025, Defendants served responses to Plaintiff's First Demand for Documents. Their responses are deficient. Nearly every request was met with boilerplate objections—asserting vagueness, overbreadth, undue burden, disproportionality, privilege, or "assumes facts not in evidence"—without substantive responses or meaningful production. For the overwhelming majority of the requests, Defendants have declined to produce the requested documents.

To conserve judicial resources, Plaintiff does not reproduce all requests in full. Instead, the deficient responses fall into four categories, with representative requests identified below.

  I.  **Policies, Criteria, and Training Materials**

Defendants refused to produce internal policies, reviewer guidance, Requests for Information ("RFI") templates used by DSNY, training emails, and instructions regarding how accommodation requests were to be decided. These documents are directly relevant to Plaintiff's allegations that Defendants unlawfully conditioned accommodations on agreement with the Pope (Am. Compl. ¶¶ 81-85, 92-93, 137, 141, 143-147, 156- 157, 187-189, 197, 202, 206, 209, 221, 230-232, 438, 454, 459), discounted conscience-based and Holy Spirit–based objections (Am. Compl. ¶¶ 31-34, 120-121), and required clergy letters (Am. Compl. ¶¶ 78, 86-88, 94, 96, 438, 454).

- Demand Nos. 7–8: guidance provided to the reviewers.
- Demand Nos. 9, 24, 26: Documents regarding the use of aborted fetal cell lines in COVID-19 vaccines, relevant to Plaintiff's claim that Defendants rejected objections based on fetal cell lines because they disagreed with the accuracy of that belief. Am. Compl. ¶¶ 166–185.
- Demand No. 10: DCAS "Agency Tracker," documenting contemporaneous instructions given to agency EEO heads regarding accommodation standards. Am. Compl. ¶¶ 131–132.
- Demand No. 16: Policies on reasonable accommodations in effect in 2021–2022, including cooperative dialogue, interactive process, and undue hardship.
- Demand No. 20: Guidelines, criteria, and standards (including ESI) used by DSNY, DCAS, and the Citywide Panel to decide accommodation requests.
- Demand Nos. 21–23, 29: Documents concerning the Catholic Church and the Pope's positions on vaccination.
- Demand Nos. 28–29: Documents relied upon by reviewers in evaluating Catholic requests.

  II.  **Evidence of the Feasibility of Accommodation**

Defendants refused to provide information showing that accommodations—particularly weekly testing—were feasible and in fact widely implemented. Plaintiff alleges that sanitation workers were accommodated with weekly testing, consistent with DSNY's and the City's official policy. Am. Compl. ¶¶ 259–266.

- Demand Nos. 2–5: Title/command of accommodated employees, number of accommodations granted/denied, employees permitted to continue working unvaccinated, and those allowed weekly testing.
- Demand No. 30: Communications between DSNY and the Citywide Panel regarding undue hardship.
- Demand No. 40: Policies and directives concerning weekly testing as an accommodation.
- Demand No. 45: COVID-relief funds received from federal, state, or City sources, which directly bear on the feasibility of providing testing as an accommodation.

### III.    Damages

Defendants refused to provide comparator earnings information necessary to calculate Plaintiff's damages.

- Demand No. 58: Records showing earnings and compensation of sanitation workers with comparable seniority, required to calculate overtime and lost wages.

### IV.    Decision-Making Data and Spreadsheets

Defendants refused to produce the datasets and tracking tools showing how accommodation requests were reviewed and decided. These materials are essential to proving disparate treatment and pretext, as they demonstrate what factors reviewers tracked, how Plaintiff's request compared to others, and who actually made the decisions.

- Demand Nos. 1, 6: DSNY master spreadsheet and reviewer spreadsheet for Plaintiff's request (produced in Rizzo but withheld here).
- Demand No. 32: Number of DSNY employees who raised abortion-based objections and the outcomes of those requests.
- Demand No. 34: Identity of reviewers of Plaintiff's request (Defendants identified only Citywide Panel members; Plaintiff still does not know the DSNY reviewer).
- Demand No. 44: Disciplinary records and discrimination complaints for the individuals who decided Plaintiff's request.

Defendants have failed to provide meaningful responses to Plaintiff's discovery requests, relying instead on boilerplate objections that do not satisfy their obligations under the Federal Rules. "If a party objects to discovery requests, that party bears the burden of showing why discovery should be denied." Freydl v. Meringolo, 2011 WL 2566087, at *3 (S.D.N.Y. June 16, 2011). Specifically, the resisting party must show how, "despite the broad and liberal construction afforded the federal discovery rules, each request is not relevant, or how each request is overly broad, burdensome, or oppressive, by submitting affidavits or offering evidence revealing the nature of the burden." Fin. Guar. Ins. Co. v. Putnam Advisory Co., LLC, 314 F.R.D. 85, 87–88 (S.D.N.Y. 2016) (internal citations omitted). Defendants can make no such showing here.

### D.  ESI

The above document demands included requests for ESI. Plaintiff requested to meet and confer specifically on ESI on June 6, 10, 24. On June 30, Plaintiff proposed search terms to assist the

Defendants in their ESI search, and also served additional document demands with explicit and narrowed ESI demands (see section B above). On July 28 and again on August 13, Plaintiff followed up with Defendant about ESI production. Defendants informed Plaintiff that its ESI attorney was out sick for a month which has delayed them.

However, after meeting and conferring, Plaintiff is concerned as the Defendants objected to running certain searches (despite never submitted any written response or objection to these demands) and that the ESI search had not even started. Plaintiff needs this ESI to conduct depositions of Defendants' employees and Plaintiff is now in a difficult position where discovery deadlines will become a problem if the Court does not intervene.

**Conclusion:**

Because the withheld documents are directly relevant to Plaintiff's claims and Defendants' defenses, and because the absence of this discovery prejudices Plaintiff's ability to conduct depositions, Plaintiff respectfully requests that the Court compel Defendants to produce the requested discovery in full and extend Plaintiff's time to complete depositions until such production is made.

Sincerely,

Christina Martinez, Esq.