Case No. 25-cv-00097 (LJL)
ECF Case

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

VINCENT MAIORINO,

Plaintiff,

-against-

CITY OF NEW YORK,

Defendant.

# PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION FOR SANCTIONS

MARTINEZ & LOIACONO, PLLC
Attorneys for Plaintiff
245 Bricktown Way, Suite J
Staten Island, New York 10309
(347) 215-4543

Dated: March 21, 2026

# TABLE OF CONTENTS

Page(s)

TABLE OF AUTHORITIES ……………………………………………………...….iii,iv

PRELIMINARY STATEMENT …………………………………………...…..……… 1

STANDARD OF LAW ……………………………………………………………………..2

ARGUMENT ………………………………………………………………………………4

I. DEFENDANT FAILS TO MEET ITS BURDEN TO SHOW THE FACTUAL ALLEGATIONS ARE UTTERLY LACKING IN SUPPORT ………………………4

A. Defendant's Motion Fails Because It Relies on Disputed Evidence That Cannot Support Rule 11 Sanctions……………………………………………...4

B. Defendant's Motion Rests on a Fundamental Mischaracterization of Plaintiff's Allegations ……………………………………………………………..6

C. Defendant's Own Evidence Does Not Refute Plaintiff's Allegations and Instead Corroborates Them …………………………………………………….8

1. The DSNY Spreadsheet Does Not Refute Plaintiff's Allegations But Supports Them……………………………………………..8

2. Defendant's Reliance on 30(b)(6) Testimony Fails as a Matter of Law and Fact……………………………………………………..9

II. PLAINTIFF'S COUNSEL HAD A REASONABLE BASIS FOR THE ALLEGATIONS IN THE SECOND AMENDED COMPLAINT……….. 10

A. Plaintiff's Allegations Are Grounded in Extensive First-Hand Experience and Corroborated by Documentary Evidence………………………..10

B. The Challenged Allegations Arise from a Single, Well-Documented Policy Framework………………………………………………………………..11

C. The Evidentiary Record Establishes a Substantial Factual Basis for SAC's Allegations……………………………………………………………12

1. Citywide Panel Voting Records Reflect the Same Disqualifying Criteria……12

2. The City's Own Legal Arguments Reflect the Same Disqualifying Standard Alleged in the Second Amended Complaint……………..…………13

3. Eichenholtz Testimony Confirms That Religious Beliefs Were Disqualified Unless Doctrinally Mandated ........................................15

4. Agency-Level Denial Letters Reflect the Same Doctrinal Framework.........17

5. Contemporaneous Statements from City Personnel Confirming Policy........18

6. Agency Guidance Requiring Clergy Verification and Doctrinal Support.......19

7. The City's Own Policies and Guidance Required Reliance on Religious Authority and Membership in Recognized Religious Organizations.....................................................................20

III. DEFENDANT'S MOTION FOR SANCTIONS IS ITSELF SANCTIONABLE, AND PLAINTIFF IS ENTITLED TO ATTORNEYS' FEES.......................................23

CONCLUSION ........................................................................... 25

## TABLE OF AUTHORITIES

**Cases** **Page(s)**


*Baratta v. New York City Police Department,*
(Index No. 85223/2022) (Sup. Ct., Richmond Cty)……………………………………………..16

*Breuninger v. Williams,*
*No. 20 CIV. 7033 (JPC),* 2023 WL 4211030 (S.D.N.Y. June 27, 2023)…………………...3,5,6

*E. Gluck Corp. v. Rothenhaus,* 252 F.R.D. 175 (S.D.N.Y. 2008)………………………………3

*Farrell v. New York City Fire Department,*
(Index No. 532029/2022) (Sup. Ct., Kings Cty)……………………………………………...16

*Fennessy v. New York City Fire Department,*
No. 25-CV-01337 (ENV) (JRC) (E.D.N.Y.)……………………………………………………15

*Finley v. New York City Fire Department,*
(Index No.717617/2022)(Sup. Ct. Queens Cty)……………………………………………...24

*Furno v. New York City Police Department,*
(Index No. 85021/2023) (Sup. Ct., Richmond Cty)……………………………………………..14

*Kane v. DeBlasio,* 19 F.4th 152 (2d Cir. 2021)…………………………………………...8,20

*Koar v. United States*, No. 96 Civ. 5166, 1997 WL 1038181 (S.D.N.Y. Sept. 2, 1997)……….24

*Lee v. City of New York,* No. 1:24-cv-04772 (VMS) (E.D.N.Y.)…………………………...19

*Lopes v. City of New York* (Index No. 505607/2025) (Sup. Ct. Kings Cty)…………………..17

*Lotocky v. Elmira City School Dist.*, 102 F.Supp.3d 455(W.D.N.Y. 2015)…………………..2,3

*Louis Vuitton Malletier v. Dooney & Bourke, Inc.,*
No. 04 Civ. 5316, 2006 WL 2807213 (S.D.N.Y. Sept. 28, 2006)………………………………3

*Macari v. City of New York* (Index No. 160961/2024) (Sup.Ct. New York Cty)………………18

*Mahoney v. Yamaha Motor Corp. U.S.A.*, 290 F.R.D. 363 (E.D.N.Y. 2013)……………………3

*Masterpiece Cakeshop, Ltd. v. Colorado Civil Rights Comm'n,*
584 U.S. 617, 638 (2018)……………………………………………………………………….23

**Cases** **Page(s)**

*Nakash v. U.S. Dep't of Just.*, 708 F. Supp. 1354 (S.D.N.Y. 1988)……………………………25

*Pannonia Farms, Inc. v. USA Cable,* 426 F.3d 650 (2d Cir. 2005)…………………………….3

*Park v. Seoul Broad. Sys. Co.,*No.
05 Civ. 8956, 2008 WL 619034 (S.D.N.Y. Mar.6, 2008)……………………………………….3

*Pfizer Inc. Securities Litigation*, 288 F.R.D. 297 (S.D.N.Y. 2013)…………………………….5

*Rodick v. City of Schenectady*, 1 F.3d 1341 (2d Cir. 1993)……………………………………4

*Schlaifer Nance & Co., Inc. v. Estate of Warhol,* 194 F.3d 323 (2d Cir.1999)…………………3

*Schimenti v. City of New York* (Index No. 85075/2022)(Sup. Ct., Richmond Cty)……………17

*Sichel v. UNUM Provident Corp.*, 230 F. Supp. 2d 325 (S.D.N.Y. 2002) ……………… …….3

*Smith v. New York City Fire Department* (Index No. 533033/2022) (Sup. Ct. Kings Cty)…..16

*Sportvision, Inc. v. MLB Advanced Media, LP*,
2022 WL 19406558 (S.D.N.Y. Dec. 5, 2022)…………………………………………………..4,5

*Storey v. Cello Holdings, L.L.C.*, 347 F.3d 370 (2d Cir. 2003)…………………………………3

*Troeger v. JetBlue Airways Corp.*,
No. 23-CV-10859 (JPO), 2026 WL 554692 (S.D.N.Y. Feb. 27, 2026)…………………………5

*Veluzzi v. City of New York,* No. 1:25-cv-03712 (NRB) (S.D.N.Y.)…………………………..14

**Statutes**

Fed. R. Civ. P. 11……………………………………………………...1,2,3,4,5,6,8,11,23,24,25

## PRELIMINARY STATEMENT

Defendant's motion is an extraordinary request for sanctions built on an entirely ordinary litigation dispute: Defendant disagrees with Plaintiff's allegations and points to purportedly competing evidence. That is not Rule 11.

