Case No. 25-cv-00097 (LJL)
ECF Case

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

VINCENT MAIORINO,

Plaintiff,

-against-

CITY OF NEW YORK,

Defendant.

# PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT

MARTINEZ & LOIACONO, PLLC
Attorneys for Plaintiff
245 Bricktown Way, Suite J
Staten Island, New York 10309
(347) 215-4543

Dated: March 23, 2026

## TABLE OF CONTENTS

**Page(s)**

TABLE OF AUTHORITIES …………………………………………………….…....iii,iv,v

PRELIMINARY STATEMENT ……………………………………………...….……… 1

STATEMENT OF THE FACTS……………………………………………………………1

A. The City's Vaccine Mandate and Accommodation Framework……………………………1

B. Plaintiff's Accommodation Request and DSNY's Denial…………………………………2

C. The City's Appeal Process and the Plaintiff's Appeal to the Citywide Panel………………3

D. The City's Non-Neutral and Discriminatory Policies………………………………………..4

E. Citywide Panel Denial and Termination……………………………………………………..5

STANDARD OF LAW ……………………………………………………………………..5

LEGAL ARGUMENT … ……………………………………………………………………6

I. PLAINTIFF'S CLAIMS ARE TIMELY…………………….……………………..6

II. PLAINTIFF PLEADS A VIABLE FREE EXERCISE CLAIM………………………8

A. The City's Accommodation Policies Were Not Neutral Toward Religion……………….10

B. The City's Policies Were Not Generally Applicable……………………………………...14

C. The City's Policies Cannot Survive Strict Scrutiny………………………………………16

III. PLAINTIFF PLEADS VIABLE NYSHRL AND NYCHRL CLAIMS………………18

A. The SAC Plausibly Alleges a Sincere Religious Belief Conflicting With the Vaccine Mandate and Adequate Notice……………………………………………18

B. Plaintiff Properly Pleaded an Adverse Employment Action……………………………...22

C. Defendant Cannot Establish Undue Hardship at the Pleading Stage…………………….22

IV. THE SAC PLAUSIBLY ALLEGES THAT THE CITY FAILED TO ENGAGE IN THE COOPERATIVE DIALOGUE REQUIRED BY THE NYCHRL…………..24

CONCLUSION ………………………………………………………………………….. 25

**TABLE OF AUTHORITIES**

**Cases** **Page(s)**

*Annicelli v. N.Y.C. Police Dep't*,
No. 1:25-cv-02424 (RMB)(KHP) (S.D.N.Y. Jan. 9, 2026)……………………………………….22

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009)……………………………………………………..5

*Baker v. Home Depot*, 445 F.3d 541 (2d Cir. 2006)……………………………………………18,19

*Bath v. FDNY*, 2023 N.Y. Slip Op. 3855(U) (Sup. Ct New York Cty June 2, 2023)……………….25

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)…………………………………………...5

*Bergin v. N.Y. State Unified Ct. Sys.*,
2024 WL 4444434 (E.D.N.Y. Oct. 8, 2024)……………………………………………...21

*Berk v. Choy*, 146 S. Ct. 546 (2026)………………………………………………………6

*Bowles v. N.Y.C. Transit Auth.*, 285 F. App'x 812 (2d Cir. 2008)……………………………...22

*Burson v. Freeman*, 504 U.S. 191, 200 (1992)…………………………………………………16

*Carbone v. City of New York*, 2025 WL 3206658 (S.D.N.Y. November 17, 2025)……………….16

*Chinchilla v. N.Y.C. Police Dep't*, 2024 WL 3400526 (S.D.N.Y. July 12, 2024)………………7, 23

*Chinchilla v. New York City Police Dep't,* No. 23-cv-8986 (DEH),
2024 WL 3400526 (S.D.N.Y. July 12, 2024)……………………………………………..20

*Church of Lukumi Babalu Aye, Inc. v. City of Hialeah.*, 508 U.S. 520 (1993)…………………..8,14

*Doolittle v. Bloomberg L.P.*, 2023 WL 7151718 (S.D.N.Y. Oct. 31, 2023)………………………..18

*Employment Div. v. Smith*, 494 U.S. 872 (1990)…………………………………………………14

*EQT Infrastructure Ltd. V. Smith,*
861 F. Supp. 2d 220 (S.D.N.Y. 2012)…………………………………………………………1

*Farrell v. City of New York*, No. 1:23-CV-04329 (JLR),
2024 WL 3849333 (S.D.N.Y. Aug. 16, 2024)…………………………………………………..7,24

*Fulton v. City of Philadelphia*, 593 U.S. 522 (2021)………………………………………14,15,16,17

**Cases** **Page(s)**

*Gardner-Alfred v. Fed. Rsrv. Bank of N.Y.*, 143 F.4th 51 (2d Cir. 2025)……………………12,13,21

*Haczynska v. Mount Sinai Health Sys., Inc.*, 738 F. Supp. 3d 300 (E.D.N.Y. 2024)……………22

*Jackson v. N.Y. State Off. of Mental Health*, 2024 WL 1908533(E.D.N.Y. May 1, 2024)………22

*Kane v. DeBlasio*, 19 F.4th 152 (2d Cir. 2021)…………………………………………...11,15,16

*Koerner v. State of New York,* 62 N.Y.2d 442 (N.Y. 1984)……………………………………7

*Lee v. New York City Fire Dep't*, 2025 WL 2772855 (E.D.N.Y. Sept. 29, 2025)………………12,25

*Lynch v. City of New York*, 952 F.3d 67 (2d Cir. 2020)…………………………………………6

*Maita v. City of New York*, No. 24-cv-6559 (DG)(VMS) (E.D.N.Y. Feb. 2, 2026)……………12,25

*Masterpiece Cakeshop v. Colorado C.R. Comm'n*, 584 U.S. 617 (2018)……………………8,13,14

*Marsteller v. City of New York*, 217 A.D.3d 543 (1st Dep't 2023)……………………………..24,25

*Mihalik v. Credit Agricole Cheuvreux N. Am, Inc.*, 715 F.3d 102 (2d Cir. 2013)…………………18

*Mumin v. City of New York*, 2025 WL 2733229 (S.D.N.Y. Sept. 25, 2025)……………………13,22

*O'Leary v. City of New York,* 2024 WL 4167826 (S.D.N.Y. Sept. 12, 2022)……………………..14

*Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67 (2d Cir. 1998)………………………………22

*Rizzo v. N.Y.C. Dep't of Sanitation*, 2024 WL 3274455 (S.D.N.Y. July 2, 2024)…………22,23,25

*Roman Catholic Diocese of Brooklyn v. Cuomo*, 592 U.S. 14 (2020)…………………………16,17

*Smith v. New York City Fire Dep't*, 239 A.D.3d 870 (2d Dep't 2025)……………………………24

*Tandon v. Newsom*, 593 U.S. 61 (2021)……………………………………………………………16

*Thomas v. Review Bd., Ind. Empl. Sec. Div.*, 450 U.S. 707 (1981)………………………………...19

*Vasquez v. City of New York*, 2024 WL 1348702 (E.D.N.Y. Mar. 30, 2024)………………………23

*Vasquez v. City of New York*, 2025 WL 1560105 (E.D.N.Y. June 2, 2025)……………………21,22

*Whitfield v. City of New York*, 96 F.4th 504 (2d Cir. Mar. 15, 2024)……………..…………………7

