USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 7/6/2026

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

VINCENT MAIORINO,

Plaintiff,

-v-

CITY OF NEW YORK,

Defendant.

25-cv-0097 (LJL)

OPINION AND ORDER

LEWIS J. LIMAN, United States District Judge:

Defendant the City of New York ("Defendant" or the "City") moves, pursuant to Federal Rule of Civil Procedure 12(b)(6), to dismiss Plaintiff Vincent Maiorino's ("Plaintiff") Second Amended Complaint. For the following reasons, Defendant's motion to dismiss is granted in part and denied in part.

**BACKGROUND**

The Court accepts Plaintiff's well-pleaded allegations as true for purposes of this motion.[1]

Plaintiff is a resident and domiciliary of Orange County, New York. He worked as a full-time sanitation worker for the New York City Department of Sanitation ("DSNY") from on or around May 30, 2005 to February 11, 2022. Dkt. No. 51 ("SAC") ¶¶ 5–7, 18. He identifies as a practicing Roman Catholic. *Id.* ¶ 22.

[1] Defendant argues that Plaintiff's allegations are demonstrably and knowingly false and violate the Federal Rules of Civil Procedure. Dkt. No. 57 at 9. The remedy for such conduct, as Defendant seems to recognize, is a motion under Federal Rule of Civil Procedure 11(b)(3) after the required procedural steps are taken. At the motion to dismiss stage, the Court must accept the factual allegations as long as they are not "wholly conclusory." *Krys v. Pigott*, 749 F.3d 117, 128 (2d Cir. 2014).

Defendant City of New York is a municipality organized under the laws of New York. *Id*. ¶ 11. DSNY is an agency of the City. *Id.* ¶ 9.

In 2020, after the initial outbreak of the COVID-19 pandemic, the Governor of New York State issued an executive order that closed all "nonessential businesses." *Id*. ¶ 31. Plaintiff continued his work because he was considered an "essential worker." *Id*. ¶ 32. On October 20, 2021, the New York City Commissioner of Health and Mental Hygiene issued an Order (the "Vaccine Mandate") requiring that employees of New York City receive a COVID-19 vaccine by October 29, 2021 in order to maintain their employment. *Id*. ¶ 36. Pursuant to the Vaccine Mandate, and in order to avoid being placed on leave without pay ("LWOP") status, employees who sought reasonable religious or medical accommodations were required to submit requests for such accommodation to their agency's Equal Employment Opportunity ("EEO") Officer no later than October 27, 2021. *Id*. ¶ 38. The Vaccine Mandate further provided that an employee had a right to appeal if an initial request for accommodation was denied. *Id*. ¶ 39. The Department of Citywide Administrative Services ("DCAS") issued further guidelines on the implementation of the Vaccine Mandate (the "Guidelines"). *Id*. ¶ 43; *see* Applying for a Reasonable Accommodation from the COVID-19 Vaccine Mandate, https://www.nyc.gov/assets/dcas/downloads/pdf/guidelines/vaccine-reasonable-accommodation-process.pdf (last visited July 2, 2026).[2] The Guidelines stated that "[a] sincerely held religious, moral, or ethical belief may be the basis for a religious accommodation" but that requests based

[2] The Guidelines are incorporated by reference. *See Fishman v. City of New Rochelle*, 2023 WL 1438731, at *4 (S.D.N.Y. Feb. 1, 2023) ("A document is incorporated by reference into the complaint where the complaint 'refers to' the document.") (quoting *EQT Infrastructure Ltd. v. Smith*, 861 F. Supp. 2d 220, 224 n.2 (S.D.N.Y. 2012)). Even if they were not, the Court can also consider documents that are "integral" to the complaint as long as the plaintiff has "actual notice" of the document and "relied upon the documents in framing the complaint." *Id*. (quoting *McLennon v. City of New York*, 171 F. Supp. 3d 69, 89 (E.D.N.Y. 2016)).

solely on personal, political, or philosophical beliefs could not be. SAC ¶¶ 44–45. If an accommodation was granted, the employee was required to submit a weekly negative test result. *Id.* ¶ 46. Employees were allowed to continue working and submitting negative test results while their accommodation request and appeal were pending if they submitted an accommodation request prior to October 27, 2021. *Id.* ¶ 50; *see* Applying for a Reasonable Accommodation from the COVID-19 Vaccine Mandate, https://www.nyc.gov/assets/dcas/downloads/pdf/guidelines/vaccine-reasonable-accommodation-process.pdf (last visited July 2, 2026). DSNY did not specify the materials it required an applicant to submit in connection with an accommodation application. *Id.* ¶ 67.

Plaintiff refuses all vaccinations based on his Catholic beliefs. *Id.* ¶ 24. Plaintiff's objections to the COVID-19 vaccine in particular arise from the dictates of his own conscience, which his Catholic beliefs require him to abide by. *Id.* ¶¶ 25–29. He believes that the COVID-19 vaccine was developed using aborted fetal cell lines and in his view the use of such vaccines is a direct violation of God's commandments and the sanctity of life. *Id.* ¶¶ 8, 154.

On or about November 4, 2021, after the deadline for the submission of reasonable accommodation requests to avoid being placed on LWOP status, Plaintiff submitted a formal request to DSNY for a religious accommodation from the Vaccine Mandate, stating that his religious beliefs conflicted with the immunization requirements. *Id.* ¶¶ 65–66.[3] Plaintiff submitted his request for a reasonable accommodation in the form of an Affidavit of Vaccine Exemption on Religious Grounds For City Employees (the "Affidavit"), which he downloaded from the internet. *Id.* ¶ 61–63; Dkt. No. 58-1.[4] The form he filled out was not provided by the

---

[3] Plaintiff alleges he was never advised of his right to apply for a religious accommodation. *Id.* ¶ 58.

[4] Plaintiff does not dispute the authenticity of the document which is incorporated by reference.

City or any government entity, and was found by Plaintiff "through independent efforts." SAC ¶ 61. The Affidavit read, in pertinent part:

> I qualify for this exemption based on the following:
> 1) First Amendment of the United States Constitution
> 2) Title VII of the Civil Rights Act (*42 U.S. Code § 2000e*) prohibits discrimination against a sincerely held religious belief, practice, or observance. As enforced by the U.S. Equal Employment Opportunity Commission, Title VII requires employers to reasonably accommodate an employee's sincerely held religious belief, practice, or observance. For religious accommodation request, according to the EEOC's COVID-19 guidance, employers should ordinarily assume that an employee's request for religious accommodation is based on a sincerely held religious belief, practice, or observance.

Dkt. No. 58-1. Plaintiff filled in the blanks with his name and the identity of his employer. *Id.* He signed the form and had it notarized. SAC ¶ 64. He submitted no other evidence or explanation in support of his application at that time.

