USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 07/21/2026

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

VINCENT MAIORINO,

Plaintiff,

-v-

NEW YORK CITY DEPARTMENT OF SANITATION, et al.,

Defendants.

---

25-cv-0097 (LJL)

MEMORANDUM AND ORDER

LEWIS J. LIMAN, United States District Judge:

Defendants move, pursuant to Rule 11 of the Federal Rules of Civil Procedure, for an award of sanctions against Plaintiff based on the allegations in his Second Amended Complaint ("SAC"). For the following reasons, the motion for sanctions is granted in part and denied in part.

**BACKGROUND**

Familiarity with these proceedings is presumed. *See Maiorino v. City of New York*, 2026 WL 1948302 (S.D.N.Y. July 6, 2026).

Plaintiff, who identified as a practicing Roman Catholic, was formerly employed by the New York City Department of Sanitation. Dkt. No. 51 (the "SAC") ¶¶ 5–7, 18, 22. Following the outbreak of the COVID-19 pandemic, on October 20, 2021, the New York City Commissioner of Health and Mental Hygiene issued an order (the "Vaccine Mandate") requiring that employees of New York City receive a COVID-19 vaccine by October 29, 2021 in order to maintain their employment. *Id.* ¶ 36. Pursuant to the Vaccine Mandate, and to avoid being placed on leave without pay ("LWOP") status, employees who sought reasonable religious or medical accommodations were required to submit requests for such accommodation to their

agency's Equal Employment Opportunity ("EEO") Officer no later than October 27, 2021. *Id.* ¶ 38. The Vaccine Mandate further provided that an employee had a right to appeal if an initial request for accommodation was denied. *Id.* ¶ 39.

Plaintiff, who alleges that he refuses all vaccinations because of his Catholic beliefs, submitted a request for a religious accommodation in which he did not disclose the basis of his religious objection. *Id.* ¶¶ 65–66. That initial request was denied. *Id.* ¶ 73. He submitted an appeal of the denial to the City of New York Reasonable Accommodation Appeals Panel (the "Citywide Panel"), which consisted of three voting members from the Department of Citywide Administration of Services ("DCAS"), the Law Department, and the City Commission on Human Rights. *Id.* ¶¶ 76, 129. In his appeal, he informed the panel that he was a Roman Catholic, and that he refused the vaccination based on his Catholic beliefs. *Id.* ¶ 143. Plaintiff's appeal was denied on January 4, 2022. *Id.* ¶ 268.

Plaintiff alleges that the City violated the First Amendment and the New York State and City Human Rights Laws because it "denied his request through a process infected by bias and predetermined criteria that disfavored Catholic and pro-life applicants." *Id.* ¶ 3. It did so by "substituting institutional views of church leadership for individual belief, and rejecting abortion-based religious objections on the erroneous premise that such beliefs were neither religious nor factually valid." *Id.* ¶ 4. The SAC alleges further that it was "the City's policy to reject accommodation requests from Roman Catholics on the basis that the Pope, as leader of the Catholic Church, had publicly endorsed the COVID-19 vaccine." *Id.* ¶ 85. It continues that "[i]t was the policy and practice of the Defendant to deny requests if the applicant's opposition to vaccination was not 'required' by his religion, or where other members of the faith did not oppose the vaccine," such that "Catholics were categorically disqualified from receiving a

religious accommodation because their beliefs diverged from the Pope's official position." *Id.* ¶ 173.

