Docket No. 25-cv-00097

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

VINCENT MAIORINO,

Plaintiff,

v.

CITY OF NEW YORK,

Defendants.

# PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' APPLICATION FOR ATTORNEY FEES

MARTINEZ & LOIACONO, PLLC.
*Attorney for Plaintiff*
245 Bricktown Way, Suite J
Staten Island NY 10309
T: (347) 661-0479
E-mail: Jmpoyerd@yahoo.com

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................ ii

PRELIMINARY STATEMENT........................................................................................ 1

STANDARD OF LAW…........................................................................................ 2

A. Attorney's Fees Standard….......................................................................................... 2

ARGUMENT……………........................................................................................ 3

POINT I: DEFENDANT'S VAGUE, DUPLICATIVE, AND NON-SUBSTANTIVE BILLING ENTRIES WARRANT A REDUCTION IN THE HOURS CLAIMED................. 3

POINT II: DEFENDANT'S REQUESTED $250 HOURLY RATE SHOULD BE REDUCED TO REFLECT COUNSEL'S LIMITED EXPERIENCE ….................................................. 10

POINT III: DEFENDANT'S FEE AWARD SHOULD BE REDUCED TO REFLECT ITS LIMITED SUCCESS ON THE SANCTIONS MOTION .................................................... 13

CONCLUSION ........................................................................................ 16

CERTIFICATION ........................................................................................ 17

## TABLE OF AUTHORITIES


**Cases** **Page**

*Abeyta v. City of N.Y.*,
No. 12-CV-5623, 2014 WL 929838 (S.D.N.Y. Mar. 7, 2014),
*aff'd*, 588 F. App'x 24 (2d Cir. 2014) ....................5,9

*Allende v. Unitech Design, Inc.*, 783 F. Supp. 2d 509 (S.D.N.Y. 2011)…………………………...2

*Amato v. City of Saratoga Springs*,
991 F. Supp. 62 (N.D.N.Y. 1998) ....................5

*Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*,
522 F.3d 182 (2d Cir. 2008) ....................2,10

*Barney v. Consol. Edison Co.*,
2012 WL 911821 (E.D.N.Y. Mar. 16, 2012) ....................5

*Barney v. Edison*,
No. 99-CV-823, 2010 WL 8497627 (E.D.N.Y. Jan. 29, 2010) ....................5,9

*Beastie Boys v. Monster Energy Co.*,
112 F. Supp. 3d 31 (S.D.N.Y. 2015)……....................2,3

*Best Payphones, Inc. v. Dobrin*,
409 F. Supp. 3d 130 (E.D.N.Y. 2018) ....................3

*Bravia Capital Partners, Inc. v. Fike*,
296 F.R.D. 136 (S.D.N.Y. 2013) ....................12

*Castillo v. Time Warner Cable of New York City*,
No. 09 Civ. 7644 (PAC), 2013 U.S. Dist. LEXIS 58815
(S.D.N.Y. Apr. 24, 2013) ....................13

*Eldesouky v. Aziz*,
No. 11-CV-6986, 2015 WL 1573319 (S.D.N.Y. Apr. 8, 2015) ....................12

*Hensley v. Eckerhart*,
461 U.S. 424 (1983) ....................3

*Ji Li v. Ichiro Sushi, Inc.*,
No. 14 Civ. 10242, 2022 WL 1137094 (S.D.N.Y. Apr. 16, 2022) ....................11

*Katzenberg v. Lazzari,* 2007 WL 2973586 (E.D.N.Y. Oct. 9, 2007)……………………………5

*Kirsch v. Fleet Street, Ltd.*, 148 F.3d 149 (2d Cir. 1998)………………………………..3,4,6

*Kreisler v. Second Ave. Diner Corp.*,
No. 10-CV-7592, 2013 WL 3965247 (S.D.N.Y. July 31, 2013) ..............................................9,13

*Levy v. Powell*,
No. 00 Civ. 4499 (SJF), 2005 WL 1719972, at *12 (E.D.N.Y. July 22, 2005)…………………14

*Local Union No. 40 of Int'l Ass'n of Bridge, Structural & Ornamental Iron Workers v. Car-Win Construction, Inc.*,
88 F. Supp. 3d 250 (S.D.N.Y. 2015) .........................................................................................12

*Matteo v. Kohl's Dep't Stores, Inc.*,
No. 09-CV-7830, 2012 WL 5177491 (S.D.N.Y. Oct. 19, 2012),
*aff'd*, 533 F. App'x 1 (2d Cir. 2013) ............................................................................................3

*Mayo-Coleman v. American Sugars Holding, Inc.*,
2019 U.S. Dist. LEXIS 34972 (S.D.N.Y. 2019) .....................................................................13,16