The City seeks sanctions on the theory that certain allegations in the Second Amended Complaint ("SAC") are "knowingly false" because they are supposedly contradicted by deposition testimony from the City's own defense attorney and a spreadsheet showing that some Catholic employees received accommodations. But Rule 11 does not authorize sanctions whenever a defendant produces contrary evidence or offers its own preferred account of disputed facts. To the contrary, the law is clear that sanctions are reserved for allegations that are utterly lacking in factual support, not allegations that a defendant disputes, denies, or seeks to explain away.

The motion fails for three independent reasons. First, Defendant's proof is legally insufficient as a matter of law. Deposition testimony from Defendant's own witness, particularly an attorney charged with defending the City's vaccine mandate litigation, does not conclusively establish falsity; at most, it creates a factual dispute. The same is true of Defendant's spreadsheet. Rule 11 is not a vehicle for deciding credibility, resolving competing inferences, or adjudicating disputed factual questions before discovery.

Second, Defendant's motion attacks a version of Plaintiff's allegations that Plaintiff did not plead. Plaintiff does not allege that no Catholic employee was ever approved, or that only members of certain religions were ever accommodated. Rather, Plaintiff alleges that the City used doctrinal and orthodoxy-based criteria to evaluate religious accommodation requests, disqualifying beliefs that were not "required" by the applicant's religion, that diverged from official doctrine, or that conflicted with the views of religious authorities such as the Pope, while favoring beliefs

associated with recognized religious organizations having longstanding objections to vaccination. Defendant repeatedly mischaracterizes those allegations as absolute claims and then purports to refute them with isolated approvals and denials. That is a straw man, not a basis for sanctions.

Third, and most significantly, Plaintiff's allegations are not merely colorable, they are supported by a substantial evidentiary record. Plaintiff's counsel has spent years litigating vaccine mandate accommodation cases involving the same City policies and practices, at every level of the process. Through that work, counsel has obtained agency denial letters, internal City records, Citywide Panel voting materials, sworn testimony, guidance documents, contemporaneous communications, and the City's own litigation submissions in other cases. Those materials repeatedly reflect the very doctrinal framework challenged in the SAC. Indeed, in several cases the City has expressly argued that Catholic employees' objections failed because they reflected individualized application rather than official Church doctrine or the views of Pope Francis. The City cannot advance that reasoning in one forum and seek sanctions here by claiming allegations of that same reasoning are "knowingly false."

This motion is not a good-faith effort to enforce Rule 11. It is an attempt to convert a merits dispute into satellite sanctions litigation, to force Plaintiff to litigate factual issues prematurely, and to penalize counsel for pleading claims grounded in extensive firsthand experience and documentary support. Because Defendant cannot show that Plaintiff's allegations are utterly lacking in support, the motion should be denied. And because the motion itself is frivolous, Plaintiff respectfully submits that Defendant should bear the fees incurred in opposing it.

## STANDARD OF LAW

The movant in a Rule 11 sanctions motion arguing that complaint allegations are false bears the initial burden of proof and must meet a "high bar" to obtain sanctions. *See Lotocky v. Elmira*

*City School Dist.*, 102 F.Supp.3d 455, 456 (W.D.N.Y. 2015); *see also Sportvision, Inc. v. MLB Advanced Media, LP*, 2022 WL 19406558, at *4 (S.D.N.Y. Dec. 5, 2022) ("the standard for awarding Rule 11 sanctions is high"), *report and recommendation adopted sub nom. Sportvision, Inc. v. MLB Advanced Media, L.P.*, 2023 WL 2706904 (S.D.N.Y. Mar. 30, 2023); *Breuninger v. Williams*, No. 20 CIV. 7033 (JPC), 2023 WL 4211030, at *4 (S.D.N.Y. June 27, 2023) (Given the "concern for encouraging zealous advocacy," "courts maintain a high bar for establishing a Rule 11 violation."); *Mahoney v. Yamaha Motor Corp. U.S.A.*, 290 F.R.D. 363, 368 (E.D.N.Y. 2013) ("A high standard exists for imposing Rule 11 sanctions."); *E. Gluck Corp. v. Rothenhaus*, 252 F.R.D. 175, 178 (S.D.N.Y. 2008) ("[c]ourts maintain a high bar for establishing a Rule 11 violation").

Rule 11 sanctions are considered an "extraordinary remedy", *Lotocky,* 102 F. Supp. 3d at 456, issued "only in extraordinary circumstances." *E. Gluck Corp.*, 252 F.R.D. at 178 (citing *Park v. Seoul Broad. Sys. Co.,*No. 05 Civ. 8956, 2008 WL 619034, at *1 (S.D.N.Y. Mar.6, 2008)). The movant is required to demonstrate that the factual contentions in the complaint are "utterly lacking in support" rather than merely weak or unlikely to prevail. *Storey v. Cello Holdings, L.L.C.*, 347 F.3d 370, 388 (2d Cir. 2003) (*quoting O'Brien v. Alexander,* 101 F.3d 1479, 1489 (2d Cir.1996)). "Courts typically look for statements which rise to the level of direct falsehoods before they find that sanctions are warranted pursuant to Rule 11(b)(3)." *Sportvision, Inc.*, 2022 WL 19406558, at *4; *Sichel v. UNUM Provident Corp.*, 230 F. Supp. 2d 325, 332 (S.D.N.Y. 2002).

Any decision concerning the imposition of sanctions "should be made with restraint and discretion." *Pannonia Farms, Inc. v. USA Cable,* 426 F.3d 650, 652 (2d Cir. 2005). "Sanctions should always be a (very) last resort." *Louis Vuitton Malletier v. Dooney & Bourke, Inc.,* No. 04 Civ. 5316, 2006 WL 2807213, at *6 (S.D.N.Y. Sept. 28, 2006) (*citing Schlaifer Nance & Co., Inc. v. Estate of Warhol,* 194 F.3d 323, 333–34 (2d Cir.1999)). As the Second Circuit has instructed, a

court must "resolve all doubts in favor of the signer" of the pleading. *Rodick v. City of Schenectady*, 1 F.3d 1341, 1350 (2d Cir. 1993).