**Cases** **Page(s)**

*Zelnick v. Fashion Inst. Tech.*, 464 F.3d 217 (2d Cir. 2006)........................................22

**Statutes**

C.P.L.R. § 7803.........................................................................................7,24

N.Y.C. Admin. Code § 8-107(3).......................................................................18

N.Y.C. Admin. Code § 8-107(3)(b)...................................................................22

N.Y.C. Admin. Code § 8-107(28)(a)..................................................................24

N.Y.C. Admin. Code § 8-107(28)(e)..................................................................24

N.Y.C. Admin. Code § 8-502(a).........................................................................7

N.Y.C. Admin. Code § 8-502(d).........................................................................6

N.Y. Exec. Law § 296(10)(a)........................................................................18,22

N.Y. Exec. Law § 297(5).....................................................................................6

N.Y. Exec. Law § 297(9).....................................................................................6

## PRELIMINARY STATEMENT

Plaintiff Vincent Maiorino ("Plaintiff") challenges the City's discriminatory administration of its religious-accommodation process. The Second Amended Complaint ("SAC") alleges that the City implemented policies that disqualified Catholic employees unless their beliefs conformed to official Church doctrine, rejected abortion-based objections as "factually incorrect," and dismissed individualized religious convictions as merely "personal preferences". These allegations plausibly state claims under the Free Exercise Clause, the New York State Human Rights Law ("NYSHRL"), and the New York City Human Rights Law ("NYCHRL").

## STATEMENT OF THE FACTS

Maiorino worked as a Sanitation Worker for the New York City Department of Sanitation ("DSNY") from 2005 until his termination in 2022. (SAC ¶¶18–21). A practicing Roman Catholic who received his Holy Sacraments, he believes that receiving COVID-19 vaccines developed or tested using abortion-derived fetal cell lines violates his religious conscience and the sanctity of life. (SAC ¶¶8, 22–28, 152–154). He believes that conscience, which is codified in the Catechism of the Catholic Church[1], is the voice of God speaking to his individual soul and "a law inscribed by God" "which he must obey". (SAC ¶¶ 27-29).

### A. The City's Vaccine Mandate and Accommodation Framework

On October 20, 2021, the City issued a mandate requiring City employees to receive a COVID-19 vaccine while expressly permitting medical and religious accommodations. (SAC ¶¶ 36-37). Defendants adopted procedures for submitting and reviewing these requests. (SAC ¶¶ 42-50).

---

[1] The *Catechism of the Catholic Church* is the Catholic Church's official compendium of doctrine, promulgated by Pope John Paul II by the Apostolic Constitution *Fidei Depositum* on October 11, 1992, https://www.vatican.va/content/john-paul-ii/en/apost_constitutions/documents/hf_jp-ii_apc_19921011_fidei-depositum.html. The Catechism is incorporated by reference. *See Fishman v. City of New Rochelle*, 2023 WL 1438731, at *4 (S.D.N.Y. Feb. 1, 2023) ("A document is incorporated by reference into the complaint where the complaint 'refers to' the document.") (quoting *EQT Infrastructure Ltd. V. Smith*, 861 F. Supp. 2d 220, 224 n.2 (S.D.N.Y. 2012)).

The City's policy allowed employees, including DSNY workers, to remain unvaccinated with weekly COVID testing both while requests were pending and after they were granted. (SAC ¶¶ 46, 50–52, 294–297). DSNY's policy likewise allowed accommodated employees to continue working with weekly PCR testing. (SAC ¶¶53–55).

**B. Plaintiff's Accommodation Request and DSNY's Denial**

Plaintiff located an "Affidavit of Vaccine Exemption on Religious Grounds for City Employees," completed and notarized it, and submitted it to DSNY. (SAC ¶¶ 61–62, 64–65). In that submission, Plaintiff notified DSNY that he was "a member of a recognized religious organization," that the vaccine was "contrary to [his] religious tenets and practices," and that he sought a religious accommodation. (SAC ¶¶ 63, 65-66).

DSNY did not require detailed religious explanations in initial accommodation requests. Its process was "open-ended," permitting employees to submit minimal information—such as a name, reference number, and a request for a "religious exemption"—to initiate the process. (SAC ¶¶ 67–69). Where a submission lacked detail, DSNY's policy was to follow up, not deny the request, including through standardized "Requests for Additional Information" seeking further detail about the employee's beliefs and the conflict with the vaccine requirement. (SAC ¶¶ 70–72, 100). This approach was consistent with Citywide guidance instructing EEO officers to make a limited inquiry where necessary—not to deny requests outright. (SAC ¶ 98).

Despite these policies and guidance, DSNY did not follow up with Plaintiff or request additional information, and instead denied his request without further inquiry. (SAC ¶¶ 99–100). The denial letter sent by DSNY on November 20, 2021, stated that Maiorino's submission "has not sufficiently demonstrated" grounds for exemption and advised that he would be placed on Leave Without Pay ("LWOP") unless vaccinated. (SAC ¶73).

**C. The City's Appeal Process and the Plaintiff's Appeal to the Citywide Panel**

The DSNY denial letter advised Plaintiff of his right to appeal. (SAC ¶74). The City's appeal procedures required employees to submit to DSNY any materials they wanted the Citywide Panel to review, and required DSNY to transmit both the original request materials and any additional submissions to the Panel. (SAC ¶¶ 77–78, 135–141).

The DSNY denial letter outlined two appeal options: under Option 1, an employee could appeal to the Citywide Panel, which consisted of the Law Department, DCAS, and the Commission on Human Rights, and under Option 2, an employee could appeal to Scheinman Arbitration and Mediation Services ("SAMS"). (SAC ¶¶ 76, 82). The letter explained that SAMS appeals were subject to certain requirements, including that "Requests shall be denied where the leader of the religious organization has spoken publicly in favor of the vaccine", where the objection is "personal" in nature, or where the applicant was not a member of a "recognized and established religious organizations (e.g., Christian Scientists)". (SAC ¶82). Additionally, the employees' requests had to be "in writing by a religious official (e.g., clergy)". (SAC ¶82). The City was represented at the SAMS appeal hearings by attorneys from the Office of Labor Relations or the Law Department. (SAC ¶82). Under Option 2, if the appeal was granted, the employee was permitted to work while submitting to weekly PCR testing. (SAC ¶83).

Maiorino did not qualify under the SAMS requirements as laid out in the DSNY denial letter. He timely appealed to the Citywide Panel under Option 1 by submitting an e-mail to DSNY's EEO Office as instructed. (SAC ¶¶131, 142). Plaintiff's appeal, submitted to DSNY, explained that his objection to vaccination was based on sincerely held Catholic beliefs, including opposition to vaccines produced using aborted fetal cell lines and the Church's teachings on the primacy of conscience. (SAC ¶ 143). He cited Roman Catholic teachings and the Catechism, which provides

that a person is required to obey his conscience. (SAC ¶ 143). The Citywide Panel received Plaintiff's appeal and notified him by email that it was under review. (SAC ¶ 146).