On or about November 20, 2021, DSNY denied Plaintiff's initial request for religious exemptions in a letter entitled "Denial of Religious Exemption Appeal Information." *Id.* ¶ 73; *see* Dkt. No. 58-2.[5] The letter stated that the information provided by Plaintiff was insufficient to establish a basis for a religious exemption and notified Plaintiff that he would be placed on LWOP Status starting on November 24, 2021, unless he submitted proof of his vaccination. SAC ¶ 72. It advised that Plaintiff could appeal that decision in two different ways: (1) an appeal to the City of New York Reasonable Accommodation Appeals Panel ("Citywide Panel"), consisting of three voting members from DCAS, the Law Department, and the City Commission on Human Rights ("Option 1"); or (2) an appeal to Scheinman Arbitration and Mediation Services ("SAMS") ("Option 2"). *Id.* ¶¶ 76, 82, 129. Under Option 1, the Citywide Panel made decisions "based on the documentation submitted to DSNY" and without a live hearing. Dkt. No. 58-2 at 2. Under Option 2, employees would only be granted an appeal if they produced a

---

[5] This document is incorporated by reference.

letter from a "religious official" and were members of a "recognized and established religious organization." *Id.* at 3. Option 2 involved arbitrators and a live hearing. *Id.* SAMS would deny appeals "where the leader of the religious organization has spoken publicly in favor of the vaccine, where the documentation is readily available (e.g., from an online source), or where the objection is personal, political, or philosophical in nature." *Id.*

On or about November 19, 2021, Plaintiff submitted a timely appeal of DSNY's denial of his request for a reasonable accommodation via Option 1 through the agency's EEO officer. *Id.* ¶¶ 131, 142. DSNY's denial letter to Plaintiff explained that appeals submitted to the Citywide Panel pursuant to Option 1 would be decided by evaluation of the "documentation submitted to DSNY." *Id.* ¶ 76; Dkt. No. 58-2. Alongside his notification that he was appealing DSNY's denial, Plaintiff included a further explanation of the basis for his objection. It stated in pertinent part, that:

> The Roman Catholic Church teaches a person may be required to refuse a medical intervention, including a vaccination, if his or her informed conscience comes to this sure judgment. While the Catholic Church does not prohibit the use of vaccines in principle, her teachings do provide a principled religious basis on which a Catholic may determine that her or she ought to refuse certain vaccines. The Church holds that vaccination is not morally obligatory in principle and so must be voluntary. Moreover, there is a general moral duty to refuse the use of medical products, including certain vaccines, that are produced using human cell lines derived from direct abortions. . . . As the Catechism makes clear, a person "must not be forced to act contrary to his conscience. Nor must he be prevented from acting according to his conscience, especially in religious matters."

*Id.* ¶ 143; Dkt. No. 58-3. In the meantime, on or about November 28, 2021, Plaintiff was placed on LWOP pending a final decision on his appeal. SAC ¶ 147.

Over one month later, on or about December 21, 2021, Plaintiff's attorney emailed DSNY's EEO office a letter describing Plaintiff's Catholic upbringing and providing additional scriptural support for his belief. *Id.* ¶¶ 149–54. That email, incorporated by reference, attached also a 25-page document styled as an "Appellate Brief," with accompanying exhibits in further

support of Plaintiff's appeal. Dkt. No. 58-4. Among the exhibits was a declaration from Plaintiff, which expanded that "[a]s I researched and investigated vaccines with new perspective, one through the lens of the word of God, I realized they conflict with the tenets of my faith." SAC ¶ 154. The declaration outlined his belief that vaccines are "unholy," that "abortion is a violation of God's Sixth Commandment," and that he has a religious duty to follow his own conscience, especially as to medical decisions. *Id*. DSNY responded to Plaintiff's attorney's email that the documents would be included in his appeal file. *Id.* ¶ 155.

Plaintiff's appeal was denied on January 4, 2022. *Id.* ¶ 268. That day, Plaintiff received an email from DCAS that said that after a review of "all the documentation submitted to the agency and the additional information you submitted in connection with the appeal," the Panel decided to deny the appeal. *Id.* ¶ 269; Dkt. No. 67-1.[6] The Citywide Panel did not communicate with Plaintiff outside the denial or ask for further information regarding his past medication refusal or the sincerity of his religious beliefs. SAC ¶¶ 271–72.

A total of 314 DSNY employees were granted religious accommodations by DSNY and were permitted to continue working if they submitted a weekly negative PCR test result. *Id.* ¶ 290. The Citywide Panel granted accommodations to an additional 29 DSNY employees who had been initially denied by the agency. *Id.* ¶ 291. On February 11, 2022, Plaintiff was discharged from work. *Id.* ¶ 286. On March 29, 2023, DSNY sent Plaintiff a letter with an offer to return if he becomes fully vaccinated. *Id.* ¶ 286. To date, Plaintiff has not taken the vaccine. *Id.* ¶ 306.

[6] The denial letter is incorporated by reference.

## PROCEDURAL HISTORY

Plaintiff initiated this action by Complaint filed on January 4, 2025 against the City of New York and the New York City Department of Sanitation (together, "Defendants"). Dkt. No. 1. On March 31, 2025, Defendant filed a motion to dismiss the complaint, along with a memorandum of law and a declaration in support of the motion. Dkt. Nos. 9, 10, 11. On April 9, 2025, Plaintiff filed an Amended Complaint. Dkt. No. 20.[7] Defendants filed a motion to dismiss the Amended Complaint on June 23, 2025 and a memorandum of law in support of the motion. Dkt. Nos. 38, 39. They submitted as well a declaration in support of the motion to dismiss that included six exhibits. Dkt. No. 40. On August 6, 2025, Plaintiff filed a memorandum of law in opposition to the motion to dismiss the Amended Complaint. Dkt. No. 41. Defendants filed a reply memorandum of law on September 8, 2025. Dkt. No. 46.

On October 15, 2025, this Court dismissed the Amended Complaint in its entirety without prejudice. Dkt. No. 49, *see Maiorino v. N.Y.C. Dep't of Sanitation*, 2025 WL 2928902 (S.D.N.Y. Oct. 15, 2025). On November 4, 2025, Plaintiff filed the SAC re-alleging all claims against only the City. Dkt. No. 51. The City again moved to dismiss the SAC, filed a memorandum in support of law in support of the motion, and refiled a declaration in support of the motion to dismiss with the same six exhibits. Dkt. Nos. 56–58. Plaintiff opposed the motion to dismiss with a declaration in support with two exhibits, Dkt. No. 66–67, to which Defendant replied, Dkt. No. 73.

## LEGAL STANDARD

To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted, a complaint must include "sufficient

[7] On April 18, 2025, the Court issued an order denying as moot the motion to dismiss in light of the filing of the amended complaint. Dkt. No. 26.

factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A complaint must offer more than "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertion[s]" devoid of "further factual enhancement." *Twombly*, 550 U.S. at 555. The ultimate question is whether "[a] claim has facial plausibility, [*i.e.*,] the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. Put another way, the plausibility requirement "calls for enough fact to raise a reasonable expectation that discovery will reveal evidence [supporting the claim]." *Twombly*, 550 U.S. at 556; *see also Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 46 (2011). When ruling on a motion to dismiss pursuant to Rule 12(b)(6), a district court may consider "the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the pleadings and matters of which judicial notice may be taken." *Samuels v. Air Transp. Local 504*, 992 F.2d 12, 15 (2d Cir. 1993).

**DISCUSSION**

The SAC alleges four claims. Plaintiff's first cause of action alleges that Defendant violated Section 8-107(3)(a) of the New York City Human Rights Law ("NYCHRL") by terminating Plaintiff's employment for his refusal to take the vaccine for COVID-19 and by failing to provide him with a reasonable accommodation of his religious belief against vaccines. SAC ¶¶ 314–74. Plaintiff's second cause of action alleges that Defendant violated Section 296(10)(a) of the New York State Human Rights Law ("NYSHRL") for the same reasons. *Id.* ¶¶ 375–438. Plaintiff's third cause of action alleges that Defendant violated Section 8-107(28)(e) of

the NYCHRL by failing to engage in cooperative dialogue with Plaintiff about his request for religious accommodation. *Id.* ¶¶ 439–55. Plaintiff's fourth and final cause of action alleges that Defendant violated his First Amendment right to freely exercise his religion, a claim made actionable against the City through 42 U.S.C. §1983. *Id.* ¶¶ 456–531.