The SAC contains numerous allegations that the City categorically denied every accommodation claim brought by a Catholic on the basis that their opposition to the vaccine was merely personal rather than religious. *See id.* ¶ 2 ("Under the City's policies and practices, Catholic employees were categorically denied accommodations because the Pope had publicly expressed support for vaccination."); *id.* ¶ 172 ("because the Pope publicly supported the COVID-19 vaccine and not all Catholics opposed it, any Catholic applicant citing a religious objection was deemed to be asserting a personal preference rather than a sincere religious belief."); *id.* ¶ 173 ("Catholics were categorically disqualified from receiving a religious accommodation because their beliefs diverged from the Pope's official position."); *id.* ¶ 214 ("The City categorically denied religious accommodation requests from individuals identifying as Catholics, presuming that their objections were invalid if their religious leaders did not officially oppose the vaccine."); *id.* ¶ 217 ("Defendant's policies provided that Catholics could not 'qualify as a religious belief' because the rejection of the COVID-19 vaccine based on its connection to abortion was 'not part of a comprehensive religious belief system' because other Catholics accepted the COVID-19 vaccine."); *id.* ¶ 229 ("The City's accommodation policy, as applied, automatically denied religious accommodation requests from individuals identifying as Catholic, on grounds that the Catholic Church does not officially prohibit the vaccine."); *id.* ¶ 234 (stating that the policy "discriminated against Catholics like Plaintiff, who automatically were disqualified from receiving a religious exemption on this basis."); *id.* ¶ 236 ("The City denied religious accommodations en masse for individuals who identified with specific faith traditions, including Catholicism, based on its presumption that members of these faiths could

not sincerely object to the vaccine if their religious leaders did not explicitly forbit it."); *id.* ¶ 257 ("The Defendant denied applicants if they did not show that refusal of vaccination was mandated by their religion."); *id.* ¶ 259 ("under the City's written policies and practices, religious objections to the COVID-19 vaccine by Catholics were dismissed as 'personal preferences.'"); *id.* ¶ 260 ("Defendant took the position that Catholics could not hold sincere religious beliefs contrary to the Pope's endorsement of the vaccine."); *id.* ¶ 263 ("Defendant's accommodation policies only allowed for religious accommodations for applicants who were members of religions that they deemed recognized and established religious organizations with longstanding objections to all vaccinations."); *id.* ¶ 353 ("Defendant categorically rejected Mr. Maiorino's religious beliefs."); *id.* ¶ 483 (the city "require[ed] Catholic employees to demonstrate agreement with the Pope's stance on vaccination."); *id.* ¶ 499 ("Defendant limited religious exemptions to applicants who belonged to established, organized religions which had a long-standing public history of opposition to vaccination.").

**PROCEDURAL HISTORY**

Defendant served Plaintiff's counsel on December 23, 2025 with a notice of motion and a safe-harbor letter that outlined the grounds upon which Defendant would seek sanctions. Dkt. No. 61-1. Plaintiff's counsel responded on December 26, 2026, and declined to withdraw or amend the SAC. Dkt. No. 61-2. Defendant then filed the motion for Rule 11 sanctions on January 16, 2026, along with a Memorandum of law and the Declaration of Brigid Lynn. Dkt. Nos. 59–61. Plaintiff filed an opposition, along with a declaration of Christina Martinez, on March 23, 2026. Dkt. Nos. 64–65. Defendant replied to the opposition on April 27, 2026. Dkt. No. 74.

**DISCUSSION**

Federal Rule of Civil Procedure 11(b)(3) provides in pertinent part:

> By presenting to the court a pleading, written motion, or other paper—whether by signing, filing, submitting, or later advocating it—an attorney . . . certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances: . . . (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery.

Fed. R. Civ. Proc. 11(b)(3). The 1993 Advisory Committee Notes explain that Rule 11(b) "expands the responsibilities of litigants to the court," including by "emphasiz[ing] the duty of candor." Fed. R. Civ. P. 11 advisory committee's note to 1993 amendment. The Supreme Court has stated that "the central purpose of Rule 11 is to deter baseless filings in district court" and thus "streamline the administration and procedure of the federal courts." *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393 (1990).