*Millea v. Metro-North R.R. Co.*, 658 F.3d 154 (2d Cir. 2011)……………………………………2

*Mr. X v. N.Y. State Educ. Dep't,* 20 F.Supp.2d 561 (S.D.N.Y.1998) ……………………………5,6

*Ng v. King Henry Realty Inc.*,
2016 U.S. Dist. LEXIS 142012 ...................................................................................................11

*N.Y. State Ass'n for Retarded Children, Inc. v. Carey*,
711 F.2d 1136 (2d Cir. 1983) .........................................................................................................2

*P.R. v. New York City Department of Education*,
2018 U.S. Dist. LEXIS 121949 (S.D.N.Y. July 19, 2018) .....................................................8,9,12

*Rivera v. Dyett*,
No. 88 Civ. 4707 (PKL), 1993 WL 36159, at *4 (S.D.N.Y. Feb. 10, 1993)……………………..13

*Rosso v. Pi Mgmt. Assocs., L.L.C.*,
No. 02-CV-1702, 2006 WL 1227671 (S.D.N.Y. May 3, 2006) ..................................................5,9

*Salama v. City of New York*, 2015 U.S. Dist. LEXIS 88728 (S.D.N.Y. July 8, 2015)…………...12

*Simmons v. N.Y. City Transit Auth.*, 575 F.3d 170 (2d Cir. 2009)…………………………………2

*Spalluto v. Trump Int'l Hotel & Tower*,

2008 WL 4525327 *8 (S.D.N.Y. Oct. 2, 2008)……………………………………….....3,4,6,13,14

*Wise v. Kelly*,
620 F. Supp. 2d 435 (S.D.N.Y. 2008) ........................................................................................9

Statutes

Fed. R. Civ. P. 11(c)(4)…………………………………………..……………………………1

## PRELIMINARY STATEMENT

Plaintiff respectfully submits this memorandum in opposition to Defendant's application for $6,477.50 in attorneys' fees. Although the Court has authorized Defendant to seek reasonable fees associated with the Rule 11 motion, the amount requested should be reduced.

Defendant's billing records contain vague, inadequately documented, and apparently duplicative entries that do not permit meaningful assessment of whether all 25.91 hours were reasonably expended. The records also include non-substantive tasks billed at an attorney rate and fail to distinguish sanctions-related work from overlapping work performed in connection with Defendant's contemporaneous motion to dismiss.

The requested $250 hourly rate should likewise be reduced because counsel had been admitted to practice for only approximately nine months when the billing period began, and the cited Southern District authorities support lower rates for attorneys with comparable experience. Finally, Defendant's motion was granted only in part, and its billing records do not segregate time spent on successful arguments from time devoted to theories and relief the Court rejected.

Accordingly, Plaintiff respectfully requests that the Court reduce the requested fee award to reflect these deficiencies and Defendant's limited success.

## STANDARD OF LAW

### A. Attorney's Fees Standard

Rule 11 provides that a monetary sanction may include "an order directing payment to the movant of part or all of the reasonable attorney's fees and other expenses directly resulting from the violation." Fed. R. Civ. P. 11(c)(4).

The presumptively reasonable fee is determined under the lodestar approach, which requires consideration of the reasonable hourly rate and the reasonable number of hours required

for the work at issue. *Millea v. Metro-North R.R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011). The presumptively reasonable fee boils down to "what a reasonable, paying client would be willing to pay," given that such a party wishes "to spend the minimum necessary to litigate the case effectively." *Simmons v. N.Y. City Transit Auth.*, 575 F.3d 170, 174 (2d Cir. 2009) citing *Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 522 F.3d 182, 190 (2d Cir. 2008).

The fee applicant bears the burden of demonstrating that the hours claimed were reasonably spent by counsel and that the requested hourly rate is reasonable. *See Allende v. Unitech Design, Inc.*, 783 F. Supp. 2d 509, 512 (S.D.N.Y. 2011). Contemporaneous time records must "specify, for each attorney, the date, the hours expended, and the nature of the work done." *N.Y. State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1148 (2d Cir. 1983). Where billing records are vague, duplicative, excessive, or otherwise inadequate to permit meaningful review, courts may reduce the compensable hours, including through an across-the-board reduction and "the court has discretion simply to deduct a reasonable percentage of the number of hours claimed as a practical means of trimming fat from a fee application". *See Beastie Boys v. Monster Energy Co.*, 112 F. Supp. 3d 31, 48-53 (S.D.N.Y. 2015).