## ARGUMENT

### I. DEFENDANT FAILS TO MEET ITS BURDEN TO SHOW THE FACTUAL ALLEGATIONS ARE UTTERLY LACKING IN SUPPORT

#### A. Defendant's Motion Fails Because It Relies on Disputed Evidence That Cannot Support Rule 11 Sanctions

Defendant fails to meet its burden under Rule 11. The City's motion is premised on the assertion that Plaintiff's factual allegations in the SAC are "knowingly false" because they are purportedly contradicted by Defendant's own evidence. In support, Defendant relies primarily on the deposition testimony of Eric Eichenholtz, Managing Attorney for the New York City Law Department, and a DSNY spreadsheet that purportedly reflects the religions of employees granted or denied accommodations. That showing falls far short of demonstrating that Plaintiff's allegations utterly lack evidentiary support or were made without a reasonable basis, as Rule 11 requires. Even accepting Eichenholtz's testimony, Rule 11 does not require counsel to credit a defendant's self-serving statements over substantial contrary documentary evidence, prior agency determinations, and counsel's own litigation experience reflecting the opposite. At most, Defendant points to supposedly conflicting evidence, which cannot support sanctions. Rather, deposition testimony from a defense witness, particularly its *own* counsel, denying the existence or application of a policy does not render contrary allegations "knowingly false" within the meaning of Rule 11. Notwithstanding that such testimony has not been subject to cross-examination or credibility challenges, it at most presents a disputed issue of fact that cannot be resolved on a sanctions motion. *Sportsvision*, 2022 WL 19406558, at *8.

In *Sportvision,* a case cited by Defendant, the court denied sanctions and expressly rejected the argument that deposition testimony and competing documentary evidence could render a claim sanctionable. *Id.* at *6-8. The court held that such evidence, at most, raises a factual dispute and, standing alone, does not establish that a party's factual allegations are false or that its conduct was objectively unreasonable. *Sportsvision*, at *8. The court further emphasized that, on a Rule 11 motion, the movant "must point to evidence that conclusively establishes that Plaintiffs' factual allegations are false, utterly lacking in factual support, or objectively unreasonable," which defendant had failed to do. *Id.* at *4.

Courts consistently hold that Rule 11 is not a mechanism to resolve disputed facts or credibility issues. *In re Pfizer Inc. Securities Litigation*, 288 F.R.D. 297, 331 (S.D.N.Y. 2013). This is because "a motion for sanctions cannot serve as an end-run around the fact finder's exclusive role to resolve factual disputes." *Id.* at 331. Moreover,

> Part of the job of an advocate is to argue to the fact finder that all the evidence, taken together, leads to the inference most favorable to the advocate's client. The fact that some percipient witnesses disagree with the ultimate conclusion drawn by the advocate does not ineluctably demonstrate that the conclusion is baseless or even incorrect.
> *Id.* at 330.

And this principle has been consistently applied. In *Troeger v. JetBlue Airways Corp.*, the court, refusing sanctions, reiterated that "FRCP 11 does not permit courts to resolve contested factual disputes or make credibility determinations." *Troeger v. JetBlue Airways Corp.*, No. 23-CV-10859 (JPO), 2026 WL 554692, at *6 (S.D.N.Y. Feb. 27, 2026) (internal citations omitted). Similarly, in *Breuninger v. Williams*, the court declined to award sanctions where defendants relied on deposition testimony from another litigation to argue that the complaint contained false allegations, noting that "resolving those factual disputes would be equivalent to resolving the

factual disputes that make up this case." *Breuninger v. Williams*, No. 20 CIV. 7033 (JPC), 2023 WL 4211030, at *8 (S.D.N.Y. June 27, 2023).

Here, the City fails to meet its high Rule 11 burden. Its only evidence is its own unchallenged defense attorney's deposition testimony in other litigation and a spreadsheet showing some Catholics were approved by DSNY. This does not "conclusively" establish that any of the Plaintiff's allegations are "utterly lacking in factual support." At most, it creates a factual dispute which is insufficient to warrant sanctions.

### B. Defendant's Motion Rests on a Fundamental Mischaracterization of Plaintiff's Allegations

As further reflected in the documentary record discussed below, Defendant's motion rests on a fundamental mischaracterization of the SAC. Defendant asserts that Plaintiff alleged that all Catholic employees were categorically or automatically denied religious accommodations. (Def.'s Mem. of Law, ECF No. 60 at 6). That is not what the SAC alleges.

Rather, Plaintiff alleges that the City applied criteria disqualifying religious beliefs that were not "required" by an employee's faith or that diverged from official religious doctrine. As applied, those criteria operated to disqualify Catholic employees whose beliefs did not align with public statements by the Pope. As the SAC explains:

> It was the policy and practice of the Defendant to deny requests if the applicant's opposition to vaccination *was not "required" by his religion,* or where other members of the faith did not oppose the vaccine. Accordingly, under the City's policies, Catholics were categorically disqualified from receiving a religious accommodation because their beliefs diverged from the Pope's official position. SAC ¶173.

Thus, Plaintiff's use of the term "categorically" describes *how the City's criteria operated as applied*, not a claim that no Catholic employee was ever granted an accommodation. Indeed, Plaintiff expressly alleges that decisionmakers were vested with broad and subjective discretion, resulting in inconsistent outcomes where those criteria were sometimes enforced and sometimes

disregarded. SAC ¶¶ 205-206. Defendant's attempt to refute Plaintiff's allegations by pointing to instances in which some Catholic employees were granted accommodations therefore attacks a strawman. Both can be true: the City can maintain policies that categorically discriminate against Catholics, while some individual employees nevertheless receive accommodations through discretionary departures from those policies.

The same flaw pervades Defendant's remaining arguments. Plaintiff does not allege uniform outcomes; Plaintiff challenges the framework the City used to evaluate religious accommodation requests. That framework assessed beliefs by reference to religious doctrine, the views of religious authorities, and whether a belief was "required" by the applicant's faith. As alleged, beliefs that diverged from institutional doctrine, or reflected individualized, conscience-based objections, were routinely deemed insufficient. SAC ¶¶ 161–169.

In practice, that framework necessarily disadvantaged Catholic applicants. Because the Pope publicly supported vaccination and Catholicism does not "require" refusal, Catholic applicants asserting conscience-based religious objections were deemed to lack a valid religious basis and were denied accommodations on that ground. SAC ¶¶ 165, 170–172.