He later supplemented the appeal with a legal memorandum and personal statement further describing the religious basis for his objection. (SAC ¶¶148–154). He cited Scripture and Catholic teaching, explaining that vaccines developed with aborted fetal cell lines are a direct violation of God's commandments and the sanctity of life. (SAC ¶¶ 152, 154). Maiorino also expressed a deeply held religious belief that life begins at conception, and that abortion constitutes murder in violation of the Sixth Commandment. *Id.* He further expressed that participating in or benefiting from any product derived from abortion, including COVID-19 vaccines, would violate his conscience and religious convictions. (SAC ¶¶ 152, 154). DSNY confirmed receipt of the supplemental submission, stating it had uploaded the materials to Plaintiff's appeal file. (SAC ¶ 155). The Citywide Panel received and reviewed all of Plaintiff's submissions. (SAC ¶ 157).

Maiorino was placed on LWOP on November 28, 2021 while his appeal was pending because he could not receive the COVID-19 vaccination. (SAC ¶¶ 147, 333).

**D. The City's Non-Neutral and Discriminatory Policies**

The Department of Citywide Administrative Services ("DCAS") implemented non-neutral and discriminatory standards across City agencies (SAC ¶¶158-160), directing reviewers to deny religious accommodation requests unless an applicant's "religious leader" formally opposed vaccination (SAC ¶¶171-175), instructing agencies to deny applicants whose beliefs did not conform to the official doctrine of an established, organized religion (SAC ¶¶166-169, 176, 178) as well as those raising abortion-based objections (which the City unilaterally deemed to be "inaccurate") (SAC ¶¶193-194, 201-203, 207-212), and advising decision-makers that the

COVID-19 vaccines were "morally and ethically just" for Catholics because the Vatican deemed them "morally acceptable". (SAC ¶¶195-198).

And the City systematically treated Catholic religious objections as merely "personal" choices or preferences because they were not endorsed by the Pope or "required" by the Church, rendering Catholics ineligible for accommodation. (SAC ¶¶170, 172, 179-181). The City claimed these religious beliefs did not "qualify" for accommodation because they were not part of a "comprehensive religious belief system", and thus were merely "personal" preferences or choices. (SAC ¶¶187-192, 217-218).

### E. Citywide Panel Denial and Termination

On January 4, 2022, the Citywide Panel denied the appeal without communicating with Maiorino. (SAC ¶¶268–272). The Citywide Panel explicitly stated in its denial that it had considered "all of the documentation submitted to the agency and the additional information you submitted in connection with the appeal" in making its determination. (SAC ¶¶ 268-270).[2] The City terminated his employment on February 11, 2022. (SAC ¶286). The vaccine mandate was later lifted on February 9, 2023. (SAC ¶288). Yet Plaintiff remains terminated. (SAC ¶ 406).

## STANDARD OF LAW

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual

[2] The Court previously rejected this allegation based on a different document submitted by Defendant—a follow-up DSNY email that did not include the Citywide Panel's full reasoning. *See* ECF No. 49 at n.7. The SAC alleges the actual Panel determination, which states that it "carefully reviewed … all of the documentation submitted … and the additional information submitted in connection with the appeal." (SAC ¶¶ 268–270). A true copy of this denial is attached as **Exhibit 1**. The separate DSNY communication does not contradict that allegation; it reflects only that multiple communications were sent. The SAC now clarifies this sequence and resolves any perceived inconsistency. (SAC ¶¶ 268–270, 283).

allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (cleaned up). "When there are well-pleaded factual allegations, a court should assume their veracity and *then* determine whether they plausibly give rise to an entitlement to relief." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) (quoting *Iqbal*, 556 U.S. at 679). The pleading requirement "does not impose a probability standard at the motion-to-dismiss stage." *Mosaic Health, Inc. v. Sanofi-Aventis U.S., LLC*, 156 F.4th 68, 77 (2d Cir. 2025) (noting that plausibility does not equate to probability). And "on a Rule 12(b)(6) motion it is not the province of the court to dismiss the complaint on the basis of the court's choice among plausible alternatives. *Id.* All reasonable inferences that can be drawn from the complaint must be construed in the light most favorable to the plaintiff. *See Lynch v. City of New York*, 952 F.3d 67, 75 (2d Cir. 2020)."By requiring no more than a statement of the claim, Rule 8 establishes implicitly, but with unmistakable clarity that evidence of the claim is *not* required." *Berk v. Choy*, 146 S. Ct. 546, 553 (2026).

## LEGAL ARGUMENT

### POINT I: PLAINTIFF'S CLAIMS ARE TIMELY

The City argues that Plaintiff's claims are untimely because they should have been brought in an Article 78 proceeding. That argument fails because Plaintiff asserts independent causes of action. First, Plaintiff asserts a federal constitutional claim under the Free Exercise Clause, which is governed by the three-year statute of limitations under 42 U.S.C. § 1983. Second, the NYSHRL and NYCHRL explicitly grant individuals aggrieved by unlawful discriminatory practices the right to bring a private cause of action within three years[3]. N.Y. Exec. Law § 297(9). N.Y.C. Admin.

[3] The statute of limitations for both the NYCHRL and NYSHRL is governed by C.P.L.R. § 214(2). See also N.Y.C. Admin. Code § 8-502(d) and N.Y. Exec. Law § 297(5).

Code § 8-502(a). The District Court for the Southern District addressed this precise issue, rejecting the City's argument that failure-to-accommodate claims must be brought in an Article 78 proceeding. *Chinchilla v. New York City Police Dep't, et. al.*, No. 23-cv-8986 (DEH), 2024 WL 3400526, at *10-11 (S.D.N.Y. July 12, 2024). The court held that these claims are "substantively about…discrimination" and thus subject to a three-year limitations period—a characterization that applies equally here. *Id.* at *11; see also *Farrell v. City of New York*, No. 1:23-CV-04329 (JLR), 2024 WL 3849333, at *4 (S.D.N.Y. Aug. 16, 2024).

"[I]t is the petitioner's choice whether to bring an Article 78 proceeding—with the attendant summary procedures, deferential review of agency action, and limited menu of relief—or a plenary action." *Whitfield v. City of New York*, 96 F.4th 504, 528 (2d Cir. Mar. 15, 2024). The Second Circuit held that dismissal of a plenary action is improper because an Article 78 court lacks authority to grant the full relief available for constitutional and state discrimination claims. *Id.* at 534. Here, an Article 78 court would lack "the power to award the full measure of relief" the Plaintiff seeks. *Id.* at 534. Article 78 provides limited, deferential review of agency action and narrow relief—generally annulment, remand, or reinstatement, with damages available only if incidental. C.P.L.R. §§ 7803, 7806. By contrast, Plaintiff seeks relief under the First Amendment, NYSHRL, and NYCHRL, including compensatory damages and attorney's fees, which are unavailable in Article 78. Accordingly, Plaintiff may pursue these claims in a plenary action subject to a three-year limitations period.

The New York Court of Appeals has rejected the argument the City advances here. In *Koerner v. State of New York*, the court held that the Human Rights Law provides an independent cause of action against government employers, subject to a three-year limitations period, and is

not displaced by Article 78. 62 N.Y.2d 442, 447–49 (1984). Accordingly, the City's attempt to confine Plaintiff's statutory claims to Article 78 is foreclosed.