## I. Free Exercise Clause

Plaintiff challenges the Citywide Panel's application of the Vaccine Mandate to him as violative of the Free Exercise Clause of the First Amendment. The Free Exercise Clause, applicable to states through the Fourteenth Amendment and enforceable against the City under 42 U.S.C. § 1983, encompasses both "'freedom to believe and freedom to act' on one's beliefs." *Skoros v. City of New York*, 437 F.3d 1, 39 (2d Cir. 2006) (quoting *Cantwell v. Connecticut*, 310 U.S. 296, 303 (1940)). "The Free Exercise Clause 'protects an individual's private right to religious belief, as well as the performance of (or abstention from) physical acts that constitute the free exercise of religion.'" *Carbone v. City of New York*, 2025 WL 3206658, at *3 (S.D.N.Y. November 17, 2025) (quoting *Kane v. De Blasio*, 19 F.4th 152, 163–64 (2d Cir. 2021)). "To succeed on a Free Exercise Clause claim, "a plaintiff generally must establish that 'the object of the challenged law is to infringe upon or restrict practices because of their religious motivation,' or that its 'purpose . . . is the suppression of religion or religious conduct.'" *Okwedy v. Molinari*, 69 F. App'x 482, 484 (2d Cir. 2003) (summary order) (quoting *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 533 (1993)).

The Second Circuit "has laid out a framework for challenges to the constitutionality of vaccine mandates with religious exemptions." *Carbone*, 2025 WL 3206658, at *3 (citing *Kane*, 19 F.4th at 164). It clarified that the protection of the Free Exercise Clause "does not relieve an individual of the obligation to comply with a valid and neutral law of general applicability," which is "subject only to rational basis review." *Kane*, 19 F.4th at 164 (citation omitted). Under

such review, "legislation is presumed to be valid and will be sustained if the [burden imposed] by the statute is rationally related to a legitimate state interest." *Town of Southold v. Town of E. Hampton*, 477 F.3d 38, 54 (2d Cir. 2007) (quoting *City of Cleburne, Tex. v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 440 (1985)). On the other hand, a policy that is "either non-neutral or not generally applicable . . . [is] subject to 'strict scrutiny' meaning that they must be 'narrowly tailored' to serve a 'compelling' state interest." *Id.* (quoting *Roman Cath. Diocese of Brooklyn v. Cuomo*, 592 U.S. 14, 17 (2020)).

Application of that framework turns on whether the challenge is a facial or as-applied challenge. A facial challenge to a policy is successful only where it is "unconstitutional in all its applications." *Bucklew v. Precythe*, 587 U.S. 119, 138 (2019). Such a challenge is successful only where the plaintiff establishes that "no set of circumstances exist under which the [policy] would be valid." *United States v. Salerno*, 481 U.S. 739, 745 (1987). By contrast, in an as-applied challenge, the question "requires an analysis of the facts of a particular case to determine whether the application of a statute, even one constitutional on its face, deprived the individual to whom it applied of a protected right." *Field Day, LLC v. Cty. of Suffolk*, 463 F.3d 167, 174 (2d Cir. 2006).

In *Kane*, the Second Circuit addressed both a facial and as-applied Free Exercise Clause challenge to a vaccine mandate issued as to the New York City Department of Education. Addressing the facial challenge, the court held that the vaccine mandate was, "in all its iterations," "neutral and generally applicable." 19 F.4th at 164. That is, it "did not 'single out employees who decline vaccination on religious grounds,'" and "applied to an entire class of people." *Carbone*, 2025 WL 3206658, at *3 (quoting *Kane*, 19 F.4th at 164). Therefore the Circuit applied rational basis review and found that the mandate "plainly satisfies this standard."

*Id*. at 166. As to the plaintiff's as-applied challenge, however, the Court found that the vaccine mandate was subject to strict scrutiny because it was neither neutral nor generally applicable. *Id.* at 169. The procedures for an employee to seek an exemption were not neutral because "they allowed examiners to enquire into 'the validity of particular litigants' interpretations' of their religious beliefs." *Carbone*, 2025 WL 3206658, at *3 (quoting *Kane*, 19 F.4th at 168). And the process was not generally applicable because the DOE "had substantial discretion over whether to grant" an exemption request and exercised that discretion inconsistently as to different individuals. *Kane*, 19 F.4th at 169.

Plaintiff does not challenge the Vaccine Mandate at issue here as facially unconstitutional. Plaintiff alleges instead that it was the policy and procedures for evaluating requests for religious accommodation as applied to him that unconstitutionally infringed upon the free exercise of his religion. SAC ¶ 481–92.

In its prior Opinion and Order, the Court dismissed Plaintiff's first as-applied Free Exercise claim against DSNY in part because Plaintiff failed to "plead facts to indicate that, at the time DSNY considered Plaintiff's accommodation request, DSNY was aware that he was a Catholic or that he objected to the vaccine because of its development using aborted fetal cell lines." *Maiorino*, 2025 WL 2928902, at *5. Because his initial accommodation application to DSNY did "not indicate Plaintiff's religion or the basis of his objection to the vaccine other than that it is contrary to his undefined religious beliefs and tenets," *id.*, DSNY could not have expressed hostility to Plaintiff's religious beliefs if it "was unaware of those beliefs," *Marte v. Montefiore Med. Ctr.*, 2022 WL 7059182, at *4 (S.D.N.Y. Oct. 12, 2022). Even as applied to the Plaintiff, then, he had not shown that the policy was either not neutral or not generally applicable. The Court also considered the fact that Plaintiff had submitted additional

documentation to the Citywide Panel that further elucidated his religious beliefs and the reason for his decision not to get vaccinated. It found that those allegations "cannot support his Free Exercise claim with respect to the decision of DSNY for two separate reasons." *Maiorino*, 2025 WL 2928902, at *7. First, the Plaintiff had not alleged that DSNY, as the "body that he alleges discriminated against him based on his religious views," was even "aware of the views that he expressed to the Citywide Panel," which is a "body entirely independent of DSNY." *Id.* Second, the Court determined that there was "no well-pled allegation that the Citywide Panel considered Plaintiff's supplementary materials," as he alleged that the Citywide Panel decided his appeal "by evaluation of only the documentation submitted to DSNY." *Id.* at *8 (internal citation omitted).

Plaintiff's Second Amended Complaint now includes factual allegations that the Citywide Panel invited, received, and considered supplemental information submitted by Plaintiff that attested to his Roman Catholic identity and abortion-based objection to vaccination prior to denying his appeal—despite the fact that the panel stated it would make its decisions based "on the documentation submitted to DSNY." SAC ¶¶ 133, 136–41, 155; *see* Dkt. No. 67-1. Plaintiff submitted his additional letters and exhibits to the Citywide Panel through DSNY's EEO officer, who he alleges "informed DSNY that Plaintiff is a Catholic and that he was refusing the COVID-19 vaccine based on his sincerely held religious belief opposing the use of vaccines developed or produced using human cell lines derived from abortion." SAC ¶¶ 142–46. The supplemental documents included a statement from Plaintiff explaining his "sincere, deeply held religious belief" rooted in Roman Catholic teachings, his certificate of baptism, and the "Appellate Brief" and accompanying statement from his attorney. *Id.* ¶¶ 143, 149–54; *see* Dkt. Nos. 58-3, 58-4. The DSNY EEO officer responded to Plaintiff's attorney noting that "We

have received the documents you have provided and have uploaded them to Mr. Maiorino's appeal file on his behalf." SAC ¶ 155. In its January 4, 2022 letter to Plaintiff denying his appeal, the Citywide Panel wrote that it had "carefully reviewed your Agency's determination, all of the documentation submitted to the agency and the additional information you submitted in connection with the appeal." Dkt. No. 67-1; *see also* SAC ¶ 270 ("The Citywide Panel clearly indicated that it had reviewed the additional information Plaintiff submitted on appeal and did not limit its review to the documentation submitted in Plaintiff's original request to DSNY.").