Rule 11 targets situations "where it is patently clear that a claim has absolutely no chance of success." *Healey v. Chelsea Res., Ltd.*, 947 F.2d 611, 626 (2d Cir. 1991) (internal citation marks omitted). Thus, an attorney files a pleading or motion in violation of Rule 11 if it is "frivolous, legally unreasonable, or factually without foundation, even though not signed in subjective bad faith." *Wechsler v. Hunt Health Sys., Ltd.*, 216 F. Supp. 2d 347, 356 (S.D.N.Y. 2002); *see also Simon DeBartolo Grp., L.P. v. Richard E. Jacobs Grp., Inc.*, 186 F.3d 157, 167 (2d Cir. 1999). A court may impose sanctions under Fed. R. Civ. P. 11(b)(3) only if there is evidence that "conclusively demonstrate[s]" that the factual allegations are "utterly lacking in support" and the decision to make them was "objectively unreasonable." *Sportvision, Inc. v. MLB Advanced Media, LP*, 2022 WL 19406558, at *8 (S.D.N.Y. Dec. 5, 2022) (quoting *Zeta Glob. Corp. v. Maropost Mktg. Cloud, Inc.*, 2022 WL 2533182, at *5 (S.D.N.Y. July 7, 2022)). "Courts typically look for statements which rise to the level of direct falsehoods before they find

that sanctions are warranted pursuant to Rule 11(b)(3)." *Id.* at *4.; *see also In re Highgate Equities, Ltd.*, 279 F.3d 148, 154 (2d Cir. 2002) (Rule 11 sanctions should be granted with caution, and only when "a particular allegation is utterly lacking in support") (quoting *O'Brien v. Alexander*, 101 F.3d 1479, 1489 (2d Cir. 1996)); *see also StreetEasy, Inc. v. Chertok*, 752 F.3d 298, 307 (2d Cir. 2014) ("With respect to factual contentions, sanctions may not be imposed unless a particular allegation is utterly lacking in support." (internal quotation marks omitted)); *Storey v. Cello Holdings, L.L.C.*, 347 F.3d 370, 387 (2d Cir. 2003) (Sotomayor, J.) ("When reviewing Rule 11 sanctions . . . we . . . need to ensure that any [sanctions] decision is made with restraint." (internal quotation marks omitted)). All doubts must be resolved "in favor of the signer." *Oliveri v. Thompson*, 803 F.2d 1265, 1275 (2d Cir. 1986); *see Rodick v. City of Schenectady*, 1 F.3d 1341, 1350 (2d Cir. 1993) (same).

"The standard for imposing Rule 11 sanctions . . . is purposefully high, so not as to stifle legal creativity and zealous advocacy." *Galin v. Hamada*, 283 F. Supp. 3d 189, 201 (S.D.N.Y. 2017), *aff'd*, 753 F. App'x 3 (2d Cir. 2018) (summary order). A Rule 11 motion is not a vehicle for a defendant to force its adversary prematurely to show his hand and reveal the evidence that will support each and every allegation in a complaint. *See Breuninger v. Williams*, 2023 WL 4211030, at *8 (S.D.N.Y. June 27, 2023) (declining "to award sanctions on the basis of a factual dispute that need not be resolved at this early stage." (quoting *JM Holdings 1 LLC v. Quarters Holding GmbH*, 2021 WL 860516, at *8 (S.D.N.Y. Mar. 8, 2021))); *Sportvision*, 2022 WL 19406558, at *4, 9 (holding that "courts ordinarily defer determination of Rule 11 sanctions until the end of the litigation"); *Safe-Strap Co., Inc. v. Koala Corp.*, 270 F. Supp. 2d 407, 417 (S.D.N.Y. 2003) (same). "[A] pre-trial motion for sanctions is not the appropriate vehicle to test the truth or falsity of allegations in a complaint." *In re Pfizer Inc. Sec. Litig.*, 288 F.R.D. 297,

331 (S.D.N.Y. 2013); *see also Troeger v. JetBlue Airways Corp.*, 2026 WL 554692, at *6 (S.D.N.Y. Feb. 27, 2026) ("Federal Rule of Civil Procedure 11 does not permit courts to resolve contested factual disputes or make credibility determinations.") The sufficiency of a plaintiff's allegations may be tested on a motion under Rule 12(b)(6). And ultimately, the support for the allegations ordinarily is tested only after discovery through a motion for summary judgment under Rule 56.