The same principles apply with particular force here because Defendant was litigating its motion to dismiss during the same period in which it was preparing and prosecuting its sanctions motion. The fee application therefore must provide a sufficient basis for the Court to determine what time was actually attributable to the sanctions motion, as opposed to work performed in connection with the motion to dismiss or both matters. Defendant must establish not merely that the claimed work was performed generally "in connection with" the sanctions motion, but that the fees sought were reasonably incurred and directly resulted from the Rule 11 violation for which sanctions were imposed.

## ARGUMENT

### POINT I: DEFENDANT'S VAGUE, DUPLICATIVE, AND NON-SUBSTANTIVE BILLING ENTRIES WARRANT A REDUCTION IN THE HOURS CLAIMED

Defendant bears the burden of establishing that the hours for which it seeks reimbursement were reasonably expended. *Beastie Boys v. Monster Energy Co.*, 112 F. Supp. 3d 31, 48 (S.D.N.Y. 2015); *Hensley v. Eckerhart*, 461 U.S. 424, 433-34 (1983). Courts in this District "look unfavorably on block billing and vagueness in billing because imprecise entries limit [the court's] ability to decipher whether the time expended has been reasonable." *Matteo v. Kohl's Dep't Stores, Inc.*, No. 09-CV-7830, 2012 U.S. Dist. LEXIS 151568, at *10 (S.D.N.Y. Oct. 19, 2012), aff'd, 533 F. App'x 1 (2d Cir. 2013).

In *Best Payphones, Inc. v. Dobrin*, 409 F. Supp.3d 130, 136 (E.D.N.Y. 2018) the court reduced the compensable hours by 70% because counsel's time entries were vague and lacking in specificity. In *Spalluto v. Trump International Hotel & Tower*, the court found entries such as "phone call(s) with client," "prepare correspondence to co-counsel," "conference with client," and "prepare letter to court" too vague because they failed to identify the nature or subject matter of the communications. The court held that this lack of detail was sufficient to warrant a reduction in compensable hours. *See Spalluto v. Trump Int'l Hotel & Tower*, 2008 WL 4525327 *8 (S.D.N.Y. Oct 2. 2008). The court relied on *Kirsch v. Fleet Street, Ltd.*, 148 F.3d 149, 172-73 (2d Cir. 1998), which upheld a 20% reduction where entries included generalized descriptions such as "letter to court," "staff conference," and "work on motion."

That reasoning applies here. Several of Defendant's entries identify only a meeting, conference, review, or communication without sufficiently describing its subject matter or the work performed. This deficiency is particularly significant because Defendant was simultaneously litigating its motion to dismiss. Where an entry does not identify the subject of a meeting or

communication, the Court cannot determine from the billing record itself whether the time was devoted exclusively to the Rule 11 motion, to the motion to dismiss, or to work serving both purposes. Under *Spalluto* and *Kirsch*, such vagueness supports a reduction in the compensable hours.

Measured against that standard, Defendant's billing records are vague. Lynn states that Exhibit A contains 25.91 hours of work performed 'in connection with Defendant's motion' between November 13, 2025 and April 27, 2026. Yet numerous entries provide insufficient information to determine what work was actually performed, what issue was being addressed, or whether the time was attributable to the sanctions motion at all.

The vague nature of many entries throughout Defendant's billing records prevents the Court, and Plaintiff, from independently assessing whether the time claimed was reasonably expended on compensable Rule 11 work. Rather than describing the substance of the work performed, the records repeatedly identify tasks only in general terms. For example, Defendant seeks 0.5 hours on November 13, 2025, for a "*meeting with Sonya Chazin and Lora Minicucci*"; 0.5 hours on November 20, 2025, for a "*meeting with Sonya Chazin and Shlomit Aroubas*"; 0.25 hours on November 26, 2025, for a "*meeting with Sonya and Shlomit*"; and 0.5 hours on December 4, 2025, for a "*meeting with Sonya, Shlomit and Lora*," a total of 1.75 hours (See Def.'s Ex. A.)

Entries identifying only the participants in a meeting, without describing its subject matter, provide no meaningful basis to determine what work was performed or whether the time was attributable to the sanctions motion. The entries do not identify the legal or factual issues discussed, any allegedly sanctionable allegation, or otherwise explain how the conferences related to the sanctions motion.

That deficiency is particularly significant because Defendant was simultaneously litigating its motion to dismiss, which was filed the same day as the sanctions motion. (See ECF No. 56.) Counsel was therefore addressing the same Second Amended Complaint, factual allegations, witnesses, deposition testimony, and overlapping legal issues during the same period. Against that backdrop, generic entries reflecting meetings, review, correspondence, or legal research do not permit the Court to determine whether the work was performed for the sanctions motion, the motion to dismiss, both motions, or the defense of the action generally. The Court should not be required to speculate as to what portion, if any, of such time is properly compensable.