The same is true of Defendant's argument regarding "preferential treatment" of certain religious groups. Plaintiff does not allege that accommodations were exclusively granted to members of particular religions. Rather, Plaintiff alleges that the City's policies favored applicants whose beliefs aligned with recognized religious organizations that maintained formal doctrinal objections to vaccination, while disqualifying individualized or not doctrinally mandated beliefs. SAC ¶¶ 257, 263, 499.

In short, Defendant attempts to recast Plaintiff's allegations as absolute propositions that can be refuted by pointing to isolated approvals or contrary testimony. But Plaintiff's allegations are

not framed in those terms. They challenge the criteria and framework applied by the City, and the discriminatory effect of those criteria, not the existence of uniform outcomes in every case.

### C. Defendant's Own Evidence Does Not Refute Plaintiff's Allegations and Instead Corroborates Them

#### 1. The DSNY Spreadsheet Does Not Refute Plaintiff's Allegations But Supports Them

Against this backdrop, the DSNY spreadsheet does not support Defendant's position—it undermines it. The existence of approvals for some Catholic applicants confirms that the City's policies were applied inconsistently and with discretion. As the Second Circuit held in *Kane v. De Blasio*, a policy is not generally applicable where decisionmakers sometimes apply the stated criteria and other times disregard them, including by granting exemptions to some Catholic applicants despite the Pope's public support for vaccination. 19 F.4th 152, 169 (2d Cir. 2021). That is exactly what Defendant's evidence reflects. The City's reliance on selective approvals therefore does not refute Plaintiff's claims—it demonstrates that the challenged framework was applied in a non-uniform, discretionary manner, which results in strict scrutiny.

Additionally, the existence of approvals for some lucky Catholics does not negate Plaintiff's allegation that the City's policies, as structured and applied, discriminated against and disqualified Catholic applicants whose beliefs were deemed inconsistent with official Church doctrine. Nor does it render those allegations "knowingly false." At most, Defendant's evidence raises a disputed issue as to how the City's policies were applied in practice, precisely the type of factual dispute that cannot be resolved on a Rule 11 motion.

Further, the data contained in the very DSNY spreadsheet on which Defendant relies is consistent with Plaintiff's allegations. Of 358 Catholic applicants, 254 were denied—approximately 71%—representing a substantial—and indeed overwhelming—majority. ECF No. 65-1 at 1. Far from disproving Plaintiff's claims, this pattern is entirely consistent with Plaintiff's

allegations regarding how the City's policies operated in practice and, at minimum, underscores that Defendant's evidence falls far short of the "conclusive" showing required under Rule 11.

**2. Defendant's Reliance on 30(b)(6) Testimony Fails as a Matter of Law and Fact**

Defendant relies on Eichenholtz's testimony in *Chinchilla*, where summary judgment was denied—confirming it raises, at most, factual disputes. 1:23-cv-08986-DEH, ECF Doc. 114. But Defendant's reliance on Eichenholtz's testimony in *Rizzo* is particularly misplaced because that testimony confirms, not contradicts, Plaintiff's allegations. Eichenholtz's testimony is devastating to Defendant's position because in that deposition, Eichenholtz admitted that the City denied Rizzo, a concededly sincere Catholic employee, whose objection was concededly grounded in Catholic belief, on the ground that Catholicism did not itself prohibit vaccination.

Eichenholtz testified that the Citywide Panel concluded it was "evident from the record" that "Mr. Rizzo is a practicing Catholic and has sincerely held beliefs grounded in Catholicism." (ECF Doc. 61-4, Eichenholtz Dep. 30:6-11, 30:17-21, 31:5-10, 31:21-25.) Eichenholtz further testified that the Panel understood the religious basis for Rizzo's objection: He acknowledged that the Panel understood Rizzo's belief that his body is a Temple of the Holy Spirit, which Eichenholtz acknowledged is a tenet of the Catholic faith. (*Id.* at 49:5-10.) He also testified that he understood Rizzo's statement that "the Church warns we must always obey our conscience as this is where God's voice echoes to us and if we were to deliberately go against it, we would condemn ourselves," and understood that to mean that violating Rizzo's conscience would carry "some spiritual repercussion based on his religious beliefs." (*Id.* at 59:25-60:15.) As Eichenholtz put it, Rizzo was "informed by his reflection and understanding of what God would want for him." (*Id.* at 61:8-10.)

Yet despite accepting Rizzo's sincerity and understanding that his objection was grounded in

Catholic doctrine, the Panel denied his request because it viewed his objection as merely an "individual decision[]" rather than a "practice[] that would prohibit vaccination." (*Id.* at 60:20–61:4; 35:8–13.) Eichenholtz explained that "as a Catholic, a Catholic could make a *choice* informed by Catholic doctrine of whether it's prayerful contemplation, whether it's reviewing Scripture, etc. etc., that with respect to the COVID vaccine they don't want to take the vaccine." (*Id.* at 35:2–8.) In other words, even where a Catholic employee articulated a sincere objection grounded in Catholic belief, the City treated that objection as insufficient unless Catholicism itself *required* refusal of the vaccine. Eichenholtz's written denial in *Rizzo:* "Articulated beliefs (practicing Catholic) does not preclude vaccination" also reflects precisely that approach. (*Id.* at 28:21–29:14.) This rationale demonstrates the exact allegation in the SAC that Defendant now labels "false": that the City disqualified religious objections that were not "required" by the employee's religion or that diverged from official doctrine. Far from rendering Plaintiff's allegations "knowingly false," Defendant's own 30(b)(6) testimony substantiates them.

Accordingly, Defendant's reliance on this testimony is misplaced, as it does not demonstrate that Plaintiff's allegations are "knowingly false," but instead confirms that they are grounded in the City's own stated rationale and, at minimum, are far from "utterly lacking in support."