**POINT II: PLAINTIFF PLEADS A VIABLE FREE EXERCISE CLAIM**

Plaintiff challenges the City's administration of its religious accommodation process, which denied exemptions by evaluating denominational doctrine, relying on the views of religious leadership, and declaring abortion-related objections "factually incorrect." (SAC ¶¶158-160, 166-176, 178-181, 187-198, 201-203, 207-212, 217-218).[4]

**A. The City's Accommodation Policies Were Not Neutral Toward Religion**

"[T]he [Supreme] Court [has] made clear that the government, if it is to respect the Constitution's guarantee of free exercise, cannot impose regulations that are hostile to the religious beliefs of affected citizens and cannot act in a manner that passes judgment upon or presupposes the illegitimacy of religious beliefs and practices. The Free Exercise Clause bars even 'subtle departures from neutrality' on matters of religion." *Masterpiece Cakeshop v. Colorado C.R. Comm'n*, 584 U.S. 617, 638 (2018) (quoting *Church of Lukumi Babalu Aye, Inc. v. City of Hialeah.*, 508 U.S. 520, 543(1993)).

Plaintiff adequately pleads that Defendants' policies were not neutral. The Complaint contains specific, well-pleaded factual allegations[5] showing that the City implemented and enforced policies that discriminated against religious beliefs based on doctrinal conformity and

---

[4] The City devotes substantial argument to the claim that Plaintiff's allegations are false based on deposition testimony from its own counsel, attaching extrinsic materials in an attempt to dispute the pleadings. But "[w]hen evaluating whether a plaintiff has stated a claim, the court cannot consider 'matters outside the pleadings'." *Berk v. Choy*, 146 S. Ct. 546, 553 (2026) (quoting Rule 12(d)). And this Court has already recognized that approach is improper on a Rule 12(b)(6) motion. (ECF No. 49 at n.1). To the extent the City contends Plaintiff's allegations are false, it has already raised that argument in its Rule 11 motion, where the question is whether the allegations are "utterly lacking in support." Plaintiff's opposition to that motion demonstrates conclusive that they are not.

[5] Plaintiff not only pleads the specific discriminatory policies implemented by Defendant, but also identifies particular documents, emails, memoranda, and other City communications applying those policies. (SAC ¶¶195-198, 181-186, 187-192, 199, 201-204, 211-212, 266)

denominational identity. (SAC ¶¶ 158-160, 166-169, 170-176, 178-181, 214-222, 236). These detailed allegations more than satisfy Plaintiff's burden at the pleading stage to show that Defendant's policies were not neutral but instead overtly discriminatory. Defendants' policies categorically discredited individualized religious beliefs, concluding that Catholic applicants could not oppose vaccination because the Church did not officially do so, and rejecting abortion-based objections as factually "inaccurate." (SAC ¶¶158-160, 166-169, 170-176, 178-181, 193-194, 201-203, 207-212, 214-222, 236). Plaintiff holds a sincerely held religious belief that life begins at conception, that abortion constitutes murder, and that receiving a COVID-19 vaccine developed or tested using fetal cell lines would violate his religious convictions on conscience and the sanctity of life. (SAC ¶¶8, 22–28, 152–154). Defendant rejected these objections, disqualifying religious beliefs that were not "required" institutionally. (SAC ¶¶163-173).

The City also denied applicants whose objections were based on individualized religious beliefs. (SAC ¶¶161-173, 177-192, 218, 225, 231, 236). As applied, this meant Catholic employees with sincere religious objections were dismissed as holding merely "personal beliefs," because Defendant held Catholic doctrine did not "require" refusal. (SAC ¶¶ 165, 170–173). For Plaintiff, the City concluded that because Catholic doctrine permits vaccination, his refusal was a matter of personal choice—not a religious obligation entitled to accommodation. (SAC ¶¶ 218-219).

This Court has already recognized that application of the Citywide Panel's doctrinal framework—i.e., rejecting a belief as not "religious" because it is not part of a "comprehensive religious belief system"—triggers strict scrutiny. (ECF No. 49 at n.8) (citing Eichenholtz affirmations describing the Citywide Panel's decision-making framework; *see* SAC ¶¶187-192). The Court declined to apply strict scrutiny only because it believed the Panel was not "properly informed" of Plaintiff's beliefs. The SAC cures that factual misunderstanding. It alleges,

with documentary support, that the Panel reviewed all of Plaintiff's submissions, including his detailed explanation of his beliefs. (SAC ¶¶ 135–141, 268–270; Ex. 1). Plaintiff thus plausibly alleges that the Panel applied that same doctrinal framework to him, triggering strict scrutiny.

Additionally, even though such proof[6] is not required at this stage, documents produced in this action further confirm that the same framework was applied to Plaintiff. As reflected in the Citywide Panel Voting Spreadsheet—incorporated by reference and integral to the SAC (*see* SAC ¶¶ 128-130, 268)—both the Law Department and DCAS expressly relied on the same disqualifying criteria alleged in the SAC. A true copy of the Citywide Panel Voting Spreadsheet is attached as **Exhibit 2**. Eichenholtz voted to deny Plaintiff's appeal, stating: "Articulated belief does not preclude vaccination. Employee admits vaccination is a personal choice based on religious practices." Ex 2. And DCAS denied the request, stating: "Employee states in supplemental response that his religious belief permits vaccination. Opposition is based on his conception of free will and not on a sincerely held religious belief." Ex 2. These determinations mirror the City's policy, as alleged in the SAC: religious objections were disqualified where they were idiosyncratic and not deemed doctrinally "required" or aligned with official religious authority, and were instead labeled "personal choice" and thus insufficiently religious. (SAC ¶¶ 166–170, 173).

The arbitrariness—and constitutional defect—of the City's framework is evident when applied to Plaintiff's actual submission. Plaintiff explained that, under Catholic teaching, he was obligated to follow his conscience, which required him to refuse vaccines developed using aborted fetal cell lines. He stated that receiving such a vaccine would make him "complicit with the murder of

[6] To be clear, Plaintiff is not required to "prove" his claims at the pleading stage. A Rule 12(b)(6) motion tests only whether the complaint contains well-pleaded factual allegations that plausibly state a claim. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556, 570 (2007) (a complaint need only "state a claim to relief that is plausible on its face" and "may proceed even if it strikes a savvy judge that actual proof of the facts alleged is improbable"). The SAC does so in detail, expressly alleging both the unconstitutional policies at issue and their application to Plaintiff. That is all that is required.

unborn babies," violate God's commandments, and contravene the sanctity of life. (SAC ¶ 154). The Panel did not dispute the sincerity or religious nature of these beliefs. Instead, it dismissed them as a matter of "choice" because Catholic doctrine does not categorically prohibit vaccination.

That is precisely the constitutional violation identified by this Court: disqualifying a sincerely held religious belief because it is not "required" by the religion and thus not "part of a comprehensive religious belief system". (ECF No. 49 at n.8). The record now confirms that this was not hypothetical—it is exactly how Plaintiff's request was adjudicated.

Additionally, the SAC cites documentary evidence that provides further evidence of the City's unconstitutional policies. A DCAS memorandum concluded that all three vaccines were "morally and ethically just from a religious standpoint" despite aborted fetal cell usage based upon statements by the "Vatican City State". (SAC ¶¶195-198). In an email, DCAS instructed to deny abortion-based accommodation requests. (SAC ¶199). Another email shows that both DCAS and the Law Department advised agency decisionmakers on religious accommodation policies and instructed them to treat objections based on aborted fetal cell lines as factually unsupported, including by asserting that such cell lines were not used to develop COVID-19 vaccines. (SAC ¶¶201-204). A Citywide Panel member even acknowledged in an email to Eichenholtz that he was instructed to categorically reject objections based on abortion. He questioned the policy himself, asking: "My understanding from our conversation is that those [aborted fetal cell lines] would not constitute sincerely held religious beliefs, what then would?" (SAC ¶¶ 211-212). And in other cases, the Panel rejected individualized beliefs as not "required" by an employee's faith, deeming them mere "personal" preferences or choices. (SAC ¶¶ 181–186).