Plaintiff has therefore sufficiently plead that the Citywide Panel was aware of Plaintiff's religious identity and basis for objecting to the Vaccine Mandate. With that established, the question before the Court is whether Plaintiff's allegations make it plausible that the Panel then violated his constitutional right to freely exercise his religion when it denied his appeal. The process by which an exemption is granted may implicate the First Amendment where that process is "hostil[e]" toward an individual's religion. *We the Patriots, USA Inc. v. Conn. Off. of Early Childhood Dev*., 76 F.4th 130, 145 (2d Cir. 2023). That is, "[i]f a government entity chooses to offer exemptions to vaccine mandates, it must do so in a non-discriminatory way," or else the exemptions would not be neutrally applied. *Carbone*, 2025 WL 3206658, at *3 (quoting *Chinchilla v. NYC Police Dep't*, 2024 WL 3400526, at *3 (S.D.N.Y. July 12, 2024)). An evaluation process is neutral and non-hostile where it seeks to probe only whether an individual has a "(1) sincere and (2) religious belief regarding vaccination." *New Yorkers for Religious Liberty v. City of New York*, 125 F.4th 319, 332 (2d Circ. 2025). "This limited inquiry reflects our society's abiding acceptance and tolerance of the unorthodox belief." *Patrick v. LeFevre*, 745 F.2d 153, 157 (2d Cir. 1984). By contrast, to "sit in judgment on the verity of an adherent's religious beliefs" in evaluating an accommodation request would trigger strict scrutiny review.

*New Yorkers for Religious Liberty*, 125 F.4th at 332 (quoting *Patrick*, 745 F.2d at 157). "In other words, the Citywide Panel could deny accommodations if it concluded a claimant was not personally devout in the belief underlying the objection, but it could not deny accommodations because it cast judgment on the nature of the religious objection raised." *New Yorkers for Religious Liberty*, 125 F.4th at 332–33; *see also Kane*, 19 F.4th at 168 (holding that an exemption process that puts at issue questions regarding "the centrality of particular beliefs or practices to a faith, or the validity of particular litigants' interpretations of those creeds" is subject to strict scrutiny (quoting *Hernandez v. Commissioner*, 490 U.S. 680, 699 (1989))).

Plaintiff has plausibly alleged that the Citywide Panel improperly denied his appeal by judging the validity of his religious beliefs rather than the sincerity with which he held them. In the SAC, Plaintiff alleges that the Citywide Panel received his additional submissions laying out his Catholic beliefs, SAC ¶ 157, that generally the City promulgated standards that instructed agencies to deny exemption requests that did not conform to the tenets of recognized doctrine, *id.* ¶ 163, that as a result the Citywide Panel "routinely rejected sincerely religious beliefs by deeming them 'personal' or 'philosophical,' even where those beliefs were based on applicant's religious conscience," *id.* ¶ 181, and that his own appeal was denied for those improper reasons, *id.* ¶ 268. He adds that Defendant "relied on the Pope's public comments on the COVID-19 vaccine when denying Roman Catholic applicants like Plaintiff," and "refused to acknowledge the religious nature of an objection to the COVID-19 vaccination, mischaracterizing Plaintiff's . . . objections as merely personal preferences." *Id.* ¶¶ 488–89.

Additionally, as an exhibit attached to his opposition to the motion to dismiss the SAC, Plaintiff attached a copy of the Citywide Panel Voting Spreadsheet used by the Citywide Panel denying Plaintiff's appeal, as produced by the Defendant in this action. Dkt. No. 67-2.

Generally, "a party is not entitled to amend its complaint through statements made in motion papers." *Wright v. Ernst & Young LLP*, 152 F.3d 169, 178 (2d Cir. 1998). The same proposition applies to exhibits attached for the first time in opposition to a motion to dismiss. *See Levin v. Sarah Lawrence Coll.*, 747 F. Supp. 3d 645, 657–58 (S.D.N.Y. 2024); *see also Wade Park Land Holdings, LLC v. Kalikow*, 2023 WL 2614243, at *10 (S.D.N.Y. Mar. 23, 2023), *aff'd sub nom. In re Wade Park Land Holdings, LLC*, 2024 WL 3024648 (2d Cir. June 17, 2024) ("A plaintiff who has eschewed attaching a document on which it relies as an exhibit to the complaint, and which has not explicitly incorporated the document by reference . . . is not ordinarily permitted—when it suddenly becomes expedient—to rely upon the document by attaching it to a declaration submitted in response to a motion to dismiss.").

Defendant here, however, does not object to the Court's consideration of the document in question or to its authenticity. Dkt. No. 73 at 3–4 (addressing the exhibit in its reply brief and arguing that "looking at . . . the Citywide Panel voting record for Plaintiff, it is clear that Plaintiff's appeal was not denied because it was too idiosyncratic to be religious."). Moreover, "[t]o disregard these allegations would only cause delay by obliging plaintiff to seek leave to file an amended pleading asserting those very allegations." *State Wide Photocopy, Corp. v. Tokai Fin. Servs., Inc.*, 909 F. Supp. 137, 138 n.1 (S.D.N.Y. 1995).

On the "Citywide Panel Voting Spreadsheet," panel member Eric Eichenholz ("Eichenholz") of the New York City Law Department wrote that he was voting to deny Plaintiff's appeal because the "[a]rticulated belief does not preclude vaccination. Employee admits vaccination is a personal choice based on religious practices." Dkt. No. 67-2. Another member of the Citywide Panel who voted to deny Plaintiff's appeal wrote on the Spreadsheet: "Employee states in supplemental responses that his religious belief permits vaccination.

Opposition is based on his conception of free will and not on a sincerely held religious belief." *Id.* In his letter to the Citywide Panel, Plaintiff had written: "While the Catholic Church does not prohibit the use of vaccines in principle, her teachings do provide a principled religious basis on which a Catholic may determine that he or she ought to refuse certain vaccines." SAC ¶ 143; Dkt. No. 58-3. In context, then, under *Kane*, the Citywide Panel members' comments that Plaintiff's choice not to get vaccinated was a personal one based on religious practices can plausibly be read to have "presupposed the illegitimacy" of his beliefs. 19 F.4th at 167. The voting member appears to have reasoned that because the Catholic Church supported vaccination, Plaintiff, as a Catholic, could not object to the Vaccine Mandate on religious grounds. Together, these statements plausibly indicate that the Citywide Panel denied Plaintiff's appeal on the impermissible grounds that his religious beliefs were not legitimate or valid, rather than that they were not sincere, which is prohibited by the Free Exercise Clause absent compelling and narrow justification.

This conclusion is confirmed by the Second Circuit's decision in *New Yorkers for Religious Liberty*. There, the court confronted a Free Exercise claim brought by Heather Clark, an employee of the New York City Department of Education, in which she alleged that the Citywide Panel improperly dismissed her religious beliefs as "too idiosyncratic to be religious in nature." 125 F.4th at 335. Much like Maiorino, Clark submitted documents to the Citywide Panel describing her abortion-based religious objection to the vaccine, and the Citywide Panel denied the appeal, characterizing Clark as "follow[ing] individualized guidance" rather than objecting based on beliefs "religious in nature." *Id.* The Second Circuit affirmed that her allegations "support the plausible inference that the Panel denied her request solely on the basis of its characterization of her religious objection as too idiosyncratic rather than as not sincerely

held or non-religious in nature." *Id.*; *see also Annicelli v. N.Y.C. Police Dep't*, 2026 WL 871393, at *10 (S.D.N.Y. Jan. 9, 2026), *report and recommendation adopted,* 2026 WL 867926 (S.D.N.Y. Mar. 30, 2026) (finding that the plaintiff stated a claim that "his denial was based on a determination that his beliefs were too idiosyncratic" where he alleged that the Citywide Panel denied his request on the basis that it "was personal, political, or philosophical."); *Lee v. N.Y.C. Fire Dep't*, 2025 WL 2772855, at *2 (E.D.N.Y. Sept. 29, 2025) (finding that the plaintiff stated a Free Exercise Clause claim where he pled that the defendant had a "policy to reject applicants' religious beliefs if they were personal and not shared by other members of the applicant's religious sect.").