Under Rule 11, so long as the pleading party, "after an inquiry reasonable under the circumstances," has support for a factual allegation or has a basis to believe that the allegation will have evidentiary support at the time they are made, there is no basis for an award of sanctions. Fed. R. Civ. P. 11(b)(3). Rule 11(b)(3) expressly permits parties to make allegations that do not have evidentiary support so long as it is at least reasonable that they will obtain such support through discovery. It thus is an abuse to use Rule 11 "to intimidate an adversary into withdrawing contentions that are fairly debatable." *DeFrancesco v. Mirador Real Estate*, 2019 WL 5722120, at *4 (S.D.N.Y. July 15, 2019) (quoting Fed. R. Civ. P. 11 advisory committee's note to 1993 amendment). However, if it can be (1) conclusively established that the allegation is false and that no amount of discovery could establish the evidentiary basis for such a claim, and (2) that it was objectively unreasonable for a party to have thought it might have evidentiary support following discovery, there is then no reason to delay a ruling on a Rule 11 motion. *See Hallwood Realty Partners, L.P. v. Gotham Partners, L.P.*, 2000 WL 528633, at *1 (S.D.N.Y. May 2, 2000) ("[t]he time when sanctions are to be imposed rests in the discretion of the trial judge." (quoting Fed. R. Civ. P. 11 advisory committee note to 1983 amendment). Such an order may, in fact, only streamline proceedings and ensure that conduct that is sanctionable is met with

sanctions. Defendant has made the showing to support an award of sanctions here and Plaintiff has offered no convincing evidence to rebut that showing.

The premise of Defendant's motion for sanctions is that Plaintiff's allegation with respect to the City's categorical or differential treatment of Catholic exemption applicants is utterly false and was known to be false because Plaintiff knew at the time of filing the SAC that the allegation was refuted (1) by deposition testimony given by Citywide Panel member and Managing Attorney of the New York City Law Department Eric Eichenholtz ("Eichenholtz") in two other actions brought by the same counsel, and (2) by documents produced to Plaintiff's counsel in those proceedings revealing that some Catholics did in fact receive exemptions. Dkt. No. 60 at 5–10.

The deposition testimony alone cannot support Defendant's motion for sanctions. Eichenholtz testified on April 11, 2025 as a Federal Rule of Civil Procedure 30(b)(6) witness on behalf of the City of New York in *Rizzo v. The City of New York*, 23-cv-7190 (S.D.N.Y. filed Aug. 14, 2023). Dkt. No. 61-4 at 6:18–21.[1] In his deposition, Plaintiff's counsel asked Eichenholtz: "Is it the Citywide Panel's position that a Catholic employee can be denied a religious accommodation if their beliefs don't align with the Pope's?" *Id.* at 99:8–11. Eichenholtz answered:

> No. And, in fact, the Panel did and I personally did approve religious reasonable accommodations for Catholics who had religious objections and practices grounded in the issue of abortion sometimes and sometimes for other reasons that did not reflect what—what Pope Francis was saying there.
>
> And—and that was done for the same reason when you said, "Well, are you familiar with, you know, these various Catholic teachings and doctrines?" I said, it's not relevant what general doctrines say. It's relevant on what these—these specific employees say

[1] Citations to Eichenholtz's deposition testimony refer to the internal deposition pagination.

> So, no, the answer to that is an unequivocal no. And—and I'll say it again. And I understand, Ms. Martinez, you even very recently again have put in a pleading and represented to a court I believe attributing to me that there is some sort of standard for Catholics and on the issue of abortion that was adopted by the Panel and that there was not and I will say that unequivocally.· And, like I said, that our cases bear that out. The decision-making bears that out.