Such vague descriptions are precisely the sort that courts have deemed impermissible in the context of fee awards. *See, e.g.*, *Abeyta v. City of N.Y.*, No. 12–CV–5623, 2014 WL 929838, at *5 (S.D.N.Y. Mar. 7, 2014) (10% reduction where finding entries entitled "Trial Preparation" and "Supervision/Management" to be impermissibly vague), *aff'd*, 588 Fed.Appx. 24 (2d Cir.2014); *Barney v. Edison*, No. 99–CV–823, 2010 WL 8497627, at *3 (E.D.N.Y. Jan. 29, 2010) (concluding that "a 15% reduction in the time expended [was] warranted" based on vague billing like "Attorney Communication," "Communication," and "Research"), *adopted sub nom. Barney v. Consol. Edison Co.*, 2012 WL 911821 (E.D.N.Y. Mar. 16, 2012); *Rosso v. Pi Mgmt. Assocs., L.L.C.*, No. 02–CV–1702, 2006 WL 1227671, at *4 (S.D.N.Y. May 3, 2006) (15% reduction for vague entries, such as "Review of documents," that prevented the court from determining "whether the attorney who performed the work spent his or her time effectively"); *Amato v. City of Saratoga Springs*, 991 F.Supp. 62, 65–66 (N.D.N.Y. 1998) (90% reduction for vague entries, which included "research," "in court and depositions" consultations and investigations," and "prepare deposition questions"). *See Katzenberg v. Lazzari,* No. 04 Civ. 5100(CBA), 2007 WL 2973586, at *9-10 (E.D.N.Y. Oct. 9, 2007) (reducing fee award by 50% for vague time entries); *see also Mr. X v. N.Y.*

*State Educ. Dep't,* 20 F.Supp.2d 561, 564 (S.D.N.Y.1998) (reducing fee award by 20% to account for vague and duplicative time entries). Thus, under these cases such vagueness supports a reduction in the compensable hours.

The November 17, 2025 entry for 0.5 hours of "correspondence with Ethics division" is similarly vague. The entry does not identify the subject of the correspondence, the legal or factual issue involved, or why the communication was necessary to the sanctions motion. Nothing in the description permits the Court to determine whether the correspondence concerned Rule 11, the pending motion to dismiss or another aspect of the litigation.

The November 20, 2025 entry for two hours reviewing "*the SAC along with the depositions of Eric Eichenholtz that were cited in the SAC*" presents an even more direct allocation problem. Review of the operative complaint and deposition testimony cited therein could bear upon both Defendant's sanctions motion and its contemporaneous motion to dismiss. The entry does not identify which allegations counsel reviewed for purposes of sanctions, what portions of the Eichenholtz testimony were examined, whether the review concerned the sanctionable conduct ultimately found by the Court, or how much of the two hours was attributable to the sanctions motion rather than the concurrently pending motion to dismiss. Where the same materials were plainly relevant to both motions, Defendant cannot satisfy its burden merely by labeling the entire expenditure as work "in connection with" sanctions.

Likewise, Defendant claims two hours on November 26, 2025 for "*Reviewed other cases*." The entry is also vague and does not identify the cases reviewed, the legal propositions researched, or even the general subject matter of the research. The Court cannot determine whether counsel was reviewing Rule 11 decisions, authorities concerning Plaintiff's substantive claims, cases relevant to Defendant's motion to dismiss, or some other issue. A two-hour block entry that merely states

"Reviewed other cases" provides no meaningful basis upon which to assess necessity or reasonableness.

The December 19, 2025 entry for one hour of "*research legal*" is similarly vague. It identifies no issue, case, statute, doctrine, or purpose for the research. At a time when Defendant was litigating multiple substantive and sanctions-related issues, a generic reference to "legal" research does not establish that the hour was reasonably incurred as a result of the sanctionable conduct.

Indeed, Defendant's own declaration recognizes that Rule 11 permits recovery of reasonable attorney's fees and expenses only where they "directly result from the violation." (Lynn Decl. ¶ 9). Yet Defendant describes its billing submission using the substantially broader formulation of work performed merely "in connection with Defendant's motion." The distinction is critical. Time spent reviewing the complaint, deposition testimony, conducting general legal research, meeting with supervisors, or developing litigation strategy may have been "in connection with" the sanctions motion in some generalized sense while simultaneously serving the motion to dismiss or other aspects of the defense. Such time cannot simply be shifted to Plaintiff without records permitting the Court to determine what portion directly resulted from the Rule 11 violation for which sanctions were imposed. Where the records do not permit that determination, an across-the-board reduction is warranted.