## II. PLAINTIFF'S COUNSEL HAD A REASONABLE BASIS FOR THE ALLEGATIONS IN THE SECOND AMENDED COMPLAINT

### A. Plaintiff's Allegations Are Grounded in Extensive First-Hand Experience and Corroborated by Documentary Evidence

Far from being "knowingly false," Plaintiff's allegations are grounded in a substantial evidentiary record and counsel's extensive experience litigating these very issues. Counsel did not speculate or rely on conjecture in formulating the SAC; rather, the allegations arise from years of direct litigation experience involving the very policies and practices at issue. Since the onset of the

COVID-19 vaccine mandate in 2021, Plaintiff's counsel has represented scores of New York City employees in connection with religious accommodation requests. Counsel has been involved at every stage of the process, from initial submissions at the agency level through agency determinations, appeals to the Citywide Panel, arbitration proceedings, and litigation in both state and federal courts, including appeals to the Appellate Division. Through that work, counsel has observed how the City's policies were applied in practice and defended in litigation, including interactions with supervisors, Equal Employment Opportunity personnel, and human resources representatives. Counsel has reviewed numerous agency determinations, participated in appeals and arbitration proceedings, and analyzed Citywide Panel decisions. Through discovery in multiple actions, counsel has also obtained internal City records, including Citywide Panel spreadsheets and related materials reflecting the stated rationales for denials, and reviewed the City's litigation positions concerning those same policies. Thus, the allegations in the SAC arise from this first-hand experience and documentary record and, at minimum, establish that counsel had a more than reasonable basis to allege that the City's policies and practices operated as described. Rule 11 requires no more. As discussed below, the documentary record further corroborates and independently supports Plaintiff's allegations.

**B. The Challenged Allegations Arise from a Single, Well-Documented Policy Framework**

Although Defendant attempts to divide Plaintiff's allegations into separate categories, e.g., alleged "categorical" denials of Catholic applicants, reliance on statements by the Pope, and preferential treatment of certain religious groups, those allegations are not distinct. They arise from the same underlying policy and practice: the City's use of doctrinal and orthodoxy-based criteria to evaluate religious accommodation requests.

Specifically, Plaintiff alleges that the City assessed religious accommodation requests not

based solely on whether an employee held a sincere religious belief, but by reference to whether that belief was "required" by the employee's religion, consistent with official religious doctrine, or aligned with the views of religious leadership. As a result, individualized, conscience-based religious objections-particularly those that diverged from institutional positions-were frequently deemed insufficient. *See* SAC ¶¶ 161-173.

This framework necessarily encompasses each of the categories Defendant seeks to isolate. A policy that disqualifies beliefs not mandated by religious doctrine will, in operation: (i) disadvantage Catholic applicants whose beliefs diverge from public statements by the Pope; (ii) rely on religious authorities to assess the validity of beliefs; and (iii) favor applicants affiliated with recognized religious organizations that maintain formal doctrinal prohibitions.

Because the same evidentiary record supports each of the challenged allegations, Plaintiff addresses that record once, rather than repeating the same evidence in response to each of Defendant's arguments. The evidence set forth below, drawn from agency determinations, internal City records, sworn testimony, and the City's own litigation positions, demonstrates that Plaintiff's allegations are grounded in substantial factual support and, at a minimum, are far from "utterly lacking in support" under Rule 11.

**C. The Evidentiary Record Establishes a Substantial Factual Basis for SAC's Allegations**

In addition to counsel's first-hand experience, Plaintiff relies on internal City records, agency determinations, litigation documents, and sworn affirmations obtained through discovery and related proceedings, all of which reflect the very policies and practices challenged in the SAC. The following are illustrative examples, drawn from documents, testimony, and determinations obtained in related matters, that demonstrate the reasonableness of Plaintiff's allegations regarding how the City's policies operated in practice.

**1. Citywide Panel Voting Records Reflect the Same Disqualifying Criteria**

Just as the Citywide Panel spreadsheet in *Rizzo* revealed the disqualifying framework at issue, the Citywide Panel Voting Spreadsheet produced in this case—capturing the contemporaneous reasoning of Panel members, including Eichenholtz—likewise confirms the factual basis for Plaintiff's allegations. A true and accurate copy is attached as Exhibit 1.

In Maiorino's appeal, Eichenholtz, serving as a Citywide Panel member on behalf of the Law Department, stated: "*Articulated belief does not preclude vaccination. Employee admits vaccination is a personal choice based on religious practices.*" This contemporaneous statement reflects the very framework alleged in the SAC. The Panel did not dispute that Maiorino's objection was religious in nature. Rather, it rejected the objection because it was not deemed sufficiently mandatory or doctrinal, that is, because the employee was not required to refuse vaccination and retained "choice" under his religious beliefs. In other words, the Panel disqualified religious objections that were not "required" by the employee's religion or that were deemed inconsistent with official religious doctrine.

This internal documentation, created by the very decisionmakers applying the policy in real time, provides direct evidence of how the City's criteria operated in practice and confirms that Plaintiff's allegations are grounded in the City's own stated reasoning. At a minimum, this evidence forecloses any argument that Plaintiff's allegations are "knowingly false" or "utterly lacking in support.

**2. The City's Own Legal Arguments Reflect the Same Disqualifying Standard Alleged in the Second Amended Complaint**

The City's own litigation positions in other cases further confirm the reasonableness of Plaintiff's allegations. In multiple matters, the City, through the Law Department, the same entity that voted on the Plaintiff's appeal through the Citywide Panel, has expressly argued that Catholic

employees cannot sustain religious objections to vaccination where those objections reflect an individual application of faith rather than a doctrinal mandate and relying heavily on the views of the Pope or official Church statements.

For example, in *Veluzzi v. City of New York*, No. 1:25-cv-03712-NRB, in the Southern District of New York, the City acknowledged that the plaintiff objected to the vaccine based on his belief that the body is created in God's image and must be preserved as a Temple, yet argued that these beliefs were merely "personal opinions" that do not constitute a "*religious* belief." (ECF No. 16, Def.'s Mem. of Law at 23 (emphasis in original).) The City explained that the plaintiff's views were based on his "personal interpretation" of his faith and were "completely at odds" with both how he was raised by his Catholic parents, and the position of "the leader of his faith at the time the Mandate was instituted, namely, Pope Francis." (*Id.* at 22).

Similarly, in *Furno v. New York City Police Department* (Index No. 85021/2023)(Sup. Ct. Richmond Cty), the City rejected a Catholic petitioner's objection to the vaccine--grounded in opposition to abortion and the use of fetal cell lines--on the basis that his beliefs were "not based in the very religion to which allegedly maintains a sincerely held religious belief." (NYSCEF Doc. No. 29 at 16). In support, the City relied extensively on statements by Pope Francis and the Vatican endorsing vaccination, arguing that Catholic doctrine permits vaccination:

> Petitioner claims he is a "conscientious and devout Catholic" and that he "cannot in good conscience accept a vaccine, which employs cell lines derived from aborted fetuses as it violates fundamental aspects of his Catholic faith." Yet Petitioner ignores the reality that the Catholic faith, as attested to by the Sovereign Pontiff Francis ("Pope Francis") advocates for vaccination against Covid-19. Pope Francis has explicitly stated that the Covid-19 vaccine is "authorized by respective authorities" and is an "act of love." Indeed Pope Francis himself, arguably Catholicism's most prominent physical embodiment of the "Holy Spirit" foo concern to Petitioner herein, has been vaccinated against Covid-19. Moreover, the Vatican's Congregation for the Doctrine of the Faith stated, "It is morally acceptable to receive Covid-19 vaccines that have used cell lines from aborted fetuses in their research and production process," and further, "all vaccinations recognized as clinically safe and effective can be used

> in good conscience with the certain knowledge that the use of such vaccines does not constitute formal cooperation with the abortion from approved by Pope Francis.