These same policies were condemned in *Kane v. De Blasio*, where the Second Circuit struck down the City's framework denying accommodations based on religious leaders' views or where

objections were "personal" because it improperly judged the validity of beliefs based on institutional views. 19 F.4th 152, 168 (2d Cir. 2021). Likewise, in *New Yorkers for Religious Liberty, Inc. v. City of New York ("NYFRL")*, 125 F.4th 319, 335 (2d Cir. 2024), the Second Circuit reversed dismissal where the plaintiff alleged the Citywide Panel rejected her beliefs as "too idiosyncratic to be religious." Maiorino alleges that the City denied his request on the same unconstitutional basis, because his Catholic beliefs were "too personal" and not endorsed by Church leaders. (SAC ¶¶ 218-219). The Second Circuit also reversed dismissal of another plaintiff's claim where reliance on a "personal relationship with God" was dismissed as "merely personal." *Id.* at 334.

In *Lee v. New York City Fire Dep't*, 2025 WL 2772855, at *2 (E.D.N.Y. Sept. 29, 2025), the court denied the City's motion to dismiss a Free Exercise claim, holding that the plaintiff's allegations "fit squarely within the framework" of *NYFRL* where the City limited accommodations to "recognized and established religious organizations" and rejected individualized beliefs as "personal." *See also Maita v. City of New York*, 1:24-cv-06559-DG, ECF Doc. 29 at 10-11 (February 2, 2026) (same). The same policy exists here.

In *Gardner-Alfred v. Federal Reserve Bank of N.Y.*, the Second Circuit confirmed that a Catholic is entitled to Free Exercise protection even if his view is not endorsed by the Church. 143 F.4th 51, 65 (2d Cir. 2025). Maiorino alleges that his objection was dismissed precisely because it was not mandated by Catholicism. (SAC ¶¶ 166-176, 179-181, 187-192, 217-19). These allegations more than suffice to state a Free Exercise claim. *See also Sughrim v. New York*, 690 F.Supp 3d 355, 374 (S.D.N.Y. 2023) (government employer's practice of denying accommodation requests based on its own assessment as to whether the religious conduct is a "requirement of an applicant's faith" plainly runs afoul of the First Amendment). The Second Circuit also held that

an accommodation may not be denied on the basis the plaintiff is mistaken about the use of aborted fetal cells in vaccine development. *Gardner-Alfred*, 143 F.4th at 66-67 (citing *Jolly v. Coughlin*, 76 F.3d 468, 476 (2d Cir. 1996)). Here, the City did exactly that. It adopted a policy rejecting abortion-based objections as scientifically inaccurate (SAC ¶¶ 193-194, 201-203, 207-212), and instructed decisionmakers to deny such objections (SAC ¶¶ 199, 201-204, 211-212).

Likewise, in *Carbone v. the City of New York*, the court denied the City's motion to dismiss the plaintiff's failure-to-accommodate and Free Exercise claims, where the plaintiff was denied because his "objections were based upon personal views and false facts". 2025 WL 3206658, at *5 (S.D.N.Y. Nov. 17, 2025). And in *Mumin v. City of New York*, 2025 WL 2733229, at 10 (S.D.N.Y. Sept. 25, 2025), the court found a plausible claim based on a practice of denying accommodation requests from Muslims. Plaintiff here alleges a similar practice of denying Catholics. (SAC ¶¶ 85, 165, 170-175, 179-181, 216-219).

The City has repeatedly affirmed and defended the same unconstitutional policies alleged by Plaintiff, including in cases involving Catholic employees whose beliefs conflicted with statements by the Pope. (SAC ¶ 266 (quoting *Furno v. NYPD*, Index No. 85021/2023 (arguing that a Catholic plaintiff's objection was not based in his religion because the Pope endorsed vaccination))); *see also Veluzzi v. City of New York*, No. 1:25-cv-03712, ECF Doc. 16 at 22-23 (January 5, 2026) (arguing that beliefs inconsistent with "the leader of his faith…Pope Francis" were merely "personal"); *Fennessy v. FDNY*, No. 25-CV-01337, ECF No. 15 at 13 (November 5, 2025) (arguing that plaintiff's objection was a "personal choice" rather than a bona fide religious belief because his beliefs stemmed from his own faith in God "and not the Church itself").

Defendant's attempt to dismiss its own litigation position in *Furno* as irrelevant because a different Law Department attorney made the argument is legally untenable. In *Masterpiece*

*Cakeshop, Ltd. v. Colorado Civil Rights Comm'n*, the Supreme Court did not limit its analysis to statements by the immediate decisionmaker; it expressly relied on the government's failure to disavow hostility to religion, *including positions maintained in litigation briefs*, in concluding that the process lacked neutrality. 584 U.S. 617, 636–39 (2018). The Court emphasized that the State's failure to disavow those positions confirmed that the constitutional defect was not isolated, but infected the decision-making process as a whole. *Id.* Here, the Law Department—acting as the City's legal representative—has repeatedly advanced the same doctrinal framework in court, arguing that religious objections are invalid where they diverge from official Church doctrine. That position is attributable to the City itself. The City cannot avoid constitutional scrutiny by disaggregating its own legal arguments from its decision-making processes; under *Masterpiece*, its continued endorsement of this framework in litigation confirms the lack of religious neutrality.

Additionally, Defendants' reliance on *O'Leary* is misplaced. There, the plaintiff alleged only conclusory claims that the City "acted with hostility" and did not plead that his beliefs were evaluated against official doctrine or the views of others in his faith. 2024 WL 4167826, at *7.

**B. The City's Policies Were Not Generally Applicable**

Neutrality and general applicability are distinct under the Free Exercise Clause, and a policy may fail general applicability even if it appears neutral. See *Church of the Lukumi Babalu Aye v. City of Hialeah,* 508 U.S. 520, 542 (1993). A policy is not generally applicable where it "invite[s] the government to consider the particular reasons for a person's conduct by providing a mechanism for individualized exemptions." *Fulton v. City of Philadelphia*, 593 U.S. 522, 537 (2021) (quoting *Employment Div. v. Smith*, 494 U.S. 872, 884 (1990)). Plaintiff does not allege merely the existence of an exemption procedure; he alleges that the City's religious accommodation process was

discretionary, applied in a non-uniform manner, and disfavored religious conduct relative to comparable secular considerations—each an independent basis to defeat general applicability.

First, the City's accommodation process created a *discretionary* exemption system. City employees charged with deciding religious accommodations requests had total discretion over whether to grant them. (SAC ¶ 205). Officials reviewing religious accommodation requests were empowered to determine whether an employee's beliefs were "valid," "personal," or doctrinally required, and were instructed to reject objections that did not align with perceived teachings of religious leadership. (SAC ¶¶163-169, 174-175, 193-203, 207-212, 218-224, 228, 231). These standards required decision-makers to evaluate the substance of religious beliefs and exercise broad discretion in determining whether accommodation would be granted. (SAC ¶¶183, 185, 205-206, 212). Such discretionary review mechanisms are the hallmark of an individualized exemption system. *See Fulton*, 593 U.S. at 537. The Second Circuit has recognized that such discretion defeats general applicability. In *Kane*, the court held that the City's procedures were not generally applicable where officials exercised "substantial discretion over whether to grant those requests." 19 F.4th 152, 169 (2d Cir. 2021); *see also Carbone v. City of New York*, 2025 WL 3206658, at *4-5 (City's vaccine mandate accommodation policies failed general applicability where the decision-maker exercised discretion triggering strict scrutiny).