Defendant responds that Plaintiff was denied an accommodation by the Citywide Panel because his beliefs were "merely personal," and that the denial letters and the Citywide Panel Voting Spreadsheet make it "clear that Plaintiff's appeal was not denied because it was 'too idiosyncratic to be religious.'" Dkt. No. 73 at 4. But the denial letter states only that Plaintiff's appeal was denied because it did "[n]ot [m]eet [c]riteria." SAC ¶ 269; Dkt. No. 67-1 at 1. No other communication from the Citywide Panel nor DSNY explains what those criteria were, or which parts of Plaintiff's application were insufficient. And, as discussed, the Citywide Panel Voting Spreadsheet plausibly supports Plaintiff's claim in that it plausibly supports the notion that the panel members were questioning the legitimacy of his belief, and not just whether the "claimant was not personally devout." *New Yorkers for Religious Liberty*, 125 F.4th at 332.

Having plausibly alleged that Defendant denied Plaintiff a religious accommodation to the Vaccine Mandate on unconstitutional grounds, Plaintiff adequately pleads a violation of the

Free Exercise Clause of the First Amendment under Section 1983. Defendant's motion to dismiss Plaintiff's fourth cause of action is therefore denied.[8]

## II. Failure to Accommodate in Violation of the NYCHRL and NYSHRL

Plaintiff additionally brings failure-to-accommodate claims under the NYCHRL and NYSHRL. The NYSHRL provides that

> [i]t shall be an unlawful discriminatory practice for any employer . . . to impose upon a person as a condition of . . . retaining employment . . . any terms or conditions that would require such person to violate or forego a sincerely held practice of his or her religion, . . . unless, after engaging in a bona fide effort, the employer demonstrates that it is unable to reasonably accommodate the employee's or prospective employee's sincerely held religious observance or practice without undue hardship on the conduct of the employer's business.

N.Y. Exec. Law. § 296(10)(a). Likewise, the NYCHRL prohibits employers from imposing terms that require employees to violate their religious beliefs and mandates reasonable accommodations for religious practices, though such accommodation must not cause "undue hardship" to the employer's business. N.Y.C. Admin. Code § 8-107(3)(a)-(b). Under both statutes, a plaintiff is required to "allege that, compared to similarly situated employees, she experienced differential treatment—that she is treated less well—because of a discriminatory intent." *Mumin v. City of New York*, 760 F. Supp. 3d. 28, 52 (S.D.N.Y. 2024). Courts must "constru[e]" the provisions "broadly in favor of discrimination plaintiffs, to the extent that such a

---

[8] The Court declines to consider Defendant's argument that the allegations in the SAC are false based on sworn deposition testimony taken by Plaintiff's counsel for separate proceedings that controvert some of Plaintiff's allegations. Dkt. No. 57 at 9, 11. In these depositions, Eichenholz testified that the Citywide Panel had approved religious accommodations for Catholics with objections grounded in abortion and denied that the Citywide Panel had a policy of denying appeals from Catholics whose sincerely held religious beliefs diverged from those of the Pope. Dkt. No. 58-6 at 32. At the motion to dismiss stage, however, the Court must accept the factual allegations as long as they are not "wholly conclusory." *Krys v. Pigott*, 749 F.3d 117, 128 (2d Cir. 2014). To the extent that the allegations are false and not supported by reasonable inquiry, the Court can address that issue through Rule 11 of the Federal Rules of Civil Procedure. It is not the province of a motion to dismiss for failure to state a claim.

construction is reasonably possible." *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 109 (2d Cir. 2013) (quoting *Albunio v. City of New York*, 947 N.E.2d 135 (N.Y. 2011)).

In the context of an alleged failure to grant religious accommodations, a plaintiff must show he (1) "has a bona fide religious belief that conflicts with an employment requirement," (2) "informed his employer of his belief," and (3) "was disciplined for failure to comply with the conflicting employment requirement." *Algarin v. NYC Health + Hosp. Corp.*, 678 F. Supp. 3d 497, 512-13 (S.D.N.Y. 2014) (cleaned up) (citing *Price v. Cushman & Wakefield, Inc.*, 829 F. Supp. 2d 201, 222 (S.D.N.Y. 2011)).

**A. This Court Can Adjudicate the State Law Claims**

Before reaching the merits, Defendant argues that Plaintiff cannot state a claim under either law for his failure to accommodate claim in this lawsuit because he was required instead to bring his failure to accommodate claims through an Article 78 proceeding in New York state court, which is subject to a four-month statute of limitations. Dkt. No. 57 at 15. An Article 78 proceeding provides those "challenging the activities of an administrative agency in court" with a "uniform device" that exclusively replaces "the common law writs of mandamus, prohibition, and certiorari to review." *Whitfield v. City of New York*, 96 F.4th 504, 519 (2d Cir. 2024) (quoting David D. Siegel, New York Practice § 557 (6th ed. 2023)). Specifically, Article 78 proceedings may only contemplate:

1. whether the body or officer failed to perform a duty enjoyed upon it by law; or
2. whether the body or officer proceeded, is proceeding or is about to proceed without or in excess of jurisdiction; or
3. whether a determination was made in violation of lawful procedure, was affected by an error of law or was arbitrary and capricious or an abuse of discretion, including abuse of discretion as to the measure or mode of penalty or discipline imposed; or

4. whether a determination made as a result of a hearing held, and at which evidence was taken, pursuant to direction by law is, on the entire record, supported by substantial evidence.

N.Y. C.P.L.R. 7803 (McKinney 2003).

In addition to their limited substantive scope, Article 78 proceedings "differ . . . from plenary civil actions" because they "are characterized by a limited and expedited summary procedure" and they offer "limited" and "often . . . immediate" relief. *Whitfield*, 96 F.4th at 519–20 (quotation marks and citation omitted). In exchange for a limited review and menu of remedies, "Article 78 affords state court petitioners an opportunity to obtain the 'speedy correction of an improper action by a body or officer.'" *Id.* at 527 (quoting *Davidson v. Capuano*, 792 F.2d 275, 278 (2d Cir. 1986)). "[I]t is the petitioner's choice whether to bring an Article 78 proceeding—with the attendant summary procedures, deferential review of agency action, and limited menu of relief—or a plenary action." *Id.* at 528.

Plaintiff did not pursue a challenge of the administrative decision to terminate him through an Article 78 proceeding, and so he will not be subject to its unique constraints. He sued instead in federal court under the NYSHRL and NYCHRL, and Congress has passed statutes that allow the Court to adjudicate those claims. Congress conferred on the district courts original jurisdiction for cases "arising under the Constitution, laws, or treaties of the United States," 28 U.S.C. § 1331, and for cases involving diverse citizens, 28 U.S.C. § 1332. It also gave the district courts supplemental jurisdiction "over all over claims" related to claims within the original jurisdiction of the court such "that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367. Plaintiff has invoked § 1331 federal-question jurisdiction by pleading Section 1983 claims, and Defendant does not dispute that Plaintiff's NYSHRL and NYCHRL claims form part of the same case or controversy as his federal claims. That some state courts have held that a claim like Plaintiff's must be funneled

through an Article 78 proceeding thus has no bearing on the ability of *this* Court to adjudicate the proper NYSHRL and NYCHRL claims; state courts "have no power to enlarge or to contract the federal jurisdiction." *Concern for Indep. Living, Inc. v. Town of Southampton, New York*, 2026 WL 707387, at *13 (E.D.N.Y. Mar. 12, 2026) (quoting *Grand Bahama Petrol. Co. v. Asiatic Petrol. Corp.*, 550 F.2d 1320, 1325 (2d Cir. 1977)); *see also Acista v. City of New York*, 2004 WL 691270, at *4 (S.D.N.Y. Mar. 31, 2004) ("[t]here is simply no authority for the proposition that this court, as the forum in which plaintiff elected to bring his allegations of discrimination . . . must abstain from exercising jurisdiction for plaintiff's failure to first proceed in state court.").