*Id.* at 99:12–100:11. He also testified that the Citywide Panel had found in "numerous cases" that Catholic applicants were entitled to exemptions on the basis that there was a conflict between their religious beliefs and the vaccination requirement. *Id.* at 100:18–101:2.

Eichenholtz testified again as the City's 30(b)(6) witness in another proceeding brought by Plaintiff's counsel in *Chinchilla v. New York City Police Department*, 23-cv-8986 (S.D.N.Y. filed Oct. 12, 2023) on October 9, 2024. In his deposition in that proceeding, Eichenholtz was asked whether there was "a hard line rule that if someone puts in a request and they mention a personal, political or philosophical belief that they do not get an accommodation—if there is an accommodation request that has both, are they automatically disqualified based on this policy?" Dkt. No. 61-3 at 70:24–71:4. Eichenholtz responded that:

> There were no automatic disqualifications. You read the whole thing and looked at what the person was saying and you did the evaluations.

*Id.* at 71:7–10.

Defendant argues that because Plaintiff's SAC post-dated the Eichenholtz's deposition testimony in *Rizzo* and *Chinchilla*, and nevertheless alleges that the City had a policy or practice of denying Catholic applicant's exemption requests, that "Plaintiff's counsel could not have reasonably believed that this allegation was likely to have evidentiary support at the time of filing the Second Amended Complaint." Dkt. No. 60 at 7. That the allegations in the SAC are arguably contradicted by the deposition testimony of a 30(b)(6) witness in a distinct proceeding does not conclusively establish that Plaintiff's allegations were utterly baseless such as to be objectively unreasonable. Deposition testimony by a 30(b)(6) witness is "binding in the sense

that whatever its deponent says can be used against the organization." *Keepers, Inc. v. City of Milford*, 8078 F.3d 24, 34 (2d Cir. 2015). But it is only the evidence of a single party and does not conclusively establish the truth of the matter asserted therein. It cannot be said that an allegation is objectively "frivolous, legally unreasonable, or factually without foundation," *Wechsler v. Hunt Health Sys., Ltd.*, 216 F. Supp. 2d 347, 356 (S.D.N.Y. 2022), even if the adverse party has raised, in a distinct proceeding, a question of fact as to the veracity of an allegation. "The fact that some percipient witnesses disagree with the ultimate conclusion drawn by the advocate does not ineluctably demonstrate that the conclusion is baseless or even incorrect." *In re Pfizer Inc. Sec. Litig.*, 288 F.R.D. at 331. Indeed, "[r]esolving those factual disputes would be equivalent to resolving the factual disputes that make up this case," which falls outside the scope of what the Court must resolve on a Rule 11 motion. *Breuninger*, 2023 WL 4211030, at *8.

Defendant, however, also argues that Plaintiff's allegations in the SAC are utterly false because documents produced to Plaintiff's counsel in *Rizzo* establish that some Catholics were in fact granted religious exemptions. *See* Dkt. No. 61-5. That argument is convincing. Defendant has attached to its motion for sanctions a "reasonable accommodation spreadsheet created by the New York City Department of Sanitation and provided to Plaintiff's counsel in *Rizzo v. City of New York*." Dkt. No. 61 ¶ 7. The attached spreadsheet states that there were 358 Catholic applicants for exemptions in the Department of Sanitation, and that 102 of those were approved while 254 were denied. Dkt. No. 61-5 at 3. Defendant argues that the fact that some Catholics were granted exemptions, and that Plaintiff's counsel knew as much in advance of filing the SAC, demonstrates that "it was not Defendant's policy to deny exemption requests from Catholic employees based on any statements from the Pope or other religious leader, and that it was not

the City's policy to limit religious exemptions to the Vaccine Mandate to members of recognized or established religious organizations with longstanding objections to vaccination." Dkt. No. 60 at 10.