The fee applicant bears the burden of supplying records sufficiently detailed to permit that determination. Defendant cannot shift that burden to Plaintiff or the Court by requiring them to infer the purpose of vaguely described work. Where an entry does not disclose whether the time was spent on the sanctions motion, the contemporaneous motion to dismiss, an unsuccessful sanctions theory, or general litigation activity, Defendant has failed to establish that the claimed hours are compensable.

Defendant's billing records also appear to contain duplicative time. Specifically, Defendant seeks 2.0 hours on December 19, 2025 for "*drafting safe harbor letter + notice of motion*" and another 2.0 hours on December 21, 2025 using the same exact description. Nothing in the billing records explains whether these entries reflect separate drafts, distinct revisions, or different work performed on the same documents. In the absence of such detail, the Court cannot determine whether both entries represent separate and reasonably necessary work or whether the same task was billed twice. Because Defendant bears the burden of establishing the reasonableness of the hours claimed, one of the two 2.0-hour entries should be excluded unless Defendant can demonstrate that each entry reflects distinct compensable work.

Lastly, Defendant also seeks attorney-rate compensation one hour on January 16, 2026 described simply as "*proofreading before filing MOL*." That task is clerical or administrative in nature rather than substantive legal work and should not be compensated at counsel's requested attorney rate. In *P.R. v. New York City Department of Education*, 2018 U.S. Dist. LEXIS 121949, at *49 (S.D.N.Y. July 19, 2018), the court compensated clerical work at a reduced rate of $140 per hour. The same approach is warranted here. To the extent Defendant seeks compensation for proofreading or other non-substantive tasks, such time should, at most, be compensated at the reduced clerical rate.

The billing records also contain several internal-review entries described only as "implementing" edits from various supervising attorneys. Defendant seeks 0.5 hours on December 22, 2025, for "implementing Lora's edits"; 0.5 hours on December 23, 2025, for "implement Shlomit's edits"; 0.5 hours on January 15, 2026, for "implement Lora and Max edits"; 0.5 hours on April 27, 2026, for "implementing Sonya's edits"; 1.0 hour on April 27, 2026, for "implementing Lora's edits"; and an additional 0.5 hours on April 27, 2026, for "implementing

Eric Eichenholtz' edits." In total, Defendant seeks 3.5 hours for entries described only as implementing edits. (See Def.'s Ex. A.)

These entries identify the source of the edits, but not the substance of the revisions, the legal or factual issues addressed, or the portions of the sanctions papers being revised. This lack of specificity is particularly significant with respect to the April 27, 2026 entries because Defendant's reply in support of its motion to dismiss was also filed that day. Without additional detail, the Court cannot determine whether the claimed time was reasonably expended on work directly resulting from the Rule 11 violation ultimately identified by the Court, on sanctions theories as to which Defendant did not prevail, on issues overlapping with the contemporaneous motion to dismiss, or on some combination thereof.

Moreover, to the extent these entries reflect merely incorporating non-substantive edits, proofreading, formatting, or other administrative revisions, such work is clerical in nature and should not be compensated at the full attorney rate. At most, such time should be compensated at the reduced clerical rate of $140.00 recognized in *P.R. v. New York City Department of Education*, 2018 U.S. Dist. LEXIS 121949, at *49 (S.D.N.Y. July 19, 2018).

Accordingly, the Court should exclude those hours that are vague, duplicative, or otherwise not shown to have been reasonably and necessarily incurred in connection with the sanctionable conduct. To the extent the Court cannot precisely segregate compensable sanctions work from time attributable to the contemporaneous motion to dismiss, unsuccessful sanctions theories, or general litigation activity because of the vagueness of Defendant's records, an appropriate across-the-board reduction is warranted. *See, e.g., Kreisler, Abeyta, Rosso,* and *Barney, supra.* In addition, the January 16, 2026 entry for "proofreading before filing MOL" and "implementing edits" should, at

most, be compensated at the reduced clerical rate recognized in *P.R. v. New York City Department of Education*.

**POINT II: DEFENDANT'S REQUESTED $250 HOURLY RATE SHOULD BE REDUCED TO REFLECT COUNSEL'S LIMITED EXPERIENCE**

While Defendant is entitled to seek compensation at a reasonable market rate, the record does not support the requested rate of $250 per hour for the attorney who performed the work at issue. The appropriate inquiry is not whether the requested rate is facially plausible, but whether it reflects what a reasonable paying client would be willing to pay for an attorney of comparable "skill, expertise, and reputation," taking into account, among other considerations, the attorney's experience and the level of skill required to perform the work. *Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 522 F.3d 182, 188 (2d Cir. 2008).