*Id.* at 15–16.

Likewise, in *Fennessy v. New York City Fire Department*, No. 25-CV-01337 (ENV) (JRC)(E.D.N.Y), the City argued that the plaintiff's objection was a "personal choice, and not a bona fide religious belief as he alleges his beliefs have leaned more to his faith in God and not the Church itself." (ECF No. 15 at 13.)

These are not isolated arguments. They are the City's own stated positions, advanced by the Law Department, the same entity that adjudicated Plaintiff's appeal through the Citywide Panel. In case after case, the City has expressly taken the position that Catholic employees' objections fail where they reflect individualized conscience rather than conformity with official Church doctrine or the views of religious authorities, including the Pope. That is exactly the framework alleged in the SAC. The City cannot, on the one hand, advance this reasoning in litigation and, on the other, seek sanctions by claiming that allegations of that very practice are "knowingly false." This contradiction is dispositive: at a minimum, it establishes that Plaintiff's allegations have ample factual basis and cannot, as a matter of law, be deemed sanctionable.

**3. Eichenholtz Testimony Confirms That Religious Beliefs Were Disqualified Unless Doctrinally Mandated**

In multiple cases[1], the City, through Mr. Eichenholtz, the very Citywide Panel member who voted to deny Maiorino on behalf of the Law Department, articulated and applied the same standard challenged in the SAC: that a religious belief must be part of a broader, doctrinally mandated system, rather than an individualized, idiosyncratic objection, in order to qualify for accommodation.

---

[1] See Part I.C.2, *supra*, where Eichenholtz's testimony is discussed in detail and confirms the application of the very criteria challenged in the SAC.

This was not an isolated rationale. It reflects the Citywide Panel's policy. In *Farrell v. New York City Fire Department*(Index No. 532029/2022) (Sup. Ct. Kings Cty), the City denied a Catholic employee's objection—grounded in his belief that abortion was a "grave sin" and supported by Church teachings (NYSCEF Doc. Nos. 27, 37)—on the basis that it did not constitute a "comprehensive religious belief system" and was instead an "isolated teaching." (NYSCEF Doc. No. 42 ¶¶ 26–27.)

The same reasoning was applied across cases. In *Baratta v. New York City Police Department* (Index No. 85223/2022, NYSCEF Doc. No. 5) and *Smith v. New York City Fire Department* (Index No. 533033/2022, NYSCEF Doc. No. 7, NYSCEF No 10 at 8-9), the City rejected religious objections rooted in the sanctity of life, opposition to abortion, and the belief that the body is a temple of God—concluding that such beliefs were merely "personal" and to qualify as a religious belief, they must be part of "a comprehensive religious belief system" and not simply an "isolated teaching". (*Baratta*, NYSCEF Doc. No. 26; *Smith*, NYSCEF Doc. No. 44.)

These determinations reflect a consistent rule: religious beliefs were disqualified unless they were deemed doctrinally required or aligned with institutional religious authority. As even this Court has recognized, denial of an accommodation on that basis would trigger strict scrutiny. ECF Doc. 49 at n.8 (noting that rejection of a belief as not part of a "comprehensive religious belief system" would implicate governing Free Exercise standards).

That is precisely the framework alleged in the SAC. In each instance, the Citywide Panel rejected religious beliefs because they were not framed as part of a "comprehensive" or doctrinally mandated religious system, but rather as individualized applications of faith. But religious opposition to abortion, and to participation in or benefit from practices connected to it, is not an "isolated teaching," but a core component of a broader, well-established religious framework

adhered to by many Catholics. By labeling such beliefs as "isolated" or "personal," the City imposed a requirement that a qualifying religious belief must be mandated by the religion itself or aligned with official doctrine.

This is not speculation—it is the City's own repeated articulation of its decision-making criteria. At a minimum, it establishes that Plaintiff's allegations have a clear factual basis and cannot be deemed "utterly lacking in support" under Rule 11.

**4. Agency-Level Denial Letters Reflect the Same Doctrinal Framework**

The documentary record available to Plaintiff's counsel prior to filing the SAC also included numerous agency-level denial letters applying the same doctrinal framework alleged here, namely, evaluating religious accommodation requests by reference to official Church doctrine rather than the employee's sincerely held beliefs.

For example, in *Lopes v. City of New York* (Index No. 505607/2025) (Sup. Ct. Kings Cty) NYSCEF Doc Nos: 10 and 11, a written denial issued by the Office of the New York City Comptroller rejected a Catholic employee's request on the ground that "many religions, including Roman Catholicism… have no prohibition against vaccination" and that the Catholic Church has stated vaccination is "morally acceptable." The denial thus turned not on the employee's sincerely held beliefs, but on the agency's assessment of Catholic doctrine.

Similarly, in *Schimenti v. City of New York*[2] (Index No. 85075/2022) (Sup.Ct. Richmond Cty) NYSCEF Doc. No. 8, the Department of Buildings denied a Catholic employee's request, based on his religious objection to vaccines developed or tested using aborted fetal cell lines, stating that

[2] Notably, in *Schimenti*, the Appellate Division, Second Department affirmed the annulment of the denial and ordered reinstatement with back pay and damages, holding the determination arbitrary and capricious even under the deferential Article 78 standard. That decision reinforced counsel's reasonable understanding that the City's practice of evaluating religious accommodation requests by reference to perceived religious doctrine, rather than the employee's sincerely held beliefs, was legally infirm.

"the sincerely held religious beliefs that you identified do not prohibit you from taking the COVID vaccine." (NYSCEF Doc. No. 8.) As the plain language reflects, the agency did not dispute the sincerity of the employee's beliefs. Rather, it denied the request because it concluded that Roman Catholicism does not prohibit vaccination. These determinations reflect the precise practice alleged in the SAC: disqualifying religious objections that are not deemed doctrinally mandated or consistent with official religious teachings. They further demonstrate that Plaintiff's allegations are grounded in actual agency decisions available to counsel prior to filing.

**5. Contemporaneous Statements from City Personnel Confirming the Policy**

Plaintiff's counsel's understanding of the City's practices was further informed by contemporaneous statements from City employees involved in the accommodation process.