Second, *Kane* also held that the City's policies failed general applicability because they were applied non-uniformly. Decisionmakers did not consistently apply the stated criteria—sometimes enforcing them, and other times disregarding them, including by granting exemptions to Catholic applicants who would have been disqualified under the City's own standards. 19 F.4th at 169. That same inconsistency is alleged here: decisionmakers applied doctrinal requirements to deny some requests while disregarding them to grant others. (SAC ¶¶ 205–206).

Third, the SAC alleges that the City tolerated comparable secular conduct while denying religious accommodations. See *Roman Catholic Diocese of Brooklyn v. Cuomo*, 592 U.S. 14, 18 (2020); *Fulton*, 141 S. Ct. at 1877. Thousands of employees remained unvaccinated due to administrative delays, staffing needs, or other non-religious reasons, and others were permitted to work while testing. (SAC ¶¶ 50–52, 289–292, 300–304). Yet Plaintiff's identical request was denied as "personal" and not doctrinally required. (SAC ¶¶ 2, 163–170, 489).

**C. <u>The City's Policies Cannot Survive Strict Scrutiny</u>**

The policies and procedures challenged here are neither neutral nor generally applicable and therefore *must* satisfy strict scrutiny, meaning they must be narrowly tailored to serve a compelling governmental interest. *Roman Cath. Diocese of Brooklyn*, 592 U.S. at 18; *Kane*, 19 F.4th at 169. "That standard is not watered down; it really means what it says." *Tandon v. Newsom*, 593 U.S. 61, 64 (2021). This is "the most demanding test known to constitutional law," *City of Boerne v. Flores*, 521 U.S. 507, 534 (1997), which is rarely satisfied. *Burson v. Freeman*, 504 U.S. 191, 200 (1992). This is not that rare case.

In *Kane*, the Second Circuit held that the City's accommodation procedures "cannot survive strict scrutiny because denying religious accommodations based on criteria such as whether an applicant's beliefs aligned with the views of religious leadership is not narrowly tailored to serve the government's interest in preventing the spread of COVID-19." *Kane*, 19 F.4th at 169; *see Carbone*, 2025 WL 3206658, at *5 ("DOT's exemption procedure cannot survive strict scrutiny as applied to Carbone, however, because denying religious accommodations based on the examiner's weighing of the applicant's religious beliefs against non-religious considerations is not narrowly tailored to serve the City's interest in preventing the spread of COVID-19"). Here, the City engaged in the same constitutionally impermissible religious line-drawing.

Strict scrutiny requires the government to demonstrate that its policy is narrowly tailored to achieve a compelling interest and employs the *least restrictive* means of doing so. *Roman Cath. Diocese*, 592 U.S. at 18. "Put another way, so long as the government can achieve its interests in a manner that does not burden religion, it *must* do so." *Fulton,* 141 S. Ct. at 1881. In *Roman Catholic Diocese*, the Supreme Court held that it was hard to see how the challenged regulations could be regarded as narrowly tailored when "there are many other less restrictive rules that could be adopted." *Roman Cath. Diocese*, 592 U.S. at 18.

The City's vaccinate-or-terminate approach was not the least restrictive means. The City itself determined that weekly testing was a feasible accommodation that did not impose undue hardship. (SAC ¶¶294-296). The City, through DCAS and the Law Department, instructed DSNY that weekly testing was not an undue hardship and designated it as the accommodation for employees granted religious exemptions. (SAC ¶¶294-296). DSNY's written policy likewise allowed accommodated employees to submit weekly PCR test results in lieu of vaccination. (SAC ¶305).

Defendant allowed thousands of City Workers to continue working unvaccinated while their accommodation requests and appeals were pending. (SAC ¶303). This included hundreds of DSNY employees, who continued working for months after the mandate took effect, submitting weekly PCR tests. (SAC ¶¶300-301). 343 other DSNY employees, many with the same duties as Plaintiff, were granted accommodations and allowed to work in person with weekly PCR testing. (SAC ¶¶289-294). Those employees worked under the same testing protocols, demonstrating that Defendant could have accommodated Plaintiff. Defendant cannot show that "public health would be imperiled if less restrictive measures were imposed." *Roman Cath. Diocese*, 592 U.S. at 19.

Finally, the Mandate's rescission in February 2023—allowing all unvaccinated employees to return to work—undermines any claim that termination was narrowly tailored to a compelling

interest. (SAC ¶ 288). Because less restrictive alternatives existed and were implemented, Defendant cannot satisfy strict scrutiny.

**POINT III: PLAINTIFF PLEADS VIABLE NYSHRL AND NYCHRL CLAIMS**

The NYSHRL and NYCHRL prohibit employers from imposing employment conditions that require employees to violate sincerely held religious beliefs and require reasonable accommodation unless the employer demonstrates undue hardship. N.Y. Exec. Law § 296(10)(a); N.Y.C. Admin. Code § 8-107(3). The NYCHRL must be construed independently and more liberally than federal law. The NYSHRL likewise requires liberal construction to accomplish its remedial purposes. N.Y. Exec. Law § 300; *Doolittle v. Bloomberg L.P.*, 2023 WL 7151718, at *7 (S.D.N.Y. Oct. 31, 2023). To make out a prima facie case for failure to accommodate[7], an employee must show: (1) a sincerely held belief conflicting with an employment requirement, (2) notice to the employer, and (3) an adverse employment action for failing to meet the conflicting requirement. *Baker v. Home Depot*, 445 F.3d 541 (2d Cir. 2006) (NYSHRL); *Mihalik v. Credit Agricole Cheuvreux N. Am, Inc.*, 715 F.3d 102, 110 (2d Cir. 2013) (NYCHRL).

The SAC plausibly alleges each element of Plaintiff's NYSHRL and NYCHRL claims.

**A. The SAC Plausibly Alleges a Sincere Religious Belief Conflicting With the Vaccine Mandate and Adequate Notice**

The burden to establish a sincerely held religious belief "is not a heavy one." *Philbrook v. Ansonia Bd. of Educ.*, 757 F.2d 476, 482 (2d Cir. 1985*), aff'd and remanded*, 479 U.S. 60 (1986). Under NYSHRL, a belief qualifies for protection if it is sincerely held and "religious in [the employee's] own scheme of things," not the employer's, or court's, nor any official doctrine.

[7] Defendant misstates the law. Def. Mem at 26. Failure-to-accommodate claims under the NYSHRL and NYCHRL do not require discriminatory motive or animus; liability arises from the failure to reasonably accommodate, not the employer's intent. *See* N.Y. Exec. Law § 296(10)(a); N.Y.C. Admin. Code § 8-107(3), (28).