Important too is the fact that Plaintiff here has pursued a religious discrimination claim, seeking remedies not available to Article 78 petitioners, including compensatory damages and attorney's fees. *See* SAC ¶¶ C–M. When a forum does "not have the power to award the full measure of relief sought," it "would be 'unfair to preclude [the plaintiff] from a second action'" in which he can pursue those remedies. *Davidson*, 792 F.2d at 278 (quoting Restatement (Second) of Judgments § 26(1)(c) comment c (1982)). Even if Plaintiff had initially brought his complaint through Article 78, absent questions of issue preclusion, he would not be barred now from pursuing damages arising from the same alleged discrimination. *See, e.g., Schwab v. Bowen*, 363 N.E.2d 341 (N.Y. 1977) (dismissal of Article 78 petition seeking reinstatement is "of course" without prejudice to the institution of any future actions seeking damages). That Plaintiff does not seek reinstatement or the other remedies available under an Article 78 proceeding confirms that rule. *See Chinchilla*, 2024 WL 3400526, at *11 (New York courts "look beyond the labels a plaintiff uses" to the "gravamen" of the claim in determining whether a claim should be brought through Article 78) (cleaned up). Where NYSHRL and NYCHRL

claims "are substantively about the complained-of discrimination," as here, courts have not enforced the jurisdictional deadlines of Article 78 proceedings. *Id.* (citing cases).[9]

**B. Plaintiff States A Claim Under the NYCHRL and NYSHRL**

On the merits, to establish a *prima facie* case of religious discrimination in the form of a failure to accommodate claim under the NYCHRL and NYSHRL, "a plaintiff must show he (1) 'has a bona fide religious belief that conflicts with an employment requirement,' (2) 'informed his employer of his belief,' and (3) 'was disciplined for failure to comply with the conflicting employment requirement.'" *Annicelli*, 2026 WL 871393, at *12 (quoting *Algarin*, 678 F. Supp. 3d at 512–13). As in other contexts in which a plaintiff may establish unlawful discrimination by establishing a prima facie case, the complaint "need not allege 'specific facts establishing a prima facie case of discrimination' to survive a motion to dismiss," but it must assert at a minimum "nonconclusory factual matter" sufficient to "nudge" the claim "across the line from conceivable to plausible." *E.E.O.C. v. Port Auth. of N.Y. & N.J.*, 768 F.3d 247, 254 (2d Cir. 2014) (quoting *Swierkiewicz v. Sorema*, 534 U.S. 506, 510 (2002) and *Iqbal*, 566 U.S. at 680).

**1. Bona Fide Religious Belief**

Plaintiff adequately pleads that he holds a "bona fide religious belief" in conflict with the Vaccine Mandate. *Livingston v. City of New York*, 563 F. Supp. 3d 201, 233 (S.D.N.Y. 2021). To determine whether a religious belief is bona fide, courts look to "whether the beliefs

---

[9] Defendant's sole New York state appellate division citation proves this point. In *Campagna v. New York City Police Department*, the Appellate Division, First Department reversed a preliminary injunction that granted "plaintiff's motion for injunctive relief seeking immediate reinstatement to his position" along with backpay on the basis that he had not filed a timely Article 78 proceeding. 218 N.Y.S.3d 331, 331 (1st Dep't 2024). That court specifically explained that error was determinative because although he "attempts to cast his action as a plenary action seeking monetary damages, the gravamen of his complaint sought to review the NYPD's decision to terminate his employment based on his noncompliance with the vaccine mandate." *Id.*

professed by a claimant are sincerely held and whether they are, in [her] own scheme of things, religious." *Jackson v. Amazon.com, Inc.*, 2024 WL 4989237, at *4 (E.D.N.Y. Dec. 5, 2024), *aff'd*, 2026 WL 742446 (2d Cir. Mar. 17, 2026) (summary order) (quoting *Haczynska v. Mount Sinai Health Sys., Inc.*, 2024 WL 3178639, at *12 (E.D.N.Y. June 26, 2024)).[10] Whether a person's beliefs are bona fide "is a question of fact [that is] unsuitable to resolution at the motion to dismiss stage." *Jackson v. N.Y. State Off. of Mental Health - Pilgrim Psychiatric Ctr.*, 2024 WL 1908533, at *5 (E.D.N.Y. May 1, 2024) (citations and internal quotations omitted). "'[T]he sincerity of a plaintiff's engagement in a particular religious practice is rarely challenged,' and 'claims of sincere religious belief have been accepted on little more than the plaintiff's credible assertions.'" *Gardner-Alfred v. Fed. Rsrv. Bank of N.Y.*, 651 F. Supp. 3d 695, 721 (S.D.N.Y. 2023) (quoting *Tagore v. United States*, 735 F.3d 324, 328 (5th Cir. 2013)). To qualify as religious, "beliefs need not be acceptable, logical, consistent, or comprehensible to others." *Thomas v. Review Bd. of Ind. Emp't Sec. Div.*, 450 U.S. 707, 714 (1981).

The Second Amended Complaint alleges that Plaintiff's "sincerely held religious beliefs as a Roman Catholic require him to refuse the COVID-19 vaccine because, among other religious reasons, they are produced, developed, and/or tested with aborted fetal cell lines." SAC ¶ 8. Courts in New York have repeatedly affirmed similar pleadings as sufficient to establish this first prong of the prima facie case for a failure to accommodate claim. *See, e.g., Gardner-Alfred v. Fed. Rsrv. Bank*, 143 F.4th 51, 67 (2d Cir. 2025) (finding that plaintiff who sent letter to employer objecting to vaccination requirement because of her Catholic faith and belief that the

[10] The "standards for liability under" both Title VII and the New York state discrimination laws "are the same." *Hamilton v. City of New York*, 563 F. Supp. 3d 42, 52 (E.D.N.Y. 2021) (quoting *Lewis v. New York City Transit Auth.*, 12 F. Supp. 3d 418, 438 n.8 (E.D.N.Y. 2014)); *see also Simmons v. Akin Gump Strauss Hauer & Feld, LLP,* 508 F. App'x 10, 12 (2d Cir. 2013) (summary order) (evaluating NYSHRL and Title VII claims in tandem).

vaccine was made with aborted fetal cells raised a material fact about the sincerity of her religious belief); *Carbone*, 2024 WL 3206658 (recognizing plaintiff established a bona fide religious belief by pleading "that he is a Roman Catholic who believes as part of his faith that abortion is immoral and that it is immoral to use products manufactured with aborted fetal cells"); *Chinchilla*, 2024 WL 3400526 (finding plaintiff who alleges that she believes the vaccines would taint her blood, that they were made using aborted fetal cell lines, and that she refuses all vaccines as part of her religious practices); *Algarin*, 678 F. Supp. 3d at 510 (finding plaintiff's allegation that "[a]s a practicing Christian, [his] sincerely held religious beliefs prevent him from receiving a COVID-19 vaccine that was tested, developed, or produced with fetal cell lines derived from procured abortions" adequate); *cf. Cagle v. Weill Cornell Med.*, 680 F. Supp. 3d 428, 435–36 (S.D.N.Y. 2023) (collecting cases in which statements such as that the plaintiff had "religious beliefs" that included "religious practices of non-vaccination" were found to be conclusory and insufficient to establish a sincere religious objection to vaccination).