Plaintiff's counsel does not dispute that the spreadsheet is accurate or otherwise contest the truth of Defendant's representation, as confirmed therein, that the Department of Sanitation granted religious exemptions to Catholic applicants. In other words, Plaintiff does not dispute that the purported policy of the City was not categorical; some Catholics were granted exemptions, and some were not. It also is not disputed that Plaintiff's counsel had the spreadsheet in advance of filing the SAC. In other words, Plaintiff had the very document that he now concedes demonstrates that over 100 Catholic applicants received religious exemptions. In the face of that evidence, it was objectively unreasonable for counsel to believe—and counsel has offered no evidence or argument to support that a lawyer would believe—that discovery would reveal a categorical bar on all persons of Catholic faith receiving exemptions for practices based on their religious beliefs. It was sanctionable for Plaintiff to make such allegations, to suggest in a public filing that Defendant had such a categorical policy, and to subject Defendant to potential discovery as to whether such a categorical policy existed, when counsel well knew that there was no such policy.

Plaintiff now attempts to retreat from the language of his pleading and argues instead that the SAC is not best read to allege that all Catholics were categorically denied vaccine exemptions on the basis that their beliefs were not sincere, but rather that "use of the term 'categorically' describes *how the City's criteria operated as applied*, not a claim that no Catholic employee was ever granted an accommodation." Dkt. No. 64 at 6 (emphasis in original). That many Catholics were granted exceptions was, in Plaintiff's telling, the result of "discretionary

departures from those policies." *Id.* at 7; *see id.* at 8 (arguing that the spreadsheet supports Plaintiff's claims because "the existence of approvals for some lucky Catholics does not negate Plaintiff's allegation that the City's policies, as structured and applied, discriminated against and disqualified Catholic applicants whose beliefs were deemed inconsistent with official Church doctrine," nor "render those allegations 'knowingly false.'").

Plaintiff's argument twists the language of the SAC beyond recognition. The allegations in the SAC are not ambiguous. Plaintiff alleges repeatedly and forcefully that Catholics were "categorically disqualified from receiving a religious accommodation," SAC ¶ 173, and that the policy "automatically denied religious accommodation requests from individuals identifying as Catholic," *id.* ¶ 229. *See also id.* ¶¶ 214, 217, 234. There is only one plausible understanding of those allegations: that the City did not grant religious accommodations to a single applicant for an exemption who applied based on their Catholic beliefs. That is what the SAC says, and that is what Plaintiff intended to convey.

Moreover, while Eichenholtz's testimony would not alone support an award of sanctions, it further demonstrates both that Plaintiff's allegation was utterly false and that the decision to make the allegation was objectively unreasonable. Eichenholtz's testimony that the panel "did approve religious reasonable accommodations for Catholics who had religious objections," Dkt. No. 61-4 at 99:12–24, is corroborated by the fact that more than one hundred Catholic exemption applicants were in fact granted such an exemption. And his testimony that "the decision making bears" out that some claims were granted is accurate. *Id.* at 100:9–11. So too with Eichenholtz's statement that "Does that mean that all Catholics could get vaccinated and not have a religious belief. The answer to that of course, is no." Dkt. No. 61-3 at 72:5–9. In combination with the unrefuted documentary evidence, Plaintiff was on notice that there was no basis on which to

believe that there was in fact a policy by which every single Catholic applicant for an exemption was denied.

Plaintiff knew, at the time of filing the SAC, that his oft-repeated claim that the City's policy resulted in the categorical denial of Catholic exemption applicants had no "adequate, non-frivolous basis." *Colliton v. Cravath, Swaine & Moore LLP*, 2008 WL 4386764, at *13 (S.D.N.Y. Sept. 24, 2008). Plaintiff had access both to the spreadsheet indicating that nearly a third of all Catholic applicants had been granted exemptions, combined with the deposition testimony from Eichenholtz confirming his understanding of that fact. He knew that the same spreadsheet, which he does not contest is accurate, would be produced in this litigation, and that it would reveal—as it did in *Rizzo*—that Catholics were not categorically or absolutely denied exemptions to the Vaccine Mandate, making it "patently clear" that the allegations have "absolutely no chance of success." *Weinraub v. Glen Rauch Sec., Inc.*, 399 F. Supp. 2d 454, 460 (S.D.N.Y. 2005) (quoting *Caisse Nationale de Credit-Agricole-CNCA*, 28 F.3d 259, 264 (2d Cir. 1994)).