Here, Defendant seeks $250 per hour for Assistant Corporation Counsel Brigid Lynn. Yet Lynn's own declaration establishes that she was an exceptionally junior attorney when the work at issue was performed. Lynn graduated from law school in May 2024, was admitted to the New York Bar in February 2025, and began working in the Law Department's Labor & Employment Division in September 2024. (Lynn Decl. ¶¶ 3-4.) The first-time entry for which Defendant seeks reimbursement is dated November 13, 2025. Accordingly, when the compensable period began, Lynn had been admitted to practice for only approximately nine months and had not yet completed her first full year as a licensed attorney. Even by April 27, 2026, when Defendant filed its reply, Lynn had been admitted to practice for only approximately fourteen months. The requested rate should be reduced considering awards made to substantially more experienced Law Department attorneys. In *Abeyta*, the court approved a blended rate of $300 per hour for five attorneys with extensive skill and experience who were central to the defense through trial, including a Deputy Division Chief who had practiced since 1988, clerked for a federal judge, worked at a prominent

New York firm, and taught as an adjunct professor at Fordham; a Senior Counsel with more than fifteen years of federal civil rights experience; and other attorneys with federal clerkships, large-firm experience, prosecutorial experience, and significant litigation responsibility. Viewed against *Abeyta*, a $250 hourly rate for an attorney in her first year of licensed practice is difficult to reconcile with the $300 blended rate awarded to attorneys possessing decades of experience, supervisory responsibility, federal clerkships, and trial-level responsibility.

Notably, the cases cited by Defendant also do not support an hourly rate of $250 for an attorney with Lynn's level of experience. To the contrary, they demonstrate that rates at or above $250 have generally been associated with attorneys possessing substantially greater experience or specialized expertise.

In *Ji Li v. Ichiro Sushi, Inc.*, No. 14 Civ. 10242, 2022 WL 1137094 (S.D.N.Y. Apr. 16, 2022), the court rejected a requested rate of $250 as excessive and calculated the lodestar using rates of $200 per hour for first- and second-year associates and $225 per hour for third-year associates. Thus, *Ji Li*, one of the authorities Defendant itself cites, supports a rate below $250 for junior associates. Lynn was even less experienced than the third-year associates awarded $225 and, at the commencement of the claimed work, had not completed her first year of licensed practice.

*Ng v. King Henry Realty Inc.,* 2016 U.S. Dist. LEXIS 142012 (S.D.N.Y. Oct. 7, 2016), likewise demonstrates that rates should be calibrated to an attorney's actual experience. There, the court approved $225 per hour for attorneys with two to three years of experience, $250 for an attorney with four years of experience, and $150 for a less experienced staff attorney. The court also cited authority reducing the rate of an attorney with less than three years of experience to $200 per hour. These rates further undermine Defendant's request for $250 for an attorney who had not yet completed her first year of licensed practice.

Also, in *Salama v. City of New York*, 2015 U.S. Dist. LEXIS 88728, at *5 (S.D.N.Y. July 8, 2015), the Court reduced the requested hourly rate from $275 to $200 for an attorney who had less than three years of experience at the time she performed the work.

The same comparison follows from *Bravia Capital Partners, Inc. v. Fike*, 296 F.R.D. 136, 145 (S.D.N.Y. 2013), where the court approved a rate of $225 per hour for an associate with four years of experience, while approving $400 per hour for a partner with approximately twenty years of experience. That comparison materially undermines Defendant's request for $250 for Lynn, who had less than one year of experience as a licensed attorney when the work at issue began. See also *Eldesouky v. Aziz*, No. 11-CV-6986, 2015 WL 1573319, at *6 (S.D.N.Y. Apr. 8, 2015) (citing *Bravia* as approving $225 for an associate with four years of experience).

Nor does *P.R. v. New York City Department of Education* support Defendant's requested rate. As Lynn's declaration itself recognizes, the court approved $300 hourly rates for associates with two and five years of experience in the specialized field of IDEA litigation. Lynn possessed neither comparable experience nor specialized expertise. Her declaration reflects only that she had worked in the Law Department's Labor & Employment Division since September 2024 and performed the sanctions work under the supervision of more experienced attorneys. *P.R.* therefore provides little support for awarding Lynn $250 per hour.

Defendant's reliance on *Local Union No. 40 of Int'l Ass'n of Bridge, Structural & Ornamental Iron Workers v. Car-Win Construction, Inc.*, 88 F. Supp. 3d 250 (S.D.N.Y. 2015), likewise does not support its proposed rate. There, the court calculated the lodestar using rates of $150 per hour for a second-year associate and $200 per hour for an equity partner with twelve years of experience, expressly tying the reasonableness of those rates to the attorneys' respective levels of experience.

Those rates further demonstrate that $250 is not compelled for an attorney at Lynn's level of experience.