For example, Plaintiff's counsel represented Anita Hernandez, a New York City Detective Investigator, during the accommodation process. At that time, Ms. Hernandez reported that she had been told by her agency's Equal Employment Opportunity Officer that she did not qualify for a religious accommodation because the Pope had stated that the vaccine was acceptable and because her identification as a Born-Again Christian was not recognized as a valid religious basis. Plaintiff's counsel promptly memorialized these representations in a contemporaneous letter to the City dated February 10, 2022. A true copy of the letter is attached as Exhibit 2. Ms. Hernandez later confirmed these same facts under oath. A true copy of the Hernandez Dep. at 66:15–67:5 is attached as Exhibit 3. The City ultimately resolved these claims through settlement.

Similarly, in *Macari v. City of New York* (Index No. 160961/2024), NYSCEF Doc. No. 18 an NYPD Lieutenant submitted a sworn affidavit stating that he was informed by multiple NYPD supervisors and attorneys that Catholic employees would not be approved for religious accommodations. (NYSCEF Doc. No. 18 at 7.) This sworn testimony reflects that, at the

operational level, City personnel understood and communicated the policy in precisely the manner alleged in the SAC.

That understanding was not isolated. Through the course of representing many City employees in these matters, Plaintiff's counsel received consistent reports from individuals involved in the process, including City personnel, that Catholic applicants faced categorical barriers to approval. These contemporaneous accounts provide additional support for Plaintiff's allegations and further demonstrate that those allegations were grounded in real-world observations and firsthand reports, not speculation.

**6. Agency Guidance Requiring Clergy Verification and Doctrinal Support**

In *Lee v. City of New York*, Case No. 1:24-cv-04772-VMS (E.D.N.Y.), materials reviewed by counsel prior to filing the SAC included agency guidance governing religious accommodation requests. Those materials required applicants to submit, *inter alia*, a statement from a "religious or spiritual leader" confirming that the applicant was in good standing with the faith and identifying a tenet of the religion that prohibited vaccination. A true copy of the e-mail is attached as Exhibit 4. Such requirements necessarily evaluated religious objections by reference to denominational doctrine and religious authority, rather than the employee's sincerely held beliefs. They further reflect a framework that privileged applicants whose beliefs aligned with recognized religious institutions and doctrinal mandates, while disfavoring individualized or conscience-based objections. At minimum, these materials provide a direct factual basis for the SAC's allegations regarding the City's use of doctrinal criteria, its reliance on religious authority (including statements by religious leaders), and its preference for beliefs tied to established religious organizations, thereby foreclosing any claim that those allegations were "knowingly false" or lacking evidentiary support.

This requirement is consistent with numerous NYPD denial letters reviewed by counsel, which cited "insufficient or missing religious documentation" as the basis for denial, further confirming that the City evaluated requests by reference to external religious verification and documentation rather than the applicant's sincerely held beliefs. A true copy is attached as Exhibit 5.

**7. The City's Own Policies and Guidance Required Reliance on Religious Authority and Membership in Recognized Religious Organizations**

Plaintiff's counsel had a more than reasonable basis to allege that the City evaluated religious accommodation requests by reference to public statements of religious authorities (including the Pope) and membership in recognized religious organizations because the City's own materials expressly directed decisionmakers to do exactly that.

As an initial matter, the denial letter issued to Maiorino by DSNY offered two avenues of appeal: submission to the Citywide Panel or to Scheinman Arbitration & Mediation Services ("SAMS"). The written standards governing SAMS appeals explicitly directed that "[r]equests shall be denied where the leader of the religious organization has spoken publicly in favor of the vaccine" and were only "considered for recognized and established religious organizations (e.g., Christian Scientists)." A true copy of the DSNY denial letter is attached as Exhibit 6. These standards, already deemed unconstitutional by the Second Circuit in *Kane v. De Blasio*, 19 F.4th 152, 168-69 (2d Cir. 2021), evidence that the City formally adopted criteria requiring reliance on public statements by religious leaders and institutional affiliation.

Moreover, the City's continued use of these standards even after the Second Circuit had already deemed them unconstitutional and its application to exclude Maiorino from the SAMS appeal track because his religious leader (the Pope) publicly supported vaccination is itself discriminatory. Under the City's framework, Maiorino was effectively barred from one of the two available appeal paths solely because of the perceived inconsistency between his religious beliefs and the views of

his faith's leadership. That exclusion is not cured by the fact that he pursued the alternative route. To argue otherwise is akin to telling a Hispanic employee that two avenues of relief exist, while structuring one so that Hispanic employees categorically cannot qualify, and then contending that no discrimination occurred because the employee chose the other option. The constitutional defect lies in the exclusion itself.

Although the Court previously held that Plaintiff's selection of the Citywide Panel, rather than SAMS, was insufficient to establish an as-applied violation, that ruling does not diminish the relevance of these standards as evidence of the City's broader policy framework. The issue here is not whether SAMS procedures were applied to Plaintiff, but whether counsel had a reasonable basis to allege that the City relied on religious authority in evaluating requests.

Internal communications from the Mayor's Office[3] demonstrate that City officials actively coordinated efforts across agencies to develop materials for use by SAMS arbitrators addressing religious objections to vaccination. In those communications, the City solicited a "point-by-point analysis" to rebut religious objections based on and abortion and requested that a City doctor "sign off" on a document that would "*essentially make the argument as to why this is BS*" for use by SAMS arbitrators in adjudicating appeals. A true copy of the e-mail is attached as Exhibit 7.

Consistent with that directive, the City's Department of Health transmitted a memorandum to SAMS emphasizing that the Catholic Church had deemed vaccination morally acceptable and urging reliance on such authority in evaluating objections. A true copy of the DOH memorandum is attached as Exhibit 8.

City agencies adopted and circulated similar guidance. For example, DCAS, whose

[3] The e-mail originated from Steven Banks, the First Deputy Commissioner & General counsel for the NYC Office of Labor Relations. The Office of Labor Relations "represents the Mayor in the conduct of all labor relations between the City of New York and labor unions representing employees of the City." https://www.nyc.gov/site/olr/about/about-olr.page

representative also served as a voting member on the Citywide Panel, prepared a memorandum stating that the COVID-19 vaccines were "*morally and ethically just from a religious standpoint*," relying on a compilation of statements from religious leaders across multiple faiths (including Catholicism) endorsing vaccination. A true copy of the DCAS memorandum is attached as Exhibit 9. These materials were circulated to guide agency personnel responsible for evaluating religious accommodation requests.