*Phillips v. City of New York*, 66 A.D.3d 170, 173 (1st Dep't 2009) (citing *United States v. Seeger*, 380 U.S. 163, 185 (1965)); *see also Kravitz v. Purcell*, 87 F.4th 111, 127 (2d Cir. 2023). The NYCHRL, construed even more expansively, demands "an exceedingly liberal standard" favoring accommodation. *Richins v. Hofstra Univ.*, 2018 WL 11227619, at *5 (E.D.N.Y. Aug. 17, 2018); N.Y.C. Admin. Code § 8-130(a).

"An employer need have 'only enough information about an employee's religious needs to permit the employer to understand the existence of a conflict between the employee's religious practices and the employer's job requirements.'" *Hickey v. State Univ. of N.Y. at Stony Brook Hosp.*, 2012 WL 3064170, at *7 (E.D.N.Y. July 27, 2012) (quoting *Brown v. Polk Cnty., Iowa*, 61 F.3d 650, 654 (8th Cir. 1995)). The government "should not undertake to dissect religious beliefs…because [they] are not articulated with the clarity and precision that a more sophisticated person might employ." *Thomas*, 450 U.S. at 715 (1981). "Remember, too, what is being reviewed—not statutory language debated and refined by lawmakers or letters drafted by counsel, but instead an employee's explanation…for why they seek an exemption from COVID vaccination." *Passarella v. Aspirus, Inc.*, 108 F.4th 1005, 1011 (7th Cir. 2024).

To trigger the duty to accommodate, an employee need only provide notice of a religious conflict—not a fully developed theological explanation. It is well settled that no "magic words" are required. See *Aponte v. Olatoye*, 30 N.Y.3d 693, 700 (2018) (Rivera, J., concurring). The pleading standard—which governs what must be alleged in court—does not define what must be communicated to an employer at the outset to satisfy the notice requirement. Once an employer is on notice of a religious conflict, it must engage in the accommodation process; it may not deny a request for lack of detail. See *Baker*, 445 F.3d at 546–47 (rejecting employer's argument that employee failed to "adequately inform[ ]" employer of his religious conflict because employee

"has set forth numerous occasions upon which he made clear to various supervisory personnel ... that his religious convictions prevented him from working on any Sunday.")

In Plaintiff's initial submission to DSNY, he notified DSNY that he was "a member of a recognized religious organization," that the vaccine required by DSNY was "contrary to [his] religious tenets and practices," and that he was seeking a religious accommodation to the Vaccine Mandate. (SAC ¶¶ 63, 65-66). This was sufficient to trigger the accommodation process and alert DSNY that there was a conflict between the Vaccine Mandate and his religious beliefs. But Plaintiff does not rely solely on that initial submission for notice. Under the City's own procedures, employees were permitted—and expected—to submit additional materials in support of their requests, which agencies were required to transmit to the Citywide Panel. (SAC ¶¶ 77–78, 135–141). Plaintiff did exactly that. Plaintiff's appeal, submitted directly to DSNY, expressly identified his objection as grounded in his Catholic faith, including opposition to vaccines developed using aborted fetal cell lines and the Church's teachings on the primacy of conscience. (SAC ¶ 143). The Citywide Panel acknowledged receipt of that submission. (SAC ¶146). Plaintiff then supplemented his appeal with a detailed statement explaining that his beliefs were rooted in his religious conviction that abortion is a grave sin, that receiving such a vaccine would make him "complicit with the murder of unborn babies," and that doing so would violate "God's Sixth commandment" and his obligation to follow his conscience. (SAC ¶154). DSNY confirmed receipt of these materials and transmitted them to the Citywide Panel, which reviewed "all of the documentation submitted," including Plaintiff's supplemental submissions. (SAC ¶¶155, 268–270).

This is clearly "enough information… to permit the employer to understand the existence of a conflict between the employee's religious practices and the employer's job requirements." *Hickey*, 2012 WL 3064170, at *7; see *Chinchilla v. N.Y.C. Police Dep't*, No. 23 Civ. 8986 (DEH), 2024

WL 3400526 (S.D.N.Y. July 12, 2024). Judge Gonzalez in the Eastern District recently rejected the argument the City advances here, granting summary judgment to the plaintiff on the notice prong. *Vasquez v. City of New York*, 2025 WL 1560105, at *2–3 (E.D.N.Y. June 2, 2025); see also *Bergin v. N.Y. State Unified Ct. Sys.*, 2024 WL 4444434, at *3 (E.D.N.Y. Oct. 8, 2024).

Incredibly, the City contends that Plaintiff's objection to vaccines developed using aborted fetal cell lines "reflect[s] only personal preferences" rather than religious belief. (Def. Mem. at 27). That is precisely the policy Plaintiff challenges. Plaintiff explicitly grounded his objection in religious doctrine, stating that abortion is "the most egregious vile crime against God". (SAC ¶ 154). By dismissing his plainly religious beliefs as "personal," the City reveals the very framework Plaintiff challenges: one that reclassifies individualized religious convictions as non-religious. That conclusion cannot be reconciled with Plaintiff's explicit reliance on core religious principles, and it underscores the plausibility of Plaintiff's allegations in Point II.

Defendant's argument that he failed to object to other medical products is not only factually incorrect (SAC ¶¶ 151, 154), but also imposes a requirement not found in the law, which only demands Plaintiff articulate a religious conflict with the work requirement at issue. Furthermore, the City never asked Maiorino for information regarding any other medical products. (SAC ¶272).

Defendant mischaracterizes *Gardner-Alfred* by suggesting the Second Circuit upheld denial of a religious exemption because the plaintiff used "stock language." (Def. Mem. at 28). The court did the opposite, reversing summary judgment as to a practicing Catholic who submitted a template letter after her pastor declined to sign it. 143 F.4th at 64–65. The Second Circuit held that using a publicly available template—even one not endorsed by a parish—does not undermine sincerity and may support it. *Id.* Defendant claims that Maiorino, a practicing Catholic, submitted a template letter from the National Catholic Bioethics Center, a respected authority on Catholic ethics, but

ignores his detailed personal statement explaining his religious beliefs. (SAC ¶¶ 143, 154). In any event, Plaintiff's submission is not "identical" to the cited template, and Defendant's reliance on that document is improper at the pleading stage, as it constitutes extrinsic evidence.

**B. Plaintiff Properly Pleaded an Adverse Employment Action.**

Plaintiff was placed on unpaid leave and later terminated because the City refused to accommodate his religious beliefs. (SAC ¶¶ 7, 73, 147, 284-286, 332-334, 349, 402-406, 413, 471). Termination plainly satisfies the adverse employment action element of a religious discrimination claim. *Zelnick v. Fashion Inst. Tech.*, 464 F.3d 217, 225 (2d Cir. 2006); *Bowles v. N.Y.C. Transit Auth.*, 285 F. App'x 812, 813 (2d Cir. 2008); *Jackson v. N.Y. State Off. of Mental Health*, 2024 WL 1908533, at *6 (E.D.N.Y. May 1, 2024); *see also Haczynska v. Mount Sinai Health Sys., Inc.*, 738 F. Supp. 3d 300, 321 (E.D.N.Y. 2024). The City's attempt to characterize the termination as non-disciplinary has been repeatedly rejected. *See Vasquez v. City of New York*, 2025 WL 1560105, at *3 (E.D.N.Y. June 2, 2025) (granting summary judgment on adverse action element); *Rizzo v. N.Y.C. Dep't of Sanitation*, 2024 WL 3274455, at *3 (S.D.N.Y. July 2, 2024) (City's argument is "flat wrong").