Defendant argues to the contrary that Plaintiff's opinions about the vaccine are "only personal preferences," citing two New York Supreme Court decisions in support. Dkt. No. 57 at 19. The court in *Bath v. Fire Department of the City of New York* acknowledged that "an agency should generally not question whether a request for religious accommodation is based on a sincerely held religious belief," but relied on the fact that the application was "a cut and paste of various bible verses, which could arguably be applied to a host of foods and/or medications thereby raising additional legitimate contextual questions that warrant further inquiry." 2023 WL 3778564, at *4 (N.Y. Sup. Ct. June 2, 2023). And in *Pierre v. Fire Department of the City of New York*, the other case cited by Defendant, the court denied that the plaintiff had a bona fide religious belief because he merely asserted that he was "not comfortable using a vaccine that has

used stem cells from fetuses" without "any connection to a sincerely held religious belief." 2023 WL 2626894, at *3 (N.Y. Sup. Ct. March 24, 2023). Without passing on whether that basis was sufficient for the court to conclude that he only expressed a personal preference, it is clearly distinguishable from the amount of information provided by Plaintiff to the Citywide Panel here.

Defendant also proposes that because Plaintiff did not demonstrate that he "refuse[s] other such 'medical products'" produced with aborted fetal cell lines, his employer could appropriately conclude that his beliefs were not sincere. Dkt. No. 57 at 19. The Second Circuit held in *Gardner-Alfred* that even when an employer has "evidence that [a plaintiff] may have acted inconsistently with her religious beliefs" by taking medication without ensuring it was not "made using aborted fetal cell lines," such evidence is not "in and of itself, sufficient to support" finding lack of sincerity on a motion for summary judgment. 143 F.4th at 64. Moreover, Defendant points to no positive indication that Plaintiff has acted inconsistently, relying instead on an absence of confirmation of consistency. It is true that New York state courts have ruled that agencies may deny religious accommodations after determining an applicant's stated beliefs objecting to the Vaccine Mandate were inconsistent with their conduct with respect to other vaccines and medications, but they have done so on a factual record in the context of Article 78 proceedings that have no bearing on how this Court must evaluate the pleadings here. *See, e.g.*, *Ventresca-Cohen v. DiFiore* 205 N.Y.S.3d 532, 535 (3d Dep't 2024) (evaluating whether the decision to deny accommodation was "made in violation of lawful procedure, was affected by an error of law or was arbitrary and capricious or an abuse of discretion."); *Bath*, 2023 WL 3778564, at *4 (same). Evaluating Defendant's motion to dismiss the SAC here, the question is not whether Plaintiff's religious beliefs are, in fact, sincere but whether he alleges them to be sincere. He has done so. Plaintiff's "allegations regarding the sincerity of his beliefs 'can be

tested in discovery, but on a motion to dismiss they must be accepted, and' [Plaintiff] 'therefore satisfies the first prong of the *prima facie* case.'" *Carbone*, 2025 WL 3206658, at *6 (quoting *Chinchilla*, 2024 WL 3400526, at *8).

**2. Informing Employer of Religious Beliefs**

Plaintiff also satisfies the second prong, that he informed his employer of his sincere religious belief. He sent DSNY's EEO officer the initial appeal email, subsequent "comprehensive written statement," and his attorney's "appellate brief," all of which discuss "the nature and basis of his sincerely held religious beliefs and how they directly conflicted with compliance with the Vaccine Mandate." *Id.* ¶¶ 143, 148–154; *see* Dkt. Nos. 56-3, 56-4. The EEO officer forwarded these materials to the Citywide Panel. *Id.* ¶ 155.[11]

Defendant responds that because Plaintiff appears to have used "stock language that is easily found on the internet," the statements he provided to DSNY and the Citywide Panel do not qualify as "a cogent explanation why [his] purported religion conflicted with the vaccination." Dkt. No. 57 at 20. That statement ignores the subsequent communications, containing significantly more information, that were sent afterward and that Plaintiff alleges were reviewed. The form by which Plaintiff originally conveyed his beliefs does not on its own undercut the sincerity of his beliefs or the veracity of his later communications. *See Bazinet v. Beth Israel Lahey Health, Inc*, 113 F.4th 9, 17 (1st Cir. 2024) ("[T]hat [plaintiff] found information on the internet which coincided with her professed religious beliefs does not establish that her beliefs are insincere.").[12]

---

[11] The City does not argue in its motion to dismiss that the Citywide Panel was unaware of the information submitted to DSNY, or vice versa, or that there is any important distinction between those entities for the purposes of awareness.

[12] Defendant also points to this Court's prior decision in *Gardner-Alfred v. Fed. Rsrv. Bank of N.Y.*, 2023 WL 6214863 (S.D.N.Y. Sept. 25, 2023), *rev'd on other grounds*, 143 F.4th 51, 68 (2d Cir. 2025) in which it found that the use of an affidavit downloaded from the internet was one of

**3. Discipline**

"Allegations of termination of employment for failure to comply with the conflicting employment requirement of mandatory vaccination are sufficient to plead the final element of the prima facie case of religious discrimination for failure to accommodate." *Algarin,* 678 F. Supp. 3d at 509; *see also Corrales v. Montefiore Med. Ctr.*, 2023 WL 2711415, at *5–6 (S.D.N.Y. Mar. 30, 2023) (finding prima facie case for failure to accommodate religious discrimination claim pled where plaintiff alleged that she had a bona fide religious belief that conflicted with the COVID-19 vaccination requirement, informed her healthcare employer of it, and her employment was terminated). After Plaintiff's appeal was denied, he was placed on LWOP status due to noncompliance and told that he would be terminated if he did "not submit proof of COVID-19 vaccine by 5:00pm on February 11, 2022." SAC ¶ 284. On February 11, 2022, he was terminated. *Id.* ¶ 286. Plaintiff's allegations thus satisfy this third and final prong.

Defendant argues that Plaintiff was terminated "not because he was disciplined, but because he was no longer qualified for his position with DSNY." Dkt. No. 57 at 20–21. Considering the fact of the existence of religious exemptions to the Vaccine Mandate (and Plaintiff's allegations that such requests were granted for other individuals), it is plausible that vaccination was not, in fact, a necessary qualification for a position at DSNY. It is plausible to state that either vaccination or weekly testing was a condition of employment, SAC ¶ 125, and it is not contested that no such testing option was presented to Plaintiff here.

Nor can the labeling of vaccination as a condition of employment negate a claim under the NYCHRL and NYSHRL. Those statutes make it unlawful for:

---

many factors, on summary judgment, indicating lack of sincerity. Reliance on that opinion is misplaced because it was on summary judgment, and because that fact was one of many that the Court considered.

> an employer . . . to impose upon a person as a condition of obtaining or retaining employment any terms or conditions, compliance with which would require such person to violate, or forego a practice of, such person's creed or religion . . . and the employer shall make reasonable accommodation to the religious needs of such person.