Plaintiff's allegations with respect to Defendant's categorical denial of exemptions for Catholic applicants goes beyond "zealous advocacy." *E. Gluck Corp. v. Rothenhaus*, 252 F.R.D. 175, 179 (S.D.N.Y. 2008). The allegations are not merely "overstatement[s]," and Defendant's reading is not based on "an overly literal reading of each factual statement." *In re Proshares Tr. II Sec. Litig.*, 2021 WL 2548765, at *1 (S.D.N.Y. June 22, 2021) (quoting *Kiobel v. Millson*, 592 F.3d 78, 83 (2d Cir. 2010)). The evidence presented by the movant "conclusively" and "irrefutably demonstrate[s]" "that [Plaintiff's] factual allegations . . . were 'utterly lacking support' and 'objectively unreasonable.'" *Sportvision*, 2022 WL 19406558, at *8 (quoting *Zeta*

*Global*, 2022 WL 2533182, at *5). Even resolving "all doubts in favor of the signer," *Galin*, 283 F. Supp. 3d at 201, Defendant has established a basis for sanctions.

Finally, Plaintiff's allegations are not made objectively reasonable by counsel's "extensive first-hand experience" and corroborative "documentary evidence." Dkt. No. 64 at 10. Although counsel exhaustively details their experience litigating similar cases in the New York State and Federal court systems, they do not point to any information that would render an allegation that Catholics were categorically and as a rule denied accommodations reasonable. Instances in which an individual was denied an accommodation on the basis of a determination by the City that purported Catholic beliefs were in fact "a personal choice," *see id.* at 13–16, do not make it objectively reasonable to state that Catholics were denied accommodations as a rule. Nor does the fact that testimony and document discovery in other cases indicated instances where certain individuals were denied an exemption on the basis that the Catholic Church found vaccination morally acceptable make it objectively reasonable to make a categorical claim where counsel was aware that such a practice was not in fact categorically applied. *Id.* at 16–23.

Plaintiff suggests that the City's litigation position in other cases confirms "the reasonableness of Plaintiff's allegations." *Id.* at 13. The City has elsewhere argued that "Catholic employees cannot sustain religious objections to vaccination where those objections reflect an individual application of faith rather than a doctrinal mandate and rely[] heavily on the views of the Pope or official Church statements." *Id.* at 14. Plaintiff's argument is not well-founded for two reasons. First, the arguments of City lawyers in other cases regarding what the City could legally do is not an admission of fact as to what the City in fact did in those cases. *Cf. United States v. McKeon*, 738 F.2d 26, 30 (2d Cir. 1984) (statement of fact of attorney within scope of representation is admissible against the client). Second, even as described by Plaintiff,

counsel's statement is not akin to an admission that the City could permissibly categorically deny exemption requests from Catholics. A Catholic individual may have moral, non-religious objections to a practice (such as vaccination), as well as religious ones. It would not be inappropriate for the city to deny accommodation requests on the basis of such moral beliefs. The mere fact that someone *is* a Catholic and *has* an objection to a vaccine does not, as Plaintiff appears to indicate, suffice to show that the objection is a religious objection.