Taken together, these authorities establish that the appropriate comparison is to junior associates performing litigation research and drafting under senior supervision. *Ji Li* provides a particularly useful benchmark, awarding $200 per hour to first- and second-year associates and $225 per hour to third-year associates. Lynn had been admitted to practice for approximately nine months when the billing period began, remained within approximately fourteen months of admission when Defendant filed its reply, and performed the work under the supervision and guidance of more experienced Law Department attorneys. Defendant has identified no specialized expertise, unusual responsibility, or other circumstance warranting a higher rate.

Accordingly, Defendant has not met its burden of demonstrating that $250 per hour is a reasonable rate for Lynn's services. The Court should reduce the requested rate to $200 per hour, consistent with the rates awarded to attorneys of comparable experience and Lynn's actual level of experience when the work was performed.

**POINT III: DEFENDANT'S FEE AWARD SHOULD BE REDUCED TO REFLECT ITS LIMITED SUCCESS ON THE SANCTIONS MOTION**

Courts may reduce a fee award "to account for limited success." *Mayo-Coleman v. Am. Sugars Holding, Inc.*, 2019 U.S. Dist. LEXIS 34972, at *14 (citing *Castillo v. Time Warner Cable of New York City*, No. 09 Civ. 7644 (PAC), 2013 U.S. Dist. LEXIS 58815 (S.D.N.Y. Apr. 24, 2013)). A court need not employ strict proportionality in determining the appropriate reduction. *See Kreisler v. Second Ave. Diner Corp.*, No. 10-CV-7592, 2013 WL 3965247, at *4 (S.D.N.Y. July 31, 2013) (applying a 30% across-the-board reduction where the plaintiff did not prevail on all claims); *Rivera v. Dyett*, No. 88 Civ. 4707 (PKL), 1993 WL 36159, at *4 (S.D.N.Y. Feb. 10, 1993) (reducing the lodestar by one-third to account for limited success); *Spalluto v. Trump Int'l*

*Hotel & Tower*, 2008 WL 4525372, at *16 (reducing lodestar hours by 20% for partial success); *Levy v. Powell*, No. 00 Civ. 4499 (SJF), 2005 WL 1719972, at *12 (E.D.N.Y. July 22, 2005) (reducing lodestar hours by 25% where plaintiff prevailed on only one of three claims).

That principle applies here. Defendant seeks compensation for all 25.91 hours devoted to the Rule 11 motion, even though the Court expressly "GRANTED IN PART and DENIED IN PART" that motion. Because Defendant did not prevail on the full scope of the arguments or relief advanced, the Court should consider whether the hours claimed were reasonably attributable to the grounds upon which Defendant actually prevailed.

Defendant organized its sanctions motion around three categories of allegations that it contended were knowingly false. Specifically, Defendant argued that the Second Amended Complaint falsely alleged: (1) that it was the City's policy or practice to "categorically" or "automatically" deny religious accommodation requests from Catholic employees; (2) that it was the City's policy to deny religious accommodation requests from Catholic employees because of public statements by the Pope or the Pope's public support for vaccination; and (3) that it was the City's policy to grant religious accommodations only to employees who were members of particular religious organizations or sects with longstanding objections to vaccination. (ECF Doc. 60).

Defendant relied extensively upon the Rule 30(b)(6) testimony of Eric Eichenholtz in support of those theories. The Court, however, rejected Defendant's contention that the deposition testimony conclusively established that Plaintiff's allegations were objectively unreasonable. (ECF No. 80 at 9-10.) The Court explained that the testimony of an adverse Rule 30(b)(6) witness is merely evidence of one party and "does not conclusively establish the truth of the matter asserted

therein." The Court further held that disagreement between percipient witnesses and Plaintiff's allegations presented factual disputes that could not properly be resolved on a Rule 11 motion.

The Court ultimately imposed sanctions on the materially narrower ground that Plaintiff's counsel possessed documentary evidence demonstrating that Catholic applicants were not categorically or absolutely barred from receiving religious accommodations. The DSNY spreadsheet reflected that, of 358 Catholic applicants, 102 were approved and 254 were denied. The Court concluded that, in light of that undisputed documentary evidence, it was objectively unreasonable to allege that the City maintained a categorical policy under which Catholics, as a class, could not receive accommodations. Although the Court further relied upon Eichenholtz's testimony as corroborative evidence, it expressly recognized that his testimony "would not alone support an award of sanctions." (ECF No. 80 at 12.)