Additionally, contemporaneous public statements by City leadership further confirm this framework. In a September 23, 2021 press briefing, then-Mayor Bill de Blasio described the standards governing religious exemptions as requiring affiliation with a recognized religious group holding a longstanding doctrinal objection to vaccination. A true and accurate copy of the transcript of the Mayor's public comments is attached as Exhibit 10. Specifically, the Mayor stated: "*There are, I believe it's two well-established religions, Christian Science and Jehovah's Witnesses that have a history on this, of a religious opposition… So, we are saying very clearly, it's not something someone can make up individually. It has to be, you're a standing member of a faith that has a very, very specific long-standing objection.*" Ex. 10 at 17. The Mayor emphasized that major religious authorities, including the Pope, had endorsed vaccination, and confirmed that these standards were "100%" set through a "*process that involved the City*". *Id.* at 17.

Internal email communications further reflect the same evaluative approach. For example, DCAS circulated materials addressing whether an employee could assert a religious objection where the leader of the employee's congregation supported vaccination, focusing on conflicts between individual beliefs and official religious positions. A true and accurate copy of the DCAS email is attached as Exhibit 11. The distribution of these materials to decisionmakers reinforces that the City evaluated requests by comparing applicants' beliefs to those of religious authorities.

Clearly, these standards were not confined to a separate, unrelated process. They reflect the City's coordinated development and dissemination of criteria to evaluate religious objections by reference to religious doctrine and the views of religious authorities, criteria directly relevant to the Citywide Panel, which included representatives from the same agencies.

Where decisionmakers operate within a framework informed by hostility toward or skepticism of particular religious beliefs, the process is not neutral under the Free Exercise Clause. See *Masterpiece Cakeshop, Ltd. v. Colorado Civil Rights Comm'n*, 584 U.S. 617, 638 (2018) (holding that government action violates the Free Exercise Clause where it is tainted by an earlier lack of religious neutrality). Thus, even apart from the specific procedural path Plaintiff selected (Option 1), evidence that the City instructed decisionmakers to reject religious objections based on perceived inconsistency with religious doctrine, including public statements by the Pope, bears directly on the neutrality of the overall process.

Taken together, this evidence demonstrates that the City's reliance on membership in established, organized religion with long-standing objections to vaccination and public statements by religious authorities was not incidental, but was embedded in the policies, guidance, and materials used to evaluate religious accommodation requests across agencies. At a minimum, this record provided Plaintiff's counsel with a substantial and reasonable basis to allege that the City relied on such statements in practice.

## III. DEFENDANT'S MOTION FOR SANCTIONS IS ITSELF SANCTIONABLE, AND PLAINTIFF IS ENTITLED TO ATTORNEYS' FEES

Defendant's motion for sanctions is not merely meritless, it represents a misuse of Rule 11 warranting an award of attorneys' fees to Plaintiff for the costs incurred in opposing it.

Indeed, courts have recognized that "the filing of a motion for sanctions is itself subject to the requirements of the rule and can lead to sanctions." Fed. R. Civ. P. 11 advisory committee's note;

*see also Koar v. United States*, No. 96 Civ. 5166, 1997 WL 1038181, at *2 n.2 (S.D.N.Y. Sept. 2, 1997) ("[T]he making of a frivolous Rule 11 motion can itself result in sanctions against the movant."). Rule 11 is not a vehicle for resolving factual disputes or testing the sufficiency of a party's evidence. Defendant's attempt to repackage disputed factual issues as sanctionable conduct is improper as a matter of law. Where, as here, a sanctions motion lacks a colorable basis, an award of fees is appropriate. *See* Fed. R. Civ. P. 11(c)(2) (authorizing an award of "the reasonable expenses, including attorney's fees, incurred for the motion").

The impropriety of Defendant's motion is underscored by the fact that it is advanced by counsel who is aware that the challenged allegations are grounded in the City's actual policies and practices. In *Finley v. New York City Fire Department*, Index No.717617/2022 (Sup. Ct. Queens Cty), Defendant, through the same attorney, Sonya Chazin, the supervising attorney in <u>this</u> action who participated in the meet-and-confer and was served with the Rule 11 safe harbor notice, relied on the very doctrinal framework she now claims is "knowingly false." In that matter, Sonya Chazin, on behalf of the City, argued that a firefighter's religious accommodation request was properly denied because his beliefs were inconsistent with the teachings of his church, citing statements from the Greek Orthodox Archdiocese encouraging vaccination and rejecting religious exemptions. A true copy of Sonya Chazin's Affirmation is attached as Exhibit 12, p. 8, ¶¶26-28).

Defendant cannot, on the one hand, advance this doctrinal framework to defend its actions in other litigation, and on the other, seek sanctions by claiming that allegations of such a framework are "knowingly false." The use of Rule 11 under these circumstances is not a good-faith effort to enforce the rule, but an improper attempt to deter Plaintiff from advancing well-supported claims. Allowing such use of Rule 11 would undermine its purpose. "Allowing adversaries an unrestricted ability to initiate a process in which competent attorneys must justify, under the threat of sanctions,

actions taken in good faith, does not serve the purposes of Rule 11." *Nakash v. U.S. Dep't of Just.*, 708 F. Supp. 1354, 1370 (S.D.N.Y. 1988). Rule 11 was intended to reduce abusive litigation practices, not to create additional satellite litigation over non-frivolous claims.

Defendant's conduct is particularly unwarranted because Plaintiff expressly advised Defendant, in response to its Rule 11 safe harbor letter, that the arguments it now advances are legally insufficient as a matter of law. Plaintiff explained that deposition testimony denying the existence of a policy does not render contrary allegations "knowingly false," and that, at most, such testimony presents a factual dispute to be resolved through discovery, not sanctions. Plaintiff further warned that any Rule 11 motion based on that theory would be improper and would warrant an application for fees. A true copy of Plaintiff's letter is attached as Exhibit 13. Despite that clear notice, Defendant proceeded with the instant motion.

For all these reasons, Plaintiff respectfully requests that the Court deny Defendant's motion and award Plaintiff the reasonable attorneys' fees and expenses incurred in opposing it.

## CONCLUSION

For these reasons, Defendant's motion should be denied in its entirety, and Plaintiff should be awarded the reasonable attorneys' fees and expenses incurred in opposing it.

Dated: Staten Island, New York
March 21, 2026

Respectfully submitted,

**Martinez & Loiacono PLLC**

Christina Martinez, Esq.
245 Bricktown Way, Suite J
Staten Island NY 10309
*Attorneys for the Plaintiff*

**CERTIFICATION**

Counsel of Record hereby certifies that pursuant to the Individual Practices in Civil Cases of Honorable Lewis J. Liman, United State District Judge, the enclosed brief is produced using 12-point Times New Roman type and is 25 pages long.

Dated: Staten Island, New York
March 21, 2026

Respectfully submitted,

**Martinez & Loiacono PLLC**

Christina Martinez, Esq.
245 Bricktown Way, Suite J
Staten Island NY 10309
*Attorneys for the Plaintiff*