**C. Defendant Cannot Establish Undue Hardship at the Pleading Stage**

Both the NYCHRL and NYSHRL place the burden on the employer to prove undue hardship. N.Y.C. Admin. Code § 8-107(3)(b); N.Y. Exec. Law § 296(10)(a). Accordingly, dismissal on that ground is appropriate only if the City demonstrates an obvious bar to relief on the face of the complaint. *Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 74 (2d Cir. 1998).

Courts have consistently denied the City's motions to dismiss Vaccine Mandate failure-to-accommodate claims on undue hardship grounds. *See Annicelli v. N.Y.C. Police Dep't*, No. 1:25-cv-02424 (RMB)(KHP), at 27 (S.D.N.Y. Jan. 9, 2026); *Mumin v. City of New York*, 2025 WL

2733229 (S.D.N.Y. Sept. 25, 2025) (noting that the complaint alleged other employees were permitted to test in lieu of vaccination); *Chinchilla v. N.Y.C. Police Dep't*, 2024 WL 3400526, at *10 (S.D.N.Y. July 12, 2024); *Vasquez v. City of New York*, 2024 WL 1348702, at *7 (E.D.N.Y. Mar. 30, 2024); *Rizzo v. N.Y.C. Dep't of Sanitation*, 2024 WL 3274455, at *3 (S.D.N.Y. July 2, 2024). The same result is required here.

Defendant's assertion that Plaintiff relies on a "conclusory claim" "absent any indication of why" Defendant cannot demonstrate undue hardship is demonstrably false. Def. Mem. at 29. The SAC pleads detailed, specific facts establishing that accommodating Plaintiff imposed no undue hardship. The City itself determined that weekly testing was a feasible accommodation that did not impose undue hardship. (SAC ¶¶294-296). The City, through DCAS and the Law Department, instructed DSNY that weekly testing was not an undue hardship and designated it as the accommodation for religious exemptions. (SAC ¶¶ 294–296). DSNY's COVID-19 policy likewise required weekly PCR testing for those accommodated. (SAC ¶305).

DSNY granted religious accommodations to 314 employees, many performing the same duties as Plaintiff, and the Citywide Panel granted an additional 29 after initial denials. (SAC ¶¶ 289–291). All were permitted to continue working in person with weekly PCR testing. (SAC ¶¶ 292–294). No DSNY employee was denied an accommodation based on undue hardship, and reviewers were instructed not to consider it. (SAC ¶¶ 297–298). Employees who met the City's criteria were allowed to test. (SAC ¶ 299). Hundreds of DSNY employees continued working for months while their requests and appeals were pending, submitting weekly PCR tests. (SAC ¶¶ 300–301). This was a Citywide practice affecting thousands of employees. (SAC ¶ 303).

The City's own memorandum confirms the point. It asserts that unvaccinated employees could not work "absent an accommodation." (Def. Mem. at 30). That concession is dispositive. Plaintiff

seeks precisely such an accommodation. The City cannot plausibly argue that allowing Plaintiff to continue working under a weekly testing accommodation would have imposed an undue hardship.

**POINT IV: <u>THE SAC PLAUSIBLY ALLEGES THAT THE CITY FAILED TO ENGAGE IN THE COOPERATIVE DIALOGUE REQUIRED BY THE NYCHRL</u>**

Under the NYCHRL, employers must engage in a "good-faith written or oral dialogue" with employees concerning the employee's accommodation needs, potential accommodations or alternatives, and any difficulties such accommodations may pose for the employer. N.Y.C. Admin. Code §8-107(28)(a). This cooperative dialogue obligation is an independent statutory requirement, and whether it occurred is a fact-intensive inquiry unsuitable for resolution on a motion to dismiss. The statute requires that this dialogue occur before any final decision on the accommodation request and conclude with a written determination. N.Y.C. Admin. Code § 8-107(28)(e).

Here, no dialogue occurred. (SAC ¶¶112–113, 269, 271). The City argues that Plaintiff's submission of an accommodation request followed by a denial constitutes a cooperative dialogue. (Def. Mem. at 32). The statutory text forecloses that interpretation. § 8-107(28)(a), (e).

The City's reliance on *Marsteller* and similar cases is also misplaced. *Marsteller* was decided in an Article 78 proceeding, which provides only limited arbitrary-and-capricious review of agency action. CPLR 7803(3); *Farrell v. City of New York*, 2024 WL 3849333, at *5 (S.D.N.Y. Aug. 16, 2024) (declining to rely on an Article 78 decision when evaluating Human Rights Law claims).

And *Marsteller* is inapposite. In *Marsteller*, the court held that, under the deferential Article 78 review, the petitioner had not established that the City's process for resolving requests fell short of the requirements of the NYCHRL, emphasizing that the City had offered "information on its process for reviewing accommodation requests to the vaccine mandate, and informed employees about how to apply to their agency's Equal Employment Opportunity office". *Marsteller v. City of New York*, 217 A.D.3d 543, 545 (1st Dep't 2023); *see Smith v. New York City Fire Dep't*, 239

A.D.3d 870, 872 (2d Dep't 2025) (same). But here, the Plaintiff explicitly alleged that he was never advised that he had the right to apply for a religious accommodation, nor was he provided with instructions or guidance on the process or how to submit a request. (SAC ¶¶ 58-62).

In *Lee v. New York City Fire Dep't*, 2025 WL 2772855, at *5 (E.D.N.Y. Sept. 29, 2025), the court denied the City's motion to dismiss the cooperative-dialogue claim, citing *Marsteller* and holding that "although the prescribed process for deciding reasonable accommodation requests may have complied with the NYCHRL's cooperative dialogue requirement, Plaintiff has alleged that, in her case, Defendants may not have complied with that process." Here, the SAC alleges the same. DSNY's policy was to issue "Requests for Additional Information" where submissions lacked detail, consistent with Citywide guidance requiring a limited inquiry—not outright denial. (SAC ¶¶ 70–72, 98, 100, 103). Yet DSNY denied Plaintiff's request without follow-up, and the Citywide Panel affirmed with only a boilerplate response. (SAC ¶¶ 99–100, 269, 271). As in *Lee*, such allegations suffice. See also *Maita v. City of New York*, No. 24-cv-6559, at *16–18 (E.D.N.Y. Feb. 2, 2026); *Rizzo v. N.Y.C. Dep't of Sanitation*, 2024 WL 3274455, at *4 (S.D.N.Y. July 2, 2024).

The City's reliance on *Bath v. FDNY* is misplaced. That case applies Title VII precedent which predates and does not interpret the NYCHRL's cooperative-dialogue provision.

**CONCLUSION**

For these reasons, Defendant's motion to dismiss should be denied in its entirety.

Dated: Staten Island, New York
March 23, 2026

Respectfully submitted,

**Martinez & Loiacono PLLC**

Christina Martinez, Esq.
*Attorneys for the Plaintiff*

**CERTIFICATION**

Counsel of Record hereby certifies that pursuant to the Individual Practices in Civil Cases of Honorable Lewis J. Liman, United State District Judge, the enclosed brief is produced using 12-point Times New Roman type and is 25 pages long.

Dated: Staten Island, New York
March 23, 2026

Respectfully submitted,

**Martinez & Loiacono PLLC**

Christina Martinez, Esq.
245 Bricktown Way, Suite J
Staten Island NY 10309
*Attorneys for the Plaintiff*