N.Y.C. Admin. Code § 8-107(a); *accord* N.Y. Exec. L. § 296(10)(a). That broad standard is qualified by the fact that a reasonable accommodation does not include one that would cause the employer "undue hardship." N.Y.C. Admin. Code § 8-107(a). Thus, there is no catch-all exception to the state and city human rights laws for "conditions" of employment—to the contrary, those statutes expressly contemplate claims conditions of employment may be discriminatory. *See Chinchilla*, 2024 WL 3400526, at *9 ("it is unclear why calling the Vaccine Mandate a condition of employment tends to rebut Plaintiff's claims" in light of the text of the NYSHRL); *Carbone*, 2025 WL 3206658, at *7; *Annicelli*, 2026 WL 871393, at *13.[13]

**4. Undue Burden**

Under both the NYSHRL and NYCHRL, it is an affirmative defense that an employee's requested accommodation would pose an undue burden on the employer. N.Y.C. Admin. Code § 8-107(3)(b) ("The employer shall have the burden of proof to show such hardship."); N.Y. Exec. L. § 296(10)(a) (allowing "the employer [to] demonstrate[ ] that it is unable to reasonably accommodate the employee's . . . religious observance or practice without undue hardship"). Ordinarily, "[t]he pleading requirements in the Federal Rules of Civil Procedure . . . do not compel a litigant to anticipate potential affirmative defenses." *Abbas v. Dixon*, 480 F.3d 636, 640 (2d Cir. 2007). A motion to dismiss based on an affirmative defense, however, is permissible when "the facts necessary to establish the defense are evident on the face of the

[13] The City cites a number of cases it argues stand for the proposition that termination on the basis of noncompliance with the Vaccine Mandate "does not implicate disciplinary procedures." Dkt. No. 57 at 20. None of these cases are relevant "because they do not involve discrimination claims." *Carbone*, 2025 WL 3206658, at *7; *see also Chinchilla*, 2024 WL 3400526, at *9.

complaint." *Spinelli v. Nat'l Football League*, 903 F.3d 185, 199 (2d Cir. 2018). At the pleading stage, Defendant cannot establish this defense.

Defendant raises that granting Plaintiff a religious accommodation "would pose an undue burden" because it would "require Defendant . . . to potentially expose other DSNY employees and the public to a life-threatening virus." Dkt. No. 57 at 21. Plaintiff alleges that 314 other DSNY employees were granted religious accommodations, "many performing the same duties as Plaintiff." SAC ¶¶ 289–290. These employees were permitted to continue working so long as they subject to weekly COVID-19 testing. *Id.* ¶ 292. These facts make it at least plausible that it may not have been unduly difficult to grant Plaintiff an accommodation. Defendant's suggestion that Plaintiff must provide more specific information about who these employees were—their "names, civil service titles, the specific facilities or units in which they worked . . . or the exact basis for their accommodation request"—goes beyond what the law requires of a discrimination plaintiff at this stage. *See Littlejohn v. City of New York*, 795 F.3d 297, 307 (2d Cir. 2015) (requiring only "some minimal evidence suggesting an inference that the employer acted with discriminatory motivation" to survive a motion to dismiss). Nor has Defendant shown that "exempting Plaintiff from the mandatory vaccination requirements . . . would violate the state rule." *Algarin*, 678 F. Supp. 3d at 509.

For the above reasons, the motion to dismiss the NYCHRL and NYSHRL claims alleging discriminatory failure to accommodate is denied.

### III. Failure to Engage in Cooperative Dialogue

The NYCHRL provides that "[i]t shall be an unlawful discriminatory practice for an employer . . . to refuse or otherwise fail to engage in a cooperative dialogue [regarding an accommodation] within a reasonable time." N.Y.C. Admin. Code § 8–107(28)(a). The failure to engage in a "cooperative dialogue" under the NYCHRL is "independently actionable as a

separate claim under the NYCHRL." *Greenbaum v. N.Y.C. Transit Auth.*, 2022 WL 3347893, at *5 (2d Cir. Aug. 15, 2022) (summary order). "Cooperative dialogue" expressly refers to:

> the process by which a covered entity and a person entitled to an accommodation, or who may be entitled to an accommodation under the law, engage in good faith in a written or oral dialogue concerning the person's accommodation needs; potential accommodations that may address the person's accommodation needs, including alternatives to a requested accommodation; and the difficulties that such potential accommodations may pose for the covered entity.

*Hosking v. Mem'l Sloan-Kettering Cancer Ctr.*, 126 N.Y.S.3d 98, 103 (1st Dep't 2020) (quoting N.Y.C Admin. Code § 8-102). "The dialogue 'may involve a meeting with the employee who requests an accommodation, requesting information about the condition and what limitations the employee has, asking the employee what he or she specifically wants, showing some sign of having considered the employee's request, and offering and discussing available alternatives when the request is too burdensome.'" *Rizzo v. N.Y.C. Dep't of Sanitation*, 2024 WL 3274455, at *4 (S.D.N.Y. July 2, 2024) (quoting *Vangas v. Montefiore Med. Cent.*, 6 F. Supp. 3d 400, 420 (S.D.N.Y. 2014) (internal quotation marks omitted)).

New York courts, beginning with *Marsteller v. City of New York*, have generally found that City agencies' processes for reviewing religious accommodation requests satisfied the NYCHRL's cooperative dialogue demand. 192 N.Y.S.3d 18, 20–21 (1st Dep't 2023) (reasoning that the City "offered public information on its process for reviewing accommodation requests related to the vaccine mandate" and that the "[p]etitioner availed himself of this process, the NYPD explained why his application did not qualify for an accommodation, and the parties further engaged during the administrative appeals process . . . under a constrained timeline during an evolving public health emergency"); *accord Chinchilla*, 2024 WL 3400526, at *33–34; *Annicelli*, 2026 WL 871393, at *15 (finding cooperative dialogue burden satisfied because

"Plaintiff availed himself of . . . process, . . . NYPD . . . gave him instructions on how to appeal this denial, . . . [and] the City published FAQs for employees about the process").

In the limited instances where courts have found the City's processes potentially insufficient, plaintiffs alleged that their employer did not respond to their requests for information and guidance. *See Rizzo*, 2024 WL 3274455, at *4 (denying dismissal of cooperative dialogue claim because the plaintiff repeatedly attempted to reach his employer for guidance and "never heard back"); *Lee*, 2025 WL 2772855, at *5 (denying dismissal of cooperative dialogue claim because, in addition to not receiving rationale for her denial, plaintiff's "request for further information from [her employer] was unanswered").

The SAC acknowledges that Defendant provided public notice of the availability of religious accommodations to the Vaccine Mandate, availability of an appeals process, and FAQs on the Vaccine Mandate. SAC ¶¶ 37, 39, 44–46. Plaintiff availed himself of this process. When his application for an exemption was denied because he failed to communicate his sincere religious belief, DSNY provided him with instructions on how to appeal and accepted his supplemental documents to support that appeal. *Id.* ¶¶ 74–77; *see* Dkt. No. 58-2. Though Plaintiff alleges that no supervisor nor agency representative directly notified him of his right to apply for a religious accommodation, and that he "was never provided with instructions or guidance from his employer regarding how to initiate or submit such a request," he does not allege that he asked his employer for more information about the accommodations process, or that his employer ever ignored such attempts. *Id.* ¶¶ 58, 60. Plaintiff has therefore failed to allege facts demonstrating that Defendant fell short of what the CHRL demands regarding cooperative dialogue. Accordingly, the Court grants the motion to dismiss this claim with prejudice to repleading. *See Obie v. Commodity Futures Trading Comm'n*, 2024 WL 4107931,

at *8 (S.D.N.Y. Sept. 6, 2024) ("courts routinely deny leave to amend when a plaintiff has already filed an amended complaint.").

**CONCLUSION**

The motion to dismiss is GRANTED IN PART and DENIED IN PART. The motion to dismiss is denied as to Counts I, II, and IV. It is granted, with prejudice, as to Count III. The Clerk of Court is respectfully directed to close Dkt. No. 56.

SO ORDERED.

Dated: July 6, 2026
New York, New York

LEWIS J. LIMAN
United States District Judge