Where Rule 11 has been violated, the Court "may in its discretion impose sanctions limited to what is 'sufficient to deter repetition of such conduct.'" *Simon Debartolo Grp.*, 186 F.3d at 166 (quoting Fed. R. Civ. P. 11(c)(2)). Sanctions may include attorneys' fees and costs associated with filing the Rule 11 motion. Fed. R. Civ. P. 11(c)(2). Other sanctions may include "striking the offending paper; issuing an admonition, reprimand, or censure; requiring participation in seminars or other educational programs; ordering a fine payable to the court; and referring the matter to disciplinary authorities." Fed. R. Civ. P. 11 advisory committee's note to 1993 amendment. "The court also may impose other sanctions it deems appropriate for the situation." *DeFrancesco v. Mirador Real Estate*, 2019 WL 5722120, at *4 (S.D.N.Y. July 15, 2019). A court must impose Rule 11 sanctions "with restraint." *Schlaifer Nance & Co. v. Est. of Warhol*, 194 F.3d 323, 334 (2d Cir. 1999).

Defendant argues that the Court should both (1) order that opposing counsel pay Defendant's reasonable attorneys' fees and costs attributed to the preparing and filing of the motion for sanctions, and (2) enter an order admonishing Plaintiff's counsel for pleading allegations that are materially false and known by them to be materially false at the time of signing the SAC, and directing Plaintiff's counsel to remove such allegations from this and all future pleadings concerning the City's Vaccine Mandate. Dkt. No. 60 at 10.

On the first request, the award of costs and fees in connection with this motion is appropriate, as the Court has determined that Plaintiff violated Rule 11. *See S.R. Mercantile Corp. v. Maloney*, 909 F.2d 79, 83 (2d Cir. 1990) (awarding attorneys' fees based on counsel's having 'made representations to the court that he knew or should have known were untrue."); *Goldman v. Barrett*, 825 F. App'x 35, 39 (2d Cir. 2020) (summary order) (same). "[I]t would defeat the purpose of Rule 11 if a party successfully established a violation of the rule, but was not awarded the fees and costs it incurred in being forced to file such a motion." *China AI Cap. Ltd. v. DLA Piper LLP (US)*, 2025 WL 2466633, at *12 (S.D.N.Y. May 22, 2025).

As to the second, the Court also finds that a formal order admonishing Plaintiff's counsel for pleading allegations known to be false at the time of filing and striking those allegations from the complaint is appropriate. *See Lively v. Wayfarer Studios LLC*, 2026 WL 852740, at *5 (S.D.N.Y. Mar. 27, 2026). The Court will not, however, enter an order enjoining Plaintiff's counsel with respect to its actions in distinct proceedings. This Order and the sanctions imposed are sufficient to deter the violative conduct, and the inclusion of similar allegations in future proceedings will be subject to the same Rule 11 standards that the Court has applied in this motion.[2]

**CONCLUSION**

The motion for sanctions under Rule 11 is GRANTED IN PART and DENIED IN PART. Defendant shall submit a fee petition and supporting affidavit within 14 days of this

---

[2] Plaintiff states in his brief in opposition to the motion for sanctions that the Defendant's motion for sanctions "is itself sanctionable." Dkt. No. 64 at 23–25. Any motion for sanctions under Rule 11 must be made separately from any other motion and must first be served upon the offending party who is then given 21 days to remedy the sanctionable conduct before any motion can be made to the court. *See Lin v. Bondl*, 2026 WL 817936, at *4 (E.D.N.Y. Mar. 25, 2026) (citing Fed. R. Civ. P. 11(c)(2)). In any event, it is apparent from the Court's ruling that any Rule 11 motion by Plaintiff would itself be without merit.

Order. Plaintiff shall have 14 days to respond. The allegations with respect to the categorical or absolute nature of City's alleged policy of denying Catholic Vaccine Policy exemption applicants contained in SAC ¶¶ 2, 85, 165, 171, 172, 173, 174, 214, 217, 234, 236, 253, 257, 259, 260, 263, 353, 483, 499 are stricken. The Clerk of Court is respectfully directed to close Dkt. No. 59.

SO ORDERED.

Dated: July 21, 2026
New York, New York

LEWIS J. LIMAN
United States District Judge