The distinction is significant. The Court acknowledged Plaintiff's evidence of individual instances in which applicants were denied accommodations based upon determinations that purported Catholic beliefs constituted a "personal choice," as well as evidence that certain individuals were denied exemptions based upon the Catholic Church's position that vaccination was morally acceptable. The Court held, however, that those individual instances did not make it objectively reasonable to allege that Catholics were denied accommodations categorically or "as a rule." Thus, the sanctionable defect identified by the Court was the categorical and absolute nature of the allegations, not the mere contention that Catholic doctrine, statements by Church leadership, or distinctions between individualized and institutional religious beliefs may have played a role in particular accommodation determinations. Defendant likewise did not obtain all of the relief it requested. Defendant sought an order directing Plaintiff's counsel to remove the challenged allegations from this case and from future pleadings concerning the City's Vaccine

Mandate. The Court declined to extend its ruling to separate proceedings, expressly stating that it would "not . . . enter an order enjoining Plaintiff's counsel with respect to its actions in distinct proceedings."

These limitations bear directly upon the reasonableness of the hours Defendant seeks to recover. For example, Defendant claims two hours on November 20, 2025 for reviewing the SAC together with the Eichenholtz depositions. Yet Defendant relied heavily upon those depositions in support of its sanctions theories, while the Court expressly held that the testimony alone could not support sanctions. Likewise, Defendant's generalized entries for research, conferences, drafting, and revisions do not disclose whether counsel was working on the categorical-denial theory ultimately sustained, broader arguments that did not independently support sanctions, relief concerning future litigation that the Court declined to impose, or some combination of those matters.

Because Defendant's billing records do not segregate time devoted to the successful basis for sanctions from time devoted to unsuccessful arguments or relief, precise allocation is impossible. That uncertainty should not operate to Defendant's benefit. Where billing records do not permit the Court to distinguish compensable work from unsuccessful or otherwise non-compensable work, an across-the-board reduction is appropriate. *See Mayo-Coleman v. Am. Sugars Holding, Inc.*, 2019 U.S. Dist. LEXIS 34972.

Accordingly, Defendant should not recover fees for the entirety of the 25.91 hours claimed. In determining the reasonable fee attributable to Defendant's partial success, the Court should consider the extent to which the claimed time was devoted to grounds and relief upon which Defendant did not prevail. Where the records do not permit such allocation, the Court should apply an appropriate across-the-board reduction to reflect Defendant's limited success.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court reduce Defendant's application for $6,477.50 in attorneys' fees. At a minimum, the Court should reduce counsel's hourly rate from $250 to $200, exclude one of the apparently duplicative 2.0-hour entries for "drafting safe harbor letter + notice of motion," and compensate the 4.5 hours devoted to proofreading and entries described only as 'implementing' edits, to the extent the Court determines such work was non-substantive, at no more than the $140 clerical rate. Those readily quantifiable adjustments reduce Defendant's requested award to **$4,512.00**.

| **Adjustment** | **Amount** |
|---|---|
| 25.91 hours × $200 | $5,182.00 |
| Less duplicative 2.0 hours × $200 | ($400.00) |
| Reduce 4.5 clerical hours from $200 to $140 | ($270.00) |
| **Adjusted subtotal** | **$4,512.00** |

That adjusted amount, however, does not account for the additional deficiencies identified above. Defendant's records contain numerous vague and undifferentiated entries that do not permit the Court to segregate compensable sanctions work from overlapping work on the contemporaneous motion to dismiss, unsuccessful aspects of the sanctions motion, and general litigation activity. Plaintiff therefore respectfully requests that the Court apply such further across-the-board reduction to the adjusted subtotal of $4,512.00 as it deems appropriate to account for those deficiencies and Defendant's limited success.

Depending upon the percentage reduction the Court deems appropriate, the resulting award would be:

| Across-the-Board Reduction | Resulting Award |
|---|---|
| 10% reduction | **$4,060.80** |
| 20% reduction | **$3,609.60** |
| 25% reduction | **$3,384.00** |

Plaintiff respectfully leaves the precise percentage to the Court's discretion.

Dated: Staten Island, New York
August 17, 2026

BY: *Jeannette Poyerd-Loiacono*
**Jeannette Poyerd-Loiacono, Esq.**
**MARTINEZ & LOIACONO, PLLC**
245 Bricktown Way, Suite J
Staten Island NY 10309, 347-215-4543
***Attorneys for Plaintiff***

**CERTIFICATION**

Counsel of Record hereby certifies that, pursuant to Local Civil Rule 7.1(c), the foregoing Memorandum of Law contains 5,095 words, as calculated by the word-count function of Microsoft Word, excluding the caption, any index, table of contents, table of authorities, signature blocks, and required certificates. The Memorandum therefore complies with the applicable 8,750-word limitation.

Dated: Staten Island, New York
August 17, 2026

BY: *Jeannette Poyerd-Loiacono*
**Jeannette Poyerd-Loiacono, Esq.**
**MARTINEZ & LOIACONO, PLLC**
245 Bricktown Way, Suite J
Staten Island NY 10309, 347-215-4543
***Attorneys for Plaintiff***